UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x  Case No.: 21-42207-ess
IN RE:
                                                                        CHAPTER 11
SID BOYS, CORP. d/b/a KELLOGG'S DINER,

                     Debtor.
-------------------------------------------------------------x

## DEBTOR'S OBJECTIONS TO CREDITOR'S MOTION TO DIRECT DEBTOR'S SURRENDER AND TO CONVERT TO A CHAPTER 7, AND DEBTOR'S APPLICATION IN SUPPORT OF ITS CROSS-MOTION SEEKING AN ORDER DETERMINING THAT THE NON-RESIDENTIAL REAL PROPERTY LEASE IN THIS CASE NEED NOT BE ASSUMED OR REJECTED PURSUANT TO 11 U.S.C. §365(d)(4); AND THAT THE TIME TO ASSUME OR REJECT THE LEASE IS PURSUANT TO 11 U.S.C. §365(d)(2)

Sid Boys, Corp. d/b/a Kellogg's Diner, the Debtor and Debtor-In-Possession (hereinafter, the "Debtor"), by and through its attorney, Rachel L. Kaylie, Esq., objects to the motion made by 514 Fioto Property Corp. (hereinafter, the "Landlord") and 518 Metropolitan Avenue Corp. (hereinafter, "518 Metropolitan") seeking an order directing the Debtor to immediately surrender the premises and converting this case to a Chapter 7. Debtor also cross-moves seeking a determination that the Debtor's time to assume or reject the non-residential real property lease is part of the entire sales agreement package and is thus an executory contract, and the time to assume or reject is actually governed by 11 U.S.C. §365(d)(2), and not by 11 U.S.C. §365(d)(4). In support of this objection and application, the Debtor represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this district is proper pursuant to 28 U.S.C. §1409. The principal statutory predicate for the relief requested herein is 11 U.S.C. §§ 105(a) and 365(d)(2).

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

2. The Debtor filed a voluntary petition for relief under chapter 11 of 11 U.S.C. §101, et. seq. (the "Bankruptcy Code") on August 28, 2021 (the "Filing Date") in the Bankruptcy Court for the Eastern District of New York.

3. The Debtor continues in possession of its property and to operate and manage its organization and business as a debtor-in-possession, pursuant to Bankruptcy Code sections 1107(a) and 1108.

4. No request for the appointment of a trustee or examiner has been made in this Chapter 11 case and, as of the date of filing this application, no official committees have been appointed or designated.

5. During the time that the Debtor has been a debtor-in-possession, the Debtor has been making progress in administering its Chapter 11 case given the complexity of the actions and duties required for the Debtor to complete, and given the complications of running a diner in the midst of a covid-19 pandemic.

6. Debtor is an historic diner in the Williamsburg section of Brooklyn. On or about September 19, 2013, the Debtor, by its then principal, Christos Siderakis, purchased the diner business from 518 Metropolitan, evidenced by a Sale of Business Agreement which also incorporated a Security Agreement, Promissory Note, Net Net Lease, and other related documents (hereinafter, collectively, "the Sales Documents"). The Sales Documents (excluding

the Net Net Lease) are annexed hereto collectively as **Exhibit A**. As part of the purchase of the diner, on the same day, the Debtor also signed the aforementioned Net Net Lease agreement (hereinafter, the "Lease") with the Landlord for the non-residential real property of the diner, located at 514/518 Metropolitan Avenue, Brooklyn, New York. A copy of the Lease is separately attached to the Landlord's underlying motion as its Exhibit 1, and is adopted herein for the purposes of this cross-motion.

7. The Debtor's Lease has a thirty (30) year term, beginning on October 1, 2013 and ending on September 30, 2043, and is thus an unexpired lease. The Promissory Note for the purchase of the business has a fifteen (15) year term, beginning on October 1, 2013 and ending on September 30, 2028, and is thus an executory contract.

8. It is undisputed that neither the Debtor nor the Landlord would have signed the Lease if not for the purchase of the business pursuant to the Sales Agreement. Thus, the signing of the Lease is part and parcel of the purchase of the business.

9. Sadly, in 2018, the Debtor's then principal, Christos Siderakis passed away suddenly, leaving behind his wife and four young children and no life insurance. Subsequently, his wife, the now principal of the Debtor, Irene Siderakis, took over the running of the diner as this was her sole means of support for herself and her children. She has been running the diner by herself since her husband's passing in 2018.

10. Then, as everyone knows, the entire world basically shut down in March 2020 due to the covid-19 corona virus (hereinafter, the "Pandemic"). During the early part of the Pandemic, the Debtor's principal contracted the covid-19 virus and was very ill. In addition, due to the government restrictions, as a non-essential business, she was forced to shut the doors of the diner. She eventually recovered and eventually was allowed to re-open the diner. However,

due to ongoing pandemic restrictions on indoor dining, mask mandates, etc., business was extremely slow in 2020 and 2021. Also, due to the physical location of the diner, there was no space for the diner to set up any form of temporary or permanent outside seating.

