EXHIBIT A

# Sale of Business Agreement

AGREEMENT, made this 10th day of July, 2013, by and between 518 METROPOLITAN AVE. CORP., a New York corporation, with offices at 518 Metropolitan Avenue, Brooklyn, New York 11211, hereinafter referred to as the Seller, and SID/ BOYS CORP., A New York Corporation, hereinafter referred to as the Purchaser.

## WITNESSETH:

WHEREAS, the Seller is the owner of the diner/restaurant at 518 Metropolitan Avenue, Brooklyn, New York 11211, and the Seller desires to sell same to the Purchaser, and the Purchaser is willing to purchase the same;

NOW, THEREFORE, IT IS MUTUALLY AGREED AS FOLLOWS:

1. **AGREEMENT TO PURCHASE** On the terms and subject to the conditions herein set forth, the Seller will sell and the Purchaser will purchase, free from all liabilities, liens and other encumbrances except as hereinafter set forth, the said chattels and equipment presently at the premises above set forth, the right to use the telephone number of the said business (718-782-4502), and the name "Kelloggs Diner" so far as the Seller can confer such right, and each and all of the chattels, fixtures, appliances, equipment and furnishings of the said business and now in the said premises, but excluding the following chattels, which are not the property of the Seller: Coffee machines owned by BK Coffee Company (no contract)

Excluded from the sale is all unconnected equipment on the second floor.

This contract is conditional upon the Purchaser signing a lease simultaneously with the Landlord.

2. **PURCHASE PRICE** The purchase price of the said properties and assets thereof as aforesaid is:

| | |
|---|---|
| Chattels, fixtures & equipment | $ |
| Restrictive Covenant | $ |
| Good Will | $ |
| Leasehold Interest | $ |
| TOTAL PURCHASE PRICE ................ | $2,800,000.00 |

The Purchaser shall pay to the Seller the purchase price above set forth, in the manner as follows:

a) ONE HUNDRED THOUSAND AND 00/100 ($100,000.00) DOLLARS, by check subject to collection, delivered to NICHOLAS G. PETRAS, ESQ., the attorney for the Seller (hereinafter referred to as the Escrowee) upon the execution of this agreement, the proceeds of which shall be held in escrow by the Escrowee subject to and in accordance with the provisions of this agreement;

b) <u>SEVEN HUNDRED THOUSAND AND 00/100 ($700,000.00) DOLLARS</u>, in good certified or bank cashier's check at the closing of sale under this agreement, and the adjustments as hereinafter provided;

c) <u>TWO MILLION AND 00/100 ($2,000,000.00)</u> DOLLARS, in one hundred and eighty (180) successive monthly installments, inclusive of interest, of <u>$16,877.14</u>. The first installment shall be due and payable one (1) month after closing, and each of the remaining installments to be due and payable each and every month seriatum successively thereafter until the said sum of $2,000,000.00 is paid in full together with interest which shall be payable upon each installment as it becomes due at the rate of <u>six (6%) percent</u> per annum computed from the date of the closing of sale under this agreement (a copy of the Direct Reduction Schedule is attached hereto);

3. <u>PURCHASE MONEY NOTES</u> To secure the payment of the installments set forth in Article 2, subdivision (c) hereof, the Purchaser will execute and deliver to the Seller a series of one hundred and eighty (180) promissory notes, or one (1) Note, dated the date of closing, payable to the Seller, containing a provision that in the event of default in payment, the continuance of such default for a period of ten (10) days, all of the remaining balance shall forthwith become due and payable, with notice to accelerate and the failure to assert this right shall not be deemed a waiver thereof. There shall be a late payment charge of four (4%) percent after the tenth (10th) of the month. Full right to prepay in inverse order in accordance to Direct Reduction Schedule

4. <u>PURCHASE MONEY SECURITY AGREEMENT</u> To further secure the payment of said installments, the Purchaser will execute and deliver to the Seller, a purchase money Security Agreement in form A-77 published by JULIUS BLUMBERG, INC., with Rider, covering the chattels and fixtures to be sold under this agreement, conditioned for the payment of the installments and interest aforesaid. The Purchaser shall have the right to sell the business, subject to the within purchase money Security Agreement, provided that the new purchaser shall assume said Security Agreement and indebtedness thereunder in writing, and the principal of the assignee (financially acceptable to the Holder of the notes, or Note), provided $100,000.00 of the principal is prepaid in inverse order if business is sold within the first three (3) years, and if the business is sold within the next three (3) years, $50,000.00 of the principal shall be prepaid. Thereafter, no prepayment will be due on a sale.

