(a) That Seller is the sole and absolute owner of the chattels, equipment and leasehold to be sold hereunder, and that it has good and marketable title to each and all of the assets and properties thereof, including the fixtures and chattels, free from any liens or other encumbrances, and same shall be in working order at closing;

(b) That there are no judgments in any Court of records in the State of New York in the United States against the corporation or in any way a lien upon the assets hereby sold, nor has any petition in bankruptcy or other insolvency proceedings been filed by or against the corporation, nor has he made any assignment for the benefit of creditors;

(c) That there are no actions or proceedings in law or in equity pending against him in any Court, nor has he any knowledge of any threatened actions against the corporation;

(d) That there are no actions noted in or issued by any governmental authority to the best of Seller's knowledge, and has fully complied with all laws, ordinances, rulings and regulations of all constituted governmental authorities having jurisdiction;

9. **SELLER'S BUSINESS CONTRACTS** In the event that this agreement to sell is in fact closed, then the Purchaser, without the execution of any further documents will be bound by and assume the following contracts heretofore entered into by the Seller in the conduct of the business with the same force and effect as if the Purchaser were signatory thereto originally: There are none.

10. **SELLER'S ADDITIONAL COVENANTS** Pending the closing of sale under this agreement, the Seller will not enter into any contract of agreement, written or oral, binding the Purchaser after the transfer of the assets to him.

11. **ACCOUNTS RECEIVABLE** All accounts receivable of the said business as of the commencement of business on date of closing are hereby expressly reserved and retained by the Seller, who is hereby declared and agreed to be the sole owner thereof and who shall have the full, absolute and sole right and authority to demand, collect and receive the same. Any monies received or collected by the Purchaser after the closing of sale in payment of such accounts receivable shall be deemed to be funds held by him for the Seller, and the Purchaser shall pay over such monies to the Seller.

12. **CLOSING ADJUSTMENTS** At the closing of sale under this agreement, adjustments shall be made for the following: Real Estate taxes, stock in trade, water, sewer, fuel, if any. These shall be paid at closing.

13. **SELLER'S RESTRICTIVE COVENANT** At the closing of sale under this agreement, the Seller, and Frank Fiotos, Anthony Fiotodimitrakis and John Fiotodimitrakis will execute and deliver to the Purchaser an agreement in writing by which they will covenant and agree to and with the Purchaser not to establish, open or be engaged in or in any manner become interested, directly or indirectly, either as owner, partner, agent, employee, or as a stockholder, officer or director of a corporation, or otherwise, in any food service business for a period of three (3) years from the date of closing within the following area: a two (2) mile radius from the subject Premises, and to be bound also thereby to the heirs, executors, administrators, successors

and assigns of the Purchaser. However, the said agreement shall become null and void and of no further force and effect in the event the property covered by the Security Agreement aforesaid is repossessed by the holder thereof by foreclosure or other lawful means, or the Purchaser, his heirs, successors or assigns abandons or is evicted from the said store premises.

14. **PURCHASER'S VOLUNTARY ACTION** No oral statement or prior written matter shall have any force or effect. The Purchaser has inspected and is familiar with the physical condition of the chattels, fixtures, equipment and furnishings, and he hereby declares and agrees that he is purchasing voluntarily and on his own judgment and not upon any representations made by the Seller or by anyone acting on his behalf as to the character, condition or quality of said chattels, fixtures, equipment and furnishings, other than those contained in this agreement.

15. **BROKERAGE**. The parties hereto warrant and represent to each other that they have not dealt with any broker or finder in connection with this Agreement, or the transactions contemplated hereby, and no broker or any other person is entitled to receive any brokerage commission, finder's fee or other compensation in connection with this Agreement or the transactions contemplated hereby. Each of the parties shall indemnity and hold the other parties harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, pertaining to any other broker, finder or other person with whom such party has dealt.

