SECURITY AGREEMENT
(Chattel Mortgage)

THIS AGREEMENT, made the 19th day of September, 2013 under the laws of the state of New York

BETWEEN SID BOYS CORP, a New York corporation

herein called the Debtor

whose business address is (if none, write "none") 514/518 Metropolitan Avenue, Brooklyn, New York 11211

and whose residence address is

and 518 METROPOLITAN AVE. CORP.

herein called the Secured Party

whose address is 514/518 Metropolitan Avenue, Brooklyn, New York 11211

WITNESSETH :

To secure the payment of an indebtedness in the amount of $ 2,080,000.00 with interest, payable as follows

Note #1, payable in (180) constant monthly payments of $16,877.14, which includes interest at the rate of six (6%) percent per annum, commencing on the 19th day of October, 2013 and ending on the 19th day of September, 2028. Each payment as received shall be applied FIRST: toward payment of interest at the rate of six (6%) percent per annum on the unpaid balance; and SECOND: The balance remaining of said payment shall be applied toward reduction of the indebtedness. The obligor may make prepayment on five (5) days written notice without penalty, in multiples of no less than Twenty-Five Thousand and 00/100 $25,000.00 Dollars, in accordance to the direct Reduction Schedule attached hereto. Prepayment shall not release the Obligor from making constant monthly payments.

Note #2, payable in (16) constant monthly payments of $5,178.92, which includes interest at the rate of five (5%) percent per annum, commencing on the 19th day of October, 2013 and ending on the 19th day of January, 2015. Each payment as received shall be applied FIRST: toward payment of interest at the rate of five (5%) percent per annum on the unpaid balance; and SECOND: The balance remaining of said payment shall be applied toward reduction of the indebtedness. Full right to pay in whole or in part, no penalty.

s evidenced by a note or notes of even date herewith, and also to secure any other indebtedness or liability of the Debtor
> the Secured Party direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising,
including all future advances or loans which may be made at the option of the Secured Party, (all hereinafter called the
"obligations") Debtor hereby grants and conveys to the Secured Party a security interest in, and mortgages to the Se-
cured Party,

    (a) the property described in the Schedule herein which the Debtor represents will be used primarily

        ☐ for personal, family or household purposes

        ☐ in farming operations

        ☒ in business or other use

    (b) all property, goods and chattels of the same classes as those scheduled, acquired by the Debtor subsequent to the execution of
this agreement and prior to its termination. (If the property described in the Schedule is for personal, family or household purposes then
no security attaches under this section (b) unless the debtor acquires rights in them within 10 days after the Secured Party gives value.)

    (c) all proceeds thereof, if any,

    (d) all substitutions, replacements and accessions thereto
the foregoing (a), (b), (c) and (d) hereinafter call the collateral).

1. DEBTOR WARRANTS, COVENANTS AND AGREES AS FOLLOWS:

**PAYMENT**    1a To pay and perform all of the obligations secured by this agreement according to their terms.

**DEFEND TITLE**    1b To defend the title to the collateral against all persons and against all claims and demands whatsoever, which collateral, except for the security interest granted hereby, is lawfully owned by the Debtor and is now free and clear of any and all liens, security interests, claims, charges, encumbrances, taxes and assessments except as may be set forth in the schedule.

**ASSURANCE F TITLE**    1c On demand of the secured party to do the following; furnish further assurance of title, execute any written agreement or do any other acts necessary to effectuate the purposes and provisions of this agreement, execute any instrument or statement required by law or otherwise in order to perfect, continue or terminate the security interest of the Secured Party in the collateral and pay all costs of filing in connection therewith.

**POSSESSION**    1d To retain possession of the collateral during the existence of this agreement and not to sell, exchange, assign, loan, deliver, lease, mortgage or otherwise dispose of same without the written consent of the Secured Party.

**LOCATION**    1e To keep the collateral at the location specified in the schedule and not to remove same (except in the usual course of business for temporary periods) without the prior written consent of the Secured Party.

**LIENS**    1f To keep the collateral free and clear of all liens, charges, encumbrances, taxes and assessments.

**TAXES**    1g To pay, when due, all taxes, assessments and license fees relating to the collateral.

**REPAIRS**    1h To keep the collateral, at Debtor's own cost and expense, in good repair and condition and not to misuse, abuse, waste or allow to deteriorate except for normal wear and tear and to make same available for inspection by the Secured Party at all reasonable times.

