UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x   Case No.: 21-42207-ess

IN RE:

CHAPTER 11

SID BOYS, CORP. d/b/a KELLOGG'S DINER,

Debtor.

------------------------------------------------------------x

# DEBTOR'S REPLY MEMORANDUM OF LAW TO CREDITOR'S OBJECTIONS TO DEBTOR'S CROSS-MOTION SEEKING AN ORDER DETERMINING THAT THE NON-RESIDENTIAL REAL PROPERTY LEASE IN THIS CASE NEED NOT BE ASSUMED OR REJECTED PURSUANT TO 11 U.S.C. §365(d)(4); AND THAT THE TIME TO ASSUME OR REJECT THE LEASE IS PURSUANT TO 11 U.S.C. §365(d)(2)

Sid Boys, Corp. d/b/a Kellogg's Diner, the Debtor and Debtor-In-Possession (hereinafter, the "Debtor"), by and through its attorney, Rachel L. Kaylie, Esq., respectfully submits this reply memorandum of law to the reply/objections made by Creditors 514 Fioto Property Corp. (hereinafter, the "Landlord") and 518 Metropolitan Avenue Corp. (hereinafter, "518 Metropolitan") [Dkt. No. 49] to the Cross-Motion made by Debtor seeking a determination that the Debtor's time to assume or reject the non-residential real property lease is part of the entire sales agreement package and is thus an executory contract, and the time to assume or reject is actually governed by 11 U.S.C. §365(d)(2), and not by 11 U.S.C. §365(d)(4). [Dkt. No. 46]. In further support of the Cross-Motion, the Debtor represents as follows:

# PRELIMINARY STATEMENT

1. The basis for the Landlord's and its affiliate, 518 Metropolitan's objections to the Debtor's Cross-Motion is based on their assertion that the promissory note alone is the executory contract and that the lease is a stand-alone lease, separate from the promissory note. However, this argument is flawed in that Debtor's Cross-Motion is based on the undisputed fact that both the promissory note, the lease, as well as a security agreement are all subparts of one greater executory contract, namely the Sale of Business Agreement.

2. As discussed at length in the Debtor's Cross-Motion, the diner was purchased by its then principal, Christos Siderakis, from Landlord and 518 Metropolitan, evidenced by a Sale of Business Agreement which also incorporated a Security Agreement, Promissory Note, Net Net Lease, and other related documents (hereinafter, collectively, "the Sales Documents"). See **Exhibit A** of the Cross-Motion.

3. The Landlord and 518 Metropolitan do not dispute that neither the Debtor nor the Landlord would have signed the Lease if not for the purchase of the entire business pursuant to the Sales Agreement. Thus, the signing of the Lease is part and parcel of the purchase of the business. The same is true for the signing of the promissory note. Neither party would have signed a promissory note if not for the sale of the entire business. Thus, the promissory note is also part and parcel of the purchase of the business under the Sale of Business Agreement. Neither the lease nor the promissory note can be pulled apart from the overriding executory contract that is the Sale of Business Agreement.

4. Therefore, Landlord's and 518 Metropolitan's statement, in paragraph 2, page 2, of their reply memorandum is misplaced. They state, "Debtor's only argument relies on its

unsupported assertion that a promissory note it gave in exchange for the Diner Business (and one that has been merged into the Judgment) is an executory contract."

5. However, the argument in the Cross-Motion is not that the promissory note itself is the controlling executory contract, but that the Sale of Business Agreement is the controlling executory contract, since both the promissory note and lease are parts of the greater agreement.

6. Therefore, the Landlord's and 518 Metropolitan's entire argument falls apart since it is based on the incorrect assumption that the promissory note controls rather than the overall Sale of Business Agreement.

7. Moreover, the Landlord and 518 Metropolitan spend much of their reply trying to malign the good faith efforts of Debtor to resolve the financial issues between the parties pre-petition. The way they discuss this issue makes it seem like the Debtor somehow misspent the PPP and Restaurant Revitalization Fund money, and failed to make honest attempts at negotiations with the Landlord to pay back rent. This is grossly misleading and an unfair attack on Debtor's intentions.

