```
 1                  UNITED STATES BANKRUPTCY COURT
                     EASTERN DISTRICT OF NEW YORK
 2     --------------------------------------X
       In Re the Matter of:             :  21-42207  (ESS)
 3                                       :
                    SID BOYS CORP.,      :  Brooklyn, NY
 4                                       :  November 10, 2022
                               Debtor.   :
 5     --------------------------------------X

 6            BEFORE THE HONORABLE ELIZABETH S. STONG
                  UNITED STATES BANKRUPTCY JUDGE
 7

 8     APPEARANCES:

 9     For the Debtor:          MORGAN & BLEY, LTD.
                                BY:  ALANNA G. MORGAN, ESQ.
10                                   KEEVAN D. MORGAN, ESQ.
                                900 West Jackson Blvd, Suite 4E
11                              Chicago, IL 60607

12                              LAW OFFICE OF RACHEL KAYLIE, P.C.
                                BY:  RACHEL LEA KAYLIE, ESQ.
13                              1702 Avenue Z, Suite 205
                                Brooklyn, NY 11235
14
       For the U.S. Trustee:    AMER ABBAS LATIF, ESQ.
15                              U.S. Federal Office Building
                                201 Varick Street, Suite 1006
16                              New York, New York 10014

17     For 514 Fioto and        COLLEN & DYKMAN, LLP
       518 Metropolitan:        BY:  THOMAS R. SLOME
18                              100 Quentin Roosevelt Blvd.
                                Garden City, NY 11530
19
                                CASCIONE, PURCIGLIOTTI, GALLOZZI,
20                              P.C.
                                BY:  THOMAS G. CASCIONE
21                              274 White Plains Road, Suite 6
                                Eastchester, NY 10709
22
       For Marcum:              RICHARD HOWARD GOTTESMAN
23                              300 Cadman Plaza West, 12th Floor
                                Brooklyn, NY 11201
24

25
```

```
1   APPEARANCES
    CONTINUED:              IRENE SIDERAKIS
2

3   Court Transcriber:      ADL Transcription Services, Inc.
                            24 Crossway Drive
4                           Deer Park, New York 11729
                            (631) 277-7900
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  Proceedings recorded by electronic sound recording,

25  transcript produced by transcription service.
```

1          P R O C E E D I N G S

2          **(**Poor quality digital recording**)**

3          THE CLERK:  Calling the matters of Sid Boys Corp.,

4   21-42207, numbers one through four on the calendar.

5   Connected is Ms. Kaylie, Ms. Morgan, Mr. Morgan, Mr. Slome,

6   Mr. Gottesman, Ms. Latif, Ms. Siderakis and Mr. Cascione.

7   I'm just gonna remind the parties that although it's a video

8   conference, the official record for the Court is the audio.

9   So, if you could please state your name each time before

10  speaking.  Thank you.

11         THE COURT:  Thank you.  Good afternoon, everyone.

12  This is Judge Stong.  Let's get your appearances on the

13  record please.  Ms. Kaylie for the debtor?

14         MS. KAYLIE:  Good afternoon, Your Honor.  Rachel

15  Kaylie, representing the debtor.

16         THE COURT:  Thank you.  Ms. Morgan for the debtor?

17         MS. MORGAN:  Good afternoon, Your Honor.  Ms.

18  Morgan.  We do have a motion to withdraw so we are appearing

19  on behalf of the firm.

20         THE COURT:  All right.  And for the moment you're

21  still --

22         MS. MORGAN:  Correct, yes.

23         THE COURT:  Counsel for the debtor, but also on

24  your motion, yes, I saw that.  Mr. Morgan, let's get your

25  appearance on the record please.

1        MR. MORGAN:  Good afternoon, Your Honor.  Keevan D.

2   Morgan, also for the debtor and on the motion to dismiss and

3   (inaudible).

4        THE COURT:  All right.  Thank you.  Mr. Slome, 514

5   Fioto, 518 Metropolitan?

6        MR. SLOME:  Yes, Your Honor.  Thomas Slome, Cullen

7   and Dykman, (inaudible) 514 Fioto Properties Corp. as

8   landlord and (inaudible) Metropolitan Avenue Corp. as a

9   judgment creditor of the debtor.

10        THE COURT:  Okay.

11        MR. SLOME:  (Inaudible) judgment.

12        THE COURT:  All right.  Thank you.  Mr. Gottesman,

13   Marcum?

14        MR. GOTTESMAN:  Good afternoon, Your Honor.

15   Richard Gottesman, (inaudible), on behalf of Marcum, LLP.

16        THE COURT:  Thank you.  Ms. Siderakis, the debtor's

17   principal?

18        MS. SIDERAKIS:  Irene Siderakis, the debtor.

19        THE COURT:  Thank you.  And Mr. Cascione, principal

20   of 514 Fioto, is that correct?

21        MR. CASCIONE:  No, Your Honor, I'm the State Court

22   Counsel, it's Thomas Cascione, Cascione, Purcigliotti and

23   Galluzzi, for 514 Fioto and 518 Metropolitan.

24        THE COURT:  Apologies.  And that's right in front

25   of me, I should have known that.  And, Ms. Latif for the

1  Office of the United States Trustee?

2          MS. LATIF:  Good morning, Your Honor.  Amer A.

3  Latif, on behalf of the - or good afternoon, Your Honor.

4  Amer Latif, on behalf of the Office of the United States

5  Trustee.  Thank you, Your Honor.

6          THE COURT:  Thank you, everyone.  We have a number

7  of matters on the calendar, the case management conference,

8  the motion of the landlord and judgment creditor to convert

9  and addressing the lease and the question of whether the

10  time to assume has passed, the cross motion in substance,

11  also opposition to that relief of the debtor and the motion

12  to withdraw very recently filed from Morgan Bley firm.

13          I'd like to begin with status and hear from Ms.

14  Kaylie as debtor's Counsel who does not have a pending

15  motion to withdraw as Counsel.  I think that's the right

16  place to start.  Ms. Kaylie?

17          MS. KAYLIE:  Good afternoon, Your Honor.  Rachel

18  Kaylie, representing the debtor.  Your Honor, it came to my

19  attention (inaudible).  It came to my attention a couple of

20  days ago that the landlord (inaudible).

21          THE COURT:  Ms. Kaylie, Ms. Kaylie I'm interrupting

22  you which is discourteous and I apologize.  This hearing

23  will go better if we take it in steps as I direct.  That is

24  more directive than I like to be, but that is how we're

25  going to proceed.  I think it will help us make a clearer

1    record.  There are many matters that need to be considered.

2         We're starting with case management.  You're

3    debtor's Counsel.  I see that we have a motion to withdraw,

4    I see that we have our September, 2022 monthly operating

5    report on file, that's good to see.  The confirmation

6    deadline here has been extended, thank you, to December

7    30th.  I would like to hear you on status of this Chapter 11

8    case and case management.

9         There will be time at the appropriate time to

10   address not only the other matters on the calendar, but also

11   everything else that the parties would like to address, but

12   we're going to do it in an orderly way.  It will be a better

13   record for everyone and much more helpful to the Court.

14   Staying with status how's it going?

15        MS. KAYLIE:  Yes, Your Honor.  Your Honor,

16   (inaudible) is that I recently found out that there were

17   some settlement discussions between the Morgan's and Tom

18   Slome and I spoke to my client about it today.  I think that

19   there's something that (inaudible) settlement that we can

20   really work with and I spoke to my client today about the

21   source of funding to pay out this proposed settlement.

22        She has learned that there very recently

23   (inaudible) funding that are becoming available to her very,

24   very, very soon.  (Inaudible), but it turns out that it's

25   actually significantly closer.  So that's kind of where we

1  are in terms of settlement.

2            THE COURT:  Okay.

3            MS. KAYLIE:  It's my understanding that --

4            THE COURT:  That's encouraging.

5            MS. KAYLIE:  I'm sorry?

6            THE COURT:  That's encouraging.  I'm glad to hear

7  it.

8            MS. KAYLIE:  That's why I gave a little more

9  background than probably necessary so I apologize for that.

10           THE COURT:  All right.

11           MS. KAYLIE:  But when I was leading to was this.

12 So I did have extensive conversations with both my client

13 and her regular accountant, not Marcum, but her (inaudible)

14 accountant regarding the source of the funding and if she

15 could possibly pay (inaudible).

16           We were on the phone for close to two hours and it

17 was not encouraging so I was (inaudible) so that I can

18 explain to the Court that I think the possible terms of the

19 settlement are significantly closer than we had been before.

20 So --

21           THE COURT:  All right.

22           MS. KAYLIE:  I did want the Court to be aware of

23 that.

24           THE COURT:  This is good news.  What I see on the

25 calendar today includes the request of the - is it Morgan

1  Bley or Bley Morgan?  I'm so - I just think of it as the

2  Morgan firm, you're the Morgan firm to me, Ms. Morgan, Mr.

3  Morgan, Morgan and Bley.  Do you continue to seek to

4  withdraw as Counsel or would you be requesting that that be

5  deferred perhaps?  Ms. Morgan, Mr. Morgan?

6            MR. MORGAN:  Judge, (inaudible) withdraw because

7  we've been terminated (inaudible).

8            THE COURT:  Okay.  So you would continue to press

9  to be relieved as Counsel and that motion which was made

10  just a couple of days ago, but it's on the calendar today.

11  We did that just to have everything present.  All right.

12  That's helpful to know.

13            Ms. Kaylie, is that consistent with your

14  understanding of the debtor's intention?

15            MS. KAYLIE:  That is my understanding --

16            THE COURT:  Okay.

17            MS. KAYLIE:  That Ms. Siderakis chose to send them

18  an e-mail terminating their services.

19            THE COURT:  Okay.  All right.  Well, we'll get

20  there.  I have a concern about notice.  We'll probably have

21  another fairly soon.  I'll explain my thinking on what we're

22  going to try to accomplish today and next and it will

23  include an opportunity to hear very soon if not decisively

24  today that motion.  Staying with status I'd like to hear

25  from the Office of the United States Trustee.

1          Ms. Latif?  Ms. Latif, anything to add staying with
2     case management and status?  Ms. Jackson?
3          THE CLERK:  Ms. Latif?
4          THE COURT:  Ms. Latif, you are on double mute.
5          THE CLERK:  Judge, I'll e-mail her.
6          THE COURT:  All right.  We'll follow up.  Mr.
7     Slome, anything to add on status?
8          MR. SLOME:  (Inaudible)
9          THE COURT:  Is news to you?
10          MR. SLOME:  (Inaudible).
11          THE COURT:  Okay.
12          MR. SLOME:  (Inaudible) and so I have to just be
13     honest with you, Judge I have very little sense that
14     (inaudible).
15          THE COURT:  Okay.
16          MR. SLOME:  (Inaudible) after you decided, reserve
17     decision or whatever you decide to do, Judge we can talk,
18     but I'm just (inaudible) --
19          THE COURT:  All right.
20          MR. SLOME:  (Inaudible) I'm sorry.
21          THE COURT:  All right.  Let's come back to Ms.
22     Kaylie.  I understood you to say that the Morgan's had been
23     speaking with Mr. Slome, but the Morgan's disavow that and
24     so does Mr. Slome.  Did I misunderstand or were you perhaps
25     misinformed?

1      MS. KAYLIE:  Well, Your Honor I (inaudible) October

2  26th (inaudible) Mr. Morgan and Ms. Morgan.

3      THE COURT:  Well, that's two weeks ago so that

4  doesn't really have a lot to do with today.

5      MS. KAYLIE:  Well, Your Honor if I may, I was just

6  provided this today which is why I had such a lengthy

7  conversation with my client and her accountant --

8      THE COURT:  Okay.

9      MS. KAYLIE:  About the terms of this proposed

10  settlement which Mr. Slome proposed (inaudible) it wasn't

11  the other way around.

12      THE COURT:  All right.

13      MS. KAYLIE:  So I'm not really sure why Mr. Slome

14  was so surprised --

15      THE COURT:  Ms. Kaylie, it was two weeks ago.  You

16  gave a different impression, you described this in substance

17  as late breaking news.  That communication if it was October

18  --

19      MS. KAYLIE:  (Inaudible)

20      THE COURT:  Ms. Kaylie, please let me finish.  I

21  would remind you of your obligation to have candor to the

22  Court and characterizing an e-mail that you may have

23  received today, but that was sent on October 26th as in

24  substance a very recent development I would not view as

25  accurate.  Let's hear from Ms. Latif as to status.  Thank

1  you.

2          MS. KAYLIE:  (Inaudible).

3          THE COURT:  I need to hear from Ms. Latif now, Ms.

4  Kaylie.  This is a hearing, this is not a meeting or a free

5  for all.  Ms. Latif, let me hear from you staying with

6  status.  Ms. Latif, you're on mute.  We can see you, but we

7  can't hear you.

8          MS. LATIF:  Can you hear me now, Judge?

9          THE COURT:  Yes, yes.  Thank you.

10          MS. LATIF:  All right.  Thank you.  My apologies

11  for that.  Good morning - good afternoon again.  This is

12  Amer Latif on behalf of the Office of the United States

13  Trustee.  Your Honor, for the status the monthly operating

14  reports to date have been filed, we have nothing else to

15  report on status at this time.

16          If Your Honor would like our opinion our position

17  on the motion to withdraw we do not have any objection to

18  that.  I just wanted to add that from our office's

19  perspective.

20          THE COURT:  All right.

21          MS. LATIF:  Thank you, Your Honor.

22          THE COURT:  All right.  And it does appear that

23  there's no opposition or change of heart.  Heart's probably

24  the wrong word, I'm sorry.  Change of position from the

25  debtor.  Ms. Kaylie, stay with my question please.  Has the

1  debtor changed its position with respect to its termination

2  of the Morgan Bley firm to your knowledge?

3           MS. KAYLIE:  Not to my knowledge.

4           THE COURT:  Okay.  All right.  So administratively

5  I think this case seems to be in pretty good shape.  The

6  monthly operating reports are up to date, current.  I don't

7  think there's any question as to lapsing of insurance.

8  There's been a termination of one of the firms representing

9  the debtor.  It's never a comfortable or a good thing.  No

10 lawyer ever wants to make that motion, but we are where we

11 are.  It's probably the right thing to consider that next.

12          Let's -- is there anything to add to the written

13 record that you've made, Ms. Morgan or Mr. Morgan?  Ms.

14 Morgan, you can go first.  Mr. Morgan, you can go because I

15 see you're unmuted.

16          MR. MORGAN:  Judge, --

17          THE COURT:  Yes?

18          MR. MORGAN:  (Inaudible) and have been terminated

19 and that we cannot represent the debtor.  And also it's

20 uncomfortable in that we would have (inaudible).  The way I

21 see it communication with the debtor (inaudible) the past

22 thirty days of history.  (Inaudible).

23          THE COURT:  All right.  All right.  Ms. Morgan,

24 anything to add?

25          MS. MORGAN:  (Inaudible), Your Honor that I do know

1    that the motion was made on short notice which the motion

2    recognizes too given the debtor's desire to terminate us,

3    you know, absent any objections of anyone here since we

4    already have this on the schedule, but obviously in your

5    discretion however you want procedurally to continue works

6    for us.

7           THE COURT:  All right.  Who else would like to be

8    heard on the motion to withdraw as debtor's Counsel?

9    There's no response.

10          Before the Court is a motion to withdraw as

11   debtor's Counsel.  It does seem that there's a good basis

12   established in that debtor's - by the debtor's principal has

13   indicated that Counsel is terminated.  They no longer - it

14   no longer wishes to be represented by the firm.

15          A lawyer can't be a lawyer to a client when the

16   client has terminated them and just to read into the record

17   the document which is attached and it's attached to an

18   affidavit so it's of evidentiary quality.  This is to notify

19   you that I hereby terminate your representation of Sid Boys

20   Corp. effective immediately in the bankruptcy matter

21   involving Sid Boys Corp.  Please ensure any and all records

22   and documentation are properly forwarded to Rachel Kaylie

23   who will continue represent - to represent Sid Boys Corp. in

24   the bankruptcy case.  Accordingly, cease any and all

25   communication and/or contact with opposing Counsel

1    representing the landlords.  Sincerely, Irene Siderakis, Sid

2    Boys Corp.

3          I don't think I need to go farther than that.

4    There's been no indication by continuing Counsel for the

5    debtor that there's been any change or misunderstanding.

6          So the motion was filed on October 8th after 5:00

7    p.m.  There's a question about the adequacy of notice

8    because it is quite short.  It is of course appropriate

9    promptly to bring this to the Court's attention and to the

10   parties attention.

11         And we note though that the -- some of the

12   information is probably not as helpful as it could be,

13   there's a typo in the website describing the Court, we're

14   not NYCB, we're NYEB as a small thing, but if we're relying

15   - if you've got less than forty-hours of notice I - I - I

16   wonder if that's good enough.  ECF notice provided I guess

17   by operation of the filing to Mr. Slome and the U.S. Trustee

18   by mail if notice period is not shortened.  What was done if

19   anything for that notice?  Nothing yet, would that be the

20   answer?

21         MS. MORGAN:  No, Your Honor because there would be

22   no way for the mail to have arrived in time for them --

23         THE COURT:  Right, I get that.

24         MS. MORGAN:  To see it.  I didn't wanna confuse

25   anyone by putting in a notice date that then would have

1  passed by the time they received it so of course we could

2  provide the notice of the order granting the withdrawal to

3  everyone, but it didn't (inaudible) period is not shortened

4  then I just wanted to account for all circumstances.

