LAW OFFICES OF RACHEL L. KAYLIE, P.C.
1702 Avenue Z, Suite 205
Brooklyn, New York 11235
Telephone Number: (718) 615-9000
Facsimile Number: (718) 228-5988
Email: rachel@kaylielaw.com
Website: kaylielaw.com

Rachel L. Kaylie, Esq.*
Rosalyn Maldonado, Esq.**

* Admitted in NY, NJ, CT and DC
** Of Counsel

January 25, 2023

Hon. Elizabeth Stong
United States Bankruptcy Court, EDNY
Conrad B. Duberstein Courthouse
271-C Cadman Plaza East, Suite 1595
Brooklyn, NY 11201-1800

RE: Debtor: Sid Boys Corp. d/b/a Kellogg's Diner
Bankruptcy Case #21-42207-ess

Dear Hon. Stong:

I represent the Debtor, Sid Boys Corp. d/b/a Kellogg's Diner, in regards to the above-referenced bankruptcy case number. As directed by the court, I am filing this status letter to bring the court current on this matter.

Since our last court appearance on November 30, 2022, as directed by the court, the undersigned conferred with Tom Slome on the telephone, the attorney for the landlord/secured creditor, despite Mr. Slome's mischaracterization of the ongoing settlement discussions. Mr. Slome alleges in his status letter of January 19, 2023 that the only substance of our December 6, 2022 phone conversation was regarding my client's medical emergency regarding her serious kidney problems, including her surgery. This is very misleading and simply not accurate.

On December 6, 2022, Mr. Slome and I discussed the most recent terms of the proposed settlement offer that his client made, as was described in detail in my November 17, 2022 status letter. On that phone call, without going into too much detail herein, the secured creditor/landlord, at all times (on December 6, 2022 and previously), through Tom Slome, have insisted on full payment of the outstanding rent and the promissory note judgment. They have also refused to compromise on their insistence of a personal guaranty by Ms. Siderakis for both a new lease and a new promissory note as part of any settlement agreement.

The principles of the secured creditor/landlord have known Ms. Siderakis since at least 2013 when her now-deceased husband bought the diner. They also know that when her husband Chris passed away in 2018, Ms. Siderakis was left a widow with four young boys, with no means of support other than taking over the running of Kellogg's Diner. They also know that, because of this situation, Ms. Siderakis is in no position to personally guaranty a newly negotiated lease and promissory note. It would put her family in personal jeopardy if something happened to her, and

she is not willing or able to put her children in that sort of position.

In fact, to further show how the secured creditor/landlord was not acting in good faith, they initiated a law suit on the personal guaranty on the lease against the Estate of Christos Siderakis, despite knowing the financial jeopardy that would cause Irene Siderakis and her four children. This action was brought in state Supreme Court fairly recently, on or about October 4, 2022 under index #720695/2022. This was only a month before the Morgan firm was terminated. It appears that the main purpose of bringing this action when they did was to put undue pressure on Ms. Siderakis, and to harass her and force her into an untenable settlement.

It is clear that the secured creditor/landlord, is not, and never has, negotiated in good faith, nor are they making a genuine attempt to come to a reasonable resolution to this case. From the start, they have consistently refused to bend in their position to come to a resolution whereby they get money and Ms. Siderakis gets to continue to keep and operate the diner, thus providing the only livelihood she has to support her four children.

In fact, since the court-ordered mediation, which was unsuccessful, it is Debtor's opinion that the secured creditor/landlord, has not negotiated in good faith with the undersigned, nor with the Debtor's prior counsel, Morgan & Bley. It appears to Debtor that Mr. Slome, in conjunction with Keevan Morgan and Alanna Morgan, were not negotiating a realistic settlement, and the results of Morgan's efforts only benefitted his firm by increasing their legal fees, but the negotiations were not actually of any benefit to the Debtor's estate. This is evidenced by the fact that the secured creditor/landlord's position has remained essentially unchanged throughout, but for minor variations, from the time that Morgan took over the role of lead negotiator for the Debtor to today.

In addition, the Debtor wants to bring to the court's attention that Mr. Slome, in his Statement regarding the fee application of Morgan & Bley, seems to praise their efforts at trying to move this case along, yet also recognizes that the Morgan firm was never able to successfully move the secured creditor/landlord any closer to a settlement. Mr. Slome, oddly, alleges that negotiations with the Morgan firm had a chance of success back in the summer. This, despite the recognition that the Debtor simply did not have enough funds to confirm a payment plan unless the secured creditor/landlord agreed in good faith to reduce the amount they would accept and not insist on a personal guaranty for a new lease and a new promissory note.

The Morgan firm was well aware of Ms. Siderakis' personal and financial position, and that any sort of personal guaranty was a non-starter for negotiations. Upon information and belief, that is the main reason why negotiations failed between the Morgan firm and Mr. Slome, and not for any of the alleged reasons stated by Mr. Slome or the Morgan firm.

The Debtor firmly believes that there was never any real and meaningful showing of good faith on the part of the secured creditor/landlord, despite the Debtor's continued genuine efforts to comply with the court's directive to negotiate in good faith. Mr. Slome simply kept asking the Morgan firm and Marcum for financial documents and figures that they had already provided, repeatedly, to make it look like they intended to negotiate in good faith "once they had all the proper information." And the Morgan firm kept insisting on pushing Ms. Siderakis and her

accountants for this information, telling her that if it is provided, then the secured creditor/landlord would be more likely to settle. Well, all of the requested financials were provided, and as the court can see, nothing changed on the part of the secured creditor/landlord.

It was very convenient for the Morgan firm to lay all blame on the undersigned and on Irene Siderakis, and the Debtor's accountant, Phil Kalyvas. These accusations were to cover-up their own failure to come to a settlement resolution of this case.

Moreover, the Morgan firm was not there from the beginning and knew nothing of the discussions had between the undersigned and Ms. Siderakis, nor of the tremendous pressure the landlord put her under trying to force the re-taking of the diner by September 1, 2021. That is why the Debtor had to file the instant chapter 11 so quickly on August 28, 2021. The secured creditor/landlord essentially gave Ms. Siderakis no time to negotiate a settlement or to work with her to continue to operate the diner in a way that would allow her to begin to repay the amounts allegedly owed. Given the pandemic conditions and lock-downs, which were especially difficult for restaurants and bars, many landlords worked with their tenants to try to keep the businesses going so as not to put so many people out of work. Not this landlord.

Additionally, when it came time to assume or reject the lease, Ms. Siderakis was in no financial position to do either. If she rejected the lease, the diner would be lost for sure. And, she was not in the financial position at the time to assume the lease either. This is another inconvenient truth that the Morgan's ignore when repeatedly criticizing the undersigned for the manner in which this case was handled prior to their retention. Their papers make them sound like they were some sort of superheroes who swooped in to save the day, when in reality, all they did was increase the legal fees for which the Debtor may be responsible, and failed to bring this case to a mutually agreeable resolution.

Even when the diner was starting to become more profitable, in the later spring and summer of 2022, the Morgan firm was not able to convince the secured creditor/landlord to reach a settlement. And, as the United States Trustee pointed out in her Objections to the Morgan's fee application, they spent a lot of time and provided no significant benefit to the Debtor's estate.

As the court is well aware, Section 365 (b) of the Bankruptcy Code provides for the requirements for a Debtor-In-Possession to assume a non-residential lease.

**(b)**
**(1)** If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
**(A)**
cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real