property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;

**(B)**

compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

**(C)**

provides adequate assurance of future performance under such contract or lease.

According to Mr. Slome's prior assertion of the applicable provisions of Section 365, the debtor had 210 days to assume or reject the lease which ran from the date of filing on August 28, 2021 and expired on March 22, 2022. As reflected in the Debtor's Monthly Operating Reports for the time leading up to March 22, 2022, the Debtor was not in a financial position to meet all the requirements of Section 365(b). The Debtor would not have been able to cure the default of the lease and promissory note, nor would the Debtor have been able to provide adequate assurance of future performance under the lease. And this was something of which the Morgan firm was, or should have been, well aware before making their thinly veiled attacks on the undersigned.

As such, after much research, and based on a reasonable interpretation of applicable case law, in opposition to Slome's motion to deem the lease rejected, the undersigned filed a cross-motion to have the lease deemed a part of the executory contract rather than a stand-alone lease, which would have given the Debtor until the time of confirmation of a plan to assume or reject the entire executory contract, including the lease. If the undersigned had not made this cross-motion, the case would have ended long ago, long before the Morgan firm was even retained.

When all is said and done, despite Mr. Slome and the Morgan's finger-pointing and unprofessional, snide and unnecessary comments about the undersigned and the handling of this case, the Debtor feels it was really them who deliberately dragged this case out, racking up unnecessary legal fees, when all along the secured creditor/landlord never had any intentions of reaching a settlement with the Debtor. That was one of the main reasons the Debtor's principle, Irene Siderakis, fired Morgan & Bley. They did not withdraw voluntarily (as they like to imply), but were actually terminated by the Debtor.

Furthermore, although I discuss it in the Debtor's Objections to the Morgan's fee application, I want to bring something very serious to the court's attention. On December 2, 2022, after his application to withdraw as counsel for the Debtor was granted, Keevan Morgan sent an email to the undersigned and Tom Slome (Irene Siderakis was not included on this email), asking if the parties wanted him to continue to negotiate a settlement between the parties. Ms. Siderakis had previously fired Mr. Morgan by email dated November 7, 2022 whereby she instructed the Morgan firm to cease all communications with the attorney for the secured creditor/landlord.

It is very disturbing, and bordering on unethical, to say the least, that Mr. Morgan, after being fired, would take it upon himself to interject in the ongoing settlement negotiations, and that he would contact Tom Slome directly after being instructed by his former client not to do so. Keevan Morgan never made clear on whose behalf he would be negotiating since he no longer

represented the Debtor, nor how he intended to get paid for this service. He also knew certain confidential information about the Debtor that it would be dubious at best if he were to disclose it to the other side in order to reach a potential settlement.

In his email, in addition to the inappropriate offer to participate in settlement discussions between Debtor and the secured creditor/landlord, Mr. Morgan also stated that, "We of course retain all rights to protect our own interests in the case, **including communicating with any other party in interest as we see fit and deem proper, but we thought trying this from an entirely cooperative starting point would be best.**"

According to the Debtor's principle, it was just this sort of manner of vague threats and inappropriate communications that was among the several reasons she no longer wanted to utilize the services of the Morgan & Bley law firm, and why she terminated them.

This strange and inappropriate email raises some serious questions about the Morgan & Bley law firm. Why would Debtor's now-terminated counsel need to communicate with any other party in interest? They no longer had a role in this case other than as an administrative creditor. On whose behalf would they be communicating with other parties in interest in this case since they no longer represent Debtor? It was also unprofessional that Mr. Morgan reached out directly to the secured creditor's counsel, Tom Slome, in this regard. It is of significance that this email was not sent by Mr. Morgan to the Debtor's principle, Irene Siderakis. He deliberately left her out of this communication, yet felt it was somehow valid to reach out to the landlord's attorney directly, even though he was instructed not to do so.

At the end of the day, the secured creditor/landlord made sure from the start that the Debtor would never settle this case, and thus never be able to confirm a plan. And, despite Mr. Slome's and the Morgan firm's assertions, it was Irene Siderakis, as principle for the Debtor, who acted in good faith all along, and in the best interests of the Debtor.

Finally, although Mr. Slome's status letter appears to direct the court in how to handle the within matter, the undersigned has the utmost confidence that Your Honor is more than qualified to make the right decisions here and does not need Mr. Slome's unsolicited directives.

The Debtor asks the court to take all of the above into consideration when deciding how best to handle this matter going forward. Thank you to the court for your continued efforts and courtesy in this matter.

Respectfully submitted,

Rachel L. Kaylie

Rachel L. Kaylie

CC:

Rachel Wolf, Esq.
Office of the United States Trustee EDNY
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014

Thomas R. Slome, Esq.
Cullen and Dykman, LLP
100 Quentin Roosevelt Blvd.
Garden City, NY 11530