UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF NEW YORK

IN RE:                           )
                                 )
Sid Boys Corp.,                  )   Bankruptcy #21-42207 (ESS)
                                 )
              Debtor.            )
_____)

TRANSCRIPT OF:
[14] ADJOURNED CASE MANAGEMENT CONFERENCE
ADJOURNED FROM 10/28/21 12/16/21 2/17/22 3/24/22 5/5/22
5/27/22 7/5/22 7/28/22 8/29/22 9/21/22 10/31/22 11/10/22
11/30/22 12/21/22

[44]  ADJOURNED MOTION TO CONVERT CASE CHAPTER 11 TO 7/MOTION
OF 514 FIOTO PROPERTY CORP. AND 518 METROPOLITAN AVENUE CORP.
FOR AN ORDER (I) DIRECTING DEBTOR TO IMMEDIATELY SURRENDER
PREMISES DUE TO DEEMED REJECTION OF NON-RESIDENTIAL REAL
PROPERTY LEASE AND (II) CONVERTING THE DEBTORS CHAPTER 11
CASE TO A CASE UNDER CHAPTER 7 FILED BY THOMAS R. SLOME ON
BEHALF OF 514 FIOTO PROPERTY CORP., 518 METROPOLITAN AVENUE
CORP.
ADJOURNED FROM 5/5/22 5/27/22 7/5/22 7/28/22 8/29/22 9/21/22
10/31/22 11/10/22 11/30/22 12/21/22

[46]  ADJOURNED DEBTORS CROSS-MOTION TO DETERMINE THAT THE
NONRESIDENTIAL REAL PROPERTY LEASE IN THIS CASE NEED NOT BE
ASSUMED OR REJECTED AND THAT THE TIME TO ASSUME OR REJECT IS
PURSUANT TO U.S.C. (d)(2) FILED BY RACHEL L KAYLIE ON BEHALF
OF SID BOYS CORP. (RE: RELATED DOCUMENT(S) 44 MOTION TO
CONVERT CASE CHAPTER 11 TO 7 FILED BY CREDITOR 518
METROPOLITAN AVENUE CORP., CREDITOR 514 FIOTO PROPERTY CORP.)
ADJOURNED FROM 5/5/22 5/27/22 7/5/22 7/28/22 8/29/22 9/21/22
10/31/22 11/10/22 11/30/22 12/21/22

BEFORE THE HONORABLE ELIZABETH S. STONG
THURSDAY JANUARY 26, 2023; 3:27 P.M.
BROOKLYN, NEW YORK

```
FOR THE DEBTOR:
    LAW OFFICES OF RACHEL L. KAYLIE, PC
    By:  Rachel L Kaylie, Esq.
    1702 Avenue Z.-Ste. 205
    Brooklyn, NY 11235

FOR 514 FIOTO PROPERTY CORP & 518 METROPOLITAN AVE. CORP.
    CULLEN AND DYKMAN, LLP
    By:  Thomas R. Slome, Esq.
    100 Quentin Roosevelt Blvd.
    Garden City, NY 11530

    By:  Dennis N. Yuelys
    276 West 238th St.
    Bronx, NY 10463

FOR MARCUM, LLP:
    MINTZ & GOLD, LLP
    By:  Andrew G. Gottesman, Esq.
    600 Third Ave.-25th Fl.
    New York, NY 10016

FOR ADMINISTRATIVE CLAIMANTS:
    MORGAN & BLEY, LTD
    By:  Alanna Morgan, Esq.
    900 W. Jackson Blvd.-Ste. 4E
    Chicago, IL 60607

    MORGAN & BLEY, LTD
    By:  Keevan Morgan, Esq.
    900 W. Jackson Blvd.-Ste. 4E
    Chicago, IL 60607

FOR THE UNITED STATES TRUSTEE:
    OFFICE OF THE UNITED STATES TRUSTEE
    By:  Nazar Khodorovsky, Esq.
    Eastern District of NY (Brooklyn Office)
    U.S. Federal Office Building
    201 Varick Street-Ste. 1006
    New York, New York 10014
```

Proceedings recorded by electronic sound recording, transcript  produced by transcription service.

Transcribing Firm:                    Writer's Cramp, Inc.
                                      1027 Betty Lane
                                      Ewing, NJ 08628
                                      609-588-8043

## Index

|  | Direct | Cross | Redirect | Recross | Further Redirect |
|---|---|---|---|---|---|
| **Witnesses For The Debtor:** | | | | | |
| **Witnesses For The Landlord:** | | | | | |

| EXHIBITS: | Marked | Received |
|---|---|---|

**SUMMATION BY:**

THE COURT: Finding     31

1          THE CLERK:  Calling the matters projected on the

2     calendar on January 26, 2023, Numbers 32 through 34, Sid Boys

3     Corp., 21-42207.  Connected is Rachel Kaylie, Irene

4     Siderakis, Thomas Slome, Dennis Yuelys -- I'm sorry if I

5     mispronounced that -- Andrew Gottesman, Alanna Morgan, Keevan

6     Morgan, and Nazar Khodorovsky.  Can I just please ask the

7     parties to state their names each time before speaking?

8     Thank you.

9          THE COURT:  All right, thank you.  Good afternoon,

10     everyone.  Let's get your appearances on the record, please.

11     Ms. Kaylie for the Debtor?

12          MS. KAYLIE:  Good afternoon, Your Honor.  Rachel

13     Kaylie representing the Debtor, Sid Boys Corp.  Thank you.

14          THE COURT:  All right, thank you.  Mr. Slome, 514

15     Fioto Property and 518 Metropolitan?

16          MR. SLOME:  Yes, Your Honor, thank you.  Good

17     afternoon.  Thomas Slome from Cullen & Dykman for those two

18     Creditors.  The one you said first is the Landlord.  The

19     second is often referred to as the Judgment Creditor.  And

20     I'll just mention, because I think it's his first time on one

21     of these, the accountant for my client, Dennis Yuelys is on

22     the line.  He wanted to -- I think it's listed -- it may be

23     listen only.  I'm not sure.  But he wanted to see the

24     hearing.  Thank you.

25          THE COURT:  All right, good.  Glad to know.  Mr.

1   Gottesman for Marcum, LLP?

2        MR. GOTTESMAN:  Good afternoon, Your Honor.  Andrew

3   Gottesman from Mintz & Gold for Marcum, LLP.  They are the

4   accountants helping the Debtor with projections for the Plan.

5        THE COURT:  All right, thank you.  Ms. Morgan,

6   former counsel for the Debtor?

7        MS. MORGAN:  Good afternoon, Your Honor.  Alanna

8   Morgan on behalf of myself as an administrative claimant.

9        THE COURT:  Thank you.  And Mr. Morgan, same

10  circumstance, I think?

11       MR. MORGAN:  Yes.

12       THE COURT:  All right, thank you.  Good to have you.

13  Mr. Khodorovsky for the Office of the United States Trustee?

14       MR. KHODOROVSKY:  Good afternoon, Your Honor.  May

15  it please the Court.  Nazar Khodorovsky for the United States

16  Trustee.  Thank you so much, Your Honor.

17       THE COURT:  All right, thank you everybody for your

18  appearances.  Thank you for your correspondences.  I am doing

19  my best to keep up with the filings through and including

20  yesterday afternoon, and they've been informative.  I'm sorry

21  the news.  The news they relayed in the narrative they tell,

22  I'm sorry it's not more good news looking there, but it's at

23  least good to know where things stand.  I'd like to begin

24  with Case Management.  Let me just summarize that the things

25  on the calendar today are Case Management.  (Indiscern.)

