Richard J. McCord, Esq.
CERTILMAN BALIN ADLER & HYMAN, LLP
Counsel to the Chapter 7 Trustee
90 Merrick Avenue
East Meadow, New York 11554
Phone: (516) 296-7000
Fax: (516) 296-7111

**Hearing Date: July 17, 2023**
**Time: 2:00 p.m.**
**Objection Date: July 10, 2023**
**Time: 4:00 p.m.**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

In re:

                                                       Chapter 7

SID BOYS CORP D/B/A
KELLOGG'S DINER,

                                                       Case No: 21-42207-ess

                        Debtor.

----------------------------------------------------------------X

## TRUSTEE'S APPLICATION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363 (I) AUTHORIZING THE TRUSTEE TO SELL THE SUBSTANTIALLY ALL ASSETS OF THE DEBTOR TO THE HIGHEST AND BEST BIDDER AT AN AUCTION SALE; (II) SCHEDULING A HEARING TO APPROVE SUCH SALE TO THE HIGHEST AND BEST BIDDER; (III) APPROVING BIDDING PROCEDURES; (IV) APPROVING THE MANNER AND EXTENT OF NOTICE OF SUCH AUCTION HEARING

      **RICHARD J. MCCORD**, Chapter 7 trustee (the "Trustee") of the bankruptcy estate

("Estate") of Sid Boys Corp d/b/a Kellogg's Diner (the "Debtor"), by and through his attorneys,

Certilman Balin Adler & Hyman, LLP, respectfully submits this Motion for an Order pursuant to

11 U.S.C. §§ 105 and 363(a), (b), (f) and (m) and Rules 2002, 6004 and 9004 of the Federal

Rules of Bankruptcy Procedure ("Bankruptcy Rules") authorizing the Trustee to sell

substantially all assets of the Debtor's business located at 514/518 Metropolitan Avenue,

Brooklyn, New York 11211 (the "Assets") pursuant to the terms as set forth in the Asset

Purchase Agreement between "Richard J. McCord, as Chapter 7 Trustee for the Estate of Sid

Boys Corp d/b/a Kellogg's Diner" as seller, and "Brooklyn 24 Hrs LLC", a New York limited

liability company, as purchaser ("Brooklyn 23" or "Proposed Stalking Horse Purchaser") and executed by Purchaser on June 28, 2023 (the "APA"), for the sum of One Million Seven Hundred and Fifty Thousand Dollars ($1,750,000.00)  subject to higher or betters offers at public auction, free and clear of all liens, claims, encumbrances and other interests, with such liens, claims, encumbrances and other interests (collectively, the "Liens") to attach to the net proceeds of sale with the same validity and priority as such Liens had prior to the sale; (ii) scheduling a hearing to approve the sale of the Assets to the successful bidder; (iii) approving terms and conditions for submitting offers and approving the form and manner of notice with respect to the hearing; and (iv) granting such other, further and different relief as this Court deems just, proper and equitable (the "Motion"), and respectfully states as follows:

## JURISDICTION

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1334, 11 U.S.C. §§ 105(a), 363(a), (b), (f) and (m) and Bankruptcy Rules 2002, 6004 and 9004, and Administrative Order #264 Judge Weinstein's Referral Order of August 28, 1986 (Weinstein, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

## BACKGROUND FACTS

2.      On August 28, 2021 (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3.      On January 30, 2023, the Debtor's case was converted to one under Chapter 7 (the "Conversion Date"). On February 1, 2023, the Trustee was appointed.

4.      The Debtor owns, and until the Conversion Date operated, a 24-hour diner business (the "Business") located at 514/518 Metropolitan Avenue, Brooklyn, New York (the "Premises").

5.    Upon the Conversion Date, the Trustee temporarily shut down operations of the Business.

6.    Thereafter, the Trustee determined, in utilizing his best business judgment, that the operation of the Business for a limited period of time was necessary and in the best interest of the estate as well as benefit to the Debtor's creditors.

7.    On February 3, 2023, the Trustee, through counsel, filed a Motion for an Order Authorizing the Trustee to Operate Debtor's Business Pursuant to 11 U.S.C. Section 721 and for Emergency Temporary Relief through and Order to Show Cause Under Local Rule 9077-1 ("Motion to Operate"). There were no objections to the Motion to Operate and on February 16, 2023, the Order Authorizing the trustee to Operate Debtor's Business Pursuant to 11 U.S.C. Section 721 was entered. Annexed hereto as **"Exhibit A"** is a copy of said Order.

8.    Schedule A/B of the Debtor's bankruptcy petition indicates the Debtor's interest in various assets, including but not limited to, food and alcohol, office furniture, food license, and the name "Kellogg's Diner".  Annexed hereto as **"Exhibit B"** is a copy of Schedule A/B.

9.    On February 16, 2023, the Order Authorizing the Retention of MYC & Associates, Inc. ("MYC"), as Business Broker and Custodian to Richard J. McCord, as the Chapter 7 Trustee Effective February 1, 2023 was entered. Annexed hereto as **"Exhibit C"** is a copy of said Order.