11. In addition, in order to keep the diner open and operating during the pandemic once some of the restrictions were lifted, the Debtor applied for and obtained two different PPP loans. The Debtor obtained approximately $206,600 for the first PPP loan, which was eventually forgiven, and approximately $256,234 for the second PPP loan, which it is anticipated will be forgiven in the coming months.

12. According to Irene Siderakis, the Debtor's principal, the PPP money was used for payroll expenses to keep her employees employed, as the money was intended. Also, approximately 40% of it went to paying back rent/promissory note payments to the Landlord and 518 Metropolitan. See Affidavit of Irene Siderakis, annexed hereto as **Exhibit B**. The Debtor was current on the rent and promissory note through May 2020, and even a portion of the June 2020 rent was paid.

13. Additionally, during the height of the Pandemic, Irene Siderakis started a Go Fund Me page and raised approximately $100,000 Pre-petition for the Debtor. The Debtor also received a Restaurant Revitalization Fund grant in the amount of $647,181.

14. All of this money from all sources, totaling approximately $1,210,015, has been used for operating expenses (i.e., food, utilities, repairs, insurance, etc.), payroll expenses, and back rent, and approximately $670,000 of the money is in the Debtor's DIP account with the intention of using it towards a payment plan in this chapter 11 matter. Furthermore, approximately $169,000 of the money went to pay New York State taxes that the Debtor owed.

15. Prior to the Petition Date, beginning in later 2020 when it was clear that the Pandemic restrictions on restaurants were not going to be lifted or eased up any time soon, Debtor began trying to negotiate the unpaid rent and promissory note payments with the Landlord. Despite Debtor's good faith efforts to resolve these issues with the Landlord and 518 Metropolitan, they stubbornly refused to settle for anything less than the full amount owed. At a time when many landlords and other creditors were trying to work with businesses to keep them afloat by forgiving some portion of rental arrears, the Landlord and 518 Metropolitan were not so generously inclined. Emails and other correspondence evidencing these good faith efforts on Debtor's part and the responses from the Landlord are annexed hereto collectively as **Exhibit C**.

16. As such, on April 26, 2021, 518 Metropolitan filed an action for unpaid money on the Promissory Note in the Supreme Court of Kings County under Index #509696/2021, by filing a Summons and Motion in lieu of a Complaint. Because of the moratorium on actions to collect rent, the Landlord could not file a law suit against the Debtor for the unpaid rent. Presumably, though, had the moratorium not been in place, the Landlord would have sued for the rent too.

17. Just three months after filing suit, despite Debtor's ongoing good faith efforts to negotiate a reasonable settlement, 518 Metropolitan obtained a judgment against the Debtor on July 30, 2021 in the amount of $1,372,711.80 for the accelerated promissory note. Again, despite final efforts by the Debtor to resolve the debt and keep the diner operating, 518 Metropolitan and the affiliated Landlord refused to accept anything less than the full amount. This is what forced the Debtor into this Chapter 11 matter.

## THE DEBTOR IS REQUIRED TO ASSUME OR REJECT THE LEASE PURSUANT TO 11 U.S.C. §365(d)(2), NOT 11 U.S.C. §365(d)(4)

18. It is undisputed that the Net Net Lease Agreement, Security Agreement, and Promissory Note are all integral parts of the overall Sale of Business Agreement. Movants Landlord and 518 Metropolitan even asserted as such in their motion and the Proofs of Claim they filed on this matter, copies of which are annexed hereto collectively as **Exhibit D**.

19. Furthermore, the Lease Agreement cross-references the other agreements, including a cross-default provision such that a default in the promissory note would be considered a default on the lease too, and vice versa. See "Article XXXIX Default" page 25 of the Net Net Lease Agreement, Exhibit 1 of the underlying motion.

20. The overarching Sale of Business Agreement even states that the Promissory Note, the Lease and the Security Agreement are attachments made a part thereof. See page 5, paragraph 18 of the Sale of Business Agreement, **Exhibit A**.

21. Therefore, it is clear and undisputed that the parties intended for this to be one integrated transaction. Neither party would have signed the Lease but for the sale of the business and the signing of the Promissory Note.

22. Given that the Lease and Promissory Note and Sale of Business Agreement (all signed on the same day) constitute a single transaction, Debtor should not be forced to assume or reject the Lease at this time.

23. The premise of Landlord and 518 Metropolitan's motion is that 11 U.S.C. §365(d)(4) controls in this instance since the Lease is for non-residential real property. However, this argument is misplaced. In actuality, 11 U.S.C. §365(d)(2) is the applicable provision of the Bankruptcy Code as the Sale of Business Agreement is an executory contract