5. <u>SALES TAX ON CHATTELS AND FIXTURES</u> At the closing of sale under this agreement, the Purchaser will pay to the Seller, in addition to the purchase price above set forth, the New York State Sales Tax on the portion of the purchase price allocated for the chattels and fixtures of the business to be sold hereunder. In the event that the State of New York shall appraise the said chattels at an amount in excess of the allocation herein made thereof, then the Purchaser will pay the sales tax on the amount of such excess, and the Purchaser will reimburse the Seller, on demand, for such payment.

6. <u>INDEMNIFICATION BY SELLER</u> In the event this agreement to sell is in fact closed, that the Seller and its principals, without the execution of any further

documents, will pay, satisfy and/or discharge, and indemnify, save and hold harmless the Purchaser from and against all debts, liabilities, obligations and commitments of the Seller of whatever nature and character, whether absolute, contingent or otherwise, accruing to or existing at the closing of sale under this agreement and not expressly assumed by the Purchaser, including (but not limited to, except as aforesaid) any account payable for goods, wares, merchandise, chattels and fixtures sold and/or delivered to the Seller, any Federal, State, City or other governmental tax charged against, imposed or assessed upon the Seller, any unpaid employment contributions due the State of New York, any claim of the employees of the Seller under any collective bargaining agreement between such union and the Seller. The Seller will also pay, satisfy and/or discharge any lien or other encumbrance upon the said property thereof to be sold under this agreement which was filed or recorded prior to the delivery of the bill of sale to be delivered hereunder and not expressly assumed by the Purchaser, and deliver to the Purchaser satisfactions thereof in form for filing or recording.

(b) INDEMNIFICATION BY PURCHASER The Purchaser, and its principals, without the execution of any further documents, will pay, satisfy and/or discharge, and indemnify and save harmless the Seller from and against all debts, liabilities, obligations and commitments incurred by the Purchaser in consequence of his ownership of the chattels, equipment and leasehold.

(c) There exists a temporary Certificate of Occupancy which lawfully permits use of the premises to be used and occupied as a restaurant. Application is being processed for a permanent Certificate of Occupancy. If no permanent Certificate of Occupancy is issued within twenty-four (24) months from date of closing, all payments shall be made to the escrow agent until the permanent Certificate of Occupancy is obtained.

7. (a) CREDITORS OF SELLER At the closing of sale under this agreement, Seller shall comply with the Uniform Commercial Code by filing a Bulk Sale Notice. Seller, and its principals represent that they will have no creditors or debts at closing.

(b) ESCROW FOR CREDITORS To insure payment, satisfaction and/or discharge by the Seller of the creditors set forth by him in his said affidavit and of the debts, liabilities, obligations, liens or encumbrances by him to be paid, satisfied and/or discharged pursuant to this agreement, the parties hereto and the Escrowee, at the closing of sale under this agreement, will enter into an agreement in writing by which the Purchaser shall have the right to make note payments eight through twelve, inclusive, to escrowee provided at the time of such payments, there shall be claims in writing filed with the escrowee with respect to such debts, liabilities, obligations, liens, or encumbrances and provided that Seller shall have delivered to Purchaser or his attorney by registered or certified mail, return receipt requested, a photo copy of the certification by the City and State of New York that all sales taxes due to the City and State of New York for any period prior to the closing had been paid, discharged and/or adjusted by the Seller and that all money held in escrow to insure such payment discharge and/or adjustment may be released thereon.

8. SELLER'S REPRESENTATIONS To induce the Purchaser to purchase the said properties and to pay the purchase price therefor as above set forth, the Seller warrants and represents to the Purchaser as follows:

- 3 -