16. **SURVIVAL OF THIS AGREEMENT** Each of the terms, covenants, conditions, provisions, agreements, warranties and representations herein contained shall survive the closing of sale and shall not be deemed as merged in the transfer of title of the said business and property or in the payment of the consideration therefor.

17. **PROCUREMENT OF LICENSE**.

The Seller has a valid liquor license from the State of New York Liquor authority, License #G746400 (the "License"), and the Seller has received no notices, complaints or demands which are presently outstanding and relating to said license or the sale of alcoholic beverages at the premises from the State Liquor Authority, Alcoholic Beverage Control Board, or any other legal agency having jurisdiction, nor are there any criminal proceedings now pending with respect to said License. This Agreement is made upon the condition that Purchaser shall apply for a temporary license. Seller shall place its license for safekeeping with the SLA until Purchaser obtains a permanent license. Once a temporary license is obtained, the parties shall close and the liquor license condition shall be fulfilled.

18. **ATTACHMENTS MADE PART HEREOF**
   1. Note and Security Agreement for $2,000,000.00
   2. Not Net Lease
   3. Additional Agreement for $100,000.00

19. **CLOSING** The closing of title under this agreement shall be held on/about Sept. 10, 2013, at the offices of Nicholas C. Peras, Esq., 60 Hillside Avenue, Manhasset, New

York 11030. At the closing, the keys to said premises and all other idicia of possession shall be delivered to the Purchaser. The Seller shall execute and deliver to the Purchaser the Bill of Sale (containing the usual warranties and affidavit of title) and all other instruments of sale, conveyance and assignment required under this agreement, or that may otherwise be required, for the proper transfer of the assets thereof. The monies held in escrow hereunder shall be paid over, and all monies and documents required hereunder to be thereafter held in escrow shall, accordingly, be delivered to the Escrowee herein named. The parties shall otherwise execute and deliver any and all other instruments as may be required to carry out the terms of this agreement. Upon completion of the transfer and payment of the purchase price above set forth, the Purchaser shall have title to and possession of the said business, and the Seller will thereafter and forever defend the Purchaser against any claim of any kind or description affecting the Purchaser's ownership of the said assets or his right to the possession thereof.

20. **NOTICE BY PARTIES** Every notice or other communication authorized or required by this agreement shall not be effective unless given or served in writing and sent by United States registered or certified mail, return receipt requested, directed to the respective parties as aforesaid, or such other address as either party may designate by notice from time to time.

**IN WITNESS WHEREOF**, the parties hereto have signed this agreement the day and year first above written.

SELLER:

518 METROPOLITAN AVE. CORP.

By: _[signature]_

PURCHASER:

SID BOYS, CORP

By: _[signature]_

- 6 -

**THIS AGREEMENT SUPERCEDES THE SALE OF BUSINESS AGREEMENT OF EVEN DATE BETWEEN 518 METROPOLITAN AVENUE CORP., AS SELLER AND SID/BOYS CORP., AS PURCHASER**

In consideration of SID/BOYS CORP. entering into a Sale of Business Agreement for the purchase of the diner with 518 METROPOLITAN AVENUE CORP. as of July 10, 2013, SID/BOYS CORP. agrees to pay the sum of One Hundred Thousand and 00/100 ($100,000.00) Dollars in addition to the amounts due on said Contract, providing, a Court settlement is confirmed with the "Labor Board" for $300,000.00. In the event the Court Settlement is not confirmed by September 15, 2013, the Sale of Business Agreement may be declared null and void by the Purchaser and void upon the return of the earnest monies deposit to the Purchaser.

The additional One Hundred Thousand and 00/100 ($100,000.00) Dollars herein shall be as follows:

(a) Twenty Thousand and 00/100 ($20,000.00) Dollars at closing, and;
(b) The balance of Eighty Thousand and 00/100 ($80,000.00) Dollars by the execution of the Note attached hereto.

SELLER:

518 METROPOLITAN AVE. CORP.

By: _____
Frank Fotios

PURCHASER:

SID/BOYS CORP.

By: _____