**INSURANCE**    1i To keep the collateral insured against loss by fire (including extended coverage), theft and other hazards as the Secured Party may require and to obtain collision insurance if applicable. Policies shall be in such form and amounts and with such companies as the Secured Party may designate. Policies shall be obtained from responsible insurors authorized to do business in this state. Certificates of insurance or policies, payable to the respective parties as their interest may appear, shall be deposited with the Secured Party who is authorized, but under no duty, to obtain such insurance upon failure of the Debtor to do so. Debtor shall give immediate written notice to the Secured Party and to insurors of loss or damage to the collateral and shall promptly file proofs of loss with insurors. Debtor hereby appoints the Secured Party the attorney for the Debtor in obtaining, adjusting and cancelling any such insurance and endorsing settlement drafts and hereby assigns to the Secured Party all sums which may become payable under such insurance, including return premiums and dividends, as additional security for the indebtedness.

**LOAN — USE OF PROCEEDS**

1j  If this agreement is security for a loan to be used to pay a part or all of the purchase price of the collateral; to use the proceeds of the loan to pay the purchase price, filing fees and insurance premiums. The Secured Party however, may pay the proceeds directly to the seller of the collateral.

**CHANGE OF ADDRESS**

1k  To immediately notify the Secured Party in writing of any change in or discontinuance of Debtor's place or places of business and/or residence.

**AFFIXED TO REALTY**

1l  That if the collateral has been attached to or is to be attached to real estate, a description of the real estate and the name and address of the record owner is set forth in the schedule herein ; if the said collateral is attached to real estate prior to the perfection of the security interest granted hereby, Debtor will on demand of the Secured Party furnish the latter with a disclaimer or disclaimers, signed by all persons having an interest in the real estate, of any interest in the collateral which is prior to Secured Party's interest.

## 2. GENERAL PROVISIONS:

**NOTES**

2a  Notes, if any, executed in connection with this agreement, are separate instruments and may be negotiated by Secured Party without releasing Debtor, the collateral, or any guarantor or co-maker. Debtor consents to any extension of time of payment. If there be more than one Debtor, guarantor or co-maker of this agreement or of notes secured hereby, the obligation of all shall be primary, joint and several.

**NON-WAIVER**

2b  Waiver of or acquiescence in any default by the Debtor, or failure of the Secured Party to insist upon strict performance by the Debtor of any warranties or agreements in this security agreement, shall not constitute a waiver of any subsequent or other default or failure.

**NOTICES**

2c  Notices to either party shall be in writing and shall be delivered personally or by mail addressed to the party at the address herein set forth or otherwise designated in writing.

**LAW APPLICABLE**

2d  The Uniform Commercial Code shall govern the rights, duties and remedies of the parties and any provisions herein declared invalid under any law shall not invalidate any other provision or this agreement.

**DEFAULT**

2e  The following shall constitute a default by Debtor:

**non-payment**

Failure to pay the principal or any installment of principal or of interest on the indebtedness or any notes when due.

**violation**

Failure by Debtor to comply with or perform any provision of this agreement.

**misrepresentation**

False or misleading representations or warranties made or given by Debtor in connection with this agreement.

**levy**

Subjection of the collateral to levy of execution or other judicial process.

**insolvency**

Commencement of any insolvency proceeding by or against the Debtor or of any guarantor of or surety for the Debtor's obligations.

**death**

Death of the Debtor or of any Guarantor of or surety for the Debtor's obligations.

**impairment of security**

Any reduction in the value of the collateral or any act of the Debtor which imperils the prospect of full performance or satisfaction of the Debtor's obligations herein.

**REMEDIES ON DEFAULT**

**acceleration**

2f  Upon any default of the Debtor and at the option of the Secured Party, the obligations secured by this agreement shall immediately become due and payable in full without notice or demand and the Secured Party shall have all the rights, remedies and privileges with respect to repossession, retention and sale of the collateral and disposition of the proceeds as are accorded to a Secured Party by the applicable sections of the Uniform Commercial Code respecting "Default", in effect as of the date of this Security Agreement.

**attorneys' fees etc.**

Upon any default, the Secured Party's reasonable attorneys' fees and the legal and other expenses for pursuing, searching for, receiving, taking, keeping, storing, advertising, and selling the collateral shall be chargeable to the Debtor.

**deficiency**

The Debtor shall remain liable for any deficiency resulting from a sale of the collateral and shall pay any such deficiency forthwith on demand.

**monies advanced**

If the Debtor shall default in the performance of any of the provisions of this agreement on the Debtor's part to be performed, Secured Party may perform same for the Debtor's account and any monies expended in so doing shall be chargeable with interest to the Debtor and added to the indebtedness secured hereby.