8. The money Debtor received from the PPP program and Restaurant Revitalization program was used exactly as it was intended to be used. As Debtor stated in the Cross-Motion, much of that money was used to keep the diner's employees working, which is exactly for what the money was meant. The ripple effect of widespread unemployment, particularly among restaurant and other hospitality workers, was devastating to the entire economy. These program funds were intended to minimize unemployment and the impact on the overall economy of the State of New York and the whole country. As a result, many landlords, both commercial and residential, did what they could to keep their tenants from being forced out of the homes and businesses. Unfortunately, this Landlord did not see it that way.

9. In fact, upon information and belief, the owners of 518 Metropolitan and 514 Fioto Property Corp. own several other properties throughout New York and were not, upon information and belief, as dependent on the rental income from the diner as their motion makes them out to be.

10. Indeed, one of the proposals Debtor made to the Landlord and 518 Metropolitan both prepetition and post-petition was to sell the Kellogg's Diner business along with the land so as to ensure the most profit from the sale. This would have yielded more money to both the Landlord and the Debtor as the sale of the diner business would supposedly be far more valuable with the accompanying sale of the land with the business. It was the Landlord who refused to consider this proposal.

11. Moreover, earlier on in this chapter 11 case, Debtor met with a business broker for the possible sale of the diner, as part of the overall plan to sell the diner, which is what the Debtor's principle had told the Court she had wanted to do at that time. However, when this business broker disclosed to the Debtor's principle that he has worked previously with the same Landlord, she suspected a potential conflict of interest. This is why she chose not to work with this business broker, and not because of some bad faith reason.

12. Finally, in the Landlord's reply memorandum of law to Debtor's Objections to the underlying motion, Landlord asserts that the Debtor does not dispute that it has failed in many ways to comply with the directives of this Court. That is also false, and Debtor certainly does dispute this.

13. As discussed in more detail in the Cross-Motion, Debtor has not yet filed the retention applications for the accountant and special counsel due to circumstances that were

beyond the control of both the Debtor and Debtor's counsel. And, as such, the Court understood these circumstances and extended Debtor's time to comply.

14. There has been nothing dilatory or sinister in the way Debtor has proceeded in this chapter 11 matter, and Debtor certainly disputes this alleged "fact." By granting this Cross-Motion, the Court would not be "rewarding" the Debtor in any way, and the Debtor certainly does not have a "habit of ignoring deadlines." This is a gross mischaracterization of how this chapter 11 case has proceeded.

## THE DEBTOR IS REQUIRED TO ASSUME OR REJECT THE LEASE PURSUANT TO 11 U.S.C. §365(d)(2), NOT 11 U.S.C. §365(d)(4)

15. As discussed in the original Cross-Motion, it is undisputed that the Net Net Lease Agreement, Security Agreement, and Promissory Note are all integral parts of the overall Sale of Business Agreement.

16. Furthermore, the Lease Agreement cross-references the other agreements, including a cross-default provision such that a default in the promissory note would be considered a default on the lease too, and vice versa. See "Article XXXIX Default" page 25 of the Net Net Lease Agreement, Exhibit 1 of the underlying motion.

17. The overarching Sale of Business Agreement even states that the Promissory Note, the Lease and the Security Agreement are attachments made a part thereof. See page 5, paragraph 18 of the Sale of Business Agreement, **Exhibit A**.

18. Therefore, it is clear and undisputed that the parties intended for this to be one integrated transaction. Neither party would have signed the Lease but for the sale of the business, including the business name, Kellogg's Diner, and the signing of the Promissory Note.

19. Given that the Lease and Promissory Note and Sale of Business Agreement (all signed on the same day) constitute a single transaction, Debtor should not be forced to assume or reject the Lease at this time.

20. Debtor again asserts that 11 U.S.C. §365(d)(2) is the applicable provision of the Bankruptcy Code as the Sale of Business Agreement is an executory contract and the Lease is only one part of the Sale of Business Agreement. In other words, the Lease is not a stand-alone document but is one part of an integrated agreement, the executory contract.