5            THE COURT:  All right.

6            MR. MORGAN:  Your Honor, one more thing?

7            THE COURT:  Yes, of course, Mr. Morgan.

8            MR. MORGAN:  Your Honor, this isn't the case where

9  the debtor has to go look for Counsel.  The Counsel

10 (inaudible) still representing the debtor so (inaudible) not

11 even gonna be any time (inaudible) bring her  up to speed so

12 that's the circumstances for the motion today.

13            THE COURT:  Okay.  Because we do have -- would

14 anyone else like to be heard on the motion to withdraw?

15 There's no response.  Before the Court is the motion to

16 withdraw the - one of the attorneys representing this

17 debtor, the Morgan Bley firm.  Service was - is - is - is -

18 raises a number of issues including that it provides less

19 than even from the moment of filing less than forty-eight

20 hours of notice and the direction to file an objection

21 actually is incorrect and misidentifies the Court's website.

22            At the same time I appreciate the very important

23 professional issues that are the source of the motion.  A

24 lawyer cannot be a lawyer to a client that has terminated

25 them so I think the best path forward is as follows.  I'm

1    gonna grant the motion and ask you to settle a proposed

2    order relieving you as Counsel on seven days' notice on all

3    the parties that are entitled to notice, but that way the

4    motion is granted.  We - I'll note the absence of

5    opposition, but that way we also have notice.

6         If there's any other piece of the picture that

7    needs to be seen there will be that opportunity because what

8    that means is that you would be serving on the appropriate

9    parties, any party entitled to notice and I guess filing

10   with the Court a notice of proposed order relieving you as

11   Counsel with objections to be filed seven days from the date

12   that you make that notice and you need to - I guess I'll ask

13   you to serve that by overnight mail so the seven days would

14   be from that service and we can proceed that way.

15        We are fortunate to have actually not just Counsel,

16   but the Counsel that's been in the case from the outset able

17   to continue.  Mr. Morgan's point is well taken.  It would be

18   a very different situation indeed if we were left with an

19   entity with no Counsel because that just doesn't work.  So

20   granted as reflected in the record.  Settle a proposed order

21   on seven days' notice to all parties entitled to notice as

22   reflected in the record.  All right.

23        I thank you for your service in the case.  I - I -

24   I suppose you are welcome to stay, this is a public

25   proceeding.  You are free to go.  Your motion is granted,

the entry of the order is what relieves you formally, but
I'll leave that to your best professional judgment.  You may
wish to stay.

Sometimes it doesn't come up very often thankfully
as I'll say it again, it's - nobody likes this situation,
nobody.  This is not comfortable for anyone, not even for
the Court.  Maybe not especially for the Court, but that is
the disposition.

I'm gonna explain now how we're going to proceed
with the rest of the calendar.  We have two motions that
speak to each other in effect and I want to hear argument
today on that portion of the landlord's judgment creditor's
motion, landlord's motions for this part of the relief
seeking determination that the time - that the lease should
be deemed rejected and for other relief, but I'm focusing on
the deemed rejected component of the relief.  I think you
number it roman numeral I and I will be deferring for today
the argument on the motion to convert which to this case a
case under Chapter 7.

So, Mr. Slome I had hoped to have this in person,
that's why we scheduled this that way, but I'm happy to hear
you on Zoom and for the sake of a clear record we moved this
- we received and paid close attention to the request of the
debtor when this was an in person hearing to adjourn it
because among other reasons the debtor's principal had - has

1    medical concerns about appearing in person and it was in

2    order to accommodate that that we moved the entire hearing

3    to a virtual hearing so that's how we got to where we are.

4         We met the needs identified in that motion - excuse

5    me, in that request, but also were able to respect the needs

6    identified in the motion to the motion to deem the lease

7    rejected by continuing this hearing, but in this remote

8    posture today.

9         I'd be happy to take a very short break if that's

10   necessary for anyone, otherwise I'm prepared to hear your

11   argument.  Would anyone like to request that we have a five

12   minute break before we hear Mr. Slome and then, Ms. Kaylie

13   I'll hear you on opposition and also on your cross motion.

14   You good to start?  It seems like yes.  Mr. Slome, over to

15   you.  Please proceed.

16        MR. SLOME:  For the record, Thomas Slome, Cullen

17   and Dykman for 514 Fioto Property Corp., that is known as

18   the landlord and 518 Metropolitan Avenue Corp., judgment

19   creditor.  I'll stick to an issue of the lease rejection as

20   Your Honor instructed.  I'm just gonna give one minute of

21   background for context and I'm gonna do my very best to be

22   (inaudible) as possible here, but I think it's just good to

23   have a little bit of context.

24        THE COURT:  Take the time you need and address the

25   things you think are important.  I'll say that to all

1    Counsel who are speaking.  Back to you.

2          MR. SLOME:   Thank you, Judge.  So pre-petition we

3    all know that the debtor had to go to Florida, the Covid

4    situation (inaudible) bankruptcy they had (inaudible)

5    current on the last - on the promissory note which was given

6    to the seller back in 2013.  There are negotiations, I am

7    not gonna cover them, but, you know, obviously the debtor

8    (inaudible), a settlement was not reached, the judgment

9    creditor filed a motion for summary judgment of our

10   complaint on the promissory note so (inaudible), they were

11   rejected by the Court and the (inaudible).

12         However, a judgment in August of 2021 a few days or

13   a week or so maybe or the day it was filed (inaudible)

14   Chapter 11.  At the time the (inaudible) was scheduled.  I

15   don't think there's any dispute (inaudible), now the debtor

16   had to (inaudible) judgment instead of, you know, a

17   promissory note.

18         Post-petition I don't think anyone is gonna dispute

19   that there are lots of gaps and errors in various schedules

20   and statement of financial affairs.  (Inaudible) took place,

21   I think there was (inaudible).  I did not ask any questions

22   about the financials, but we ran out of time and we

23   adjourned so that I could question the debtor.

24         At that point I discussed (inaudible) with Ms.

25   Kaylie.  Ms. Kaylie ensured me that the debtor was gonna

1  sell the diner and at that point I don't know whether she

2  said it or I said it, but (inaudible), the diner is gonna be

3  sold as opposed to a reorganization, the financials took,

4  you know, quite some time.

5        Basically nothing happened for six months

6  (inaudible) and I had brought to the attention of - well, I

7  asked Your Honor that nothing is happening, (inaudible) and

8  Your Honor on February 17th, 2022 directed that the debtor

9  file its bankrupt motion papers by March 10th.  (Inaudible)

10  and March 21st (inaudible) conference.  Ms. Kaylie indicated

11  that the debtor (inaudible) whether it was to reorganize or

12  try to sell the diner without a broker.  (Inaudible) March

13  25th was the deadline (inaudible) after the petition date.

14        Normally it's a hundred and twenty, but because of

15  the (inaudible) two hundred and ten days (inaudible) on

16  March 25th.

17        (Inaudible) asking that the debtor surrender the

18  premises, (inaudible) rejection of the lease (inaudible)

19  surrender the premises.  The debtor was unamicable so on

20  April 11th I filed this motion to convert (inaudible)

21  because the lease was rejected.  We had some status

22  conferences and Your Honor directed us to mediation and

23  spent maybe a month, month and a half around there

24  (inaudible) in mediation and unfortunately it was

25  unsuccessful.

1        (Inaudible) Morgan firm and Marcum (inaudible)

2   proposed one hundred percent plan which of course is good to

3   hear as a creditor, but --

4        THE COURT:  It's good to hear when you're a Judge

5   too by the way.

6        MR. SLOME:  I understand.

7        THE COURT:  And I suspect debtors like proposing

8   them as well.  Back to you.  I'm sorry, I couldn't resist.

9   That would be broadly speaking a fabulous result.  It was a

10  good development back when it occurred.  Unfortunately a lot

11  of time has passed.  Back to you.

12       MR. SLOME:  (Inaudible) hundred percent plan and

13  (inaudible) didn't have any handle on the finances because

14  of (inaudible), the schedules and the monthly operating

15  reports.  It just didn't add up, you know, and (inaudible)

16  somehow the debtor could pay back the debt and (inaudible)

17  another half a million dollars of debt (inaudible).

18  (Inaudible) October and there were Covid issues, (inaudible)

19  vacations, etc. so it took a while, but that Counsel and the

20  Marcum (inaudible) all of the schedules (inaudible)

21  operating reports.

22       (Inaudible) wasn't aware of it there's one line

23  that says (inaudible) like that you have to file a list of

24  (inaudible) that must (inaudible) that shows sixty-seven

25  line items just (inaudible) that were amended (inaudible)

1  monthly operating reports were huge.  (Inaudible) and I

2  don't think (inaudible), but if not done which is true and

3  Ms. Kaylie said it is that if there's enough money put into

4  the company, basically a capital contribution that one could

5  then have enough money to make the payments that were in the

6  plan.  (Inaudible) that we would like to, you know,

7  (inaudible) or coming close or (inaudible) source of the

8  money because again, Your Honor we've been through sixteen

9  months and I hate to say it, but the old talk is cheap just

10 comes to my mind and (inaudible).

11       THE COURT:  I'm sorry, things like what just come

12 to your mind?  I wanted to be sure.

13       MR. SLOME:  Talk is cheap.  Ms. Kaylie just said

14 that - sort of implied that the debtor might be (inaudible)

15 come up with the money to meet our demand.  I just

16 (inaudible) and it's just because again it's my client and

17 the debtor (inaudible).  But again, (inaudible) no matter

18 what happens, Your Honor, but we are not (inaudible)

19 anything unless it's real.

20       Frankly, as I sit here today it cannot (inaudible)

21 based on the post-petition (inaudible).  I think I'm

22 digressing.  (Inaudible) sort of a conference of where we're

23 at.

24       At the last status conference both sides seemed to

25 have (inaudible) it's better to get this kind of (inaudible)

1  out of the way (inaudible) the next couple of months

2  fighting over (inaudible).  I think that motion is fairly

3  straightforward.  For a (inaudible) says (inaudible) reject

4  the lease or it (inaudible) surrender is required.  That's

5  straightforward.

6      The debtors, however, opposes that motion.  They're

7  saying that - the debtor says that the time should be

8  (inaudible) reject the lease.  (Inaudible) and I have to

9  (inaudible) to respond to it.

10      (Inaudible) other contracts back in 2013 when the

11  (inaudible) property and so there were these other contracts

12  which identify - which the debtor identifies them with the

13  promissory note they had given which is now a judgment and

14  (inaudible).  If you look at it it's Exhibit A to the

15  opposition.  (Inaudible) and I cannot find that (inaudible)

16  2013 (inaudible) obligation on either party (inaudible).

17      So now (inaudible) I know of right now is the

18  lease.  They say because (inaudible) transaction and

19  (inaudible) the purchase of the diner (inaudible) I agree

20  with.  It turns out she had (inaudible) contract and

21  (inaudible).  But now fast forward in the matter of two

22  years they say because of that the time to (inaudible)

23  reject the lease should be the time that they have to

24  (inaudible) the sale agreement and a promissory note.

25      (Inaudible) problems with that theory.  The first

1    one and (inaudible) use it as background is (inaudible)

2    Bankruptcy Code.  (Inaudible) mischaracterizes (inaudible)

3    anything like that, (inaudible) other than a lease

4    (inaudible).  And the Code flatly says (inaudible) ten days.

5    That should be the end of it, but they come up with some

6    case law that I think (inaudible) in a number of respects.

7         First of all, the first case as mentioned which I'm

8    gonna talk about in a second were all (inaudible) or

9    earlier.  (Inaudible) motion which was the Court has to

10   (inaudible) and the Court has (inaudible) required to

11   override the mandates in the Code and I know Your Honor is

12   well aware of that.  That was established by (inaudible)

13   cited in her papers (inaudible) at page 421 that you can't

14   use the equitable powers (inaudible) to override the

15   mandates of the Code.

16        THE COURT:  Mr. Slome, I have your - I have your

17   filings in front of me and there are -- I just wanna be sure

18   I'm looking at the same place that you're describing.  Could

19   you help me with the - with the reference?  I'm thinking

20   maybe this is pages seven and eight, footnotes six and

21   seven.

22        MR. SLOME:  (Inaudible).

23        THE COURT:  I just wanna follow along as best I

24   can.

25        MR. SLOME:  I apologize, (inaudible) --

1      THE COURT:  The (inaudible), okay.  I'm sorry.  I'm

2   in your motion.

3      MR. SLOME:  Page four --

4      THE COURT:  Okay.

5      MR. SLOME:  Footnote five.

6      THE COURT:  All right.  All right.  Back to you.

7      MR. SLOME:  (Inaudible) sort of seems that way to

8   me.  So I just wanna point out that (inaudible) better

9   relies on are the (inaudible) and I'll talk about that in a

10  second, but (inaudible) came out.

11      (Inaudible) completely distinguishable (inaudible)

12  in the context of a lot of facts (inaudible) reasoning would

13  come out that (inaudible).  So there are (inaudible)

14  decisions which (inaudible) Circuit case which doesn't have

15  to be (inaudible), but it's interesting and the context

16  there there's two (inaudible) contracts in the Seventh

17  Circuit decision.

18      However, none of those contracts (inaudible)

19  contract according to that and that (inaudible).  Okay.  I

20  get it.  I think what this Court (inaudible) thinking about

21  and (inaudible) thinking about is (inaudible) gonna have to

22  be (inaudible) by confirmation.  (Inaudible) to the equity

23  (inaudible) situations (inaudible) at the later confirmation

24  deadline as well.  And in fact, (inaudible) Bankruptcy Court

25  decisions (inaudible) of the parties and (inaudible).  We

1  can't have an agreement without (inaudible) agreement and

2  (inaudible) the debtor must fully reject the lease at the

3  hundred and twenty days which it was back then and either or

4  both they now absolutely have to (inaudible) practical

5  matter (inaudible) legislature to simply override 365 as to

6  leases and say (inaudible).  Now, the Seventh Circuit just

7  said that's an interesting issue.

8         The last case (inaudible) contract (inaudible)

9  primarily the (inaudible) contact.  Even before there came a

10  (inaudible) became a judgment (inaudible) going one way and

11  the (inaudible).  And thirdly, --

12         THE COURT:  Mr. Slome, is it enough that the

13  document that - the obligation that you're addressing,

14  clearly an executory contract really doesn't make sense

15  without other contracts too.

16         MR. SLOME:   (Inaudible) 2013 contemplated two

17  things happening, selling the business which is (inaudible)

18  and a lease and rather (inaudible) which you typically have

19  because you have to (inaudible).  That's what the

20  (inaudible) agreement is.  It's not a franchise (inaudible)

21  it's not an executory agreement, it's (inaudible) agreements

22  that were managed ten years ago and (inaudible) promissory

23  note that's a typical promissory note like this (inaudible)

24  executory contract or have a lease (inaudible).

25         Let's just say, Your Honor that (inaudible) the

1    reject the judgment or the promissory note and the

2    settlement agreement and the confirmation makes no sense

3    because there's no executors.  The larger gap in facts

4    (inaudible) the lease because they're assigned at the time

5    (inaudible) transaction with other contracts that are

6    (inaudible) if you're out of the Code and just from a

7    rational point I don't see how (inaudible) opposite the

8    debtor's position and (inaudible).  I'm happy to answers

9    questions if it's not clear in response to Ms. Kaylie,

10   however Your Honor wants to proceed.

11          THE COURT:  No, I think - I think it's helpful now

12   to hear from debtor's Counsel.  Ms. Kaylie, please let me

13   hear from you.

14          MS. KAYLIE:  Your Honor, can we take a five minute

15   break?  I just want to run to the restroom real quickly.

16          THE COURT:  Oh for goodness sake, of course.  You

17   didn't need to say that on the record.  Yes, we now are

18   going to take five for any number of reasons.  Yes, of

19   course.  We're gonna go off --

20          MS. KAYLIE:  Okay.  I apologize (inaudible).

21          THE COURT:  I did have another matter calendared.

22   If it's gonna be very quickly I might quickly try to hear

23   that matter too.  I'll confer with Ms. Jackson.  But of

24   course we'll --

25          MS. KAYLIE:  (Inaudible).

1          THE COURT:  Take a short break.

2          MS. KAYLIE:  I apologize.

3          THE COURT:  We'll take that --

4          MS. KAYLIE:  (Inaudible).

5          THE COURT:  And then I need to hear from you.  Let

6     me just say in a general way I'm concerned about these

7     points and I - I - I - I think that there may be something

8     to the points that the landlord makes here and I am first in

9     line to cheerlead for a resolution and I was struck by both

10    the substance and the tone of the second half of Mr. Slome's

11    letter saying no thank you to an adjournment, but we want to

12    see a diner continue.

13         I do think it is time for me to do my job and

14    consider this portion of this motion on the merits.  So

15    think about that.  We'll take our few minutes.  I'm grateful

16    too and then we'll be back and then we'll resume, all right?

17         MS. KAYLIE:  I appreciate it, Your Honor.

18         THE COURT:  Thank you.

19         MS. KAYLIE:  (Inaudible).

20         (Off the record).

21         (Recall began).

22         THE CLERK:  Recalling the matter of Sid Boys Corp.,

23    21-42207.

24         THE COURT:  Thank you.  Good to see everyone.

25    We're ready to hear from debtor's Counsel Ms. Kaylie in

 1  opposition to that portion of the relief requested by

 2  landlord that Mr. Slome has addressed and also to hear you

 3  to the extent it is a separate motion in support of your

 4  motion number forty-six on the docket, number three on

 5  today's calendar seeking a determination that the

 6  non-residential real property lease in the case be - not be

 7  assumed or rejected and that the time to assume or reject

 8  would be under a different section of the Bankruptcy Code.