1    hearing and the Motion to Convert or, I believe, to Dismiss,

2    and for the immediate surrender of the property and other

3    kinds of things of Mr. Slome's client, the Creditors.  It's

4    on the calendar today.

5         The Cross-Motion of the Debtor having to do with the

6    Time to Assume or Reject and, of course, the new issue that

7    is -- that has occurred by the passage of time with respect

8    to confirmation.  Let's begin with the Case Management.  I'd

9    like to hear from Ms. Kaylie.  Ms. Kaylie, I think we're in a

10   tough spot, but I want to hear from you, and I want to hear

11   from you.  I always want to hear from everyone and figure out

12   what the smoothest path forward -- sorry, that's hard to say

13   -- is at this point.  Over to you.

14        MS. KAYLIE:  Good afternoon, Your Honor.  Rachel

15   Kaylie for the Debtor, for the record.  Your Honor had given

16   my client an adjournment from December because she had,

17   unfortunately, some very severe kidney problems, including

18   emergency surgery.  So, I want to thank the Court for that

19   courtesy.  Unfortunately, she still has (inaudible).

20        THE COURT:  Of course.  And the same would be

21   extended to any party, and I hope all is well.  Back to you.

22        MS. KAYLIE:  Absolutely, Your Honor.  Hopefully,

23   eventually she will, but she's still dealing with some issues

24   but should be all right.  As far as the diner is concerned,

25   Kellogg's Diner, it continues to operate, and it's doing

1   quite well.  My client has -- was able to continue with the
2   comedy shows that are in the back of the diner.  That brings
3   in a lot of business.  I know that Thanksgiving was extremely
4   busy and bringing in quite a bit of revenue and the holidays
5   in general brought in quite a bit of revenue.

6       My client continues to be current.  I know the latest
7   quarterly fee for the Trustee was paid on or around January
8   12.  I don't know if it's been received or processed yet, but
9   I know the payment went out January 12.  So, it should be
10  current, even if it's -- I'm not sure if it's been processed,
11  but it was sent out.  Also, all insurances have been updated.
12  She has one insurance that is due to expire in February.
13  That's already been paid for and taken care of from the
14  worker's comp insurance.  So, even though it's a little bit
15  early, that has been taken care of.  So, all insurance is,
16  and including the worker's comp, has been taken care of.

17      The prior insurance that lapsed, it was supposed to
18  lapse in September, which was renewed finally.  It was
19  already provided to the U.S. Trustee.  I believe it was a
20  month or so ago, but there was no lapse in the insurance.  So
21  I'm not sure (inaudible).  So, as far as those things are
22  concerned, the operating reports have been filed timely.  So
23  as far as Case Management, that's where we are.

24          THE COURT:  All right.  A part of Case Management in
25  a Chapter 11 case, of course, is the progress that we're

1    making toward a Plan, and it's noted in Mr. Slome's letter on

2    behalf of his client.  And it does seem consistent with both

3    the Docket, the dates on the Docket and the Bankruptcy Code,

4    that the deadline for the Debtor to confirm a Plan is past

5    with a Motion to Modify that deadline.  There certainly was

6    no Order entered extending the deadline, and it's a

7    particular aspect of this Code provision.  We double checked

8    last night to be sure that the Order Extending the Time is

9    signed before the existing deadline is expired.

10       So, it does seem like a Plan confirmation is no longer

11   possible in this case, which means that, from the standpoint

12   of Case Management, I'm thinking about where do we go from

13   here?  The suggestion in the motion is a Chapter 7

14   conversion.  I don't even know that an operating Trustee

15   would be able to work around the limitation of Bankruptcy

16   Code Section 1129.  It's conceivable that there's some way

17   that the appointment of an Operating Trustee would reset that

18   deadline.  But are we looking at conversion at this point,

19   Ms. Kaylie?

20       MS. KAYLIE:  Well, Your Honor, if I may address

21   that, when we were last in Court in November, Your Honor had,

22   upon motion, extended one more time -- time to confirm a

23   Plan.  And Your Honor made it abundantly clear that there was

24   a firm deadline of December 30th, giving us one final chance

25   to try to settle into a space and asking me to confer with

1    Mr. Slome as the attorney for the Secured Creditors' last
2    landlord.
3        Mr. Slome and I did have conversations about that.  And
4    Mr. Slome made it abundantly clear that the terms that his
5    client was willing to settle, which were basically not only
6    would he -- would they not reduce the amount owed, all they
7    were willing to do was stretch out the payments to eight
8    years rather than it would be five or six years than it would
9    have been at an interest rate that would've ended up my
10   client paying more.  He also insisted that there would be
11   personal guarantees.  My client is a single mother whose, you
12   know, husband passed away, and she is not in any position to
13   personally guarantee a newly revised lease or promissory
14   note, which is what Mr. Slome offered.  There were no other
15   concessions on the part of the landlord, which we believe
16   they were not exactly negotiating in good faith, simply, and
17   offered, you know, quite a bit of money to resolve this.
18       Mr. Slome also made it clear he knew that without any
19   concession on the part of the landlord/Secured Creditor that
20   there could not be formation of a Plan.  So, Your Honor, I --
21   we appreciate the opportunity to extend this to December
22   30th.  You know, my client, like I said, was not in a
23   position to accept the terms that were dictated in bad faith
24   by Mr. Slome's clients.  I don't know what the settlement
25   negotiations were when the Morgan's were having a

1    negotiation.  I was not privy to that.

2        But it seems to me that if they were going to settle

3    last summer, they seemed to indicate that they were going to,

4    that they would have.  The Morgans weren't terminated until

5    November, and it seems to me that if there was going to an

6    Amended Plan that could've had a chance of being confirmed,

7    that that would've been done before the Morgans were

8    terminated and Mr. Slome in his letter says that, you know,

9    as long as they were around, there was a chance with them

10   last summer.  But it's been my contention all along.  The

11   landlord, really, was never interested in negotiating in good

12   faith and really had no intention of trying to resolve this

13   so that everybody walks away with something rather than

14   taking back the diner.

15       So, Your Honor, there -- you know, after having

16   discussions with my client's accountant and with the client

17   from Marcum, it was very clear that because the -- without a

18   settlement from the landlord that we could not -- couldn't

19   even come close to confirming a reasonable Plan.  And I

20   didn't feel it would benefit the Estate to continue to rack

21   up legal fees unnecessarily when it was very clear that the

22   landlord, really, had no intentions of trying to settle.

23           THE COURT:  All right.  Well, I do see in the letter

24   different perspectives on those issues, and they're hard

25   issues, hard issues.  It's always good to hear, on the one

1    hand, how well the business is doing, but then it's tough to

2    hear that stretching out the arrears for years and years -- I

3    think you said eight years, and the terms of your

4    negotiations are between you.  But for a lot of time, and

5    they're not talking eight weeks or eight months.  You're

6    talking years.  But that won't work.  That's okay.