10.    Since February 21, 2023, the Trustee has been operating the Business with the assistance of MYC. MYC immediately began marketing the sale of the Business.

11.    Based upon MYC's marketing efforts, the Trustee has received an offer of $1,750,000.00 from the Proposed Stalking Horse Purchaser to purchase the Trustee's right title and interests in substantially all of the assets and certain specified liabilities of the Business. The

Trustee wishes to sell the Business, free of all liens, claims, encumbrances and other interests, if any, and subject to higher or better offers. The Trustee is holding a 10% deposit in the amount of $175,000.00. The sale of the Business is "as is," without any warranties, guarantees and/or representation regarding the condition of the Business. Annexed hereto as **"Exhibit D"** is a copy of the APA.

## SUMMARY OF ASSET PURCHASE AGREEMENT[1]

13.     The Trustee shall sell to the Proposed Stalking Horse Purchaser, and Proposed Stalking Horse Purchaser shall purchase from the Trustee, at the price and upon the terms and conditions set forth in the APA. Subject to the terms and conditions set forth herein, at the Closing, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Seller, free and clear of any Encumbrances, in accordance with the Bankruptcy Code, all of Debtor's right, title and interest in, to and under all of the assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including goodwill), wherever located and whether now existing or hereafter acquired (other than the Excluded Assets), which substantially relate to, or are primarily used or held for use in connection with, the Business, all to the extent they exist at the Business and in "As-is" "where-is" condition (collectively, the "Personal Property").

**Because the sale of liquor provides a fair portion of revenue to the diner's operations, the APA does include a provision that the contract is contingent upon the Proposed Stalking Horse Purchaser obtaining its own temporary liquor license as a closing condition.** ***See*** **APA Sec. 2.05. It is the Trustee's and his counsel's experience that such a**

---

[1] The description set forth herein is only a summary of the provisions contained in the APA, and the Trustee recommends that creditors and interested parties read the APA in its entirety. To the extent that there is any conflict between the terms of the APA and the terms of this Application, the terms of the APA shall control.

provision is within the ordinary course of sales of restaurant operations and that the time period granted to the Purchaser is reasonable. Moreover, the APA provides for a modest expense reimbursement for the Proposed Stalking Horse Purchaser of up to $25,000.00 in the event that it is not the Successful Purchaser after the close of the Auction Sale (the "Expense Reimbursement"), which is subject to the Proposed Stalking Horse Purchaser submitting bills and obtaining approval from this Court for the actual amount of reimbursement with such being paid out of the proceeds from the Sale. *See* APA Sec. 11.01(b).

14. The Purchased Assets shall not include the following assets (collectively, the "Excluded Assets"): (a) any cash, investments, and cash equivalents of Debtor as of Closing; (b) any accounts receivable of the Business; (c) Debtor's current lease for the parcel of real property located at 514/518 Metropolitan Avenue, Brooklyn, New York, which is owned by 518 Metropolitan Ave. Corp., a New York corporation (the "Leased Real Property"); (d) any liquor, supplies and produce at Premises at the time of closing; (e) the corporate seals, organizational documents, minute books, stock books, Tax Returns, books of account or other records relating to the corporate organization of Debtor; and (f) the rights of the Trustee under the APA and the Ancillary Documents.

15. The Proposed Stalking Horse Purchaser acknowledges that it has fully examined the Business and is purchasing the Business in an "as is" condition "with all faults" and specifically and expressly without any warranties, representations or guarantees, from or on behalf of Trustee and its agents. Proposed Stalking Horse Purchaser has not relied, and is not relying, upon any information, document, sales brochures or literature, maps or sketches, projection, proforma, statement, representation, guarantee or warranty (whether express or

implied, or oral or written, or material or immaterial) that may have been given by or made by or on behalf of Trustee.

16.     Pursuant to the terms of the APA, at the Closing, Trustee shall deliver to the Proposed Stalking Horse Purchaser the following:

>      (i)     a bill of sale in the form of Exhibit A to the APA (the "**Bill of Sale**") duly executed by Seller, transferring the tangible personal property included in the Purchased Assets to Buyer;
>
>      (ii)    the Seller Closing Certificate;
>
>      (iii)   such other documents as are required to be delivered by Seller to Buyer hereunder at or prior to the Closing; and
>
>      (iv)    such other customary documents, in form and substance reasonably satisfactory to Buyer, as may be required to effect this Agreement.

17.     Pursuant to the terms of the APA, at the Closing the Proposed Stalking Horse Purchaser shall deliver to the Trustee the following:

>      (i)     the Purchase Price, less the Deposit, by wire transfer of immediately available funds to an account designated in writing by Seller to Buyer;
>
>      (ii)    the Buyer Closing Certificate;
>
>      (iii)   the certificate of an authorized officer of Buyer required by Section 8.02(h) of the APA;
>
>      (iv)    to the Property Owner, the Note duly executed by Buyer;
>
>      (v)     to the Landlord, the Buyer Lease duly executed by Buyer; and
>
>      (vi)    such other documents as are required to be delivered by Buyer to Seller hereunder at or prior to the Closing and such other customary documents, in form and substance reasonably satisfactory to Seller, as may be required to effect this Agreement.