**seizure**

**assembling collateral**

**notice of sale**

In conjunction with, addition to or substitution for those rights, Secured Party, at his discretion, may: (1) enter upon Debtor's premises peaceably by Secured Party's own means or with legal process and take possession of the collateral, or render it unusable, or dispose of the collateral on the Debtor's premises and the Debtor agrees not to resist or interfere; (2) require Debtor to assemble the collateral and make it available to the Secured Party at a place to be designated by the Secured Party, reasonably convenient to both parties (Debtor agrees that the Secured Party's address as set forth above is a place reasonably convenient for such assembling) ; (3) unless the collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Secured Party will give Debtor reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or any other intended disposition thereof is to be made. The requirements of reasonable notice will be met if such notice is mailed, postage prepaid, to the address of the Debtor shown above, at least three days before the time of sale or disposition.

2g  Secured Party may assign this agreement and if assigned the assignee shall be entitled, upon notifying the Debtor, to performance of all of Debtor's obligations and agreements hereunder and the assignee shall be entitled to all of the rights and remedies of the Secured Party hereunder. Debtor will assert no claims or defenses Debtor may have against the Secured Party against the assignee.

**FINANCING STATEMENT**

2h  The Secured Party is hereby authorized to file a Financing Statement.

**CAPTIONS**

2i  The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this agreement nor the intent of any provision thereof.

Terms of a certain Contract of Sale dated July 10, 2013 by and between the parties is incorporated by reference.

The terms, warranties and agreements herein contained shall bind and inure to the benefit of the respective parties hereto, and their respective legal representatives, successors and assigns.

The gender and number used in this agreement are used as a reference term only and shall apply with the same effect whether the parties are of the masculine or feminine gender, corporate or other form, and the singular shall likewise include the plural.

This agreement may not be changed orally.    SEE RIDER ATTACHED HERETO AND MADE PART HEREOF

IN WITNESS WHEREOF, the Parties have respectively signed and sealed these presents the day and year first above written.

SID BOYS CORP.

By: _____
Christos Siderakis, President

518 METROPOLITAN AVE. CORP.

By: _____
John Fiotos, Secretary

SCHEDULE

Describe items of collateral, the address where each item will be located and describe any prior liens, etc., and the amounts due thereon. If items are crops or goods affixed or to be affixed to real estate describe the real estate and state the name and address of the owner of record thereof.

*Items*                                    *Location, etc.*

The chief place of business of the Debtor, if other than stated in this agreement, is:

## WAIVER BY LANDLORD AND/OR OTHERS

The undersigned, being the owner, mortgagee, landlord and/or lessor of the Debtor's premises, and knowing that the Secured Party relies hereon, does hereby waive, relinquish and release to the Secured Party or any holder of the security agreement all right of levy or distraint for rent and all other claims and demands of every kind which the undersigned has or may have against the collateral, this waiver to continue until termination of the security agreement.

WITNESS the hand and seal of the undersigned this          day of

--------------------------------------------------------------------------------------------------

--------------------------------------------------------------------------------------------------

**Security Agreement (Chattel Mortgage)**

Sid Boys Corp.

*to*

518 Metropolitan Ave. Corp.

*Dated,* September 19, 2013

## GUARANTEE

The undersigned guarantees prompt and full performance and payment according to the tenor of the within agreement, to the holder hereof, and, in the event of default, authorizes any holder hereof to proceed against the undersigned, for the full amount due including reasonable attorneys' fees, and hereby waives presentment, demand, protest, notice of protest, notice of dishonor and any and all other notices or demand of whatever character to which the undersigned might otherwise be entitled. The undersigned further consents to any extension granted by any holder and waives notice thereof. If more than one guarantor, obligation of each shall be joint and several.

WITNESS the hand and seal of the undersigned this          day of

--------------------------------------------------------------------------------(L.S.)

Residence--------------------------------------------------------------------------------

Business Address--------------------------------------------------------------------------

Firm Name--------------------------------------------------------------------------------

# RIDER TO SECURITY AGREEMENT
## DATED SEPTEMBER 19, 2013, BETWEEN SID BOYS CORP., AS DEBTOR, AND 518 METROPOLITAN AVE. CORP. , AS SECURED PARTY

1.     Subject to obtaining of the consents of any necessary prior secured parties, the Debtor may replace any of the collateral covered by this Security Agreement, provided that such replacement be fully paid for, or by subordinate lien, and further provided that within five (5) days of any such replacement, a supplemental security agreement be executed and delivered by the Debtor to the Secured Party, c/o its attorney, together with an appropriate resolution of the Board of Directors of the Debtor corporation, by certified mail, return receipt requested. The new chattels, fixtures and equipment shall be deemed additional collateral hereunder.