21. The Landlord and 518 Metropolitan assert that the case law cited in the Cross-Motion is distinguishable from the facts in this case because those facts dealt with franchise agreements and not sales of businesses. However, in this case especially, the two concepts are very similar, so much so, that for the purposes behind Section 362(d)(2), they are the same.

22. A franchise can be defined as "when the owner of a business grants a license to one or more parties for the purpose of conducting business using the same trademarks, **trade names**, trade dress, ... and other identifying aspects of the business." (emphasis added). FindLaw.com

23. One type of franchise relationship is "where the owner holds the **right to a name** or trademark ... **which is then sold** or licensed to franchisees..." (emphasis added). FindLaw.com.

24. In the Sale of Business Agreement between the Debtor and Landlord/518 Metropolitan, in paragraph 1, the parties mutually agreed, in relevant part, as follows:

> "On the terms and subject to the conditions herein set forth, the Seller will sell and the Purchaser will purchase, ..., the said chattels and equipment presently at the premises above set forth, the right to use the telephone number of the said

business (718-782-4502), and the name "Kelloggs Diner" so far as the Seller can confer such right, …"

25. In this particular situation, as in the cases of the franchise agreements, the Sale of Business Agreement, which consists of the sum of its part, namely, the lease, the promissory note and the security agreement, specifically has the seller selling the purchaser not only the business itself, but also the name of the diner, Kelloggs Diner, and also the right to use the telephone number for the business.

26. Furthermore, as discussed in greater detail in the underlying Cross-Motion, the name of Kelloggs Diner has significant value since the diner itself has been around for almost 100 years, and is currently on the New York City historic business registry, thanks to the efforts of the Debtor's owner, Irene Siderakis.

27. The facts here are almost indistinguishable from those of a typical franchise agreement. As such, there is a strong argument that the case law holding that leases that are part of a franchise agreement are considered integral to an executory contract and thus subject to Section 362(d)(2), and not 362(d)(4) should apply to this particular chapter 11 matter as well.

28. As stated before, the Bankruptcy Court for the Eastern District of New York, in *In Re FPSDA I, LLC*, 450 B.R. 392, has already decided this issue of when there is an integrated transaction, such as a franchise agreement and lease, or in this matter a sale of a business agreement and the accompanying lease, the entire transaction should be viewed as one controlling executory contract. Thus, the timing provisions to assume or reject a lease is controlled by the deadlines imposed by 11 U.S.C. §365(d)(2).

29. Again, since it is not disputed that the Promissory Note and Lease are parts of an integrated transaction, i.e., the Sale of Business Agreement, then the transaction should be considered an executory contract subject to 11 U.S.C. §365(d)(2).

30. Therefore, the Landlord's assertion (p. 13 paragraph 31-32) that there is no second and valuable executory contract here, is simply not so. The entire Sale of Business Agreement is the overarching executory contract and thus subject to the provisions of Section 362(d)(2) and not 362(d)(4).

31. Therefore, considering the above, Debtor's cross-motion should be granted and the Landlord's motion to convert this case to a chapter 7 should be denied since it is incorrectly premised on the expiration of time to assume or reject the lease under 11 U.S.C. §365(d)(4) rather than the correct time frame provided under 11 U.S.C. §365(d)(2), which has not yet expired.

## CAUSE DOES NOT EXIST TO CONVERT TO A CHAPTER 7

32. In addition to the above, as discussed in more detail in the Cross-Motion, the underlying motion by the Landlord also alleges that there are other reasons here to convert this matter to a chapter 7, namely continuing loss to or diminution of the estate, the absence of a reasonable likelihood of rehabilitation, and Debtor's alleged failures to follow directives of the Court.

33. Again, the allegation that the Debtor is unable to effectuate a plan is based on the false premise that the Lease has already been deemed rejected, and that it would be futile for a debtor to confirm a plan if it loses its operating premises.

34. However, since it is not accurate that the Lease has already been deemed rejected, the business does not continue to diminish and lose money.