 9  Ms. Kaylie, over to you.

10          MS. KAYLIE:  Good afternoon again.  Rachel Kaylie,

11  representing the debtor (inaudible) and I have to address

12  much of it, but (inaudible) brought up and he brought it up

13  in other contracts as well.  My client did get PPP funding

14  (inaudible), did get PPP funding prior to the (inaudible)

15  happened with that money.

16          THE COURT:  Ms. Kaylie, --

17          MS. KAYLIE:  Forty percent --

18          THE COURT:  Did you say that the debtor received

19  PPP funding prior to the pandemic?

20          MS. KAYLIE:  No, during the pandemic.

21          THE COURT:  During.  Thank you.

22          MS. KAYLIE:  Prior to --

23          THE COURT:  There was no PPP funding prior.  Back

24  to you.

25          MS. KAYLIE:  No, no, --

1          THE COURT:  I was confused.  Got it.  Back to you.

2     Thank you.

3          MS. KAYLIE:  Prior to the petition during the

4     pandemic.

5          THE COURT:  Got it.

6          MS. KAYLIE:  If I misspoke I apologize.

7          THE COURT:  If I misheard I apologize.  Back to

8     you.

9          MS. KAYLIE:  I'm sorry.  Approximately forty

10    percent of the (inaudible) PPP should have received went to

11    pay the rent.  The remaining sixty percent went to pay

12    payroll under the PPP future payroll protection plan.  So,

13    Your Honor (inaudible) sixty percent of the money

14    (inaudible) business to run.  (Inaudible) forty percent of

15    the PPP went to the landlord (inaudible) other purposes went

16    to rent so my client did attempt to do that so I don't want

17    the Court to think that this PPP loan (inaudible).

18         THE COURT:  With respect to the relief that the

19    landlord is seeking I'm not considering that one way or the

20    other and I'm grateful for your response and the bigger

21    picture.  I understand why it's important to the debtor to

22    respond to those statements, but I don't think that really

23    affects one way or another whether or not this contract is a

24    contract of the nature that Mr. Slome describes.  Back to

25    you.

1    MS. KAYLIE:  Right.

2    THE COURT:  I hope that's helpful.

3    MS. KAYLIE:  Your Honor, (inaudible) which is the

4    subject of the debtor's (inaudible) is that it is part and

5    parcel of the overall (inaudible) business agreement.

6    (Inaudible) which I attach as an exhibit to my opposition

7    and cross motion specifically states in paragraph eighteen

8    that the (inaudible) is that it specifically is part and

9    parcel around (inaudible).  Part of that (inaudible) the

10   overall (inaudible) business agreement had (inaudible) and

11   the business itself (inaudible) Kellogg's Diner.  Kellogg's

12   Diner has been around for close to a hundred years.  It is

13   on the (inaudible) which in and of itself has value because

14   that has been around for so long there's a (inaudible).

15   There is ample case law (inaudible) that the

16   (inaudible) a business name (inaudible) so, therefore, what

17   is part of the (inaudible) business agreement and the

18   (inaudible) referenced in re (inaudible).

19   THE COURT:  But there's no doubt --

20   MS. KAYLIE:  (Inaudible).

21   THE COURT:  That this is not a franchise, isn't

22   that right?  That is not a fact that could be --

23   MS. KAYLIE:  (Inaudible).

24   THE COURT:  Reasonably disputed I think.

25   MS. KAYLIE:  Your Honor, I'm not arguing that this

1    is a franchise per se, what I'm arguing is that the concept

2    is very similar.  (Inaudible) the number one franchise that

3    would be McDonald's.  (Inaudible) the overall business

4    agreement specifically stated that (inaudible) separate and

5    apart from the actual diner business.  If you look at

6    Exhibit A in my papers (inaudible) my client is buying in

7    paragraph one (inaudible) and the name Kellogg's Diner.  So

8    it's not just that they're just buying a business, it

9    specifically (inaudible) the name Kellogg's Diner.

10          (Inaudible) failed business agreement was the

11   (inaudible) contract.  Your Honor, I would argue much to the

12   opposite, (inaudible) executory contract.

13          THE COURT:  What are the ongoing duties of the

14   seller?

15          MS. KAYLIE:  That's what I'm getting to, Your

16   Honor.  So the executory contract is (inaudible) our case

17   and in this case here the seller (inaudible) ongoing

18   obligations.  Now I'm not arguing that my client - you know,

19   our client clearly has ongoing obligations, but so does the

20   secured creditor.  For instance, (inaudible) obligation of

21   the secured creditor as well as the debtor to execute and

22   deliver any more other instruments that may be required to

23   carry out the terms of this agreement.  (Inaudible)

24   possession of such business and (inaudible) and the seller

25   will thereafter and forever defend the purchaser against any

1  claims of any kind or description (inaudible) of such assets
2  or his right to possession (inaudible).
3          THE COURT:  So would you argue that any --
4          MS. KAYLIE:  The secured --
5          THE COURT:  Any - any indemnification type of
6  provision arising from in substance a rep or warranty that
7  you have the ability to sell the thing you are selling
8  return any contract, purchase and sale contract into an
9  executory contract?
10         MS. KAYLIE:  I would, Your Honor.  In fact,
11 (inaudible) the Court (inaudible) that the average
12 (inaudible) furnished to the debtor of any document
13 including powers of attorney necessary to (inaudible)
14 obligation.  (Inaudible)  In addition, there are other
15 obligations of the secured creditor.  (Inaudible) agreement
16 provides that the secured creditor is forever obligated to
17 defend the purchaser (inaudible) agreement requires the
18 debtor to (inaudible) of a secured (inaudible) any of the
19 collateral (inaudible) equipment covered by the secured
20 security agreement.
21         THE COURT:  Ms. Kaylie, this is a 2021 case.  Let's
22 say I agree with you, what happens next?  Let's say I set a
23 deadline to confirm a plan of December 30th, what happens --
24
25         MS. KAYLIE:  Well, Your Honor --

1          THE COURT:  Mr. Slome has also argued that as a

2   practical matter there's just no ability in the debtor based

3   on everything we see to address the amounts due here.

4          MS. KAYLIE:  Your Honor, (inaudible) that's not the

5   motion that's before us.

6          THE COURT:  You can answer - but you may still

7   answer my question if you wish.  Remember I began with if

8   you win.  You don't have to.

9          MS. KAYLIE:  Your Honor, --

10         THE COURT:  I mean I can't force you to answer a

11  question, but I can try twice.

12         MS. KAYLIE:  Your Honor, if we win (inaudible) part

13  and parcel of the executory contract and the debtor like I

14  said has recently obtained (inaudible) equal to over

15  $1,000,000 and that we're trying to work out a final

16  settlement.

17         THE COURT:  Is that anywhere in the record?

18         MS. KAYLIE:  No, Your Honor (inaudible).

19         THE COURT:  That the debtor has obtained

20  $1,000,000?

21         MS. KAYLIE:  (Inaudible).

22         THE COURT:  The debtor has obtained $1,000,000, is

23  that in the record?

24         MS. KAYLIE:  No, it's not, Your Honor (inaudible).

25         THE COURT:  When did the debtor obtain $1,000,000?

 1 |        MS. KAYLIE:  (Inaudible) a couple of days ago.

 2 |        THE COURT:  Where is the money now?  Is it in the

 3 | DIP account?

 4 |        MS. KAYLIE:  No, not yet, Your Honor.

 5 |        THE COURT:  Where is the money?

 6 |        MS. KAYLIE:  (Inaudible).

 7 |        THE COURT:  Where is the money now?  You said the

 8 | debtor obtained, the debtor, --

 9 |        MS. KAYLIE:  (Inaudible).

10 |        THE COURT:  Sid Boys Corp. obtained $1,000,000.

11 |        MS. KAYLIE:  (Inaudible) be coming in very, very,

12 | very soon.

13 |        THE COURT:  So the debtor did not obtain

14 | $1,000,000, is that correct?

15 |        MS. KAYLIE:  (Inaudible) should be coming in in the

16 | next couple of weeks.

17 |        THE COURT:  What is --

18 |        MS. KAYLIE:  (Inaudible).

19 |        THE COURT:  The source of the $1,000,000?

20 |        MS. KAYLIE:  Your Honor, my client says that she

21 | has refunds coming to her.  I believe it was from some grant

22 | that were equal to (inaudible) she's got over $700,000 in a

23 | DIP account so between that --

24 |        THE COURT:  So - so --

25 |        MS. KAYLIE:  And whatever is coming in should give

1  her --

2         THE COURT:  So what you're actually describing is

3  $300,000 of new money?

4         MS. KAYLIE:  (Inaudible) in the DIP account.

5         THE COURT:  Ms. Kaylie, it makes me sad again to

6  have to remind you of the importance to be precise.  We are

7  speaking on the record of a hearing.  You said the debtor

8  got $1,000,000.  It turns out what you mean is --

9         MS. KAYLIE:  (Inaudible).

10        THE COURT:  The account that we know about already

11 in the amended reports plus the money that the source of

12 which we do not know that may arrive in the next few weeks

13 that is a very different thing.  I'm sorry to have to say

14 again how important it is not to overstate or misstate even

15 in the best - with the best goals what the situation is

16 because I'm taking - I'm doing my best to take in everything

17 that you are saying and I take it at face value.  You tell

18 me the debtor got $1,000,000.

19        That's not, I think, quite what you meant.  Back to

20 you.  Please don't - please may I not have to do that again.

21        MS. KAYLIE:  I apologize, Your Honor.  Let me

22 rephrase that.  Between the money she's already got in the

23 DIP account and the refund coming in to her totaling roughly

24 $300,000 (inaudible) the settlement proposal that was since

25 (inaudible) Mr. Slome chose (inaudible) on October 26th.

1  That is why she has not yet responded to Mr. Slome even

2  though (inaudible) to Mr. Slome's proposed settlement is

3  (inaudible) that time about the money coming in.

4          However, she had found out within the last couple

5  of days and (inaudible) today that (inaudible) DIP account

6  and (inaudible) as what I believe is a refund (inaudible) to

7  pay on the proposed settlement.

8          THE COURT:  Well, would that pay -- is -- to - to

9  be more precise if the debtor has -- if I - if I conclude --

10  well, the request to find that this is deemed rejected

11  there's an amount that would be necessary to cure in order

12  to assume what is that amount so far as you know as debtor's

13  Counsel to cure in order to assume?

14          MS. KAYLIE:  To cure the (inaudible) is

15  approximately $440,000.

16          THE COURT:  To cure the pre-petition and

17  post-petition amounts due to the landlord how much is that?

18          MS. KAYLIE:  (Inaudible) and it's approximately

19  $440,000.

20          THE COURT:  Mr. Slome, do you agree?

21          MS. KAYLIE:  (Inaudible).

22          THE COURT:  What's the amount that's due here in

23  order to cure and assume?

24          MR. SLOME:  (Inaudible) sort of radiating into

25  settlement discussions, but if Ms. Kaylie is okay with it --

1    THE COURT:  We can stay with my questions for now

2    if that's - if that's easier and otherwise I'll leave it to

3    the parties and we can go off the record after the parties

4    have argued if that serves a useful purpose, but, Mr. Slome

5    I wanna have a sense of that amount.  A lot of numbers are

6    being thrown around.

7    MR. SLOME:  Approximately to cure the lease arrears

8    is about $450,000 plus legal fees.  (Inaudible) $500,000 on

9    the lease.  For insurance we don't believe that the debtor

10   (inaudible) additional amount I'll (inaudible) what I think

11   it is and it's as large an amount so (inaudible).  So if the

12   debtor had (inaudible) show us is available (inaudible) can

13   get a deal done and (inaudible), but I was hopeful with Mr.

14   Morgan and Ms. Morgan that we would get some of the details.

15   (Inaudible) so, you know, (inaudible) just based on the last

16   fifteen months post-petition.

17   THE COURT:  All right.

18   MR. SLOME:  (Inaudible) settlement conference now

19   in the middle of oral argument.

20   THE COURT:  No, no, no, no, no.  You're on the

21   record.  I need to hear back from - I need to hear from Ms.

22   Kaylie.  I have a sense of order of magnitude of numbers

23   which - because of course the question is whether the debtor

24   even has the ability to assume.  Most creditors are happy to

25   be paid in full and we talked about hundred percent plans

1  earlier.

2          Ms. Kaylie, back to you and - and - and we'll

3  refocus now or focus back on your opposition to the motion

4  which is - which seeks a finding of this Court that the loan

5  - excuse me, the lease should be deemed rejected.  Back to

6  you, Ms. Kaylie.  Thank you, Mr. Slome.

7          MS. KAYLIE:  Your Honor, (inaudible) overall to the

8  failed business agreement, specifically (inaudible) not

9  separate from (inaudible) and I have a few more of ongoing

10  obligations of the landlord that (inaudible) secured

11  creditor which (inaudible) business agreement an executory

12  contract of which (inaudible).  Therefore, (inaudible)

13  contract then it's valid.

14          THE COURT:  Well, Ms. Kaylie what if I am persuaded

15  that there could be some ongoing obligations or I decide to

16  take a broad view of that, since I think I would take a

17  somewhat broad view, but - but don't agree that one

18  executory contract necessarily brings along others or I

19  think as Mr. Slome put it would read some sections of the

20  Bankruptcy Code specifically concerning non-residential

21  leases out of the Code.  I mean that's a problem.  There are

22  specific provisions in the Code that put parties on notice,

23  debtors, landlords that non-residential leases have

24  additional requirements and here we are.

25          MS. KAYLIE:  (Inaudible) respond to that

1   (inaudible) from the debtor.  Your Honor, (inaudible) very

2   specific language (inaudible) specifically stated in

3   paragraph eighteen (inaudible).

4           THE COURT:  Failed business agreement at paragraph

5   eighteen says -- my copy I - I usually am not in a position

6   to be able to show parties my copy, but the copy that was

7   filed is, is somewhat challenging to read.

8           MS. KAYLIE:  I apologize, Your Honor.  My copy is a

9   copy of a copy, it's a very old document so --

10          THE COURT:  Something security agreement --

11          MS. KAYLIE:  The copy the Court has --

12          THE COURT:  For $2,000,000 --

13          MS. KAYLIE:  (Inaudible) copy as well.

14          THE COURT:  There's paragraph eighteen, now I'll

15   sound silly, comes after seventeen and before nineteen and

16   those numbers are clear although the text is not very clear.

17   This is at page five, sale of business agreement.  Paragraph

18   eighteen says -- can you read it into the record please?

19          MS. KAYLIE:  (Inaudible).

20          THE COURT:  Agreement -- okay.

21          MS. KAYLIE:  (Inaudible).

22          THE COURT:  I'm sorry.  Agreements made a part

23   hereof note and security agreement and --

24          MS. KAYLIE:  (Inaudible).

25          THE COURT:  So how -- where does that leave those

1 | requirements of the Bankruptcy Code that specifically
2 | concern non-residential leases?  Does it -- you know, the
3 | parties --
4 |      MS. KAYLIE:  Your Honor, --
5 |      THE COURT:  Can't contract out of the Code.
6 |      MS. KAYLIE:  (Inaudible) who is opening a
7 | restaurant or a salad store (inaudible) not buying the
8 | (inaudible).  This was a purchase of a business and part of
9 | that business is (inaudible) promissory note which is the
10 | plain language of the contract, (inaudible) parts thereof.
11 | We are not (inaudible) leases.
12 |      My client did not say (inaudible) to open it
13 | somewhere else, she specifically bought the business which
14 | includes the promissory note on the lease.  It's the plain
15 | language of the contract, it speaks for itself.  If they
16 | wanted the lease to be separate whoever drafted this
17 | agreement should have then said that the lease is a separate
18 | agreement and is not a part thereof, but they didn't, they
19 | chose to say specifically it's a part thereof.
20 |      THE COURT:  What does the lease say?
21 |      MS. KAYLIE:  (Inaudible).
22 |      THE COURT:  What does the lease say?
23 |      MS. KAYLIE:  (Inaudible).
24 |      THE COURT:  So if you pick up the lease and read it
25 | --

1        MS. KAYLIE:  (Inaudible).

2        THE COURT:  From the first line to the last line

3   this information is not there.  Don't you think that --

4        MS. KAYLIE:  (Inaudible).

5        THE COURT:  Don't you think that --

6        MS. KAYLIE:  (Inaudible).

7        THE COURT:  It doesn't address it either way, does

8   it?

9        MS. KAYLIE:  (Inaudible).

10       THE COURT:  Ms. Kaylie, what if there's some other

11  agreement --

12       MS. KAYLIE:  (Inaudible).

13       THE COURT:  Somewhere that says something else?

14       MS. KAYLIE:  (Inaudible).

15       THE COURT:  What if there's some other agreement

16  somewhere that says something else?

17       MS. KAYLIE:  (Inaudible) and don't buy the

18  business.

19        THE COURT:  The --

20       MS. KAYLIE:  (Inaudible) buy a business and then

21  (inaudible) specific location.  She could have - she could

22  have (inaudible).

23        THE COURT:  So let's say that --

24       MS. KAYLIE:  But she didn't, she --

25       THE COURT:  I decide that there's enough to each of

1    your arguments that the right way to proceed would be to set

2    a deadline to confirm a plan which would require addressing

3    all of these agreements of the end of the year so we have

4    the finality that the debtor --

5                MS. KAYLIE:   (Inaudible).

6                THE COURT:  We have the finality that the landlord

7    is seeking and we have a window in this case filed back in

8    2021 for the debtor, but we also know that we are done at

9    that point because you've indicated you'll have - you've got

10   the funding, you'll have the funding and - and fine, if

11   that's all true it's -- you know, we're certainly always

12   eager to see businesses reorganize and creditors get paid

13   and your letter and Mr. Slome's letter do intersect and one

14   overlap in their objectives in one way.