7         You don't have to settle.  You don't have to agree.  And

8    I will -- you know, if I convert the case today, I will know

9    that we have all tried, certainly the Court has tried as hard

10   as I can with every tool I've got and then some, to see what

11   the opportunities are to find that consensual path with a

12   business that, despite this bleak picture that you describe

13   about negotiations and the inability to catch up on arrears,

14   even over an eight-year period and looking at a large balance

15   in the DIP account.  I've got your most recent monthly

16   operating report.  I had it, and I just put it somewhere, I

17   guess.

18        But anyway, looking at -- here it is -- the DIP account

19   balance, $827,000.  And even with all those good facts still

20   not able to get it done, I'm disappointed, but it's all

21   right.  You don't have to settle.  Ms. Siderakis does not

22   need to do a personal guarantee.  Mr. Slome and his clients

23   do not -- the Creditors do not need to accept less than

24   they're due or stretch out for 18 years instead of 8 years or

25   some other number of years to the amount owed.  It's okay,

1  even though I really hoped it would work out, and I'm sure

2  you all have too.

3      I don't know how productive it is to talk about good

4  faith or bad faith.  Those are big words.  And the record

5  will speak for itself.  I -- from my perspective, I've seen a

6  very sincere effort by everyone, specifically including Ms.

7  Siderakis and all counsel, to see if there is something that

8  can be done here to keep a diner in place here.  And I've

9  heard that not only from the Debtor, but also from the

10 lender.  But where we are is where we are.

11     The date has passed.  You know, the disputes had just

12 passed, and I -- so I suppose this is just a question of

13 where do we go from here.  It's now January 26, and we have a

14 Chapter 11 case clearly in a posture where a Chapter 11 Plan

15 can't -- it was sufficiently clear that a Plan can't proceed,

16 that it -- never mind filing a Plan.  It wasn't even worth

17 the time and expense of filing a Motion to Extend the Time by

18 the Debtor.  And again, that's okay.  Case Management

19 decisions, what motions to make, that's up to the party, not

20 the Court.  So, Ms. Kaylie, if you have anything to add, I'll

21 -- on Case Management, I'll invite you to do so now, and then

22 we'll hear from Mr. Khodorovsky.

23     MS. KAYLIE:  I do, Your Honor.  Thank you for the

24 opportunity.  Rachel Kaylie for the Debtor, for the record.

25 In addition to -- and I believe I mentioned it briefly in my

1  status letter.  In addition to this bankruptcy, my client --
2  by "my client," I mean Ms. Siderakis.  I know she's not --
3  she's the principal for the Debtor.  This whole thing started
4  when her husband passed away in 2018 at a young age, leaving
5  her, you know, a widow with four children.  And she had a
6  medical malpractice case against the doctors for -- on behalf
7  of his Estate.

8      And the landlords, in addition to this action and the
9  bankruptcy, Mr. Siderakis -- Christopher Siderakis, the
10  husband, had personally guaranteed, not the promissory note,
11  but he personally guaranteed the lease.  And they do have a
12  pending action in state court for -- this should be on, I
13  believe, oral argument in April for Summary Judgment.  So I
14  would ask, just as a courtesy, that whatever decision we --
15  the Court wants to make that I think it will be greatly
16  affected by what happens in the state court.  So I would ask
17  for an adjournment based on that so that we can have all the
18  factors because if they get a judgment against the Estate --
19      THE COURT:  But, Ms. Kaylie, what would change?
20  What would change?  No matter what the state court decides, I
21  don't know how I can possibly keep this case open in Chapter
22  11 in this mode through April and whenever a decision comes
23  after that, if that's what you're suggesting.
24      MS. KAYLIE:  Well –
25      THE COURT:  And how would that change the fact that

1    the Debtor can no longer confirm a Plan?

2         MS. KAYLIE:  Well, Your Honor, what it would mean

3    is, well, is if they get the medical malpractice law suit,

4    the money from that, that's roughly $450,000 or so, between 4

5    and 500,000.  That could affect the Plan -- the management of

6    this case, whether it's in a 7 or an 11.

7         THE COURT:  So, there'd be an oral argument?  Oral

8    argument is scheduled for April?

9         MS. KAYLIE:  That's my understanding.

10        THE COURT:  And so when -- and that is a personal --

11   an individual case?

12        MS. KAYLIE:  It is, Your Honor.

13        THE COURT:  Right.  (Indiscern.) right.  So these

14   are very sad circumstances, and I so appreciate that.

15        MR. KAYLIE:  That's why (indiscern.) my client --

16   And then maybe you'll win, and maybe you won't, and it could

17   take months to get that decision.  And then, if you're

18   successful, there might be an appeal if you're successful in

19   a big way.  And, after that, then there'd be question of

20   collection.  You know, Ms. Siderakis can -- I suppose if

21   that's a source of funds to save the case, there's a way to -

22   - if that case was settled in December, we'd have that money

23   now, and maybe it'd bridge the gap.  But it wasn't, and we

24   don't, and I can't just put this case on hold for a year or

25   even six months to let a Motion for Summary Judgment in an

1   unrelated non-Debtor proceeding get argued, decided,

2   finalized through an appeal or not, and then collected on.

3   I –

4          MS. KAYLIE:  Your Honor, I'm just asking

5   (indiscern.) oral argument in April.

6          THE COURT:  Ms. Kaylie, I'm going to say it again.

7   We have a Chapter 11 case, and we can no longer confirm a

8   Plan.  I -- the option sought by the Secured Creditor is

9   conversion.  I've wondered -- you know, a Trustee coming in,

10  a Trustee hiring their own professionals.  The one thing this

11  case does not need is another layer of expense.  We have

12  challenges there already.  But we need a change.  And putting

13  this all out 6 to 12 months is not the change that this

14  record would permit.  We're going to need to hear next on

15  Case Management from Mr. Khodorovsky.  Mr. Slome, I see your

16  hand.  You'll be next after that.  Mr. Khodorovsky, over to

17  you.  Difficult situation --

18         MR. KHODOROVSKY:  Thank you so much.

19         THE COURT: -- but we need to fast forward.

20         MR. KHODOROVSKY:  Thank you so much, Your Honor.

21  Nazar Khodorovsky for the United States Trustee.  Your Honor,

22  Debtor's counsel is correct.  The Debtor is current with

23  quarterly fees that are current with operating reports.

24  However, Your Honor, as the landlord counsel has mentioned,

25  as Your Honor has mentioned, the Debtor's deadline to confirm

1    a Plan in the small business case has come and gone.  The

2    Debtor has not sought to extend it, so the deadline is gone.

3    There are several options left here in this case.  The case

4    can be converted to a Chapter 7.  The case can be dismissed,

5    or the -- or Your Honor can appoint a Chapter 11 Trustee.

6         A question Your Honor has raised is whether, if there

7    was a Chapter 11 Trustee, whether the Trustee could file a

8    Plan, not withstanding the deadline.  It's historically been

9    the United States Trustee's position, and, Your Honor, it --

10   Judge Drain in a case some years ago, has ruled on this

11   issue, I believe.  And I apologize, Your Honor.  The case

12   doesn't come to mind.  If -- so there's several deadlines for

13   small business Plans involved in those cases, a 300 day

14   deadline, and there is a -- then there's a 45-day deadline

15   after that to confirm.