18.     As the Trustee seeks to conduct an auction, with respect to any offer that is received, accepted and approved (the "Highest Bid"), the offeror ("Highest Bidder") shall

assume all of the terms of the APA between Trustee and Proposed Stalking Horse Purchaser, a copy of which is annexed hereto as **"Exhibit D"** (as such terms, including those with respect to the Purchase Price, shall have been modified by the terms of the auction), and the APA as so modified shall not thereafter be conditioned upon or subject to Trustee's not receiving a higher or better offer.

19.     To the extent not exempted under the Bankruptcy Code, all transfer, sales, use, registration, documentary, stamp, value added and other such Taxes and fees (including any penalties and interest) incurred in connection with the APA and the other Ancillary Documents, if any, shall be borne and paid by Proposed Stalking Horse Purchaser when due. Proposed Stalking Horse Purchaser shall, at its own expense, timely file any Tax Return or other document with respect to such Taxes or fees (and the Trustee shall cooperate with respect thereto as necessary).

20.     Trustee and the Proposed Stalking Horse Purchaser each represent and warrant to represent and warrant to each other that they have not dealt with any broker in connection with this sale other than MYC. The Trustee agrees to pay MYC the commission earned thereby, pursuant to separate agreement by and between the Trustee and MYC, subject to proper application to the Court, after notice and a hearing, and with the prior consent and approval of the Trustee and his counsel.   The Trustee and Proposed Stalking Horse Purchaser shall indemnify and hold each other harmless from and against any claim, judgment, liability, cost or expense, including, without limitation, reasonable attorney's fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph of the APA. The provisions of that paragraph shall survive the Closing, or if the Closing does not occur, the termination of APA.

## BIDDING PROCEDURES

21.    The Trustee proposes and seeks Court approval of the following bidding

procedures ("Bidding Procedures") for any third party wishing to submit a bid for the estate's

interest in the Business at the Auction Sale to be conducted by the:

A.    These terms and conditions of the Auction Sale (the "Terms and Conditions of Sale") are being promulgated in connection with the United States Bankruptcy Court, Eastern District of New York (the "Bankruptcy Court") authorized auction sale (the "Auction Sale") of the Debtor's interest in all of Debtor's right, title and interest in, to and under all of the assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including goodwill), wherever located and whether now existing or hereafter acquired (other than the Excluded Assets), which substantially relate to, or are primarily used or held for use in connection with, the Business located at 514/518 Metropolitan Avenue, Brooklyn, New York (collectively the "Acquired Assets"). The seller of the Acquired Assets is Richard J. McCord, Chapter 7 Trustee (the "Trustee" and/or the "Seller") for the Estate of Sid Boys Corp d/b/a Kellogg's Diner, (the "Debtor"), a Debtor in a Chapter 7 case currently pending in the United States Bankruptcy Court for the Eastern District of New York under the caption and case number set forth above; The Trustee's retained special liquidator and custodian ("Liquidator") is MYC, 1110 South Avenue, Suite 22, Staten Island, New York 10314; Telephone (347) 273-1258; Facsimile (347) 273-1358; email: sales@myccorp.com; and website: www.myccorp.com.

B.    The Auction Sale will take place at a date and time to be determined by the Trustee in consultation with MYC. The Trustee reserves his right to conduct the auction online or by video/telephone conferencing. **The Trustee seeks to have the Auction Sale conducted on July 27, 2023, at 11:00 a.m., with a deadline for submission of bids of 5:00 p.m. on July 25, 2023.**

C.    Information regarding the Trustee's Auction Sale of the Acquired Assets can be obtained by contacting the Trustee's counsel at the telephone number and address set forth herein or by contacting MYC or on the MYC website set forth in paragraph "A" above.

D.    The Trustee, in his sole discretion and under his business judgment authority, has entered into the APA as a stalking horse contract with the Proposed Stalking Horse Purchaser that offers a purchase

price of $1,750,000.00 that the Trustee deems to be a reasonable and valid purchase offer ("Stalking Horse Offer") for the Acquired Assets. The Trustee shall use the Stalking Horse Offer as the reserve sale price at the Auction Sale, such that the Stalking Horse Offer will be the opening bid at the Auction Sale.

E.  In order to be permitted to bid on the Acquired Assets, at least two (2) days prior to the commencement of the Auction Sale, and as a condition to be able to bid at the Auction Sale, each prospective bidder must: (i) register with MYC; (ii) deliver to MYC the original signed Terms and Conditions of Sale; and (iii) tender a bank check in the amount of $180,000.00 ("Qualifying Deposit") made payable to "Richard J. McCord, Chapter 7 Trustee", which amount shall serve as a good faith deposit against payment of the purchase price by such bidder in the event that such bidder is determined to have made the highest or best bid at the conclusion of the Auction Sale ("Successful Bidder").