2.     The following shall constitute a default by the Debtor.

     (a)     Default in the payment of any Promissory Note (principal and interest) and such default continues beyond the grace period as provided in the Note.

     (b)     Default under any of the terms of this Security Agreement and such default continues beyond the grace period.

3.     This is a Purchase Money Security Agreement. This Security Agreement covers all instruments, documents, goods, inventory, equipment, chattel paper, contract rights, accounts, general intangibles and fixtures, all as defined by the Uniform Commercial Code, including all present or future personal property and fixtures of Debtor now existing or hereafter acquired and wherever located.

4.     It is further agreed that the Secured Party shall have the right to discount, sell, pledge, negotiate or otherwise dispose of any of the notes or note given hereunder without in any way prejudicing or affecting the security herein, and it is further expressly understood and agreed that should any of the notes given hereunder mature and remain unpaid, action may be brought and judgment be obtained and collected on such notes by any holder thereof without in any way or manner affecting or impairing this Security Agreement and without in any way altering, impairing or prejudicing the right of the Secured Party under the terms, covenants and conditions of this Security Agreement.

5.     If there should be a default in the payment of any of the installments due hereunder for ten (10) days resulting in a foreclosure of the lien of the within Security Agreement or the re-possession of the chattels, fixtures and equipment affected hereby, then the Debtor and/or its stockholders, officers and directors, if the Debtor should be a corporation, jointly and severally will not engage directly or indirectly in a similar business of any kind or nature within a radius of two (2) blocks in every direction of the premises herein described for a period of two (2) years

from the date of such foreclosure or re-possession.

6.     In the event of any damage or loss to the fixtures and equipment covered by this Security Agreement resulting from fire, which loss shall be covered by appropriate fire insurance, the proceeds received from any casualty company assuring such risk, shall, subject to the rights of prior secured parties, be held and retained in escrow by the attorney for the Secured Party, who shall apply same for repairing or replacing any such damaged or lost collateral. The substantial chattels and equipment shall be deemed covered by this Security Agreement. Any balance thereon remaining shall be paid to the Debtor. Nothing herein contained shall vary or modify the obligation of the Debtor to pay all notes and when they become due and payable. However, should such casualty result in a termination of the Lease for the premises wherein the collateral is located, then and in such event, such proceeds shall be applied by the said escrowee, subject to the rights or prior secured parties, to the payment of the then principal sums and interest due and owing under this Security Agreement, and the balance, if any, shall be paid to the Debtor. The Debtor and the Security Party agree to endorse any draft issued by such casualty company upon the occasion of the payment of such loss to the order of the attorney for the Secured Party so as to enable him to deposit the said draft for collection and to apply the funds as herein provided.

7.     Debtor shall have the privilege of paying the secured party herein in accordance to the $2,000,000.00 Note. It is further understood and agreed that in the event Debtor shall sell, assign or transfer its business, or in the event of any sale or transfer of fifty (50%) percent or more of the stock or ownership interest in the Debtor Corporation, then and in such event the Debtor shall be required to prepay the then existing Promissory Note as follows:

    (a)    If prior to September 19, 2016, the sum of One Hundred Thousand and 00/100 ($100,000.00) Dollars

    (b)    If prior to September 20, 2016 and September 19, 2019, the sum of Fifty Thousand and 00/100 ($50,000.00) Dollars

    The prepayment is not to be in inverse order in accordance to the Direct Reduction Schedule.

    Thereafter, no prepayment shall be required on a sale. Any sale shall be only to an assignee financially acceptable to the Holder of the Note and the new assignee or purchaser shall assume the indebtedness in writing.

8.     Notice of any default in the performance of any of the covenants of this Security Agreement, or in the payment of any of the Notes secured hereby shall be given to the herein named Debtor by certified mail, return receipt requested, to Christos Siderakis, 150-22 20th Avenue, Whitestone, New York 11357, and the Debtor, c/o Kordas & Marinis, 5-44 47th Road Long Island City, New York 11101, attention, Nicholas I. Kordas, Esq., or any party in interest shall have five (5) days from the mailing of such notice to cure any such default before the Secured Party shall have the right to assert any remedy, or to accelerate the payment of the Notes secured hereby. Nothing herein contained shall be deemed to grant to the party in actual possession of said premises any extension of time to perform any such covenant or to make any such payment.

**DEBTOR:**

SID BOYS CORP.

By: _____
Christos Siderakis

*Consented to as to Restrictive Covenant
in Paragraph #5 Above.*

_____

_____

_____

**SECURED PARTY:**

518 METROPOLITAN AVE. CORP.

By: _____
Frank Fiotos