15               You both indicate that you'd like to see the diner

16   continue as a diner.  What -- how - how do you respond to

17   that?

18               MS. KAYLIE:  Your Honor, I think that would be

19   (inaudible).

20               THE COURT:  I mean I think it would -- there are --

21   you both made good points.  I'm concerned that the lease on

22   its four corners does seem to trigger some of the

23   requirements of the Bankruptcy Code including time limits

24   that are important and they're there for a reason and one of

25   the reasons that -- you know, there was a lot of legislative

1  history behind those amendments as I'm recalling generally.

2  But - but then we have this context of other transactions

3  and a one directional reference not in the operative

4  document which for today's purposes is the lease, but in a

5  different document.

6         That's some - that's -- you know, there's - there's

7  - there's things to consider on both sides of that question.

8  Even if the documents are hard to read we can decipher them.

9         But the only way that would make sense would seem

10  to be consistent with everything else that's part of this

11  picture a hard firm deadline that the lease would be deemed

12  rejected unless a plan is confirmed by two weeks, a month,

13  the end of the year, I don't know.  I would probably have to

14  think about and hear from the parties on that, but --

15         MS. KAYLIE:  (Inaudible).

16         THE COURT:  I think that may be right.  Do we have

17  a deadline to confirm a plan?  What happens the day after if

18  a plan is not confirmed other than it's New Year's Eve?

19         MS. KAYLIE:  (Inaudible).

20         THE COURT:  I think at this point there may be an

21  aspect to this that I've seen in many other cases which is

22  yes, in substance be careful what you wish for, but at the

23  same time sometimes you just need to be done, you need to be

24  done, you need to know, you need to have a timeframe and a

25  deadline and to know what's going to happen next.  So back

1  to you, Ms. Kaylie.

2          MS. KAYLIE:  (Inaudible) I believe it was December

3  30th was the deadline.

4          THE COURT:  I think that's - I think that's right.

5          MS. KAYLIE:  It was either the 30th or the 31st, I

6  don't remember.

7          THE COURT:  The 31st is technically I think a

8  federal holiday and I don't set deadlines on federal

9  holidays.  At least I try very hard to avoid it.  So I'm

10 looking at our notes about status.  All right.

11          MS. KAYLIE:  I believe it was December 30th if I

12 remember correctly.

13          THE COURT:  So, Ms. Kaylie I've got your

14 submissions, your - your - both your arguments and your

15 response to my question would help.  Is there anything else

16 you'd like to address before we go back to Mr. Slome and

17 then I may take my other -- do we have my other matter to be

18 heard?

19          THE CLERK:  Yes.

20          THE COURT:  We do have another matter so I could

21 Zoom you into a room for a few minutes.  I'm not gonna give

22 you a decision today.  My anticipation is to give you an

23 oral decision as soon as next week, maybe early next week.

24 Friday is a federal holiday so I have to keep reminding

25 myself this week is shorter than it feels.  Today is the end

 1 | of the week for us.  But that - you know, that's one path.
 2 |        I'm - I'm - I guess I have the blessing and the
 3 | curse of great optimism whenever - whenever I think there
 4 | could be some common ground and here again I see it in this
 5 | arguable common interest in - as interesting as these
 6 | technical issues are and they are both interesting and
 7 | somewhat technical, you know, an ongoing business.  Anything
 8 | - anything further, Ms. Kaylie either in support of your
 9 | cross motion --
10 |        MS. KAYLIE:  (Inaudible).
11 |        THE COURT:  Or --
12 |        MS. KAYLIE:  Oh, I'm sorry.  Rachel Kaylie for the
13 | debtor.  Your Honor, I would (inaudible), you know, set a
14 | deadline to confirm a plan that would be very helpful in
15 | this situation and (inaudible) I think that might be
16 | something that the debtor can work with.
17 |        THE COURT:  I mean it would be something like a
18 | deadline and then in the -- if there's no plan confirmed
19 | then the next day, the next business day the lease would be
20 | deemed rejected and the landlord would have stayed relief.
21 | I think an agreement along those lines is certainly
22 | something I would consider.  People might need to talk to
23 | their clients.  Mr. Slome?
24 |        MR. SLOME:  Thomas Slome for the landlord
25 | (inaudible).  There are two points I wanna make and one

1   thing that came up which I think (inaudible) indemnity which

2   has never been called upon which is not (inaudible) very

3   confident that if there was (inaudible).

4           (Inaudible) actually pull up the rest of the cases

5   right now, but if Your Honor feels that it's important I

6   definitely can establish that, that's not an issue.

7           The point of fact is (inaudible) paragraph eighteen

8   it's just saying (inaudible) attachments made a part

9   thereof.  It's not a typical sale agreement with clauses.

10  (Inaudible) that have to be (inaudible) of the lease

11  (inaudible).  There's no such agreement that ever existed

12  like that.  (Inaudible) executory obligation (inaudible)

13  landlord missed it.

14          (Inaudible) statute of limitations.  First of all,

15  (inaudible) never will and it mentions (inaudible) all the

16  cases this case relies on.  It's why other contracts

17  (inaudible) deadline or predominant contract.

18          THE COURT:  I'm sorry, say that again.  It's the

19  what contract?

20          MR. SLOME:  There are two cases that Ms. Kaylie

21  relies on, the Seventh Circuit (inaudible) executory

22  contract (inaudible) contract.

23          THE COURT:  The franchise, right.

24          MR. SLOME:  The franchise agreement.  And if you

25  read the decision you'll see that that goes to the lease.

1  The lease - the franchise agreement (inaudible) and each gas
2  station has a lease.  So that I can see her argument
3  (inaudible).

4        Now, when Your Honor suggests, and I know Your
5  Honor likes to see deals made, you know, I would go back to
6  my client and I would suggest the following if we have a
7  hard deadline which cannot be extended of December 30th that
8  a plan has to be confirmed otherwise the lease is then
9  rejected and the landlord (inaudible).

10        THE COURT:  I mean the Code --

11        MR. SLOME:  (Inaudible).

12        THE COURT:  Uses the word immediately.  We've
13  checked that a couple of times to be sure.  It's an unusual
14  - not a lot of adjectives in the Code.  Back to you.

15        MR. SLOME:  Your Honor, I would suggest (inaudible)
16  regardless of how you decide (inaudible) can get a buyer
17  lined up and operate it and so we're not worried about that
18  and if the debtor operates it and comes up with enough money
19  then (inaudible) let the debtor operate.  We just don't want
20  to set up a deferred situation and be back here (inaudible).
21  It's very frustrating.  That's the (inaudible).  They can
22  confirm a plan and (inaudible) not to be extended, they
23  confirm, (inaudible) entered, doesn't have to be effective
24  (inaudible) rejected and has to be surrendered immediately.

25        THE COURT:  All right.

1          MR. SLOME:  I think there's valid argument  --

2          THE COURT:  I think so.  It's been very helpful to

3    the Court because there's almost two parallel universes here

4    of the documents, the agreements, the - if someone's got a

5    better copy could they please file it?  The - the difficult

6    to read, but we get there every time squinting, but yes,

7    documents made a part or agreements made a part hereof,

8    three bullet points, and then separately something else and

9    so - anyway, and as I've told you I'm - I'm gonna - I'm

10   prepared to close the record today on this aspect of the

11   motion, get to work on my decision and then give it to you

12   as promptly as possible, I'm hoping next week.  And we're

13   struggling a little bit because we got a long - we got a lot

14   of pretty full days next week, but - but I think what I --

15   excuse me one second.

16          I think we're gonna do this just because we do have

17   parties waiting patiently and I have a clock in the back of

18   my Courtroom that has not been reset for the time change so

19   I keep thinking it's even later than it is.  It is not two

20   minutes of 5:00, it's two minutes of 4:00, but we're gonna

21   invite you into Zoom or when you can excuse yourselves to

22   call anyone you feel like calling, but I'm - you know, I'll

23   take an agreement on those terms on the record today, but I

24   don't think that's likely.  Just - yeah, probably just

25   attorneys make sense.  I don't think Ms. Latif needs to be

1    part of this.  You can sort out who should talk with whom.

2          I need to call - we need to call the next matter

3    and then come back, do our best to find a date to get you a

4    decision on this question which I think raises a number of -

5    of legal issues and you'll give me something interesting to

6    work on.

7          But the one thing we need now is a path forward

8    that is firm and definite and gets you a decision on this

9    motion or a context in which to get an agreement in a period

10   of days and then a resolution from the standpoint of if

11   there is an agreement, a hard, a confidence inspiring

12   resolution with consequences, you know, within a period of

13   not days, but weeks or, you know, I'm looking year end, I

14   don't know, it seems to make some sense perhaps.

15         So that's - so that's what we're doing next.  You

16   have a second call.  If you were here in person I would send

17   you into that conference room.

18              MS. KAYLIE:  Your Honor, --

19              THE COURT:  Yes, Ms. Kaylie anything further?

20              MS. KAYLIE:  (Inaudible) I would actually prefer to

21   (inaudible) or something because I need time with my client

22   (inaudible).

23              THE COURT:  Then you can just keep everything on

24   mute, but we're going to proceed as I've indicated and I

25   encourage you not to waste an opportunity.  You may not have

 1  many more.

 2          MS. KAYLIE:  Okay.

 3          THE COURT:  We're a -- I can see the end of the

 4  road on this.  One way or another you need a decision,

 5  you're going to get it, you're going to get it soon.  And I

 6  -- and delay is the one thing that will not move this matter

 7  forward nor that I -- and it's also something that I really

 8  cannot accommodate at this point, it needs to be - it needs

 9  to make sense.

10          So you can speak if you wish first to speak with

11  your client, that's fine too.  Let Ms. Jackson call the

12  other matter, you have a second call.  And please use this

13  as an opportunity, there's really no reason not to.  All

14  right.  I leave it to the parties whether the State Court

15  Counsel should be part of this.

16          Again, I'm so sorry you weren't able to come in

17  person because it would be so much easier to say there's a

18  conference room, there's the jury room and there's the

19  corridor.  You can inform Ms. Jackson who can e-mail you

20  perhaps or something.  All right.  Let's move to the next

21  matter.

22          (Off the record).

23          (Recall began).

24          THE CLERK:  Recalling the matters of Sid Boys

25  Corp., 21-42207.

1      THE COURT:  All right.  Good afternoon again.  This

2  is Judge Stong.  I understand it's a good opportunity to go

3  back on the record, see if there's anything further to add

4  and then figure out the right path forward.  Let's hear from

5  Mr. Slome.  You're the one in my screen, you get to go

6  first.  Thank you.

7      MR. SLOME:  Thank you, Judge.  Thomas Slome, for

8  the landlord and the judgment creditor.  (Inaudible) so I

9  can't tell you if there's going to be (inaudible) early next

10  week.  What I just wanted to talk about was (inaudible)

11  suggestions to see if our clients might be interested in,

12  you know, (inaudible) rejected as of December 30th if that

13  plan is confirmed that's gonna be (inaudible).  Our clients

14  would not object to a combining of (inaudible) and

15  confirmation hearing.  (Inaudible), but I understand why Ms.

16  Kaylie would want that because it might be possible

17  (inaudible) if she wasn't able to combine it and I think on

18  this case (inaudible).  I shouldn't say that.

19      I think (inaudible) type of plan that's (inaudible)

20  my client and that's what I'd recommend to them.  The order

21  that has been entered now, you know, (inaudible) would

22  require the surrender of the diner to the landlord

23  (inaudible).  Ms. Kaylie then asked that (inaudible) couple

24  of weeks after that date to just take care of business, copy

25  records or whatever, (inaudible) get new jobs and I said

1   those (inaudible) happened.  (Inaudible) obviously my

2   clients (inaudible) and, you know, (inaudible) take pictures

3   and then they (inaudible) any damage.  (Inaudible) there

4   would be no damage and again, (inaudible) that would be one

5   way to (inaudible).

6          (Inaudible) settling which I don't wanna get into

7   (inaudible) any such plan should be (inaudible) effective

8   date to a certain amount (inaudible) and the note arrears.

9   We're very firm the diner would have to pay mortgage

10  payments timely and normal rent payments only and, you know,

11  (inaudible) that it's possible the diner will have

12  sufficient cash flow to (inaudible) make under the plan and

13  there's a (inaudible) we don't end up back (inaudible)

14  Chapter 11.  So that's sort of the gist of what we talked

15  about and (inaudible) kind of thing, (inaudible) my client

16  and Ms. Kaylie will talk to her client about.  Ms. Kaylie

17  (inaudible).

18          THE COURT:  Ms. Kaylie?

19          MS. KAYLIE:  Rachel Kaylie for the debtor for the

20  record.  Your Honor, (inaudible) just found out a lot of

21  this today so I obviously would need time to speak with my

22  client and with the accountant as would Mr. Slome with his

23  client.  You know, I'm sure my client and everybody agrees

24  that (inaudible) understand that.  (Inaudible) disclosure

25  statement and (inaudible), but I don't think there's any

1   changes to it (inaudible) everybody but the landlord.  I

2   also don't know the (inaudible) --

3          THE COURT:  I'm sorry, when you say the disclosure

4   statement is the idea that we would have a combined hearing

5   in the context of a consensual plan on a - on an amended

6   disclosure statement and a confirmation of the plan and we

7   have a preliminary approval of the amended disclosure

8   statement or that we would just do away with the requirement

9   of a disclosure statement entirely?

10         MS. KAYLIE:  No, no, no, we're (inaudible).  In

11  other words, I believe (inaudible) we were supposed to have

12  (inaudible) disclosure statement here on December I believe

13  15th and then the 30th was the confirmation.  I'm

14  (inaudible) that doing combined (inaudible) waste any legal

15  fees on something that isn't going to happen then, you know,

16  my client's already spent so much on legal fees I don't

17  wanna waste (inaudible) resources.  (Inaudible) to do an

18  amended disclosure, I'm just saying the time for the amended

19  disclosure should be combined with the hearing on the

20  confirmation of the plan.

21         THE COURT:  Ms. Kaylie, when we get to the point

22  that that's the only thing to talk about in this case we'll

23  be at a very good point indeed.

24         MS. KAYLIE:  I would be hopeful.

25         THE COURT:  So I think you've really described the

1    outlines of something that will give this situation the best
2    possible opportunity to succeed as a reorganization.  I have
3    separately the legal issues that you briefed and now argued
4    and the factual record including the blurry, but readable
5    though only barely document.

6           Mr. Gottesman, anything to add on the record?  It
7    sounds like you were very helpful off the record.  I'm glad
8    to know that.  It takes a village --

9           MR. GOTTESMAN:  (Inaudible) I'll just say one
10   thing, we're supportive of (inaudible) support that.  I
11   understand that there are issues between the debtor and the
12   landlord that need to get worked out (inaudible) support
13   that process and the new process.

14          THE COURT:  All right.  When do you think would be
15   a productive time for me to set the deadline for the parties
16   to file a status letter indicating whether the matter, the
17   issue that has been now argued to the Court has been
18   resolved as part of a settlement?

19          I would need you to agree that it resolved by the
20   way.  If one side says yes and the other side says no that
21   is not what I would view as an agreement.  How much - how
22   much time makes sense for that?  You have clients you need
23   to speak with, you need to speak with each other, you need
24   to be at a comfort level that if there is an agreement that
25   it's an agreement, not just a good sense of what an

1  agreement might look like.

2     That won't - that - I don't think that will satisfy

3  anybody perhaps even including me.  Mr. Slome, what's your

4  sense of the timing?  When shall I ask you to tell me that?

5          MR. SLOME:  Your Honor, (inaudible) separate status

6  and that's depending on whether we can (inaudible).  At some

7  point (inaudible) I think we are going to have an order as

8  maybe attached to the joint letter if we don't have an

9  agreement on the order.  If we don't and need a few more

10 days we will tell Your Honor.

11         And honestly Your Honor may have questions about it

12 so I don't mean to be presumptuous if you had time after

13 that, you know, (inaudible) the week of the 21st to talk

14 about it and if you'd like to get an order entered

15 (inaudible) because at that point Ms. Kaylie has to move

16 rather rapidly on her combined (inaudible).

17         THE COURT:  Absolutely.

18         MR. SLOME:  (Inaudible).

19         THE COURT:  And I'm fine with -- everything else -

20 you know, if everything else comes together on consent a

21 combined hearing, conditional approval and then final

22 approval and confirmation is fine with me.  So, Ms. Kaylie

23 does that timeframe sound about right to you?  Parties to

24 file status letter on --

25         MS. KAYLIE:  I'm sorry, Your Honor, I apologize.

1        THE COURT:  Oh.

2        MS. KAYLIE:  Rachel Kaylie for the debtor.  Your

3 Honor, as far as (inaudible) order to submit I would

4 (inaudible) the 18th I have a conflict, I have an order on

5 an appeal in the Appellate Division in State Court so I

6 would ask for (inaudible), but I'm not available the 18th.

7        THE COURT:  Fine.  Status letter and proposed - it

8 would be I guess a stipulation and a proposed order if

9 appropriate.  Don't wait until Wednesday night to start

10 writing that because I think you'll see whether this works.