16        So in Judge Drain's ruling, Judge Drain was appointing a

17   Chapter 11 Trustee sometime close to the 300-day deadline or

18   even, if I remember, it was even possibly after that.  And

19   the Court determined that the Chapter 11 Trustee could file a

20   Plan, notwithstanding the 300-day deadline because,

21   ultimately, Trustees are appointed, sometimes, very late in

22   the case.  If a Chapter 11 Trustee is, say, appointed on the

23   299th day of a case, then, you know, a Trustee should be

24   given a chance to file a Plan and administer an Estate.  If,

25   for example, I'm not saying it in this case, but as a

 1  hypothetical, if there's a Section 1104(e) violation that

 2  only becomes known on day 298 of a case, and the Court

 3  appoints a Chapter 11 Trustee on day 299, then ultimately,

 4  binding the Trustee and giving the Trustee one day to file a

 5  Plan is somewhat inequitable.  Be that as it may, Your Honor,

 6  although it's --

 7          THE COURT:  On that same day or in the appointment

 8  ordered, so long as it's entered before the 300th day, the

 9  time could be extended.  But --

10          MR. KHODOROVSKY:  That's correct, Your Honor.

11          THE COURT:  -- you know, lots of things, if an order

12  was entered in a timely way, would be possible but aren't if

13  it isn't.  But I can appreciate those points.  I'm not sure

14  that any of the papers, and we have a lot of papers, suggest

15  the prospect of an Operating Trustee.  It's always a tool

16  available to the Court under certain circumstances, typically

17  after a notice in a hearing.  That may be in the Code.  I'm

18  not sure that it's what we need here.  We have tried and

19  tried and tried, and I actually don't see glaring

20  deficiencies in the good efforts of the parties to try to get

21  to closure with some kind of an agreement.  Back to you, Mr.

22  Khodorovsky.

23          MR. KHODOROVSKY:  Thank you so much, Your Honor.

24  That having been said, Your Honor, the U.S. Trustee's

25  preferred positions here would be neither conversion nor

1  Chapter 11 -- I'm sorry, neither dismissal nor a Chapter 11

2  Trustee.  The U.S. Trustee's preferred position in this case

3  will be conversion of this case to Chapter 7.  There are

4  aspects in this case Your Honor has mentioned.  There's a

5  balance of funds in the DIP account.  There are assets in

6  this case.  There's even a possibility of potential claims

7  against the principal.  So, Your Honor, I do think it's the

8  U.S. Trustee's view that Chapter 7 would be preferable to

9  either a dismissal or appointment of a Chapter 11 Trustee.

10  Thank you, Your Honor.

11        THE COURT:  All right.  Thank you, Mr. Khodorovsky.

12  Mr. Slome, you're next.

13        MR. SLOME:  Yes, Your Honor.  Thomas Slome of Cullen

14  & Dykman.  I -- we did not move for the appointment of a

15  Chapter 11 Trustee.  I don't think it would be appropriate.

16  We -- I doubt we would agree to any kind of a Plan.  But I

17  want to let you know, and I did speak to Ms. Wolf about this

18  a day or two ago.  And I said this in open court.  We filed

19  papers saying this.  We would explore, I can't guarantee it,

20  but I'm pretty sure we would go along with an Operating Order

21  with a Chapter 7 Trustee, assuming there was a Chapter 7

22  Trustee willing to manage the diner pending a sale.  We'd

23  have a 3 or 4 month -- whatever made sense to the Chapter 7

24  Trustee, of course, a marketing campaign and sell the diner.

25        I'm not going to go through the good faith/bad faith

1   stuff.  I think it's quite the opposite.  I can -- I was

2   prepared to basically go through this case and actually prove

3   why we've been in good faith and maybe others have not.  But

4   I agree with Your Honor.  There's no point.  There can be no

5   Plan in this case.  If there could be a Trustee Plan, I doubt

6   that Plan could be confirmed without our consent very much.

7   And we can accomplish keeping this diner open and maximizing

8   distributions for Creditors with an Operating Trustee.

9   Discussed some names with Ms. Wolf.  And at least two came up

10  for who we think would probably be perfect for the job.

11      And, you know, we could sell the diner, maximize

12  proceeds.  And not only would the $700,000 sitting in the

13  account be available for Creditors with claims well over a

14  million dollars, but we might, that way, get the landlord and

15  the creditor paid and leave even more money for the

16  unsecureds.  And as far as the law suit by my clients, it's

17  really the landlord only, against the Estate on the

18  guarantee, the Estate has filed, you know, papers.  You know,

19  I'm having a little trouble because I have a cold.  But

20  papers, you know, vociferously saying there should be no

21  Summary Judgment and, if anything, it should be dismissed in

22  their favor, and they should have relief against us, like,

23  for $10,000 for an administrative Code thing related to

24  COVID.  I took a quick glance at the papers.

25      That case is not getting resolved for quite some time.

1    The best thing that can happen in that Estate would be that

2    we sell the diner.  My client gets paid in full, both of

3    them.  Creditors will probably get half a million bucks or so

4    give or take, maybe more, and that Estate will be left alone,

5    and Ms. Siderakis and/or her children were beneficiaries of

6    that Estate will probably collect the money, and we won't, at

7    that point, you know, need to pursue our rights.  So

8    everything, in my mind, lines up for a Chapter 7 conversion,

9    Your Honor.

10           THE COURT:  And when you say "Operating Trustee,"

11   just for the sake of a complete record and also because, you

12   know, different clients -- counsel may have different levels

13   of experience with that.  In a Chapter 11 case, including

14   where it looks like maybe there's something difficult or

15   untrustworthy, which is not what anyone is suggesting here,

16   there can be reasons to have an Operating Trustee to manage

17   the Chapter 11 case.  A separate way that that phrase can be

18   used, and in which I think you have just used is it, is when

19   the case is in Chapter 7 -- I have several of these now --

20   there's a Code provision that permits, on notice, the Chapter

21   7 Trustee to continue to run the business, to continue to

22   keep the lights on and the workers paid and the pancakes or

23   whatever it is.  I don't know.  I'm speculating about a diner

24   menu, with which I do have some experience, though not this

25   one in particular.  So that's what you mean, a Chapter 7

1    Trustee with the authority to operate the business for a

2    period of time, something like that, right?

3              MR. SLOME:  Yes, Your Honor.  I spoke imprecisely.

4    I meant a Chapter 7 Trustee --

5              THE COURT:  No, you spoke precisely.

6              MR. SLOME:  -- that's operating.

7              THE COURT:  It's just that we used the same phrase

8    in different ways in two chapters.  That's all.  So that's --

9    those are some of the issues so far.  Mr. Gottesman for

10   Marcum, anything to add from your perspective?

11             MR. GOTTESMAN:  Nothing to add, Your Honor.  You

12   know, training has taught me to keep my head out of the

13   lion's mouth whenever possible.

14             THE COURT:  All right.  I think it might be helpful

15   to permit counsel -- just counsel for now.  You've all got

16   your clients here too.  We can move them into the room, if

17   it's appropriate.  I just want to take a couple minutes to

18   not talk at each other but with each other about what a next

19   step might look like.  It sounds like there's been some

20   preliminary exploration of what is nobody's first choice ever

21   in this case, but maybe the second choice or, from the

22   Debtor's standpoint, the not a choice, but where-we-are

23   situation and just have a -- kind of an exchange on that that

24   I'm guessing, in view of the correspondence that I see you

25   haven't had up to this point, some of the possibilities

1   you've reviewed with the U.S.T's office, for example, and how

2   this can be a different path forward, not a failure and

3   collapse, but a different path forward in a case.