F.  Once a prospective bidder has satisfied the conditions set forth in paragraph E to bid at the Auction Sale, each competing offeror's ("Competing Offeror") competing offer ("Competing Offer") must satisfy the following terms and conditions: (i) a Competing Offer shall provide for a purchase price of at least $50,000.00 more than the Stalking Horse Offer; (ii) in the case of any subsequent competing offer ("Subsequent Competing Offer") received from any party, which may, include, without limitation, the Stalking Horse Bidder (after a prior competing bid has been received), such Competing Offer shall provide for an aggregate consideration at least $50,000.00 in excess of that provided by the prior better offer and shall otherwise comply with all conditions of the Terms and Conditions of Sale; (iii) the Competing Offer shall be substantially similar to the terms and conditions of the APA; (iv) the Competing Offer shall have demonstrated, to the sole satisfaction of the Trustee and his counsel, evidence of its ability to conclude the transaction upon the terms and conditions of this Auction Sale, without delay; and (v) the Competing Offer shall not be conditioned upon the outcome of unperformed due diligence by the Competing Offeror with respect to the Acquired Assets that are the subject of this Auction Sale.

In order to be considered as the Successful Bidder by the Court and admissible on the date of the hearing to confirm the Auction Sale, the Stalking Horse Offeror or a Competing Offeror's Competing Offer must satisfy the following terms and conditions: (i) a Competing Offer (which can include a subsequent higher bid by the Stalking Horse Offeror during the Auction Sale) shall have

been determined by the Trustee, using his business judgment, to be the highest or best offer received for the Acquired Assets at the conclusion of the Auction Sale; (ii) a higher or better Competing Offeror shall have signed the terms and conditions agreeing to be bound by the Terms and Conditions of Sale; and (iii) the Competing Offeror shall provide, a certified check made payable to Richard J. McCord as Trustee, the sum of ten percent (10%) of the proposed purchase price as a down payment, in accordance with paragraph G.

G.    No later than twenty four (24) hours after the conclusion of the Auction Sale, the Successful Bidder of the Acquired Assets shall deliver to the Trustee a bank check which amount must be equal to ten (10%) percent of the successful bid, minus the Qualifying Deposit (together with the Qualifying Deposit, the "Deposit"). The Successful Bidder for the Acquired Assets must execute, and thereby agree to be bound by: (i) these Terms and Conditions of Sale; and (ii) a Memorandum of Sale/Contract of Sale/Asset Purchase Agreement.

H.    At the conclusion of the Auction Sale, the Trustee, or his representative, will return the Qualifying Deposits to all other bidders. The Trustee, however, shall retain the Qualifying Deposit of the second highest bidder (the "Second Bidder").

I.    The Successful Bidder, or its assignee, must close on the Acquired Assets (the "Closing") on a date ("Closing Date") that is not more than fifteen (15) calendar days after the entry of a Bankruptcy Court Order confirming the Auction Sale. **TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER, OR ITS ASSIGNS**, although such Closing Date may be extended solely by the Trustee, in his discretion. The Closing shall take place at a location that is to be determined by the Trustee.

J.    The Bankruptcy Court, prior to the Closing, may enter an Order confirming the Auction Sale.

K.    The Successful Bidder, or its assignee, shall pay all of its expenses incurred as purchaser, including, but not limited, any commission or fees to a broker or a consultant engaged by the Successful Bidder in connection with the purchase of the Acquired Assets. The Successful Bidder, or its assignee, acknowledges that he, she, or it, will be responsible for any incidental expenses, and for the completion of any transfer forms, if applicable.

L.    In connection with the Closing and Closing Date, the Successful Bidder, or its assignee, is hereby given notice that **Time is of the Essence against the Successful Bidder, or its assignee, and the failure of the Successful Bidder, or its assignee, to close for any reason whatsoever (except as otherwise provided below) including his, her, or its, failure to pay the balance of the Purchase Price on the Closing Date, will result in the Seller retaining the Deposit as liquidated damages and the termination of the Successful Bidder, or its assignee, right to acquire the Acquired Assets under these Terms and Conditions of Sale**. The Successful Bidder, or its assignee, shall be obligated to close on the Acquired Assets and there is no contingency of any kind or nature that will permit the Successful Bidder, or its assignee, to cancel or avoid **his, her, or its**, obligation under these Terms and Conditions of Sale, except as otherwise provided for in the APA executed by such Successful Bidder. Further, the Successful Bidder, or its assignee, must demonstrate, to the satisfaction of the Trustee or the Bankruptcy Court, as the case may be, evidence of **his, her, or its**, ability to conclude the transaction upon these Terms and Conditions of Sale, without delay. The Trustee reserves the right to reject any bidder/offeror, who the Trustee, in his sole discretion, believes is not financially capable of consummating the purchase of the Acquired Assets. **Expenses incurred by the Successful Bidder, or its assignee, or any competing bidder concerning the performance of any due diligence, such as obtaining due diligence reports, shall be the sole financial responsibility of such bidder and under no circumstances shall the Trustee, or the Debtor's estate, or the Trustee's professionals, be liable or responsible for, or pay, such expenses.**