11 It's - when you see if you can get the words on a piece of

12 paper.  Stipulation and proposed order if appropriate by

13 17th.  And then --

14        MS. KAYLIE:  The 17th is fine with me.

15        THE COURT:  Sorry?

16        MS. KAYLIE:  I said the 17th is fine with me.

17        THE COURT:  Okay, good.  And then we won't say come

18 back on the 18th because you'll need to breathe and you'll

19 need to argue, you'll be busy.  What department are you in,

20 Ms. Kaylie?

21        MS. KAYLIE:  (Inaudible) the State Court

22 (inaudible).

23        THE COURT:  It's around the corner.

24        MS. KAYLIE:  (Inaudible).

25        THE COURT:  I'm on Rowe Place, you'll be in the

1  neighborhood of our Courthouse.

2        MS. KAYLIE:  I will be in the neighborhood.  It's

3  actually (inaudible).

4        THE COURT:  Oh, my goodness.  I do see people going

5  in and out of that building.

6        MS. KAYLIE:  (Inaudible).

7        THE COURT:  So I'm looking at the next week which

8  is kind of a mess of a week because it's a short week.

9  We've got - I mean you could join my eighty-six Chapter 13

10 matters on Monday, but that's probably not where you wanna

11 be.  We already have morning and afternoon on Tuesday.  The

12 day before Thanksgiving is not a day I'm inclined to commit

13 to, to ask you to commit to being at a hearing.  Maybe

14 November 30th.  That would be a - that looks like a

15 strangely open day for me.  Ms. Jackson, what am I missing?

16       MR. SLOME:  Your Honor, may I make a suggestion?

17       THE COURT:  Yes, please.

18       MR. SLOME:  (Inaudible) is that if the letter, you

19 know, it's 5:00 on the 16th and if you have any time on the

20 17th (inaudible) Your Honor may look at it and (inaudible)

21 then the order could get entered on the 17th and we're off

22 to the races (inaudible) is possible, but (inaudible).

23 (Inaudible) the 17th and Your Honor's availability for --

24       MS. KAYLIE:  I'm not -- Rachel Kaylie for the

25 debtor for the record.  I have multiple conflicts on the

1  17th so --

2         THE COURT:  It's a good -- it's -- well, if you've

3  got, if you've got what you need to have by the 17th we can

4  figure out a way to get -- you don't - I don't know that you

5  need time in front of me in order to be working on that plan

6  and disclosure statement which will be part and parcel of

7  that agreement indirectly I suppose.  17th, 18th don't work.

8  Then the next week is the short week.  The date I was going

9  to say that is - well, I just said it actually.  The 30th is

10  a day when I have time.

11         If I need to be ruling on this I can give you a

12  ruling by then.  If I don't need - and I - and if I don't

13  need to be ruling on this and we need to set a telephonic

14  conference as promptly as possible or something like that

15  you could request that in the letter.  As a holding date I'm

16  gonna suggest November 30th at 2:00.

17         MR. SLOME:  That's fine, Judge.

18         THE COURT:  And we can --

19         MS. KAYLIE:  That's fine for me, Your Honor.

20         THE COURT:  Set something in response to a request

21  that is joint and makes sense.  We will do everything we can

22  to meet the needs of the case and facilitate this moving

23  forward in a productive way.

24         So first, thank you again.  Second, hold this -

25  please hold these good thoughts.  Third, for a holding date

1   November 30th at 2:00.  I assume it's by video.  I tried to

2   get you in person, it didn't work, but this has been the

3   next best thing thanks to your efforts.  Thank you, thank

4   you.

5        MS. KAYLIE:  Your Honor, if it's November 30th I

6   can do it in person if you prefer.

7        THE COURT:  Let's try, let's try.  I think we got a

8   lot to learn what's going to happen between now and then.

9   That'll all be subject to confirmation, but the date and

10  time is gonna be November 30th at 2:00.  Yes?

11       MALE VOICE 1:  (Inaudible) 10:00 hearing that I

12  have (inaudible) I represent all the parishes and

13  (inaudible), but I'm not sure how I can do it and be in

14  Brooklyn at 2:00.  If the virtual software is working as

15  much as the parties would like to be in person this time I

16  would like to make the request to keep it virtual.

17       THE COURT:  I expect that we will do our best to

18  meet the needs of the parties including if - including the

19  need you've just described.  If before then we've had a

20  telephonic hearing and I've taken the good news of your

21  comprehensive global resolution on the record we may not

22  even need this date, we may be looking at a different date

23  although I suppose at some point we'd have to have the

24  conditional approval of the disclosure statement as long as

25  we're continuing to put the cart before the horse.  But good

1  point and we will of course do what we need to accommodate.

2  I gather that is an in - that is a virtual hearing?  You're

3  not gonna be --

4          MALE VOICE 1:  That's right.

5          THE COURT:  Across the river?

6          MALE VOICE 1:  No, that's virtual.

7          THE COURT:  Okay.

8          MALE VOICE 1:  (Inaudible) I apologize.

9          THE COURT:  All right.  So that's what we're doing

10  as for today.  It comes down to marking the docket.  I've

11  noted your appearances.  The case management conference is

12  adjourned for holding date purposes November 30th at 2:00

13  p.m. likely on video.

14          With respect to the motion of - the two motions

15  really of the debtor and the landlord parties to submit

16  status letter and stipulation and proposed order if

17  appropriate by November 17th because I do think sooner is

18  better than later on that and we have a holding date of the

19  30th to adjustment - to adjust if we need to.  Same with

20  debtor's cross motion, motion to withdraw as Counsel

21  granted, settle order seven days' notice on all parties

22  entitled to notice.  That helps address some of the arguable

23  shortcomings and the notice of that motion so that's off the

24  calendar and that's it.  All right.  You have got your work

25  cut out.  Thank you very much and good luck.

1          MR. SLOME:  Thank you, Your Honor.

2          MS. KAYLIE:  Thank you.  I appreciate all your

3    efforts.

4          THE COURT:  Thank you back.

5          MR. SLOME:  Thank you, Your Honor.

6          THE COURT:  And I, yours.

7          THE CLERK:  The hearing is concluded.  I'll stop

8    the recording.  Thank you.

9          [Proceedings concluded]

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3   I, Lynn O'Reilly, certify that the foregoing transcript is a

4   true and accurate record of the proceedings.

5

6

7   Signature:

8

9              ADL Transcription Services

10             24 Crossway Drive

11             Deer Park, New York 11729

12             Date:   November 15, 2022

13

14

15

16

17

18

19

20

21

22

23

24

25

**< Dates >**
**February 17th, 2022** 20:9
**March 21st** 20:11
**March 25th** 20:13, 20:17
**November 10, 2022** 1:7
**November 15, 2022** 63:12
**November 17th** 61:18
**October 26th** 10:2, 10:24, 37:1
**October 8th** 14:7
**September, 2022** 6:5
**$1,000,000** 34:16, 34:21, 34:23, 35:1, 35:11, 35:15, 35:20, 36:9, 36:19
**$2,000,000** 40:13
**$300,000** 36:4, 36:25
**$440,000** 37:16, 37:20
**$450,000** 38:9
**$500,000** 38:9
**$700,000** 35:23
**\*\*audio** 3:2
------------------------------------
**-X** 1:3, 1:9

**< 1 >**
**1** 60:12, 61:5, 61:7, 61:9
**100** 1:35
**10014** 1:31
**1006** 1:30
**10709** 1:42
**10:00** 60:12
**10th** 20:10
**11** 6:8, 19:15, 53:15
**11201** 1:46
**11235** 1:26
**11530** 1:36
**11729** 2:7, 63:11
**11th** 20:21
**12th** 1:45
**13** 58:10
**15th** 54:14
**16th** 58:20
**1702** 1:25
**17th** 57:14, 57:15, 57:17, 58:21, 58:22, 58:24, 59:2, 59:4, 59:8
**18th** 57:5, 57:7, 57:19, 59:8

**< 2 >**
**201** 1:30
**2013** 19:7, 23:11, 23:17, 26:17
**2021** 19:13, 33:22, 43:9
**205** 1:25
**21-42207** 1:4, 3:5, 28:24, 52:1
**21st** 56:14
**24** 2:6, 63:10
**274** 1:41
**277-7900** 2:8
**2:00** 59:17, 60:2, 60:11, 60:15, 61:13

**< 3 >**
**300** 1:45
**30th** 6:8, 33:24, 45:4, 45:6, 45:12, 48:8, 52:13, 54:14, 58:15, 59:10, 59:17, 60:2, 60:6, 60:11, 61:13, 61:20
**31st** 45:6, 45:8
**365** 26:6

**< 4 >**
**421** 24:14
**4:00** 49:21
**4E** 1:20

**< 5 >**
**514** 1:33, 4:5, 4:8, 4:21, 4:24, 18:18
**518** 1:34, 4:6, 4:24, 18:19
**5:00** 14:7, 49:21, 58:20

**< 6 >**
**6** 1:41
**60607** 1:21
**631** 2:8

**< 7 >**
**7** 17:20

**< 9 >**
**900** 1:20
**[proceedings** 62:10

**< A >**
**A.** 5:3
**ABBAS** 1:28
**ability** 33:8, 34:3, 38:25
**able** 16:17, 18:6, 40:7, 51:17, 52:18
**absence** 16:5
**absent** 13:4
**Absolutely** 26:5, 56:18
**accommodate** 18:3, 51:9, 61:2
**accomplish** 8:23
**according** 25:20
**Accordingly** 13:25
**account** 15:5, 35:4, 35:24, 36:5, 36:11, 36:24, 37:6
**accountant** 7:14, 7:15, 10:8, 53:23
**accurate** 11:1, 63:4
**Across** 61:6
**actual** 32:6
**actually** 7:1, 15:22, 16:16, 36:3, 47:5, 50:21, 58:4, 59:10
**add** 9:2, 9:8, 11:19, 12:13, 12:25, 21:16, 52:4, 55:7
**addition** 33:15
**additional** 38:11, 39:25
**address** 6:11, 6:12, 18:25, 29:12, 34:4, 42:8, 45:17, 61:23
**addressed** 29:3
**addressing** 5:10, 26:14, 43:3
**adequacy** 14:8
**adjectives** 48:15
**adjourn** 17:25
**adjourned** 19:24, 61:13
**adjournment** 28:12
**adjust** 61:20
**adjustment** 61:20
**ADL** 2:5, 63:9
**administratively** 12:5
**affairs** 19:21
**affects** 30:24
**affidavit** 13:19
**afternoon** 3:12, 3:15, 3:18, 4:2, 4:15, 5:4, 5:18, 11:12, 29:11, 52:2, 58:12

**ago** 5:21, 8:11, 10:4, 10:16, 26:23, 35:2
**agree** 23:20, 33:23, 37:21, 39:18, 55:20
**Agreement** 23:25, 26:2, 26:21, 26:22, 27:3, 31:6, 31:11, 31:18, 32:5, 32:11, 32:24, 33:16, 33:18, 33:21, 39:9, 39:12, 40:5, 40:11, 40:18, 40:21, 40:24, 41:18, 41:19, 42:12, 42:16, 46:22, 47:10, 47:12, 47:25, 48:2, 49:24, 50:10, 50:12, 55:22, 55:25, 56:1, 56:2, 56:10, 59:8
**Agreements** 26:22, 40:23, 43:4, 49:5, 49:8
**agrees** 53:24
**ALANNA** 1:18
**almost** 49:4
**already** 13:5, 36:11, 36:23, 54:17, 58:12
**although** 3:8, 40:17, 60:24
**amended** 22:1, 36:12, 54:6, 54:8, 54:19
**amendments** 44:2
**Amer** 1:28, 5:3, 5:5, 11:13
**among** 18:1
**amount** 37:12, 37:13, 37:23, 38:6, 38:11, 38:12, 53:9
**amounts** 34:4, 37:18
**ample** 31:16
**and/or** 14:1
**answer** 14:21, 34:7, 34:8, 34:11
**answers** 27:9
**anticipation** 45:23
**anybody** 56:4
**anyway** 49:10
**apart** 32:6
**Apologies** 4:25, 11:11
**apologize** 5:23, 7:10, 25:1, 27:21, 28:3, 30:7, 30:8, 36:22, 40:9, 57:1, 61:9
**appeal** 57:6
**appear** 11:23
**appearance** 4:1
**APPEARANCES** 1:15, 2:1, 3:13, 61:12
**appearing** 3:19, 18:2

**Appellate** 57:6
**appreciate** 15:23, 28:18, 62:3
**appropriate** 6:10, 14:9, 16:9, 57:10, 57:13, 61:18
**approval** 54:8, 56:22, 56:23, 60:25
**Approximately** 30:10, 37:16, 37:19, 38:8
**April** 20:21
**arguable** 46:6, 61:23
**argue** 32:12, 33:4, 57:20
**argued** 34:2, 38:5, 55:4, 55:18
**arguing** 32:1, 32:2, 32:19
**argument** 17:12, 17:19, 18:12, 38:20, 48:3, 49:2
**arguments** 43:2, 45:15
**arising** 33:7
**around** 10:12, 20:24, 31:10, 31:13, 31:15, 38:7, 57:24
**arrears** 38:8, 53:9
**arrive** 36:13
**arrived** 14:23
**aspect** 44:22, 49:11
**assets** 33:2
**assigned** 27:5
**assume** 5:11, 29:8, 37:13, 37:14, 37:24, 38:25, 60:2
**assumed** 29:8
**attach** 31:7
**attached** 13:18, 56:9
**attachments** 47:9
**attempt** 30:17
**attention** 5:20, 14:10, 14:11, 17:24, 20:7
**attorney** 33:14
**attorneys** 15:17, 50:1
**audio** 3:9
**August** 19:13
**availability** 58:24
**available** 6:24, 38:13, 57:7
**Avenue** 1:25, 4:9, 18:19
**average** 33:12
**avoid** 45:10
**aware** 7:23, 21:23, 24:13
**away** 54:9

**< B >**
**Back** 9:22, 19:2, 19:7, 21:9, 21:11, 21:12, 21:17, 23:11,

25:7, 26:4, 28:17, 29:24, 30:2, 30:8, 30:25, 36:20, 38:22, 39:3, 39:4, 39:6, 43:8, 45:1, 45:17, 48:6, 48:15, 48:21, 49:18, 50:4, 52:4, 53:14, 57:19, 62:5
**background** 7:10, 18:22, 24:2
**bankrupt** 20:10
**Bankruptcy** 1:1, 1:12, 13:21, 13:25, 19:5, 24:3, 25:25, 29:9, 39:21, 41:2, 43:24
**barely** 55:6
**based** 22:22, 34:3, 38:16
**Basically** 20:6, 22:5
**basis** 13:12
**became** 26:11
**becoming** 6:24
**began** 28:22, 34:8, 51:24
**begin** 5:14
**behalf** 3:20, 4:16, 5:4, 5:5, 11:13
**behind** 44:2
**believe** 32:22, 37:7, 38:10, 45:3, 45:12, 54:12, 54:13
**best** 16:1, 17:3, 18:22, 24:24, 36:16, 36:17, 50:4, 55:2, 60:4, 60:18
**better** 5:24, 6:13, 23:1, 25:9, 49:6, 61:19
**bigger** 30:21
**bit** 18:24, 49:14
**blessing** 46:3
**Bley** 1:17, 5:13, 8:2, 8:4, 12:3, 15:18
**blurry** 55:5
**Blvd** 1:20, 1:35
**bought** 41:14
**Boys** 1:6, 3:4, 13:20, 13:22, 13:24, 14:3, 28:23, 35:11, 51:25
**break** 18:10, 18:13, 27:16, 28:2
**breaking** 10:18
**breathe** 57:19
**briefed** 55:4
**bring** 14:10, 15:12
**brings** 39:19
**broad** 39:17, 39:18
**broadly** 21:10
**broker** 20:13
**Brooklyn** 1:6, 1:26, 1:46,

60:15
**brought** 20:7, 29:13
**Building** 1:29, 58:6
**bullet** 49:9
**business** 26:18, 30:15, 31:6, 31:11, 31:12, 31:17, 31:18, 32:4, 32:6, 32:9, 32:11, 32:25, 39:9, 39:12, 40:5, 40:18, 41:9, 41:10, 41:14, 42:19, 42:21, 46:8, 46:20, 52:25
**businesses** 43:13
**busy** 57:20
**buy** 42:18, 42:21
**buyer** 48:17
**buying** 32:7, 32:9, 41:8

**< C >**
**Cadman** 1:45
**calendar** 3:5, 5:8, 6:11, 8:1, 8:11, 17:11, 29:6, 61:25
**calendared** 27:22
**call** 49:23, 50:3, 50:17, 51:12, 51:13
**called** 47:3
**Calling** 3:4, 49:23
**candor** 10:22
**capital** 22:5
**care** 52:25
**careful** 44:23
**carry** 32:24
**cart** 61:1
**Cascione** 1:38, 1:40, 3:7, 4:20, 4:22, 4:23
**case** 5:8, 6:3, 6:9, 9:3, 12:6, 13:25, 15:9, 16:17, 16:24, 17:19, 17:20, 24:7, 24:8, 25:15, 26:9, 29:7, 31:16, 32:17, 32:18, 33:22, 43:8, 47:17, 52:19, 54:23, 59:23, 61:12
**cases** 44:22, 47:5, 47:17, 47:21
**cash** 53:13
**cease** 13:25
**certain** 53:9
**certainly** 43:12, 46:22
**certify** 63:3
**challenging** 40:8