4        And it sounds like, in a situation like this, that the

5   Chapter 7 Trustee in a conversion could be appointed as

6   opposed to just off the wheel with some considerations of the

7   particular needs of the case, is that right, Mr. Slome?

8              MR. SLOME:  I mean, I think that --

9              THE COURT:  Mr. Khodorovsky?

10             MR. SLOME:  I'm sorry.  Thomas Slome with Cullen &

11  Dykman.  I believe there are at least two panel Trustees, if

12  not more, who could -- who have done this and could easily do

13  it.  I have no desire to go off the panel.  I think we have

14  qualified people on the panel.

15             THE COURT:  Sure.

16             MR. SLOME:  I'm happy to consider anything.

17             THE COURT:  I think if a Chapter 7 case is filed in

18  five minutes, the Trustee -- you know, a brand new case, the

19  Chapter 7 Trustee would get that in a process that has no --

20  that is a randomized process.  But when a case is converted,

21  it's not necessarily a randomized process.  It's a question

22  of coming up with the appropriate person for the

23  circumstance.  That's all I'm trying to confirm, is that

24  right, Mr. Slome?

25             MR. SLOME:  Yes.  Yes, Your Honor.

1          THE COURT:  Okay, all right.  So, all right.

2          MR. KHODOROVSKY:  Your Honor, may I?  Nazar

3    Khodorovsky for the U.S. Trustee.

4          THE COURT:  Yes.  Yes, please.  Mr. Khodorovsky and

5    then Ms. Kaylie.

6          MR. KHODOROVSKY:  Thank you, Your Honor.  Nazar

7    Khodorovsky for the U.S. Trustee.  Your Honor, if the case is

8    converted to a Chapter 7, the United States Trustee retains a

9    discretion to appoint a Chapter 7 Trustee.  And if the

10   Trustee -- and if the Creditors are dissatisfied with the

11   choice, Creditors can seek a Trustee Election.  Thank you,

12   Your Honor.

13         THE COURT:  Thank you and helpful.  Ms. Kaylie, over

14   to you.  And I think you had indicated -- when someone comes

15   off mute, I assume that you have something to say.  Over to

16   you.

17         MS. KAYLIE:  That's right.  Your Honor, Rachel

18   Kaylie for the Debtor, for the record.  I would just like to

19   know who Mr. Slome is thinking of as the two Trustees who he

20   believes could best handle a diner-type case.

21         MR. KHODOROVSKY:  Your Honor --

22         THE COURT:  (Indiscern.).

23         MS. KAYLIE:  -- Nazar Khodorovsky for the U.S.T.  I

24   strongly oppose discussing this on the record, Your Honor.

25   That is far away from --

1          THE COURT:  Let's get you in a Zoom room.  Yes, yes,
2     I agree.  I agree.  You can talk about whatever you want.
3          MS. KAYLIE:  I didn't (inaudible) --
4          THE COURT:  You can talk about --
5          MR. KHODOROVSKY:  Thank you, Your Honor.
6          THE COURT:  -- how cold it was this morning, but --
7     or that it rained a lot yesterday.  But if there's any
8     productive engagement that can occur off the record, I urge
9     you to do it, and I'm going to direct you to do that to begin
10    with.  And I think the right group would be current counsel
11    for the Debtors, Ms. Kaylie, Mr. Slome, Mr. Khodorovsky.  I
12    mean no disrespect to Mr. Gottesman, but I don't think your
13    client has got a big piece of this picture, is that okay with
14    you?  I want the -- I (indiscern.) appear.  Ms. Morgan and
15    Mr. Morgan, you're here now as Administrative Creditors.  I
16    don't -- you know, your view is going to be very important at
17    some point but not necessarily for this next round, I don't
18    think, is that okay with you?
19         MR. MORGAN:  We would not want to be in the meeting
20    this afternoon, Your Honor.  They can talk about it.
21         THE COURT:  There you go.
22         MR. MORGAN:  And later on, we'll see what happens.
23         THE COURT:  All right.
24         MR. MORGAN:  Thank you very much.
25         THE COURT:  So we're going to refer to the

1    conference room.  I'll point to the door, but Ms. Jackson

2    will do this by Zoom for I think this will be Ms. Kaylie, Mr.

3    Slome, and Mr. Khodorovsky, yes?

4              MS. SIDERAKIS:  (Indiscern.).

5              THE COURT:  I don't think clients at this point.

6              MS, SIDERAKIS:  Okay.

7              THE COURT:  Ms. Siderakis, no disrespect.  Actually,

8    with the greatest respect.  And I need everyone to be

9    thinking about helping identify the next step in the case.

10   We're not talking about the failure of the case.  We're

11   talking about the next step of the case.  So we are in a

12   situation where Debtor's counsel has indicated, and it's

13   thoughtful and candid that it wasn't even worth the trouble

14   or the additional expense to the Debtor of making a motion

15   further to extend this deadline, which is now past.  So,

16   let's give you that opportunity, and then we'll come back in

17   just a few minutes, or you can have as long as you want.  But

18   do all the good work you can, please.

19        But otherwise, we'll come back whenever you're done, but

20   it's going to be at least five minutes because it's going to

21   be at least five minutes.  Because if you haven't taken five

22   minutes, I'm not satisfied you've done all the good work that

23   can be done.  There's a new fast forward being described.

24   Mr. Slome has some information.  Ms. Kaylie has an interest

25   that makes sense.  We can then let you talk to your clients

1    if you want.  Anyway, please and thank you.  Off you go.

2         MS. KAYLIE:  Your Honor, I just want to thank you

3    for the opportunity.

4         THE COURT:  Ms. Kaylie, that was unexpected.  Thank

5    you very much.  Thank you back.  Go use it well.  Good luck.

6       (Attorneys confer off the record)

7         THE COURT:  We are on the -- we're back on the

8    record, Ms. Jackson?

9         THE CLERK:  A second call on the Sid Boys matters.

10   Please, parties, remember to state your name each time before

11   speaking.  Thank you.

12        THE COURT:  All right, thank you.  Good afternoon

13   again, everyone.  It's good to see you.  We have the parties

14   back.  You've had a good opportunity to confer off the record

15   in a Zoom room.  Who would like to bring the Court up to date

16   with the status of things?  Ms. Kaylie or Mr. Slome, who

17   would like to go first?

18        MR. SLOME:  Ms. Kaylie is fine.

19        MS. KAYLIE:  I will, Your Honor.  Rachel Kaylie for

20   the Debtor, for the record.  Your Honor, so Mr. Slome and Mr.

21   Khodorovsky and I had a lengthy, detailed discussion

22   regarding if Your Honor is to convert this to a 7 what the

23   next steps would be, in particular, the appointment of a

24   Chapter 7 Trustee and what those -- who the Chapter 7 Trustee

25   might be.  We did discuss a few possibilities.  And Mr.

1   Khodorovsky asked us to each submit to him the specific

2   qualifications we might -- would want in a Chapter 7 Trustee

3   to oversee and operate the business, whether to sell it or to

4   operate it or whatever the case might be.