M.    In the event that the Successful Bidder for the Acquired Assets, or its assignee, fails to tender the balance of the Purchase Price on the Closing Date, or otherwise perform **his, her, or its**, obligations under these Terms and Conditions of Sale, the Trustee, at his sole option, shall immediately negotiate the Qualifying Deposit of the Second Bidder and shall be further authorized to sell the Acquired Assets to the Second Bidder, or its assignee, without any further notice or approval of the Bankruptcy Court, without giving credit to the Second Bidder for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Trustee deems appropriate. Should the Second Bidder, or its assignee, fail to close on the Acquired Assets within twenty (20) days of receiving from the Trustee, notice, **TIME BEING OF THE ESSENCE,** (at the address set forth on the bidder registration form) that said Second Bidder is now deemed the Successful

11

Bidder, then the **Sellers shall be: (a) authorized to keep the Qualifying Deposit of the Second Bidder as liquidated damages**; and (b) authorized but not obligated to sell the Claim to the next highest bidder, without any further notice or approval of the Court.

N.     The Acquired Assets are being sold and delivered **"AS IS", "WHERE IS", "WITH ALL FAULTS"**, without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and free and clear of all monetary liens, claims and encumbrances of whatever kind or nature, such liens, claims, interests and encumbrances, if any, to attach to the proceeds of Auction Sale in such order and priority as they existed immediately prior to the Sale Date. By delivering their respective Qualifying Deposits, all bidders acknowledge that they have had the opportunity to review and perform due diligence on the Acquired Assets, the state of title thereof and laws, rules and regulations applicable thereto, and the form of the Trustee's bill of sale that the Trustee will execute to convey the Acquired Assets, and will rely solely thereon and on their own independent investigations and inspections of the Acquired Assets in making their bids.   All bidders acknowledge that they have conducted their own due diligence in connection with the Acquired Assets, and are not relying on any information provided by the Trustee, MYC or the Trustee's retained professionals.

O.     The Trustee shall convey the Acquired Assets by delivery of a bill of sale and execution of those documents deemed customary and necessary in connection with such sale.

P.     Nothing contained in these Terms and Conditions of Sale shall supersede or alter any provisions of Title 11, United States Code (the "Bankruptcy Code") and/or of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") or otherwise interfere with the jurisdiction of the Bankruptcy Court.  To the extent of any conflict between the Bankruptcy Code and/or the Bankruptcy Rules and these Terms and Conditions of Sale, the Bankruptcy Code and/or the Bankruptcy Rules shall govern.  All of the terms and conditions set forth in these Terms and Conditions of Sale are subject to modification as may be directed by the Trustee, or by the Bankruptcy Court.  The Trustee reserves the right to modify these Terms and Conditions of Sale at the Sale, or thereafter, to maintain consistency with the provisions of the Bankruptcy Code, Bankruptcy Rules, and/or orders of the Bankruptcy Court.

12

Q. Neither the Trustee, MYC, the Trustee's retained professionals, nor the Debtor's estate, are liable or responsible for the payment of fees of any broker or agent that has not been retained by an order of the Bankruptcy Court.

R. These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference at the Auction Sale of the Acquired Assets. By making a bid for the Acquired Assets, all bidders shall be deemed to have acknowledged having read, and understand, these Terms and Conditions of Sale and have agreed to be bound by them.

S. The Trustee shall be a party to the Auction Sale of the Acquired Assets exclusively in his capacity as Trustee in the bankruptcy estate and not as an individual. If the Trustee is unable to deliver the Acquired Assets in accordance with these Terms and Conditions of Sale for any reason whatsoever, his only obligation will be to refund the Deposit to the Successful Bidder (or Second Bidder) and upon such refund the Successful Bidder (or Second Bidder) will have no recourse or claim against the Trustee, the Trustee's retained professionals, or the Debtor's estate.

T. The Trustee reserves his right to withdraw the Acquired Assets from the Auction Sale, either prior or subsequent to the auction, for any reason whatsoever, without notice, as he deems necessary or appropriate.

U. The Auction Sale of the Acquired Assets is subject to confirmation by the Bankruptcy Court. The Trustee or the Trustee's attorney shall notify the Successful Bidder whether the Auction Sale is confirmed. Any disputes concerning the Auction Sale shall be determined by the Bankruptcy Court. By participating in the Auction Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes arising in the Debtor's pending case.

V. **By making a bid for the Acquired Assets, all bidders shall be deemed to have acknowledged having read, and understand, these Terms and Conditions of Sale and have agreed to be bound by them.**

22. The Trustee believes that the preceding procedures constitute appropriate bidding procedures under the facts and circumstances of this case. In order to maximize the benefit to the Estate, Trustee seeks to implement this reasonably competitive bidding process given the

13

nature of the proposed transaction. The Trustee maintains that this procedure is designed to generate a maximum recovery to the Estate while serving to prevent frivolous bidding, and respectfully requests the Court to approve and authorize same.