**Change** 11:24, 11:25, 14:6, 49:19
**changed** 12:2
**changes** 54:2
**Chapter** 6:8, 17:20, 19:15, 53:15, 58:10
**characterizing** 10:23
**cheap** 22:10, 22:14
**checked** 48:14
**cheerlead** 28:10
**Chicago** 1:21
**chose** 8:18, 37:1, 41:20
**Circuit** 25:15, 25:18, 26:7, 47:22
**circumstances** 15:5, 15:13
**cited** 24:14
**City** 1:36
**claims** 33:2
**clauses** 47:10
**clear** 17:23, 27:10, 40:17
**clearer** 6:1
**clearly** 26:15, 32:20
**CLERK** 3:4, 9:4, 9:6, 28:23, 45:20, 51:25, 62:8
**client** 6:19, 6:21, 7:13, 10:8, 13:16, 13:17, 15:25, 22:17, 29:14, 30:17, 32:7, 32:19, 32:20, 35:21, 41:13, 48:7, 50:22, 51:12, 52:21, 53:16, 53:17, 53:23, 53:24, 54:17
**clients** 46:24, 52:12, 52:14, 53:3, 55:23
**clock** 49:18
**close** 7:17, 17:24, 22:8, 31:13, 49:11
**closer** 7:1, 7:20
**Code** 24:3, 24:5, 24:12, 24:16, 27:7, 29:9, 39:21, 39:22, 39:23, 41:2, 41:6, 43:24, 48:11, 48:15
**collateral** 33:20
**COLLEN** 1:33
**combine** 52:18
**combined** 54:5, 54:15, 54:20, 56:17, 56:22
**combining** 52:15
**comes** 22:11, 40:16, 48:19, 56:21, 61:11
**comfort** 55:25
**comfortable** 12:10, 17:7

**coming** 22:8, 35:12, 35:16, 35:22, 36:1, 36:24, 37:4
**commit** 58:13, 58:14
**common** 46:5, 46:6
**communication** 10:18, 12:22, 14:1
**company** 22:5
**complaint** 19:11
**completely** 25:12
**component** 17:17
**comprehensive** 60:22
**concept** 32:2
**concern** 8:21, 41:3
**concerned** 28:7, 43:22
**concerning** 39:21
**concerns** 18:2
**conclude** 37:10
**concluded** 62:8
**concluded]** 62:10
**conditional** 56:22, 60:25
**confer** 27:24
**conference** 3:9, 5:8, 20:11, 22:23, 22:25, 38:19, 50:18, 51:19, 59:15, 61:12
**conferences** 20:23
**confidence** 50:12
**confident** 47:4
**confirm** 33:24, 43:3, 44:18, 46:15, 48:23, 48:24
**confirmation** 6:6, 25:23, 25:24, 27:3, 52:16, 54:7, 54:14, 54:21, 56:23, 60:10
**confirmed** 44:13, 44:19, 46:19, 48:9, 52:14
**conflict** 57:5
**conflicts** 59:1
**confuse** 14:25
**confused** 30:2
**Connected** 3:6
**consensual** 54:6
**consent** 56:21
**consequences** 50:13
**consider** 12:12, 28:15, 44:8, 46:23
**considered** 6:2
**considering** 30:20
**consistent** 8:14, 44:11
**contact** 14:1, 26:10
**contemplated** 26:17
**context** 18:22, 18:24, 25:13,

25:16, 44:3, 50:10, 54:6
**continue** 8:4, 8:9, 13:6, 13:24, 16:18, 28:13, 43:17
**CONTINUED** 2:2
**continuing** 14:5, 18:8, 61:1
**contract** 23:21, 25:20, 26:9, 26:15, 26:25, 30:24, 30:25, 32:12, 32:13, 32:17, 33:9, 33:10, 34:14, 39:13, 39:14, 39:19, 41:6, 41:11, 41:16, 47:18, 47:20, 47:23
**contracts** 23:11, 23:12, 25:17, 25:19, 26:16, 27:6, 29:14, 47:17
**contribution** 22:5
**conversation** 10:8
**conversations** 7:13
**convert** 5:9, 17:19, 20:21
**copy** 40:6, 40:7, 40:9, 40:10, 40:12, 40:14, 49:6, 52:25
**corner** 57:24
**corners** 43:23
**Corp.** 1:6, 3:4, 4:8, 4:9, 13:21, 13:22, 13:24, 14:3, 18:18, 18:19, 28:23, 35:11, 52:1
**Correct** 3:23, 4:21, 35:15
**correctly** 45:13
**corridor** 51:20
**Counsel** 3:24, 4:23, 5:15, 5:16, 6:4, 8:5, 8:10, 13:9, 13:12, 13:14, 14:1, 14:5, 15:10, 16:3, 16:12, 16:16, 16:17, 16:20, 19:2, 21:20, 27:13, 29:1, 37:14, 51:16, 61:21
**couple** 5:20, 8:11, 23:2, 35:2, 35:17, 37:5, 48:14, 52:24
**course** 14:9, 15:2, 15:8, 21:3, 27:17, 27:20, 27:25, 38:24, 61:2
**Courthouse** 58:2
**Courtroom** 49:19
**cover** 19:8
**covered** 33:20
**Covid** 19:4, 21:19
**creditor** 4:10, 5:9, 17:13, 18:20, 19:10, 21:4, 32:21, 32:22, 33:16, 33:17, 39:12, 52:9
**creditors** 38:25, 43:13
**cross** 5:11, 18:14, 31:8, 46:10,

61:21
**Crossway** 2:6, 63:10
**Cullen** 4:7, 18:17
**cure** 37:12, 37:14, 37:15, 37:17, 37:24, 38:8
**current** 12:7, 19:6
**curse** 46:4
**cut** 62:1

**< D >**
**D.** 1:19, 4:2
**damage** 53:4, 53:5
**Date** 11:15, 12:7, 15:1, 16:12, 20:14, 50:4, 52:25, 53:9, 59:9, 59:16, 60:1, 60:10, 60:23, 61:13, 61:19, 63:12
**day** 19:14, 44:18, 46:20, 58:13, 58:16, 59:11
**days** 5:21, 8:11, 12:23, 16:3, 16:12, 16:14, 16:22, 19:13, 20:16, 24:5, 26:4, 35:2, 37:6, 49:15, 50:11, 50:14, 56:11, 61:22
**deadline** 6:7, 20:14, 25:25, 33:24, 43:3, 44:12, 44:18, 45:1, 45:4, 46:15, 46:19, 47:18, 48:8, 55:16
**deadlines** 45:9
**deal** 38:14
**deals** 48:6
**debt** 21:17, 21:18
**debtors** 21:8, 23:7, 39:24
**December** 6:7, 33:24, 45:3, 45:12, 48:8, 52:13, 54:13
**decide** 9:18, 39:16, 43:1, 48:17
**decided** 9:17
**decipher** 44:9
**decision** 9:18, 25:18, 45:23, 45:24, 48:1, 49:12, 50:5, 50:9, 51:5
**decisions** 25:15, 26:1
**decisively** 8:24
**deem** 18:7
**deemed** 17:16, 17:17, 37:11, 39:6, 44:12, 46:21
**Deer** 2:7, 63:11
**defend** 33:1, 33:18
**deferred** 8:6, 48:21
**deferring** 17:18

**definite** 50:9
**definitely** 47:7
**delay** 51:7
**deliver** 32:23
**demand** 22:16
**department** 57:20
**depending** 56:7
**described** 10:17, 55:1, 60:20
**describes** 30:25
**describing** 14:14, 24:19, 36:3
**description** 33:2
**desire** 13:3
**details** 38:15
**determination** 17:15, 29:6
**development** 10:25, 21:11
**different** 10:17, 16:19, 29:9, 36:14, 44:6, 60:23
**difficult** 3:2, 49:6
**digressing** 22:23
**Diner** 20:2, 20:3, 20:13, 23:20, 28:13, 31:12, 31:13, 32:6, 32:8, 32:10, 43:16, 43:17, 52:23, 53:10, 53:12
**DIP** 35:4, 35:24, 36:5, 36:24, 37:6
**direct** 5:24
**directed** 20:9, 20:23
**direction** 15:21
**directional** 44:4
**directive** 5:25
**disavow** 9:24
**disclosure** 53:25, 54:4, 54:7, 54:8, 54:10, 54:13, 54:19, 54:20, 59:7, 60:25
**discourteous** 5:23
**discretion** 13:6
**discussed** 19:25
**discussions** 6:18, 38:1
**dismiss** 4:3
**disposition** 17:9
**dispute** 19:16, 19:19
**disputed** 31:25
**distinguishable** 25:12
**DISTRICT** 1:2
**Division** 57:6
**docket** 29:5, 61:11
**document** 13:18, 26:14, 33:13, 40:10, 44:5, 44:6, 55:6
**documentation** 13:23

**documents** 44:9, 49:5, 49:8
**doing** 36:17, 50:16, 54:15, 61:10
**dollars** 21:18
**done** 14:19, 22:3, 38:14, 43:9, 44:24, 44:25
**double** 9:5
**doubt** 31:20
**down** 61:11
**drafted** 41:17
**Drive** 2:6, 63:10
**due** 34:4, 37:18, 37:23
**During** 29:21, 29:22, 30:4
**duties** 32:14
**Dykman** 1:33, 4:8, 18:18

**< E >**
**e-mail** 8:19, 9:6, 10:23, 51:20
**eager** 43:13
**earlier** 24:10, 39:2
**early** 45:24, 52:10
**easier** 38:3, 51:18
**Eastchester** 1:42
**EASTERN** 1:2
**ECF** 14:17
**effect** 17:12
**effective** 13:21, 48:24, 53:8
**efforts** 60:4, 62:4
**eight** 24:21
**eighteen** 31:8, 40:4, 40:6, 40:15, 40:19, 47:8
**eighty-six** 58:10
**either** 23:17, 26:4, 42:8, 45:6, 46:9
**electronic** 2:47
**ELIZABETH** 1:11
**encourage** 51:1
**encouraging** 7:5, 7:7, 7:18
**end** 24:6, 43:4, 44:14, 46:1, 50:14, 51:4, 53:14
**enough** 14:17, 22:4, 22:6, 26:13, 43:1, 48:19
**ensure** 13:22
**ensured** 20:1
**entered** 48:24, 52:22, 56:15, 58:22
**entire** 18:3
**entirely** 54:10
**entitled** 16:4, 16:10, 16:22,

61:23
**entity** 16:20
**entry** 17:2
**equal** 34:15, 35:23
**equipment** 33:20
**equitable** 24:15
**equity** 25:23
**errors** 19:20
**especially** 17:8
**ESQ** 1:18, 1:19, 1:24, 1:28
**ESS** 1:4
**establish** 47:7
**established** 13:13, 24:13
**etc.** 21:20
**Eve** 44:19
**everybody** 53:24, 54:2
**everyone** 3:12, 5:7, 6:14, 15:4, 28:25
**everything** 6:12, 8:12, 34:4, 36:17, 44:11, 50:24, 56:20, 56:21, 59:22
**evidentiary** 13:19
**excuse** 18:5, 39:6, 49:16, 49:22
**execute** 32:22
**executors** 27:4
**executory** 26:15, 26:22, 26:25, 32:13, 32:17, 33:10, 34:14, 39:12, 39:19, 47:13, 47:22
**Exhibit** 23:15, 31:7, 32:7
**existed** 47:12
**expect** 60:18
**explain** 7:19, 8:22, 17:10
**extended** 6:7, 48:8, 48:23
**extensive** 7:13
**extent** 29:4

**< F >**
**fabulous** 21:10
**face** 36:18
**facilitate** 59:23
**fact** 25:25, 31:23, 33:11, 47:8
**facts** 25:13, 27:4
**factual** 55:5
**Failed** 32:11, 39:9, 40:5
**fairly** 8:22, 23:3
**far** 37:13, 57:4
**farther** 14:4
**fast** 23:22

**Federal** 1:29, 45:9, 45:25
**feel** 49:23
**feels** 46:1, 47:6
**fees** 38:9, 54:16, 54:17
**few** 19:13, 28:16, 36:13, 39:10, 45:22, 56:10
**fifteen** 38:17
**fighting** 23:3
**figure** 52:5, 59:5
**file** 6:6, 15:21, 20:10, 21:24, 49:6, 55:17, 56:25
**filed** 5:13, 11:15, 14:7, 16:12, 19:10, 19:14, 20:21, 40:8, 43:8
**filing** 14:18, 15:20, 16:10
**filings** 24:18
**final** 34:16, 56:22
**finality** 43:5, 43:7
**finances** 21:14
**financial** 19:21
**financials** 19:23, 20:4
**find** 23:16, 37:11, 50:4
**finding** 39:5
**Fine** 43:11, 51:12, 56:20, 56:23, 57:8, 57:15, 57:17, 59:18, 59:20
**finish** 10:21
**Fioto** 1:33, 4:6, 4:8, 4:21, 4:24, 18:18
**firm** 3:20, 5:13, 8:3, 12:3, 13:15, 15:18, 21:2, 44:12, 50:9, 53:10
**firms** 12:9
**First** 12:15, 24:1, 24:8, 28:9, 42:3, 47:15, 51:11, 52:7, 59:25
**five** 18:12, 25:6, 27:15, 27:19, 40:18
**flatly** 24:5
**Floor** 1:45
**Florida** 19:4
**flow** 53:13
**focus** 39:4
**focusing** 17:16
**follow** 9:7, 24:24
**following** 48:7
**follows** 16:1
**Footnote** 25:6
**footnotes** 24:21
**force** 34:11

**foregoing** 63:3
**forever** 33:1, 33:17
**formally** 17:2
**fortunate** 16:16
**Forty** 29:18, 30:10, 30:15
**forty-eight** 15:20
**forty-hours** 14:16
**forty-six** 29:5
**forward** 16:1, 23:22, 50:8, 51:8, 52:5, 59:24
**forwarded** 13:23
**found** 6:17, 37:5, 53:21
**four** 3:5, 25:4, 43:23
**franchise** 26:21, 31:22, 32:2, 32:3, 47:24, 47:25, 48:2
**Frankly** 22:21
**free** 11:5, 17:1
**Friday** 45:25
**front** 4:25, 24:18, 59:6
**frustrating** 48:22
**full** 39:1, 49:15
**fully** 26:3
**funding** 6:22, 6:24, 7:15, 29:14, 29:15, 29:20, 29:24, 43:11
**furnished** 33:13
**future** 30:13

**< G >**
**G.** 1:18, 1:40
**GALLOZZI** 1:38
**Galluzzi** 4:24
**gap** 27:4
**gaps** 19:20
**Garden** 1:36
**gas** 48:2
**gather** 61:3
**gave** 7:9, 10:17
**general** 28:7
**generally** 44:2
**gets** 50:9
**getting** 32:16
**gist** 53:15
**give** 18:21, 36:1, 45:22, 45:23, 49:12, 50:6, 55:2, 59:12
**given** 13:3, 19:6, 23:14
**glad** 7:7, 55:8
**global** 60:22
**goals** 36:16

**gonna** 3:8, 15:12, 16:2, 17:10, 18:21, 18:22, 19:8, 19:19, 20:1, 20:3, 24:9, 25:22, 27:20, 27:23, 45:22, 49:10, 49:17, 49:21, 52:14, 59:17, 60:11, 61:4
**goodness** 27:17, 58:5
**GOTTESMAN** 1:44, 3:7, 4:13, 4:15, 4:16, 55:7, 55:10
**grant** 16:2, 35:22
**granted** 16:5, 16:21, 17:1, 61:22
**granting** 15:3
**grateful** 28:16, 30:21
**great** 46:4
**ground** 46:5
**guess** 14:17, 16:10, 16:13, 46:3, 57:9

**< H >**
**half** 20:24, 21:18, 28:11
**handle** 21:14
**happen** 45:1, 54:16, 60:9
**happened** 20:6, 29:16, 53:2
**happening** 20:8, 26:18
**happens** 22:19, 33:23, 33:24, 44:18
**happy** 17:22, 18:10, 27:9, 38:25
**hard** 44:9, 44:12, 45:10, 48:8, 50:12
**hate** 22:10
**hear** 3:2, 5:14, 6:8, 7:7, 8:24, 8:25, 11:1, 11:4, 11:6, 11:8, 11:9, 17:12, 17:22, 18:11, 18:13, 18:14, 21:4, 21:5, 27:13, 27:14, 27:23, 28:6, 29:1, 29:3, 38:22, 44:15, 52:5
**heard** 13:9, 15:15, 45:19
**hearing** 5:23, 11:5, 17:25, 18:3, 18:4, 18:8, 36:8, 52:16, 54:5, 54:20, 56:22, 58:14, 60:12, 60:21, 61:3, 62:8
**hearing\*\*** 3:3
**Heart** 11:24
**help** 6:1, 24:20, 45:16
**helpful** 6:14, 8:13, 14:13,

27:12, 31:3, 46:15, 49:3, 55:8
**helps** 61:23
**hereby** 13:20
**hereof** 40:24, 49:8
**history** 12:23, 44:2
**hold** 59:25, 60:1
**holding** 59:16, 60:1, 61:13, 61:19
**holiday** 45:9, 45:25
**holidays** 45:10
**honest** 9:14
**honestly** 56:12
**HONORABLE** 1:11
**hope** 31:3
**hoped** 17:21
**hopeful** 38:14, 54:25
**hoping** 49:13
**horse** 61:1
**hours** 7:17, 15:21
**HOWARD** 1:44
**huge** 22:2
**hundred** 20:15, 20:16, 21:3, 21:13, 26:4, 31:13, 39:1