5       So, Mr. Slome and I are going to each come up with our

6   own list of qualifications.  Hopefully, they will mostly

7   coincide.  Submit it to Mr. Khodorovsky, and obviously, the

8   U.S. Trustee gets the final decision as to who they want to

9   submit to the Court.  But thankfully, that would be in

10  conjunction with Mr. Slome and my input as to the potential

11  candidates for that.

12          MR. SLOME:  Your Honor.

13          MS. KAYLIE:  I'm sorry, Your Honor.

14          THE COURT:  Ms. Kaylie, is the basis -- does the

15  Debtor have a basis in this -- at this point in the case

16  that's in the entire record?  Does the Debtor have a basis in

17  law or fact to oppose the conversion of the case to one under

18  Chapter 7?

19          MS. KAYLIE:  Your Honor, it's kind of a loaded

20  question.  It's very difficult to answer that.

21          THE COURT:  No, I ask that question in lots of

22  cases.

23          MS. KAYLIE:  No, I understand that.

24          THE COURT:  It's not loaded.  I don't mean it as a

25  loaded question.  Perhaps we'll hear from Mr. Slome.  Perhaps

1    I'll circle back to Ms. Kaylie.

2            MS. KAYLIE:  I would appreciate that, Your Honor.

3            THE COURT:  All right.  Mr. Slome, let me hear from

4    you.

5            MR. SLOME:  Your Honor, Thomas Slome, Cullen &

6    Dykman.  Ms. Kaylie summed up our conversation with Mr.

7    Khodorovsky.  Essentially, Ms. Kaylie wanted to know kind of

8    how it works, next steps with respect to a conversion

9    appointment of a Trustee Operating Order.  And Mr.

10   Khodorovsky indicated that, you know, as far as parties, the

11   U.S. Trustee always welcomes input on that.  They'd rather

12   have skill sets than suggestions for Chapter 7 Trustees, but

13   I guess parties are free to do both or either.

14       And, you know, it's possible that Ms. Kaylie and I would

15   work together and try to come up with a common list.  Maybe I

16   would have some skill set factors I'd want to add and

17   disagree with one or two.  But that would be the process that

18   would happen once Your Honor announced, you know, that Your

19   Honor would convert the case.  And then it may take a day or

20   so for an Order to be entered.  And usually, the appointment

21   of a Trustee happens, you know, almost immediately

22   thereafter.  And that's about what we covered, Your Honor.  I

23   mean, you know my position on conversion.  I don't think

24   there is a -- I think even before the latest December 30th

25   deadline passing, there were grounds.  As Your Honor knows,

1   we had oral argument on that in November due to the lease

2   deemed rejection, and now, it just adds to it.

3        And, you know, again, I think the best result here for

4   everyone would be to see an orderly sale process.  Again, I

5   can't -- I think the Trustee is going to need some consent

6   from us.  I'm telling you my clients do not want to run this

7   diner.  But in the event that, you know, there was no choice,

8   there were no buyers, et cetera, they would do that.  But

9   ideally, it would be a bankruptcy sale.  We all know there's

10  benefits to a bankruptcy sale that we couldn't get in a

11  private sale.  So that's kind of where things stand.

12            THE COURT:  And, you know, anything can go anywhere,

13  but those are good points, and they're thoughtfully made, and

14  it does, I think, reflect the overall condition and state of

15  the record at this point, January 26, 2023, in this Chapter

16  11 case that was filed, gosh, a while ago.  It's a -- the

17  case number begins with a 21, not for a lack of effort and

18  not for a lack of, in my view, good faith from every quarter

19  and huge efforts that we find ourselves at this stage.  Mr.

20  Khodorovsky, anything to add to the record?

21            MR. KHODOROVSKY:  Your Honor, Nazar Khodorovsky for

22  the U.S. Trustee.  Not at this time.  I think the parties

23  summarized the conversation well.  Thank you, Your Honor.

24            THE COURT:  All right, thank you.  And we have the

25  position of the Movant.  You've indicated, I think,

1    previously your position, but just for the sake of the

2    complete record and on the basis of any further

3    conversations, Mr. Khodorovsky, what would be the position of

4    the Office of the United States Trustee and the question

5    presented by the Creditors motion?

6              MR. KHODOROVSKY:  Your Honor, Nazar Khodorovsky for

7    the U.S. Trustee.  Among the options presented by the motion

8    by Mr. Slome, the options being dismissal, conversion, or the

9    appointment of a Chapter 11 Trustee, the U.S. Trustee would

10   prefer conversion of this case to Chapter 7.  Thank you, Your

11   Honor.

12             THE COURT:  And if those options included as well

13   the appointment of a Chapter 11 Trustee, may I hear your

14   further thoughts?

15             MR. KHODOROVSKY:  Your Honor, Nazar Khodorovsky for

16   the U.S. Trustee.  That would still be our option,

17   conversion.  Thank you, Your Honor.

18             THE COURT:  All right.  Ms. Kaylie, anything to add?

19   I won't repeat the question if you prefer that I don't.

20             MS. KAYLIE:  I have nothing further.  No.

21             THE COURT:  All right, thank you.

22             MS. KAYLIE:  (Indiscern.).

23             THE COURT:  All right.  For the Court in the Chapter

24   11 case, Sid Boys Corp., as I continue our Case Management

25   Conference, and we've made a full record on the status of

1    things.  There's much good news there, but there's also the

2    challenging news and the news that can't be avoided because

3    of what the calendar tells us and what the Docket tells us

4    that the time for the Chapter 11 Debtor to confirm a Plan is

5    past and has not been extended.

6        We have the Motion to Convert this case from one under

7    Chapter 11 to one under Chapter 7 and for other relief.  That

8    motion has been before the Court from time to time, and it

9    has been the frame within which the parties have attempted to

10   find the best path forward with some progress, but

11   ultimately, without success.

12       And I say "some progress" because we have been working

13   since the first hearing back in May of 2022 until now,

14   January 2023, through the summer season, through the holiday

15   period, with good results and a healthy balance in the DIP

16   account that's sadly no longer a prospect under the

17   Bankruptcy Code to confirm a Plan nor an agreement with the

18   principal Creditors that would likely be necessarily part of

19   a Plan.  Not for a lack of trying to be sure, not for lack of

20   trying in the Court's assessment by all the parties.  You

21   haven't found common ground, but that doesn't mean you

22   haven't made a common effort, and I thank you for it, and I

23   appreciate it.

24       I also thank -- I thank the Creditor and the Creditor's

25   principal for an ongoing open mind to a resolution.  I

1    realized you didn't get there.  And I thank the Debtor and
2    the Debtor's principal who made enormous efforts, productive
3    efforts to preserve value in the Chapter 11 case.  It's why
4    we've got something to talk about today, and that's a going
5    concern.

6         And in a context of a lot of challenges -- a lot of
7    opportunities, but a lot of challenges, some personal
8    challenges, even some health challenges.  And we've done our
9    best to have a process that worked with those and also
10   maintained the option, whether through Chapter 11 or now, as
11   is argued, through a Chapter 7 going-concern sale with an
12   operating Chapter 7 Trustee to keep that going-concern value
13   available to the benefit of Creditors and workers and the
14   community that depends on this diner amongst many other
15   typical and also somewhat unusual Parties-In-Interest here,
16   both present in these proceedings while represented by
17   counsel and, you know, absent but still, in a way, part of
18   the picture.