## REQUESTED RELIEF

23.    The Trustee seeks an Order of this Court, substantially in the form of the proposed order annexed hereto:

(a)    Authorizing the sale of the Business to the Proposed Stalking Horse Purchaser or to a purchaser making the highest/best offer at the auction;

(b)    Approving the terms, conditions and procedures for Trustee's sale of the estate's interest in the Business to such purchaser;

(c)    Approving the bidding procedures set forth herein;

(d)    Approving the manner and extent of notice of the auction sale, if any;

(e)    Allowing Trustee to sell the estate's interest in the Business free and clear of all liens, claims, encumbrances and interests with such liens, claims, encumbrances and interests, if any to attach to the proceeds; and

(f)    Granting such other relief and further relief as is just and proper under the circumstances.

## BASIS FOR RELIEF

### A. The Sale of the Property Should Be Approved As An Exercise of Trustee's Sound Business Judgment

25.    Bankruptcy Code Section 363 provides, in pertinent part, as follows:

(b)(1) The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate.

11 U.S.C. § 363(b)(1).  The use, sale or lease of property of the estate other than in the ordinary course of business may be conducted if a good business reason exists to support it. *Licensing By Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d Cir. 1997), citing *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir.1983). *See also In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989).  Here, sound business

reasons exist to justify selling the Business to the Proposed Stalking Horse Purchaser pursuant to the APA, subject to any higher or better offers that may be received. It is respectfully submitted that permitting the Trustee to proceed with the sale of the Business subject to higher or better offers, as requested herein, will maximize the value to be realized for the Business .

26. Bankruptcy Code Section 363(f) provides:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such; property of an entity other than the estate, only if:
>
> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Section 363(f) imposes conditions on the ability of a court to authorize a sale that is "free and clear of any interest in such property." *In re Arch Hosp., Inc.*, 530 B.R. 588, 590–91 (Bankr. W.D.N.Y. 2015). To authorize a sale free and clear of all liens, claims, interests, and encumbrances, a court must find that at least one of the elements listed in 363(f) is satisfied. *In re GSC, Inc.*, 453 B.R. 132, 183 (Bankr. S.D.N.Y. 2011). *See also Mich. Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n. 24 (6th Cir. 1991) (since Section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of the five requirements shall suffice to approve the sale of the Property "free and clear" of all liens, claims and encumbrances); *In re Heine*, 141 B.R. 185, 189 (Bankr. D.S.D. 1992)

("The conditions in Section 363(f) are written in the disjunctive, so only one of the five conditions must be met for authority to sell property free and clear of liens"), citing King, *Collier on Bankruptcy* ¶ 363.07 at 363–32.1 (15th ed. 1983).

27.     Here, the Trustee anticipates that the landlord, the largest creditor will consent to the Sale, provided that they receive sufficient amounts from the Sale after closing, including the proposed promissory note and a substantial amount of cash. The Debtor's estate is in a position where the existing lease was rejected by operation of law so a new lease would need to be granted by the landlord in order to close the transaction.

## B. The Bidding Procedures Are Fair, Appropriate and In The Best Interest of Creditors

28.     Under Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or by public auction. Here, the Trustee has entered into the APA to sell the Business for a Purchase Price that is sufficient to pay secured claims, if any, in full and, by scheduling an Auction and soliciting higher or better offers, hopes to attract Competing Bidders and maximize the sale proceeds. *See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well established principle of bankruptcy law that the . . . duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate"), quoting *Cello Bag Co. Inc. v. Champion Int'l Corp. (In re Atlanta Packaging Prods., Inc.)*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988). "[T]he true test of value is the sale process itself." *In re Boston Generating, LLC*, 440 B.R. 302, 326 (Bankr. S.D.N.Y. 2010).

29.     The Trustee's business broker, MYC, has been marketing and will continue to market the Business and send notice of the Sale Motion and Bidding Procedures to all parties that Broker believes may be potentially interested in acquiring the Business. MYC has already

16

been marketing the Business for sale for the past several months. The Bidding Procedures will allow any prospective bidders and other interested parties time before the Auction to conduct any due diligence required. If other interested parties are discovered, the Trustee will provide every possible opportunity to such parties to conduct the due diligence such parties need to submit the best possible Qualified Bid.

30.      The Trustee respectfully submits that by proposing the Bidding Procedures set forth herein he will derive the highest and best bids for the Business, in accordance with the exercise of the Trustee's business judgment.