**< I >**
**idea** 54:5
**identified** 18:5, 18:7
**identifies** 23:13
**identify** 23:13
**IL** 1:21
**immediately** 13:21, 48:13, 48:25
**implied** 22:15
**importance** 36:7
**important** 15:23, 19:1, 30:22, 36:15, 43:25, 47:6
**impression** 10:17
**in.** 37:4
**Inc.** 2:5
**inclined** 58:13
**include** 8:24
**includes** 8:1, 41:15
**including** 15:19, 33:14, 43:24, 55:5, 56:4, 60:19
**incorrect** 15:22
**indemnification** 33:6
**indemnity** 47:2
**indicate** 43:16

**indicated** 13:14, 20:11, 43:10, 50:25
**indicating** 55:17
**indication** 14:5
**indirectly** 59:8
**inform** 51:20
**information** 14:13, 42:4
**inspiring** 50:12
**instance** 32:21
**instead** 19:17
**instructed** 18:21
**instruments** 32:23
**insurance** 12:8, 38:10
**intention** 8:15
**interest** 46:6
**interested** 52:12
**interesting** 25:16, 26:8, 46:6, 46:7, 50:6
**interrupting** 5:22
**intersect** 43:14
**invite** 49:22
**involving** 13:22
**Irene** 2:2, 4:19, 14:2
**issue** 18:20, 26:8, 47:7, 55:18
**issues** 15:19, 15:24, 21:19, 46:7, 50:6, 55:4, 55:12
**items** 22:1
**itself** 31:12, 31:14, 41:16

**< J >**
**Jackson** 1:20, 9:3, 27:24, 51:12, 51:20, 58:16
**job** 28:14
**jobs** 53:1
**join** 58:10
**joint** 56:9, 59:22
**Judge** 1:12, 3:13, 8:7, 9:6, 9:14, 9:18, 11:9, 12:17, 19:3, 21:5, 52:3, 52:8, 59:18
**judgment** 4:10, 4:12, 5:9, 17:3, 17:13, 18:19, 19:9, 19:10, 19:13, 19:17, 23:14, 26:11, 27:2, 52:9
**jury** 51:19

**< K >**
**keep** 45:25, 49:20, 50:24, 60:17

**Keevan** 1:19, 4:2
**Kellogg** 31:12, 32:8, 32:10
**kind** 7:1, 23:1, 33:2, 53:16, 58:9
**knowledge** 12:3, 12:4
**known** 5:1, 18:18

**< L >**
**landlord** 4:9, 5:9, 5:21, 17:13, 17:14, 18:19, 28:9, 29:3, 30:16, 30:20, 37:18, 39:11, 43:7, 46:21, 46:25, 47:14, 48:10, 52:9, 52:23, 54:2, 55:13, 61:16
**landlords** 14:2, 39:24
**language** 40:3, 41:11, 41:16
**lapsing** 12:8
**large** 38:12
**larger** 27:4
**last** 19:6, 22:25, 26:9, 37:5, 38:16, 42:3
**late** 10:18
**later** 25:24, 49:20, 61:19
**Latif** 1:28, 3:7, 5:1, 5:3, 5:4, 5:5, 9:2, 9:4, 9:5, 11:1, 11:4, 11:6, 11:7, 11:9, 11:11, 11:13, 11:22, 50:1
**LAW** 1:23, 24:7, 31:16
**lawyer** 12:11, 13:16, 15:25
**LEA** 1:24
**leading** 7:12
**learn** 60:9
**learned** 6:23
**lease** 5:10, 17:15, 18:7, 18:20, 20:19, 20:22, 23:5, 23:9, 23:19, 23:24, 24:4, 26:3, 26:19, 26:25, 27:5, 29:7, 38:8, 38:10, 39:6, 41:15, 41:17, 41:18, 41:21, 41:23, 41:25, 43:22, 44:5, 44:12, 46:20, 47:11, 48:1, 48:2, 48:3, 48:9
**leases** 26:7, 39:22, 39:24, 41:3, 41:12
**least** 45:10
**leave** 17:3, 38:3, 41:1, 51:15
**left** 16:19
**legal** 38:9, 50:6, 54:15, 54:17, 55:4

**legislative** 44:1
**legislature** 26:6
**lengthy** 10:7
**less** 14:16, 15:19, 15:20
**letter** 28:12, 43:14, 55:17, 56:9, 56:25, 57:8, 58:19, 59:16, 61:17
**level** 55:25
**likely** 49:25, 61:14
**likes** 17:6, 48:6
**limitations** 47:15
**limits** 43:24
**line** 21:23, 22:1, 28:10, 42:3
**lined** 48:18
**lines** 46:22
**list** 21:24
**little** 7:9, 9:14, 18:24, 49:14
**LLP** 1:33, 4:16
**loan** 30:18, 39:5
**location** 42:22
**long** 31:15, 49:14, 60:25
**longer** 13:14, 13:15
**look** 15:10, 23:15, 32:6, 56:2, 58:21
**looking** 24:19, 45:11, 50:14, 58:8, 60:23
**looks** 58:15
**lot** 10:5, 21:11, 25:13, 38:6, 44:1, 48:15, 49:14, 53:21, 60:9
**lots** 19:20
**LTD** 1:17
**luck** 62:1
**Lynn** 63:3

**< M >**
**magnitude** 38:23
**mail** 14:19, 14:23, 16:14
**MALE** 60:12, 61:5, 61:7, 61:9
**managed** 26:23
**management** 5:8, 6:3, 6:9, 9:3, 61:12
**mandates** 24:12, 24:16
**March** 20:10
**Marcum** 1:44, 4:14, 4:16, 7:14, 21:2, 21:21
**marking** 61:11
**Matter** 1:4, 13:21, 22:18, 23:22, 26:6, 27:22, 27:24,

28:23, 34:3, 45:18, 45:21, 50:3, 51:7, 51:13, 51:22, 55:17
**matters** 3:4, 5:8, 6:2, 6:11, 51:25, 58:11
**Mcdonald** 32:4
**mean** 34:11, 36:9, 39:22, 43:21, 46:18, 48:11, 56:13, 58:10
**means** 16:9
**meant** 36:20
**mediation** 20:23, 20:25
**medical** 18:2
**meet** 22:16, 59:23, 60:19
**meeting** 11:5
**mentioned** 24:8
**mentions** 47:16
**merits** 28:15
**mess** 58:9
**met** 18:5
**Metropolitan** 1:34, 4:6, 4:9, 4:24, 18:19
**middle** 38:20
**million** 21:18
**mind** 22:11, 22:13
**minute** 18:13, 18:21, 27:15
**minutes** 28:16, 45:22, 49:21
**mischaracterizes** 24:3
**misheard** 30:8
**misidentifies** 15:22
**misinformed** 10:1
**missed** 47:14
**missing** 58:16
**misspoke** 30:7
**misstate** 36:15
**misunderstand** 9:25
**misunderstanding** 14:6
**moment** 3:21, 15:20
**Monday** 58:11
**money** 22:4, 22:6, 22:9, 22:16, 29:16, 30:14, 35:3, 35:6, 35:8, 36:4, 36:12, 36:23, 37:4, 48:19
**month** 20:24, 44:13
**monthly** 6:5, 11:14, 12:7, 21:15, 22:2
**months** 20:6, 22:10, 23:2, 38:17
**Morgan** 1:17, 1:18, 1:19, 3:6, 3:17, 3:18, 3:19, 3:23, 3:25,

4:2, 4:3, 5:13, 6:18, 8:1, 8:2, 8:3, 8:4, 8:6, 8:7, 9:23, 9:24, 10:3, 12:3, 12:14, 12:15, 12:17, 12:19, 12:24, 13:1, 14:22, 14:25, 15:7, 15:8, 15:9, 15:18, 16:18, 21:2, 38:15
**morning** 5:3, 11:12, 58:12
**mortgage** 53:10
**motions** 17:11, 17:14, 61:15
**move** 51:7, 51:21, 56:16
**moved** 17:23, 18:3
**moving** 59:23
**multiple** 59:1
**mute** 9:5, 11:7, 50:25
**myself** 46:1

**< N >**
**name** 3:10, 31:17, 32:8, 32:10
**nature** 30:25
**necessarily** 39:19
**necessary** 7:10, 18:11, 33:14, 37:12
**need** 6:2, 11:4, 14:4, 16:13, 18:25, 27:18, 28:6, 38:22, 44:24, 44:25, 46:23, 50:3, 50:8, 50:22, 51:5, 53:22, 55:13, 55:20, 55:23, 55:24, 56:10, 57:19, 57:20, 59:4, 59:6, 59:12, 59:13, 59:14, 60:20, 60:23, 61:2, 61:20
**needs** 16:8, 18:5, 18:6, 50:1, 51:9, 59:23, 60:19
**negotiations** 19:7
**neighborhood** 58:2, 58:3
**New** 1:2, 1:31, 2:7, 36:4, 44:19, 53:1, 55:14, 63:11
**news** 7:25, 9:10, 10:18, 60:21
**next** 8:23, 12:12, 23:2, 33:23, 35:17, 36:13, 45:1, 45:24, 46:20, 49:13, 49:15, 50:3, 50:16, 51:21, 52:10, 58:8, 59:9, 60:4
**night** 57:10
**nineteen** 40:16
**no.** 38:21
**nobody** 17:6, 17:7
**non-residential** 29:7, 39:21, 39:24, 41:3

**none** 25:19
**nor** 51:8
**normal** 53:11
**Normally** 20:15
**note** 14:12, 16:5, 19:6, 19:11, 19:18, 23:14, 23:25, 26:24, 27:2, 40:24, 41:10, 41:15, 53:9
**noted** 61:12
**notes** 45:11
**Nothing** 11:15, 14:20, 20:6, 20:8
**notice** 8:21, 13:2, 14:8, 14:16, 14:17, 14:19, 14:20, 15:1, 15:3, 15:21, 16:3, 16:4, 16:6, 16:10, 16:11, 16:13, 16:22, 39:23, 61:22, 61:23, 61:24
**notify** 13:19
**November** 58:15, 59:17, 60:2, 60:6, 60:11, 61:13
**number** 5:7, 15:19, 17:18, 24:7, 27:19, 29:5, 32:3, 50:5
**numbers** 3:5, 38:6, 38:23, 40:17
**numeral** 17:18
**NY** 1:6, 1:26, 1:36, 1:42, 1:46
**NYCB** 14:15
**NYEB** 14:15

**< O >**
**O'reilly** 63:3
**object** 52:15
**objection** 11:18, 15:21
**objections** 43:4, 16:12
**objectives** 43:15
**obligated** 33:17
**obligation** 10:22, 23:17, 26:14, 32:21, 33:15, 47:13
**obligations** 32:19, 32:20, 33:16, 39:11, 39:16
**obtain** 35:1, 35:14
**obtained** 34:15, 34:20, 34:23, 35:9, 35:11
**obviously** 13:5, 19:8, 53:2, 53:22
**occurred** 21:11
**October** 10:18, 21:19
**Office** 1:23, 1:29, 5:2, 5:5, 9:1,

11:13, 11:19
**official** 3:9
**often** 17:5
**Okay** 4:11, 7:3, 8:9, 8:17, 8:20, 9:12, 9:16, 10:9, 12:5, 15:14, 25:2, 25:5, 25:20, 27:21, 38:1, 40:21, 51:3, 57:18, 61:8
**old** 22:10, 40:10
**One** 3:5, 12:9, 15:7, 15:17, 18:21, 21:3, 21:23, 22:5, 24:2, 26:11, 30:20, 30:24, 32:3, 32:8, 39:18, 43:14, 43:15, 43:25, 44:4, 46:2, 47:1, 49:16, 50:8, 51:5, 51:7, 52:6, 53:5, 55:10, 55:21
**ongoing** 32:14, 32:18, 32:20, 39:10, 39:16, 46:8
**open** 41:13, 58:16
**opening** 41:7
**operate** 48:18, 48:20
**operates** 48:19
**operating** 6:5, 11:14, 12:7, 21:15, 21:22, 22:2
**operation** 14:18
**operative** 44:4
**opinion** 11:17
**opportunity** 8:24, 16:8, 51:1, 51:14, 52:3, 55:3
**opposed** 20:4
**opposes** 23:7
**opposing** 14:1
**opposite** 27:8, 32:13
**opposition** 5:12, 11:24, 16:6, 18:14, 23:16, 29:2, 31:7, 39:4
**optimism** 46:4
**oral** 38:20, 45:24
**order** 15:3, 16:3, 16:11, 16:21, 17:2, 18:3, 37:12, 37:14, 37:24, 38:23, 52:21, 56:8, 56:10, 56:15, 57:4, 57:5, 57:9, 57:13, 58:22, 59:6, 61:17, 61:22
**orderly** 6:13
**others** 39:19
**otherwise** 18:11, 38:3, 48:9
**outlines** 55:2
**outset** 16:17

**overall** 31:6, 31:11, 32:4, 39:8
**overlap** 43:15
**overnight** 16:14
**override** 24:12, 24:15, 26:6
**overstate** 36:15

**< P >**
**p.m.** 14:8, 61:14
**Page** 24:14, 25:4, 40:18
**pages** 24:21
**paid** 17:24, 39:1, 43:13
**pandemic** 29:20, 29:21, 30:5
**paper** 57:13
**papers** 20:10, 24:14, 32:7
**Paragraph** 31:8, 32:8, 40:4, 40:5, 40:15, 40:18, 47:8
**parallel** 49:4
**parcel** 31:6, 31:10, 34:14, 59:7
**parishes** 60:13
**Park** 2:7, 63:11
**Part** 17:14, 31:5, 31:9, 31:10, 31:18, 34:13, 40:23, 41:9, 41:19, 41:20, 44:11, 47:9, 49:8, 50:2, 51:16, 55:19, 59:7
**Parties** 3:8, 6:12, 14:11, 16:4, 16:10, 16:22, 26:1, 38:4, 39:23, 40:7, 41:4, 44:15, 49:18, 51:15, 55:16, 56:24, 60:16, 60:19, 61:16, 61:22
**parts** 41:11
**party** 16:10, 23:17
**passed** 5:11, 15:2, 21:12
**past** 12:22
**path** 16:1, 46:2, 50:8, 52:5
**patiently** 49:18
**pay** 6:22, 7:16, 21:17, 30:12, 37:8, 37:9, 53:10
**payments** 22:6, 53:11
**payroll** 30:13
**pending** 5:15
**People** 46:23, 58:5
**per** 32:2
**percent** 21:3, 21:13, 29:18, 30:11, 30:12, 30:14, 30:15, 39:1
**perhaps** 8:6, 9:25, 50:15, 51:21, 56:4
**period** 14:19, 15:4, 50:10,

50:13
**person** 17:21, 17:25, 18:2, 50:17, 51:18, 60:3, 60:7, 60:16
**perspective** 11:20
**persuaded** 39:15
**petition** 20:14, 30:4
**phone** 7:17
**pick** 41:25
**picture** 16:7, 30:22, 44:12
**pictures** 53:3
**piece** 16:7, 57:12
**Place** 5:17, 19:21, 24:19, 58:1
**plain** 41:11, 41:15
**Plains** 1:41
**plan** 21:3, 21:13, 22:7, 30:13, 33:24, 43:3, 44:13, 44:18, 44:19, 46:15, 46:19, 48:9, 48:23, 52:14, 52:20, 53:8, 53:13, 54:6, 54:7, 54:21, 59:6
**plans** 39:1
**Plaza** 1:45
**Please** 3:10, 3:14, 4:1, 10:21, 12:1, 13:22, 18:16, 27:13, 36:21, 40:19, 49:6, 51:13, 36:18, 60:1
**plus** 36:12, 38:9
**point** 16:18, 19:25, 20:2, 25:9, 27:8, 43:10, 44:21, 47:8, 51:9, 54:22, 54:24, 56:8, 56:16, 60:24, 61:2
**points** 28:8, 28:9, 43:22, 47:1, 49:9
**portion** 17:13, 28:15, 29:2
**position** 11:17, 11:25, 12:2, 27:9, 40:6
**possession** 32:25, 33:3
**possible** 7:19, 18:23, 49:13, 52:17, 53:12, 55:3, 58:23, 59:15
**possibly** 7:16
**Post-petition** 19:19, 22:22, 37:18, 38:17
**posture** 18:9
**powers** 24:15, 33:14
**PPP** 29:14, 29:15, 29:20, 29:24, 30:11, 30:13, 30:16, 30:18
**practical** 26:5, 34:3

**pre-petition** 19:3, 37:17
**precise** 36:7, 37:10
**predominant** 47:18
**prefer** 50:21, 60:7
**preliminary** 54:8
**premises** 20:19, 20:20
**prepared** 18:11, 49:11
**present** 8:12
**press** 8:9
**presumptuous** 56:13
**pretty** 12:6, 49:15
**primarily** 26:10
**principal** 4:18, 4:20, 13:13, 18:1
**Prior** 29:15, 29:20, 29:23, 29:24, 30:4
**probably** 7:10, 8:21, 11:24, 12:12, 14:13, 44:14, 49:25, 58:11
**problem** 39:22
**problems** 24:1
**procedurally** 13:6
**proceed** 6:1, 16:15, 17:10, 18:16, 27:11, 43:2, 50:25
**proceeding** 17:1
**Proceedings** 2:47, 63:4
**process** 55:14
**produced** 2:49
**productive** 55:16, 59:24
**professional** 15:24, 17:3
**promissory** 19:6, 19:11, 19:18, 23:14, 23:25, 26:23, 26:24, 27:2, 41:10, 41:15
**promptly** 14:10, 49:13, 59:15
**properly** 13:23
**Properties** 4:8
**Property** 18:18, 23:12, 29:7
**proposal** 36:25
**proposed** 6:22, 10:10, 10:11, 16:2, 16:11, 16:21, 21:3, 37:3, 37:8, 57:8, 57:9, 57:13, 61:17
**proposing** 21:8
**protection** 30:13
**provide** 15:3
**provided** 10:7, 14:17
**provides** 15:19, 33:17
**provision** 33:7
**provisions** 39:23
**public** 16:25