19        I have to say that, at this point in these proceedings,
20   I am constrained to conclude for the record for all the
21   reasons reflected in the entire record, that good grounds
22   have been established for the conversion of this Chapter 11
23   case to one in Chapter 7 because, among other reasons, the
24   deadline for the Debtor to confirm a Chapter 11 Plan has
25   passed.  Debtor's counsel acknowledged on the record that

1    that deadline is passed and also that a determination was

2    made.  I think the record reflects this in words, and it

3    certainly reflects it in substance, not to make a motion

4    again to extend that December 30th deadline because that path

5    simply no longer is viewed objectively was one that would be

6    a successful path for the Debtor.  Sometimes, the most

7    important decision you need to make is when it's time to

8    change course.  So with the benefit of counsel and counsel's

9    advice, and counsel's steady hand that's where we find

10    ourselves.

11    So, I do conclude that the case should be converted.  I

12    anticipate and hope, I have to say, that the -- when a

13    Chapter 7 Trustee is appointed, it's a person with the

14    appropriate qualifications to continue to operate this very

15    valuable going-concern of the business and to, in that way,

16    preserve value for a sale, a path to a sale, and then a sale

17    through the bankruptcy process to pay Creditors to preserve

18    the business, preserve the operation (indiscern.) the

19    opportunities and the value and the net needs that this

20    Debtor provides has been clear from the outset that those

21    were a big part of the picture here.

22    That's to say that this isn't just any case.  And I have

23    to tell you that in almost 20 years now, 19 and a half to be

24    -- maybe slightly less than 19 and a half, there's no case,

25    certainly no Chapter 11 operating case is just any case.

1   There's no such thing as "just any case."  But this case sure

2   isn't just any case.  And so probably since the motion number

3   44 on the Docket, #33 on the calendar, is granted, I would

4   ask -- Mr. Slome, it's your motion.  If you could submit an

5   appropriate Proposed Order, please circulate it to Ms. Kaylie

6   and Mr. Khodorovsky, of course.  Let us know when it's

7   uploaded.  We'll do our best to get it up on the Docket

8   promptly.

9       Ms. Siderakis, I'm sorry this is where we are at this

10  point.  But I'm not sorry because I'm actually hopeful that

11  this will turn out to be a good path forward for the Debtor,

12  the Debtor's employees, the community, your family, and that

13  everything that, you know, that'll come next in this -- in

14  the next phase of the case.  You know, we wouldn't be here,

15  we wouldn't have these opportunities but for your hard work

16  and your dedication and your family's dedication and your

17  late husband's dedication to this business.  So, I just --

18  the record is not going to be complete without saying that on

19  the record, and I mean it most sincerely.  Thank you so much.

20      I'll be looking for that order.  As to the -- I see your

21  hand.  Just one second.  As to the Debtor's Cross-Motion,

22  that is marked off and so ordered in view of the conversion

23  of the case.  Our Case Management Conference is marked off

24  and so ordered.  Is there anything further?  I'm going to

25  start with -- well, Ms. Kaylie, I see your hand first.  Ms.

1    Kaylie, anything to add?

2           MS. KAYLIE:  Your Honor --

3           THE COURT:  Your hand went away.

4           MS. KAYLIE:  No, it's just because I'm answering

5    now.  Your Honor, Rachel Kaylie representing the Debtor, for

6    the record.  I just want to make it -- ask Your Honor to make

7    it clear for the record that the Secured Creditor's --

8    landlord's motion is being granted to the extent of the

9    conversion.  Your Honor hasn't ruled on whether the lease was

10   assumed or not assumed on that issue.  I just want to --

11          THE COURT:  I think that issue is moot at this

12   point.  Mr. Slome (indiscern.) it's your motion.

13          MS. KAYLIE:  That's what I just wanted to make clear

14   for the record.

15          THE COURT:  I'll have to think about whether that

16   has consequences in this context.  But the -- another

17   interesting issue is that I -- every time we have another

18   hearing, I dive back into that end of the pool.  I -- Mr.

19   Slome, do you think that issue is -- does that

20   (indiscern.) --

21          MR. SLOME:  I don't think --

22          THE COURT:  Maybe I have to think about it.

23          MR. SLOME:  Thomas Slome, Cullen & Dykman.  I don't

24   think Your Honor actually ruled on the issue.  I would say

25   that --

1          THE COURT:  No, that's correct.

2          MR. SLOME:  Right.  And I would say that the way --

3    the best way to look at it is kind of like it's moot.  It's

4    that there is that possibility.  Certainly, the Debtor put in

5    opposition.  I have my own views on that, of course.  And

6    then we have the second missed deadline, which I supplemented

7    the record with, you know, pointing --

8          THE COURT:  Yes, and that was -- there was not

9    ambiguity with respect to that.  That's clear.

10         MR. SLOME:  Correct.  So I think, for the benefit of

11   -- whatever benefit it gives Ms. Kaylie or the Debtor, or the

12   Debtor's principal, I don't -- you know, I think it's clear,

13   and I can concede Your Honor didn't rule one way or the other

14   as to whether the lease was deemed rejected.  I'll also add

15   something maybe to clean up the record is that we also asked

16   for an Order Compelling Immediate Surrender.  We don't want

17   that at this point for all the reasons stated.  We want the

18   Chapter 11 -- Chapter 7 Trustee with an Operating Order to at

19   least attempt to come up with a buyer and sell the diner.

20   So, you know, maybe just for the purposes of the record,

21   unless you think I should put it in the Order, I'd like to

22   keep the Order simple and clean, so I'd prefer not.  But we -

23   - you know, my -- we would withdraw, without prejudice, any

24   part of that motion seeking to compel the Debtor to surrender

25   the premises to the landlord.

1          THE COURT:  So the concept of withdrawal without
2     prejudice, well, is -- was on my mind as well.  In that
3     motion, you seek conversion.  At this point, taking into
4     account the entire record, that's appropriate, and that
5     motion is -- that piece of the motion is granted.  Immediate
6     surrender has been -- that request is withdrawn.  The deemed
7     rejected question may have some consequence and could
8     conceivably have consequence in the context of what the
9     Trustee has to sell and whether the Trustee has a lease or
10    not.  I don't know that I'm in a -- that I have thought
11    through.

12         In fact, I do know that I have not thought through all
13    the aspects of that in light of a conversion.  There are
14    arguments on both sides of whether the lease is deemed
15    rejected, whether it's part of an integrated thing, and
16    whether the integrated thing is of a nature that it then
17    extends beyond the purely lease date.  There's franchise
18    cases that are not under a franchise provision of the Code
19    but do seem to come up principally or maybe exclusively in
20    the franchise context.  You can tell, of course, that I was,
21    again, you know, went back -- retraveled this path to get
22    ready for today.

23         My impression is that that component of the relief that
24    you had sought is not -- has not been withdrawn.  I was going
25    to ask, is that -- may I mark that withdrawn without

1    prejudice?  Let's get into the next stage of the case.  You

2    can always bring that issue back if it turns out to be an

3    issue with respect to property of the Estate.  Mr. Slome,

4    it's your motion.