## C. The APA Should Be Approved

31.      The Trustee, in his sound business judgment, is recommending that the Court approve the APA. Although a trustee's business judgment enjoys "great judicial deference," this discretion is not without limit. *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998), *citing In re WPRV–TV, Inc.*, 143 B.R. 315, 319 (D.P.R.1991), *vacated on other grounds*, 165 B.R. 1 (D.P.R.1992), *aff'd in part, rev'd in part*, 983 F.2d 336 (1st Cir.1993). A duty is imposed upon the trustee to maximize the value obtained from a sale, particularly in liquidation cases. *Bakalis*, 220 B.R. at 532. *See also In re S.N.A. Nut Co.*, 186 B.R. 98, 104 (Bankr.N.D.Ill.1995) ("When a debtor or trustee conducts a sale under § 363(b), it has an obligation to maximize revenues for the estate."); *In re Mondie Forge, Inc.*, 148 B.R. 499, 502 (Bankr.N.D.Ohio 1992) ("[T]he trustee has a duty to realize the maximum return for the estate for further distribution to the Debtor's creditors."); *DiMarco v. Flannery (In re Flannery)*, 11 B.R. 974, 977 (Bankr.E.D.Pa.1981) ("In a liquidation case, the sale to the highest bidder is legally essential....").

32.      Here, the APA is the product of good faith, arm's length negotiations between the

17

Trustee and the Proposed Stalking Horse Purchaser. The APA provides for the sale of the Business for a purchase price of $1,750,000.00, subject to higher or better offers, to be solicited at the Auction Sale after prospective bidders have been given an opportunity to conduct any due diligence that they deem necessary. A copy of the APA will be provided to each potential bidder, together with a copy of the Bidding Procedures and the Sale Order. The Successful Bidder must submit a signed purchase agreement substantially in the form of the APA(including, without limitation, terms and conditions substantially similar to those in the APA), and marked to show any changes made to the APA.

33.     With regard to the proposed Expense Reimbursement, courts evaluate bid incentives such as an expense reimbursement under the "business judgment rule." *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656-57 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). Outside of bankruptcy, that type of incentive is presumptive valid under the business judgment rule. *Id.* at 657. In determining whether a such fees are appropriate, courts in bankruptcy cases consider the following factors: "(1) is the relationship of the parties who negotiated the break-up fee tainted by self-dealing or manipulation; (2) does the fee hamper, rather than encourage, bidding; (3) is the amount of the fee unreasonable relative to the proposed purchase price?" *Id.* If those factors are established, courts find such arrangements presumptively valid. An expense reimbursement is justified when serving as an "incentive payment" offered to an unsuccessful bidder who places the debtor's property in a "sales configuration mode," thereby attracting other bidders to the auction. *Id.* at 659 (quoting *In re Financial News Network, Inc.*, 126 B.R. 152, 154 n. 5 (S.D.N.Y. 1991). Accordingly, expense reimbursements are designed to "(1) attract or retain a potentially successful bid, (2) to establish a bid standard or minimum for other bidders to follow,

18

or (3) to attract additional bidders." *Id.* at 662. Here, the APA was negotiated at arms' length, the requested maximum reimbursement is approximately 1.4% of the purchase price, and will not interfere with the bidding procedure because the next highest bidder will need to factor that potential payment into that next highest bid.

34.     In view of the foregoing, the Trustee respectfully requests the Court to approve the APA, including the Expense Reimbursement, as modified to reflect the terms of the Successful Bid at the Auction.

**D. The Sale of the Property Has Been Proposed In Good Faith and Without Collusion and The Successful Bidder is a Good Faith Purchaser**

35.     Bankruptcy Code Section 363(m) protects a good faith purchaser's interest in property purchased from a debtor's estate, notwithstanding that authorization of the sale conducted under Bankruptcy Code Section 363(b) is later reversed or modified on appeal.

36.     Bankruptcy Code Section 363(m) provides as follows:

> (m)  The reversal or modification on appeal of an authorization under section (b) or (c) of this section of a sale or lease of property does not affect the sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).    While the Bankruptcy Code does not define "good faith," the Second Circuit has held as follows:

> Good faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings. . . .   A purchaser's good faith is lost by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997) (internal citations omitted).

37.     As the Second Circuit Court of Appeals has stated:

> [Bankruptcy Code Section 363(m)] furthers the policy of finality in
> bankruptcy sales . . . and assists bankruptcy courts in maximizing
> the price for assets sold in such proceedings. Otherwise potential
> buyers would discount their offers to the detriment of the
> bankrupt's estate by taking into account the risk of further
> litigation and the likelihood that the buyer will ultimately lose the
> asset, together with any further investments or improvements made
> in the asset.

*United States v. Salerno*, 932 F.2d 117, 123 (2d Cir. 1991). *See also In re Stein & Day, Inc.*, 113
B.R. 157, 162 (Bankr. S.D.N.Y. 1990) (noting that Bankruptcy Code Section 363(m) advances
the policy of finality in bankruptcy sales).

38. The Trustee submits that the Proposed Stalking Horse Purchaser or other
Successful Bidder is or would be a "good faith purchaser" within the meaning of Bankruptcy
Code Section 363(m), and the APA or any similar version thereof, is or would be a good faith
agreement based on arm's length negotiations and entitled to the protections of Bankruptcy Code
Section 363(m).