**pull** 47:5
**purchase** 23:20, 33:9, 41:9
**purchaser** 33:1, 33:18
**Purcigliotti** 1:38, 4:23
**purpose** 38:5
**purposes** 30:16, 44:5, 61:13
**put** 22:4, 39:20, 39:23, 61:1
**putting** 15:1

**< Q >**
**quality** 13:19
**Quentin** 1:35
**question** 5:10, 12:1, 12:8, 14:8, 19:24, 34:8, 34:12, 38:24, 44:8, 45:16, 50:5
**questions** 19:22, 27:10, 38:2, 56:12
**quickly** 27:16, 27:23
**quite** 14:9, 20:5, 36:20

**< R >**
**R.** 1:34
**races** 58:23
**Rachel** 1:23, 1:24, 3:15, 5:18, 13:23, 29:11, 46:13, 53:20, 57:3, 58:25
**radiating** 37:25
**raises** 15:19, 50:5
**ran** 19:23
**rapidly** 56:17
**rather** 26:19, 56:17
**rational** 27:8
**Re** 1:4, 31:19
**reached** 19:9
**read** 13:17, 39:20, 40:8, 40:19, 41:25, 44:9, 48:1, 49:7
**readable** 55:5
**ready** 29:1
**real** 22:20, 27:16, 29:7
**really** 6:21, 10:5, 10:14, 26:15, 30:23, 51:8, 51:14, 55:1, 61:16
**reason** 43:25, 51:14
**Reasonably** 31:25
**reasoning** 25:13
**reasons** 18:1, 27:19, 44:1
**Recall** 28:22, 51:24
**Recalling** 28:23, 44:2, 51:25

**received** 10:24, 15:2, 17:24, 29:19, 30:11
**recent** 10:25
**recently** 5:13, 6:17, 6:23, 34:15
**recognizes** 13:3
**recommend** 52:21
**record** 3:9, 3:14, 4:1, 6:2, 6:14, 12:14, 13:17, 16:21, 16:23, 17:23, 18:17, 27:18, 28:21, 34:18, 34:24, 36:8, 38:4, 38:22, 40:19, 49:11, 49:24, 51:23, 52:4, 53:21, 55:5, 55:7, 55:8, 59:1, 60:22, 63:4
**recorded** 2:47
**recording** 2:47, 62:9
**records** 13:22, 53:1
**reference** 24:20, 44:4
**referenced** 31:19
**reflected** 16:21, 16:23
**refocus** 39:4
**refund** 36:24, 37:7
**refunds** 35:22
**regarding** 7:15
**regardless** 48:17
**regular** 7:14
**reject** 23:4, 23:9, 23:24, 26:3, 27:2, 29:8
**rejected** 17:16, 17:17, 18:8, 19:12, 20:22, 29:8, 37:11, 39:6, 44:13, 46:21, 48:10, 48:25, 52:13
**rejection** 18:20, 20:19
**relief** 5:12, 17:14, 17:16, 17:17, 29:2, 30:19, 46:21
**relies** 25:10, 47:17, 47:22
**relieved** 8:10
**relieves** 17:2
**relieving** 16:3, 16:11
**relying** 14:15
**remaining** 30:12
**Remember** 34:8, 45:7, 45:13
**remind** 3:8, 10:22, 36:7
**reminding** 45:25
**remote** 18:8
**rent** 30:12, 30:17, 53:11
**reorganization** 20:4, 55:3
**reorganize** 20:12, 43:13
**rep** 33:7
**rephrase** 36:23

**report** 6:6, 11:16
**reports** 11:15, 12:7, 21:16, 21:22, 22:2, 36:12
**represent** 12:20, 13:24, 60:13
**representation** 13:20
**represented** 13:15
**representing** 3:16, 5:19, 12:9, 14:2, 15:11, 15:17, 29:12
**request** 8:1, 17:24, 18:6, 18:12, 37:11, 59:16, 59:21, 60:17
**requested** 29:2
**requesting** 8:5
**require** 43:3, 52:23
**required** 23:5, 24:11, 32:23
**requirement** 54:9
**requirements** 39:25, 41:2, 43:24
**requires** 33:18
**reserve** 9:17
**reset** 49:19
**resist** 21:9
**resolution** 28:10, 50:11, 50:13, 60:22
**resolved** 55:19, 55:20
**resources** 54:18
**respect** 12:2, 18:6, 30:19, 61:15
**respects** 24:7
**respond** 23:10, 30:23, 40:1, 43:17
**responded** 37:2
**response** 13:10, 15:16, 27:10, 30:21, 45:16, 59:21
**rest** 17:11, 47:5
**restaurant** 41:8
**restroom** 27:16
**result** 21:10
**resume** 28:17
**return** 33:9
**Richard** 1:44, 4:16
**river** 61:6
**Road** 1:41, 51:5
**roman** 17:18
**room** 45:22, 50:18, 51:19
**Roosevelt** 1:35
**roughly** 36:24
**Rowe** 58:1
**ruling** 59:12, 59:13, 59:14
**run** 27:16, 30:15

**< S >**
**S.** 1:11
**sad** 36:6
**sake** 17:23, 27:17
**salad** 41:8
**sale** 23:25, 33:9, 40:18, 47:10
**satisfy** 56:3
**saw** 3:25
**saying** 23:8, 28:12, 36:18, 47:9, 54:19
**says** 21:24, 23:4, 23:8, 24:5, 35:21, 40:6, 40:19, 42:14, 42:17, 55:21
**schedule** 13:5
**scheduled** 17:22, 19:15
**schedules** 19:20, 21:15, 21:21
**screen** 52:6
**se** 32:2
**Second** 24:9, 25:11, 28:11, 49:16, 50:17, 51:13, 59:25
**section** 29:9
**sections** 39:20
**secured** 32:21, 32:22, 33:5, 33:16, 33:17, 33:19, 33:20, 39:11
**security** 33:21, 40:11, 40:24
**seek** 8:4
**seeking** 17:15, 29:6, 30:20, 43:8
**seeks** 39:5
**seem** 13:12, 43:23, 44:10
**seemed** 22:25
**seems** 12:6, 18:15, 25:8, 50:15
**seen** 16:8, 44:22
**sell** 20:2, 20:13, 33:8
**seller** 19:7, 32:15, 32:18, 32:25
**selling** 26:18, 33:8
**send** 8:18, 50:17
**sense** 9:14, 26:15, 27:3, 38:6, 38:23, 44:10, 50:1, 50:15, 51:10, 55:23, 56:1, 56:5, 59:22
**sent** 10:24
**separate** 29:4, 32:5, 39:10, 41:17, 41:18, 56:6
**separately** 49:9, 55:4
**serve** 16:14
**serves** 38:5

**Service** 2:49, 15:18, 16:15, 16:24
**Services** 2:5, 8:19, 63:9
**serving** 16:9
**Set** 33:23, 43:2, 45:9, 46:14, 48:21, 55:16, 59:14, 59:21
**Settle** 16:2, 16:21, 61:22
**settlement** 6:18, 6:20, 6:22, 7:2, 7:20, 10:11, 19:9, 27:3, 34:17, 36:25, 37:3, 37:8, 38:1, 38:19, 55:19
**settling** 53:7
**seven** 16:3, 16:12, 16:14, 16:22, 24:21, 24:22, 61:22
**seventeen** 40:16
**Seventh** 25:17, 26:7, 47:22
**shall** 55:8
**shape** 12:6
**short** 13:2, 14:9, 18:10, 28:2, 58:9, 59:9
**shortcomings** 61:24
**shortened** 14:19, 15:4
**shorter** 46:1
**shouldn't** 52:19
**show** 38:13, 40:7
**shows** 21:25
**Sid** 1:6, 3:4, 13:20, 13:22, 13:24, 14:2, 28:23, 35:11, 51:25
**side** 55:21
**Siderakis** 2:2, 3:7, 4:17, 4:19, 8:18, 14:2
**sides** 22:25, 44:8
**Signature** 63:7
**significantly** 7:1, 7:20
**silly** 40:16
**similar** 32:3
**simply** 26:6
**Sincerely** 14:2
**sit** 22:21
**situation** 16:19, 17:6, 19:5, 36:16, 46:16, 48:21, 55:2
**situations** 25:24
**six** 20:6, 24:21
**sixteen** 22:9
**sixty** 30:12, 30:14
**sixty-seven** 21:25
**small** 14:15
**software** 60:15
**sold** 20:4

**somehow** 21:17
**someone** 49:5
**Sometimes** 17:5, 44:24
**somewhat** 39:18, 40:8, 46:8
**Somewhere** 41:14, 42:14, 42:17
**soon** 6:25, 8:22, 8:24, 35:13, 45:24, 51:6
**sooner** 61:18
**Sorry** 7:6, 9:21, 11:25, 21:9, 22:12, 25:2, 30:10, 36:14, 40:23, 46:13, 47:19, 51:17, 54:4, 57:1, 57:16
**sort** 22:15, 22:23, 25:8, 37:25, 50:2, 53:15
**sound** 2:47, 40:16, 56:24
**sounds** 55:8
**source** 6:22, 7:15, 15:24, 22:8, 35:20, 36:12
**speaking** 3:11, 9:24, 19:2, 21:10, 36:8
**speaks** 41:16
**specific** 39:23, 40:3, 42:22
**specifically** 31:8, 31:9, 32:5, 32:10, 39:9, 39:21, 40:3, 41:2, 41:14, 41:20
**speed** 15:12
**spent** 20:24, 54:17
**spoke** 6:19, 6:21
**squinting** 49:7
**standpoint** 50:11
**start** 5:17, 18:15, 57:10
**starting** 6:3
**State** 3:10, 4:22, 51:15, 57:6, 57:22
**stated** 32:5, 40:3
**statement** 19:21, 54:1, 54:5, 54:7, 54:9, 54:10, 54:13, 59:7, 60:25
**statements** 30:23
**States** 1:1, 1:12, 5:2, 5:5, 9:1, 11:13, 31:8
**station** 48:3
**Status** 5:14, 6:8, 6:15, 8:25, 9:3, 9:8, 11:1, 11:7, 11:14, 11:16, 20:22, 22:25, 45:11, 55:17, 56:6, 56:25, 57:8, 61:17
**statute** 47:15
**stay** 12:1, 16:25, 17:4, 38:2

**stayed** 46:21
**Staying** 6:15, 8:25, 9:2, 11:6
**steps** 5:24
**stick** 18:20
**Stipulation** 57:9, 57:13, 61:17
**Stong** 1:11, 3:13, 52:3
**stop** 62:8
**store** 41:8
**straightforward** 23:4, 23:6
**strangely** 58:16
**Street** 1:30
**struck** 28:10
**struggling** 49:14
**subject** 31:5, 60:10
**submissions** 45:15
**submit** 57:4, 61:16
**substance** 5:11, 10:17, 10:25, 28:11, 33:7, 44:23
**succeed** 55:3
**sufficient** 53:13
**suggest** 48:7, 48:16, 59:17
**suggestion** 58:17
**suggestions** 52:12
**suggests** 48:5
**Suite** 1:20, 1:25, 1:30, 1:41
**summary** 19:10
**support** 29:4, 46:9, 55:11, 55:13
**supportive** 55:11
**suppose** 16:25, 59:8, 60:24
**supposed** 54:12
**surprised** 10:15
**surrender** 20:18, 20:20, 23:5, 52:23
**surrendered** 48:25
**suspect** 21:8

**< T >**
**talked** 39:1, 53:15
**technical** 46:7, 46:8
**technically** 45:8
**telephonic** 59:14, 60:21
**ten** 20:16, 24:5, 26:23
**terminate** 13:3, 13:20
**terminated** 8:8, 12:19, 13:14, 13:17, 15:25
**terminating** 8:19
**termination** 12:2, 12:9
**terms** 7:2, 7:19, 10:10, 32:24,

49:24
**text** 40:17
**thankfully** 17:5
**thanks** 60:4
**Thanksgiving** 58:13
**That'll** 60:10
**theory** 24:1
**thereafter** 33:1
**thereof** 41:11, 41:19, 41:20, 47:10
**thinking** 8:22, 24:20, 25:21, 25:22, 49:20
**Third** 60:1
**thirdly** 26:12
**thirty** 12:23
**Thomas** 1:34, 1:40, 4:7, 4:23, 18:17, 46:25, 52:8
**though** 14:12, 37:3, 55:6
**thoughts** 60:1
**three** 29:5, 49:9
**throughout** 3:2
**thrown** 38:7
**timeframe** 44:25, 56:24
**timely** 53:11
**timing** 56:5
**Today** 6:19, 6:21, 8:1, 8:11, 8:23, 8:25, 10:5, 10:7, 10:24, 15:13, 17:13, 17:18, 18:9, 22:21, 29:6, 37:6, 44:5, 45:23, 46:1, 49:11, 49:24, 53:22, 61:11
**together** 56:21
**Tom** 6:18
**tone** 28:11
**took** 19:21, 20:4, 21:20
**totaling** 36:24
**transaction** 23:19, 27:6
**transactions** 44:3
**Transcriber** 2:5
**transcript** 2:49, 63:3
**Transcription** 2:5, 2:49, 63:9
**tried** 60:2
**trigger** 43:23
**true** 22:3, 43:12, 63:4
**Trustee** 1:28, 5:2, 5:6, 9:1, 11:14, 14:18
**try** 8:23, 20:13, 27:23, 34:12, 45:10, 60:8
**trying** 34:16
**Tuesday** 58:12

**turns** 6:25, 23:21, 36:9
**twenty** 20:15, 26:4
**twice** 34:12
**two** 7:17, 10:4, 10:16, 17:11,
    20:16, 23:22, 25:17, 26:17,
    44:13, 47:1, 47:21, 49:4,
    49:20, 49:21, 61:15
**type** 33:6, 52:20
**typical** 26:24, 47:10
**typically** 26:19
**typo** 14:14


**< U >**
**unamicable** 20:20
**uncomfortable** 12:21
**understand** 21:7, 30:22, 52:3,
    52:16, 53:25, 55:12
**understanding** 7:4, 8:15,
    8:16
**understood** 9:23
**Unfortunately** 20:25, 21:11
**United** 1:1, 1:12, 5:2, 5:5, 9:1,
    11:13
**universes** 49:4
**unless** 22:20, 44:13
**unmuted** 12:16
**unsuccessful** 21:1
**until** 57:10
**unusual** 48:14
**useful** 38:5
**Uses** 48:13


**< V >**
**vacations** 21:20
**valid** 39:14, 49:2
**value** 31:14, 36:18
**Varick** 1:30
**various** 19:20
**video** 3:8, 60:2, 61:14
**view** 10:25, 39:17, 39:18, 55:22
**village** 55:9
**virtual** 18:4, 60:15, 60:17,
    61:3, 61:7
**VOICE** 60:12, 61:5, 61:7, 61:9


**< W >**
**wait** 57:10

**waiting** 49:18
**wanna** 14:25, 24:18, 24:24,
    25:9, 38:6, 47:1, 53:7,
    54:18, 58:11
**wanted** 11:19, 15:5, 22:13,
    41:17, 52:11
**wants** 12:11, 27:11
**warranty** 33:7
**waste** 51:1, 54:15, 54:18
**website** 14:14, 15:22
**Wednesday** 57:10
**week** 19:14, 45:24, 46:1, 46:2,
    49:13, 49:15, 52:11, 56:14,
    58:8, 58:9, 59:9
**weeks** 10:4, 10:16, 35:17,
    36:13, 44:13, 50:14, 52:25
**welcome** 16:25
**West** 1:20, 1:45
**whatever** 9:18, 36:1, 53:1
**whenever** 46:4
**whether** 5:10, 20:2, 20:12,
    30:24, 38:24, 51:15, 55:17,
    56:7, 57:11
**White** 1:41
**whoever** 41:17
**whom** 50:2
**will** 5:24, 6:1, 6:10, 6:13, 8:23,
    13:24, 16:8, 17:18, 33:1,
    47:16, 51:7, 53:12, 53:17,
    55:2, 56:3, 56:11, 58:3,
    59:7, 59:22, 60:18, 61:2
**win** 34:9, 34:13
**window** 43:8
**wish** 17:4, 34:8, 44:23, 51:11
**wishes** 13:15
**withdraw** 3:19, 5:13, 5:16, 6:4,
    8:5, 8:7, 11:18, 13:9, 13:11,
    15:15, 15:17, 61:21
**withdrawal** 15:3
**within** 37:5, 50:13
**without** 20:13, 26:2, 26:16
**wonder** 14:17
**word** 11:25, 48:13
**words** 54:12, 57:12
**work** 6:21, 16:20, 34:16, 46:17,
    49:12, 50:7, 59:8, 60:3,
    61:25
**worked** 55:13
**working** 59:6, 60:15
**works** 13:6, 57:11

**worried** 48:18
**writing** 57:11
**written** 12:13


**< Y >**
**Year** 43:4, 44:14, 44:19, 50:14
**years** 23:23, 26:23, 31:13
**York** 1:2, 1:31, 2:7, 63:11
**yourselves** 49:22


**< Z >**
**Zoom** 17:23, 45:22, 49:22