5         MR. SLOME:  Your Honor, Thomas Slome, Cullen &

6    Dykman.  I mean, I think that's fine.  I mean, you could --

7    in my opinion, you can only withdraw, like, a Motion to

8    Convert or the Motion to Surrender.  I've already withdrawn,

9    without prejudice, the Motion to Surrender.  I think Your

10   Honor is right that Your Honor can grant the Motion to

11   Convert without deciding that.  So, I mean, obviously, it

12   would benefit me in negotiations with the Trustee if you were

13   to say the lease was rejected.  But I don't think that would

14   be fair to a Chapter 7 Trustee.  It's not what we're looking

15   to accomplish here.  So as long as, you know, my right is

16   preserved and a Chapter 7 Trustee's right is preserved and

17   any other Party-In-Interest' rights are preserved on that

18   issue because Your Honor did not need to decide it to grant

19   this motion, that's how I would perceive it.

20        THE COURT:  What I would be prepared to reflect on

21   the record --

22        MR. KHODOROVSKY:  Your Honor --

23        THE COURT:  -- as you say in your order, is that,

24   with respect to this motion --

25        MR. KHODOROVSKY:  Your Honor –

1          THE COURT:  -- Ms. Kaylie, thank you for raising the

2     issue by the way, based on the entire record, the Court

3     concludes that good grounds have been established for the

4     conversion of the Chapter 11 case to one under Chapter 7

5     because, among other reasons, the deadline for the Debtor to

6     confirm a Chapter 11 Plan has passed and cannot be extended.

7     The balance of the relief requested in the motion is

8     withdrawn, without prejudice.  Submit order and circulate it

9     before you submit it.

10          MR. SLOME:  Yes, Your Honor.

11          THE COURT:  All right.  Thank you.  Thank you,

12     everybody.

13          MR. KHODOROVSKY:  Your Honor?

14          THE COURT:  Yes?

15          MR. KHODOROVSKY:  Your Honor?  May I be heard?

16          THE COURT:  Mr. Khodorovsky.

17          MR. KHODOROVSKY:  Nazar Khodorovsky.  I know Your

18     Honor has marked off the Status Hearing, and I fully agree

19     with Your Honor about that.  I do think it may be necessary

20     at this point, and I know maybe -- it's maybe putting the

21     cart before the horse.  But there's a pending fee application

22     in this case by the Morgan & Bley firm.  It hasn't been --

23          THE COURT:  Yes.

24          MR. KHODOROVSKY:  It's not been noticed.  I don't

25     see it on the Docket, and --

1          THE COURT:  No, it's not noticed for a date.

2          MR. KHODOROVSKY:  -- I don't see it on the Court's

3    calendar.

4          THE COURT:  It's not on today's calendar.

5          MR. KHODOROVSKY:  So, Your Honor, what I would like

6    to respectfully ask, maybe it may make sense now to schedule

7    a hearing date on that application so the Chapter 7 Trustee

8    is aware of it and can weigh in.

9          THE COURT:  Ms. Jackson, what would be the right way

10   for that to happen?  Would that be that the -- there could be

11   a notice filed and we'll figure out a date and provide it?

12   So perhaps the firm can follow up with Ms. Jackson.  We need

13   to get a Trustee in place in fairness to the Trustee.  We

14   need to let the Trustee get their feet on the ground in the

15   case.  And then absolutely.  We would schedule a hearing for

16   that.  It was not noted when it was docketed.  It was not

17   docketed for a date.  That's why there is no date, and --

18   but, so that needs to be fixed because that'll be one of the

19   things that needs to -- that does need to be heard to go

20   forward.

21       But good point, Mr. Khodorovsky.  Thank you.  I hope

22   that's clear when you go because, I mean, I don't docket,

23   needless to say.  But I understand that when you docket, one

24   of the things you do is pick a date, and that didn't happen

25   here.  So we have the motion, which is on the Docket of the

1  case, which is helpful, but it hasn't yet -- it doesn't yet

2  belong to a date.  So with coordination with Ms. Jackson, we

3  can take care of that.  Ms. -- and I note that Mr. Morgan is

4  nodding.  Thank you very much.  Ms. Kaylie, anything further?

5         MS. KAYLIE:  I was actually going to ask about this

6  -- the fees.  I would -- I didn't realize that it hadn't been

7  docketed because I actually filed objections, and so did the

8  U.S. Trustee.  Preliminarily, I would just ask that any final

9  fee application for any party to date, at least whether final

10  or interim, be provided by a certain date so that the Chapter

11  7 Trustee can have a good idea of what the administrative

12  costs are going to be.

13         THE COURT:  Well, it's clearly an asset case, so I'm

14  thinking will there be any bar date set?  I –

15         MR. KHODOROVSKY:  Your Honor, Nazar Khodorovsky for

16  the U.S. Trustee.  A Chapter 7 Trustee can always move to set

17  an administrative bar date.  Thank you, Your Honor.

18         THE COURT:  Okay, I think that makes sense.  We're

19  talking about a phase of the case with a central participant,

20  who has neither been identified nor put in place, and

21  therefore, unsurprisingly, is not here.  So we need to sort

22  that.  We need to get that -- that'll be among the things

23  that needs to be addressed when the Trustee gets in place.

24  It will be an interesting case for the Trustee and –

25         MR. MORGAN:  May I ask a question?

1          THE COURT:  -- and interesting case for everyone.

2          MR. MORGAN:  May I ask a question?

3          THE COURT:  You may state a question on the record.

4     I don't know that I'll be able to answer it.

5          MR. MORGAN:  Okay.  I just -- I don't know if the --

6     a bar date is set, whether our application, because it's

7     already filed, is going to be considered "already filed"

8     instead of filing it again.

9          THE COURT:  A bar date typically corresponds to

10    filing a claim.  A claim in a --

11         MR. MORGAN:  Yes.

12         THE COURT:  -- fee app are two different kinds of

13    things, so --

14         MR. MORGAN:  Okay.

15         THE COURT:  You know, the things that need to be

16    done would need to be done.  I would not let a bar date pass

17    without filing a Proof of Claim relying on a motion if I were

18    counsel, but I don't give legal advice.  So I --

19         MR. MORGAN:  I know.

20         THE COURT:  I just --

21         MR. MORGAN:  There's a procedure.

22         THE COURT:  Broadly speaking, missing deadlines is

23    not, you know -- has consequences, as we're learning today.

24         MR. MORGAN:  I understand.

25         THE COURT:  So good to -- and I understand there's

1    engagement on those issues already.  I think we saw some -- a

2    position of the United States Trustee.  Anyway, is there

3    anything else we can do today other then I say again, "Thank

4    you," and I'm looking -- I will continue to count on your

5    best efforts to move this forward in the best, most

6    productive possible way, mindful of all the different

7    interests that are a part of this bigger picture?

8              ALL:  (No verbal response).

9              THE COURT:  Nothing further?  All right, thank you

10    everybody.

11              MR. SLOME:  Thank you, Judge.

12              THE COURT:  In fact, I think there's one more matter

13    we need to call, right?

14              ALL:  Thank you, Your Honor.

15              THE COURT:  Good luck.

16         (Court adjourned)

17

18                        CERTIFICATION
19    I, Lewis Parham, certify that the foregoing is a correct
20    transcript from the electronic sound recording of the
21    proceedings in the above-entitled matter.
22
23
24    *Lewis Parham*                    3/20/23
25
26    _____       _____
27    Signature of Transcriber               Date