39. This is an arm's length transaction, as the Trustee has no connection to the
Proposed Stalking Horse Purchaser and the sale of the Business is subject to higher or better
offers, which may be tendered at the Auction Sale, which is being duly noticed. The
consideration to be received under the APA, or any similar version thereof, is substantial and
reasonable with respect to the asset being conveyed. Additionally, there is no evidence of any
"fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take
grossly unfair advantage of other bidders." *In re Gucci*, 126 F.3d at 390. Thus, the Trustee
respectfully submits that either the Proposed Stalking Horse Purchaser or the competing offeror,
whomever ultimately tenders the highest or best offer, will be a good faith purchaser of the
Business. Consequently, the Trustee requests that the Proposed Stalking Horse Purchaser or
competing offeror be afforded the protections of Bankruptcy Code Section 363(m).

**E. The Manner Of Notice And Schedule For The Auction and Sale Confirmation Hearing Are Reasonable And Appropriate Under The Circumstances**

40. The Trustee also respectfully requests the Court to approve the manner of notice of the proposed Auction Sale and Sale Confirmation Hearing. The Trustee submits that this relief will facilitate the sale process and enable the Trustee to provide interested parties with adequate and sufficient notice of the Auction and related matters.

41. The Trustee proposes to give notice of the Sale Order, the Auction Sale, the Bidding Procedures, and the Sale Confirmation Hearing in the following manner: Within three (3) business days after entry of the Sale Order (the "Mailing Date"), the Trustee will serve notice of the Auction ("Notice of Auction and Sale Confirmation Hearing"), and a copy of the Terms and Conditions of Sale, including the Bidding Procedures, by first class mail, to those parties identified in the Sale Order, including (i) the U.S. Trustee; (ii) counsel to the Proposed Stalking Horse Purchaser; (iii) all creditors claiming a security interest in the Business; (iv) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (v) all parties filing a proof of claim in this case; and (vi) all parties that are known or reasonably believed to have expressed an interest in acquiring the Brooklyn Property.      41.      The Trustee submits that the proposed notice regarding the Sale Order, the Auction, the Terms and Conditions of Sale (including the Bidding Procedures) and the Sale Confirmation Hearing, and all related objection deadlines, comply fully with Bankruptcy Rule 2002 and constitutes good and adequate notice of the Sale. The Trustee respectfully requests the Court to approve the notice procedures proposed above and in the Sale Order.

**F. Waiver of Stay Required by Bankruptcy Rule 6004(h)**

42. The Trustee seeks a waiver of any stay of the effectiveness of the Sale Order. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property

other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise. In order to limit the costs of preserving the Business and maximize its value for the benefit of the creditors of the Debtor's estate, the Trustee seeks to close the sale as soon as possible. Thus, it is submitted that ample cause exists to justify a waiver of the 14 day stay imposed under Bankruptcy Rule 6004(h). The Trustee further submits that the requirements of Local Rule 6004-1 have been satisfied. Consequently, the Trustee respectfully requests that the Court waive the stay required by Bankruptcy Rule 6004(h) so that the Sale Order is final upon entry.

## NO MEMORANDUM OF LAW NECESSARY

43. This Motion does not raise any novel issues of law and the authorities relied upon are cited herein. Accordingly, the Trustee respectfully submits that the requirements of Rule 9013-1(a) of the Local Bankruptcy Rules for the Eastern District of New York are satisfied.

**WHEREFORE**, it is respectfully requested that the Court enter an Order substantially in the form annexed hereto Order pursuant to 11 U.S.C. §§ 105 and 363(a), (b), (f) and (m) and Rules 2002, 6004 and 9004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") authorizing the Trustee to sell substantially all assets of the Debtor's business located at 514/518 Metropolitan Avenue, Brooklyn, New York 11211 (the "Assets") pursuant to the terms as set forth in the APA between "Richard J. McCord, as Chapter 7 Trustee for the Estate of Sid Boys Corp d/b/a Kellogg's Diner" as seller, and "Brooklyn 24 Hrs LLC", a New York limited liability company, as purchaser ("Brooklyn 23" or "Proposed Stalking Horse Purchaser") and executed by Purchaser on June 28, 2023, for the sum of One Million Seven Hundred and Fifty Thousand Dollars ($1,750,000.00) subject to higher or betters offers at public auction, free and clear of all liens, claims, encumbrances and other interests, with such liens, claims, encumbrances and other

22

interests (collectively, the "Liens") to attach to the net proceeds of sale with the same validity and priority as such Liens had prior to the sale; (ii) scheduling a hearing to approve the sale of the Assets to the successful bidder; (iii) approving terms and conditions for submitting offers and approving the form and manner of notice with respect to the hearing; and (iv) granting such other, further and different relief as this Court deems just, proper and equitable.

Dated:  East Meadow, New York
       June 29, 2023

                              **CERTILMAN BALIN ADLER & HYMAN, LLP**
                              Counsel for the Chapter 7 Trustee

                  By:    /s/ Richard J. McCord
                        Richard J. McCord, Esq.
                        90 Merrick Avenue
                        East Meadow, New York 11554
                        (516) 296-7000
                        rmccord@certilmanbalin.com