# EXHIBIT D

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "**Agreement**"), dated as of _June 29th_, 2023, is made and entered into by and between the bankruptcy estate of Sid Boys Corp. d/b/a Kellogg's Diner, by Richard J. McCord, solely in his capacity as Chapter 7 trustee in the Bankruptcy Case ("**Seller**"), and Brooklyn 24 HRS LLC, a New York limited liability company ("**Buyer**").

### RECITALS

**WHEREAS,** Sid Boys Corp., a New York corporation ("**Debtor**"), is party to a bankruptcy proceeding under Chapter 7 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of New York (the "**Bankruptcy Court**") captioned In re Sid Boys Corp. d/b/a Kellogg's Diner, Case Number 21-42207-ess (the "**Bankruptcy Case**"), whereby Richard J. McCord was appointed as Chapter 7 trustee for Debtor and Seller on behalf of the Debtor herein;

**WHEREAS,** Debtor is engaged in the business of owning and operating a diner known as Kellogg's Diner, located at the Leased Real Property (the "**Business**"); and

**WHEREAS,** Seller wishes to sell and assign to Buyer, and Buyer wishes to purchase and assume from Seller (the "**Sale**"), substantially all of the assets and certain specified liabilities of the Business, subject to the terms and conditions set forth herein in accordance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Court documents, approvals and orders relating to the Bankruptcy Case (collectively, the "**Bankruptcy Case Documents**").

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### ARTICLE I
### DEFINITIONS

The following terms have the meanings specified or referred to in this Article I:

"**Affiliate**" of a Person means any other Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person. The term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

"**Agreement**" has the meaning set forth in the preamble.

"**Allocation Schedule**" has the meaning set forth in Section 3.03.

"**Ancillary Documents**" means the Bill of Sale and the other agreements, instruments and documents required to be delivered at the Closing hereunder.

"**Assumed Liabilities**" has the meaning set forth in Section 2.03.

"**Bankruptcy Case**" has the meaning set forth in the recitals.

"**Bankruptcy Case Documents**" has the meaning set forth in the recitals.

"**Bankruptcy Code**" has the meaning set forth in the recitals.

"**Bankruptcy Court**" has the meaning set forth in the recitals.

"**Better Offer**" means any offer from any Person (other than Buyer or any of its Affiliates) for the purchase by such Person of the Purchased Assets for a purchase price in excess of the Purchase Price or otherwise in the discretion of the Seller a better or higher offer.

"**Bill of Sale**" has the meaning set forth in Section 4.02(b)(i).

"**Business**" has the meaning set forth in the recitals.

"**Business Day**" means any day except Saturday, Sunday, or any other day on which commercial banks located in New York, New York are authorized or required by Law to close.

"**Buyer**" has the meaning set forth in the preamble.

"**Buyer Closing Certificate**" has the meaning set forth in Section 8.02(g).

"**Buyer Lease**" means a new lease agreement to be entered into between Buyer (or an Affiliate thereof), as tenant, and Landlord, as landlord, for the lease of the Leased Real Property with a base rent of twenty-four thousand dollars ($23,000.00) per month (See Exhibit B attached hereto).

"**Closing**" has the meaning set forth in Section 4.01.

"**Closing Date**" has the meaning set forth in Section 4.01.

"**Contracts**" means all contracts, leases, deeds, mortgages, licenses, instruments, notes, commitments, undertakings, indentures, and all other agreements, commitments and legally binding arrangements, whether written or oral.

"**Debtor**" has the meaning set forth in the recitals.

"**Deposit**" has the meaning set forth in Section 3.02(a)(i).

"**Dollars**" or "**$**" mean the lawful currency of the United States.

"**Encumbrance**" means any charge, claim, pledge, lien, encumbrance, security interest, mortgage, easement or encroachment, or other restriction or adverse claim of any kind.

"**Excluded Assets**" has the meaning set forth in Section 2.02.

"**Good Guy Guaranty**" means a guaranty of certain obligations under the Buyer Lease Note (See Exhibit C, Good-Guy Guaranty of Lease).

"**Governmental Authority**" means any federal, state, local or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority (to the extent the rules, regulations or orders of such organization or authority have the force of Law), or any arbitrator, court or tribunal of competent jurisdiction.

"**Governmental Order**" means any order, writ, judgment, injunction, decree, stipulation, determination or award entered by or with any Governmental Authority.

"**Indemnitees**" has the meaning set forth in Section 9.04.

2

"**Judgment Creditor**" means 518 Metropolitan Ave. Corp., a New York corporation.

"**Landlord**" means 514 Fioto Property Corp., a New York corporation.

"**Law**" means any statute, law, ordinance, regulation, rule, code, order, constitution, treaty, common law, judgment, decree or other requirement of any Governmental Authority.

"**Leased Real Property**" means that certain parcel of real property located at 514/518 Metropolitan Avenue, Brooklyn, New York 11211, which is owned by Landlord.

"**Liabilities**" means liabilities, obligations or commitments of any nature whatsoever, whether asserted or unasserted, known or unknown, absolute or contingent, accrued or unaccrued, matured or unmatured or otherwise.

"**License**" means a permit from an authority to own or use something, do a particular thing, or carry on a trade (especially in alcoholic beverages).

"**Note**" has the meaning set forth in Section 3.02(a)(iii).

"**Note Guaranty**" means a guaranty of all obligations under the Note (See Exhibit D, Note Guaranty).

"**Outside Date**" means August 1, 2023, as may be extended only with the express written consent of Seller, Landlord and Judgment Creditor.

"**Person**" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association or other entity.

"**Purchase Price**" has the meaning set forth in Section 3.01.

"**Purchased Assets**" has the meaning set forth in Section 2.01.

"**Representative**" means, with respect to any Person, any and all directors, officers, employees, consultants, financial advisors, counsel, accountants and other agents of such Person.

"**Security Agreement**" means a security agreement securing the Note (See Exhibit E, Security Agreement).

"**Seller**" has the meaning set forth in the preamble.

"**Seller Closing Certificate**" has the meaning set forth in Section 8.01(e).

"**Taxes**" means all federal, state, local, foreign and other income, gross receipts, sales, use, production, ad valorem, transfer, documentary, franchise, registration, profits, license, lease, service, service use, withholding, payroll, employment, unemployment, estimated, excise, severance, environmental, stamp, occupation, premium, property (real or personal), real property gains, windfall profits, customs, duties or other taxes, fees, assessments or charges of any kind whatsoever, together with any interest, additions or penalties with respect thereto and any interest in respect of such additions or penalties.

"**Tax Return**" means any return, declaration, report, claim for refund, information return or statement or other document relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

**ARTICLE II**
**PURCHASE AND SALE**

**Section 2.01 Purchase and Sale of Assets.** Subject to the terms and conditions set forth herein, at the Closing, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Seller, free and clear of any Encumbrances, in accordance with the Bankruptcy Code, all of Debtor's right, title and interest in, to and under all of the assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including goodwill), wherever located and whether now existing or hereafter acquired (other than the Excluded Assets), which substantially relate to, or are primarily used or held for use in connection with, the Business, including the lease which is annexed hereto; Seller shall receive payment from Buyer for all liquor, supplies, produce at Premises at the time of Closing (collectively, "**Purchased Assets**").

**Section 2.02 Excluded Assets.** Notwithstanding the foregoing, the Purchased Assets shall not include the following assets (collectively, the "**Excluded Assets**"): (a) any cash, investments, and cash equivalents of Debtor as of Closing; (b) any accounts receivable of the Business; (c) Debtor's current lease for the Leased Real Property; (d) the corporate seals, organizational documents, minute books, stock books, Tax Returns, books of account or other records relating to the corporate organization of Debtor; and (e) the rights of Seller under this Agreement and the Ancillary Documents.

**Section 2.03 Assumed Liabilities.** Subject to the terms and conditions set forth herein, Buyer shall assume and agree to pay, perform and discharge only the following Liabilities of Debtor (collectively, the "**Assumed Liabilities**"): (a) all Liabilities arising under or relating to any Contracts assigned to Buyer in connection with the transactions contemplated hereby; (b) all Liabilities of Buyer arising hereunder; (c) any Liabilities required to be assumed by Buyer pursuant to the Bankruptcy Code or the Bankruptcy Case Documents; and (d) all other Liabilities arising out of or relating to Buyer's ownership or operation of the Business and the Purchased Assets on or after the Closing.

**Section 2.04 Excluded Liabilities.** Notwithstanding anything contained herein to the contrary, except for the Assumed Liabilities, Buyer shall not assume and shall not be responsible to pay, perform or discharge any other Liabilities or obligations of Debtor, or of the Business or the Purchased Assets.

**Section 2.05 Liquor License.**

(a) In connection with the underlying purchase, Purchaser or its assignee shall acquire (i) the goodwill of Seller's business and (ii) to the extent permitted under applicable law, the ability to "transfer" Seller's existing liquor license bearing Serial Number 1273917 (the "**Liquor License**"), which is duly issued by the New York State Liquor Authority.

(b) Notwithstanding subsection 2.05(a) above, Purchaser agrees to begin the process of applying to the New York State Liquor Authority for its own temporary liquor license within five (5) business days after the execution of this agreement, to truthfully and promptly complete and sign all papers in connection therewith and to diligently process that application. The Buyer shall have five (5) business days after they start the process to file the completed final application with the SLA for a temporary liquor license.

(c) If the temporary liquor license is not obtained by the Purchaser within thirty (30) days after confirmed receipt of the Temporary License Application by the New York State Liquor Authority, then the Purchaser may cancel this contract, provided, however, that in the

4

Seller's sole discretion, he may, in writing, agree to extend such deadline for a reasonable period of time i.e. thirty (30) days. If such period of time is not extended by the Seller and the Purchaser elects to cancel this Agreement, then the Deposit made hereunder shall be returned to the Purchaser. If the application is granted and a temporary Liquor License is issued to the Purchaser, then on the Closing Date, the Seller agrees to surrender promptly its existing Liquor License to the New York State Liquor Authority.

(d)     Seller agrees to cooperate with Purchaser in all respects and to promptly and in good faith execute, complete, and submit on a timely basis all necessary documents and filings and take any and all other actions which may be required of each of Seller to effectuate the transfer, to the extent allowable under applicable laws, of the Liquor License to Purchaser or its assignee, and in connection with the Purchaser's Temporary License Application. Seller hereby covenants to maintain the good standing of the Liquor License until such time that it can transfer, only to the extent permitted by applicable law, the Liquor License to Purchaser or its assignee or Purchaser obtains its temporary liquor license in accordance with the terms of this Purchase Agreement. Reference herein to Serial Number 1273917 of the Liquor License shall mean this primary Liquor License plus any additional bar licenses issued to the Premises associated with the Liquor License.

## ARTICLE III
## PURCHASE PRICE

**Section 3.01  Purchase Price.** Subject to the terms and conditions hereof, the aggregate purchase price for the Purchased Assets payable by Buyer to Seller as set forth herein shall be one million seven hundred fifty thousand dollars ($1,750,000.00) ("**Purchase Price**"), payable as set forth in Section 3.02. In addition to the Purchase Price, as consideration for the sale, assignment, transfer, and delivery of the Purchased Assets, Buyer shall assume and discharge the Assumed Liabilities as they mature according to their terms.

**Section 3.02  Payment of Purchase Price.**

(a)     Purchase Price. Buyer shall pay the Purchase Price as follows:

(i)     on the date hereof, Buyer shall pay one hundred seventy-five thousand dollars ($175,000.00) (the "**Deposit**") to Seller, to be held in escrow pending the distribution thereof as provided in Section 3.02(b);

(ii)     on the Closing Date, pay to Seller three hundred and twenty five thousand dollars ($325,000) which is an amount equal to five hundred thousand dollars ($500,000.00) minus the aforesaid Deposit; and

(iii)     on the Closing Date, Buyer shall issue a promissory note to Judgment Creditor (the "**Note**") in the original principal amount of one million two hundred fifty thousand dollars ($1,250,000.00) (See Exhibit F, Note);

(iv)     on the Closing Date, Buyer shall pay to Seller an amount equal to the value of the liquor, supplies and produce on Premises

(b)     Deposit. On the date hereof, Buyer will pay the Deposit to Seller, to be distributed in accordance with the terms of this Agreement. The Deposit shall be paid to Seller at Closing and shall be credited as payment towards the Purchase Price. In the event that this

Agreement is terminated prior to Closing in accordance with the terms hereof, Seller shall retain the Deposit, unless such termination is effected pursuant to Section 10.01(a), Section 10.01(b)(i), Section 10.01(b)(ii) or Section 10.01(c)(iv), in which case, Buyer shall be refunded the Deposit in its entirety.

**Section 3.03  Allocation of Purchase Price.** Seller and Buyer agree that the Purchase Price and the Assumed Liabilities (plus other relevant items) shall be allocated among the Purchased Assets for all purposes (including Tax and financial accounting) as shown on the allocation schedule delivered by Seller to Buyer at least ten (10) days prior to the Closing, which shall be prepared by Seller in its reasonable discretion (the "**Allocation Schedule**"). Buyer and Seller shall file all Tax Returns and information reports in a manner consistent with the Allocation Schedule.

## ARTICLE IV
## CLOSING

**Section 4.01  Closing.**

(a)  Subject to the terms and conditions of this Agreement, the consummation of the transactions contemplated by this Agreement (the "**Closing**") shall take place at the offices of Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, East Meadow, New York 11554, on the third (3rd) Business Day after all of the conditions to Closing set forth in Article VIII are either satisfied or waived (other than conditions which, by their nature, are to be satisfied on the Closing Date), or at such other time, date or place as Seller and Buyer may mutually agree upon in writing. The date on which the Closing is to occur is herein referred to as the "**Closing Date**". No party is required to be physically present at the Closing and may deliver documents pursuant to customary escrow arrangements.

(b)  Buyer and Seller each acknowledges that the Sale is part of an integrated transaction with Seller, Buyer, Landlord and Judgment Creditor, which includes the transactions contemplated herein and in the Ancillary Documents, and the payment of the Purchase Price and other funds as required by any agreement among Seller, Buyer and Landlord, all subject to approval of the Bankruptcy Court.

**Section 4.02  Deliverables.**

(a)  Deposit. As of the date hereof, Buyer shall deliver to Seller the Deposit, by wire transfer of immediately available funds to an account designated by Seller.

(b)  Seller Closing Deliverables. At the Closing, Seller shall deliver to Buyer the following:

(i)  a bill of sale in the form of Exhibit A hereto (the "**Bill of Sale**") duly executed by Seller, transferring the tangible personal property included in the Purchased Assets to Buyer;

(ii)  the Seller Closing Certificate;

(iii)  such other documents as are required to be delivered by Seller to Buyer hereunder at or prior to the Closing; and

(iv)    such other customary documents, in form and substance reasonably satisfactory to Buyer, as may be required to effect this Agreement.

(c)    Buyer Closing Deliverables.  At the Closing, Buyer shall deliver to Seller (or such other applicable party as indicated below) the following:

(i)    the Purchase Price, less the Deposit, by wire transfer of immediately available funds to an account designated in writing by Seller to Buyer;

(ii)    the Buyer Closing Certificate;

(iii)    the certificate of an authorized officer of Buyer required by Section 8.02(h);

(iv)    to the Judgment Creditor, the Note, Security Agreement and Note Guaranty each duly executed by Buyer;

(v)    to the Landlord, the Buyer Lease and Good Guy Guaranty each duly executed by Buyer; and

(vi)    such other documents as are required to be delivered by Buyer to Seller hereunder at or prior to the Closing and such other customary documents, in form and substance reasonably satisfactory to Seller, as may be required to effect this Agreement.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents to Buyer as follows, as of the date hereof and as of the Closing Date:

**Section 5.01    Authority of Seller. Seller is the Chapter 7 trustee in the Bankruptcy Case. Subject to the approval of the Bankruptcy Court (including the entry of a sale approval order), Seller has the authority to enter into this Agreement and to consummate the transactions contemplated thereby. Buyer and Seller acknowledge that this Agreement is subject to higher or better offers and United States Bankruptcy Court approval.**

## ARTICLE VI
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller as follows, as of the date hereof and as of the Closing Date:

**Section 6.01    Organization and Authority of Buyer.** Buyer is a limited liability company duly organized, validly existing and in good standing under the Laws of the state of New York. Buyer has full company power and authority to enter into this Agreement and the Ancillary Documents to which Buyer is a party, to carry out its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. The execution and delivery by Buyer of this Agreement and any Ancillary Document to which Buyer is a party, the performance by Buyer of its obligations hereunder and thereunder and the consummation by Buyer of the transactions contemplated hereby and thereby have been duly authorized by all requisite company

7

action on the part of Buyer. This Agreement has been duly executed and delivered by Buyer, and this Agreement constitutes a legal, valid and binding obligation of Buyer enforceable against Buyer in accordance with its terms, except as may be limited by applicable laws affecting creditors' rights generally and general equitable principles. When each Ancillary Document to which Buyer is or will be a party has been duly executed and delivered by Buyer, such Ancillary Document will constitute a legal and binding obligation of Buyer enforceable against it in accordance with its terms, except as may be limited by applicable laws affecting creditors' rights generally and general equitable principles.

**Section 6.02    Investigations.    Buyer acknowledges that Seller, as the Chapter 7 trustee in the Bankruptcy Case, has limited information and documents concerning the Purchased Assets; Buyer has made its own investigation concerning the Purchased Assets, the condition of title or any other matter pertaining to the Purchased Assets; and, other than the express representations made by Seller pursuant to this Agreement, Buyer is not relying on any representations, warranties or inducements of Seller (or any agent of Seller) with respect to the Purchased Assets, the condition of title to the Purchased Assets or any other matter pertaining to the Purchased Assets, the transaction contemplated herein or otherwise.**

## ARTICLE VII
## COVENANTS

**Section 7.01    Closing Conditions.** From the date hereof until the Closing, each party hereto shall use reasonable best efforts to take such actions as are necessary to expeditiously satisfy the closing conditions set forth in Article VIII.

**Section 7.02    Bulk Sales Laws.** The parties hereby waive compliance with the provisions of any bulk sales, bulk transfer or similar Laws of any jurisdiction that may otherwise be applicable with respect to the sale of any or all of the Purchased Assets to Buyer.

**Section 7.03    Transfer Taxes.** To the extent not exempted under the Bankruptcy Code, all transfer, sales, use, registration, documentary, stamp, value added and other such Taxes and fees (including any penalties and interest) incurred in connection with this Agreement and the other Ancillary Documents, if any, shall be borne and paid by Buyer when due. Buyer shall, at its own expense, timely file any Tax Return or other document with respect to such Taxes or fees (and Seller shall cooperate with respect thereto as necessary).

**Section 7.04    Solicitation of Other Bids by Seller. Buyer expressly acknowledges and agrees that the sale of the Purchased Assets to Buyer pursuant to this Agreement is subject to an auction (the "Auction") to be held via Zoom, on a date to be determined by Seller concurrently with or promptly after the hearing on a sale motion or as otherwise required by the Bankruptcy Court. The sale to Buyer by Seller and the other transactions contemplated by this Agreement are expressly subject to approval of the Bankruptcy Court and the procedures contained in the Bankruptcy Case Documents, including, but not limited to, the Buyer Expense Reimbursement in Section 11.01(b). Buyer acknowledges and agrees that Seller** shall be authorized and permitted to, directly or indirectly, in accordance with the Bankruptcy Code and the Bankruptcy Case Documents: (a) encourage, solicit, facilitate, obtain or continue inquiries regarding a Better Offer; (b) enter into discussions with, or provide any information to, any Person concerning a possible Better Offer; or (c) enter into any agreements (whether or not binding) regarding a Better Offer.

Section 7.05 **Further Assurances.** Following the Closing, each of the parties hereto shall, and shall cause their respective Affiliates to, execute and deliver such additional documents, instruments, conveyances and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement and the Ancillary Documents.

## ARTICLE VIII
## CONDITIONS TO CLOSING

Section 8.01 **Conditions to Obligations of Buyer.** The obligations of Buyer to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment or Buyer's waiver, at or prior to the Closing, of each of the following conditions:

(a) The representations and warranties of Seller contained in this Agreement, the Ancillary Documents and any certificate or other writing delivered pursuant hereto shall be true and correct in all respects or in all material respects on and as of the date hereof and on and as of the Closing Date with the same effect as though made at and as of such date (except those representations and warranties that address matters only as of a specified date, the accuracy of which shall be determined as of that specified date in all respects).

(b) Seller shall have duly performed and complied in all material respects with all covenants and conditions required by this Agreement and each of the Ancillary Documents to be performed or complied with by it prior to or on the Closing Date.

(c) This Agreement and the transactions contemplated herein shall have been approved by the Bankruptcy Court and the Bankruptcy Court shall have entered a final non-appealable sale order, in accordance with the Bankruptcy Code and the Bankruptcy Case Documents, except that in the event the Bankruptcy Case Documents include a waiver of any stays of the effectiveness of a sale order, including, then at the Trustee's sole discretion, the Buyer is deemed to have waived this provision as to the necessity of a sale order being final non-appealable.

(d) No preliminary or permanent injunction or other order that would prevent the consummation of the transactions contemplated by this Agreement shall be in effect.

(e) Buyer shall have received a certificate, dated the Closing Date and signed by Seller, certifying that each of the conditions set forth in Section 8.01(a) and Section 8.01(b) have been satisfied (the "**Seller Closing Certificate**").

(f) Seller shall have delivered to Buyer such other documents reasonably necessary to consummate the transactions contemplated hereby, as requested by Buyer.

Section 8.02 **Conditions to Obligations of Seller.** The obligations of Seller to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment or Seller's waiver, at or prior to the Closing, of each of the following conditions:

(a) The representations and warranties of Buyer contained in this Agreement, the Ancillary Documents and any certificate or other writing delivered pursuant hereto shall be true and correct in all respects or in all material respects on and as of the date hereof and on and as of the Closing Date with the same effect as though made at and as of such date (except those representations and warranties that address matters only as of a specified date, the accuracy of which shall be determined as of that specified date in all respects).

(b)     Buyer shall have duly performed and complied in all material respects with all covenants and conditions required by this Agreement and each of the Ancillary Documents to be performed or complied with by it prior to or on the Closing Date.

(c)     This Agreement and the transactions contemplated herein shall have been approved by the Bankruptcy Court and the Bankruptcy Court shall have entered a final non-appealable sale order, in accordance with the Bankruptcy Code and the Bankruptcy Case Documents, except that in the event the Bankruptcy Case Documents include a waiver of any stays of the effectiveness of a sale order, including, then at the Trustee's sole discretion, the Trustee can waive this provision and require Buyer to close prior to the sale order becoming final and non-appealable..

(d)     Buyer (or an Affiliate thereof) and Landlord shall have entered into the Buyer Lease and Buyer shall have provided evidence of the same to Seller.

(e)     Buyer shall have issued the Note to Judgment Creditor.

(f)     Buyer shall have delivered to Seller duly executed counterparts to the Ancillary Documents and such other documents and deliveries set forth in Section 4.02(c).

(g)     Seller shall have received a certificate, dated the Closing Date and signed by a duly authorized officer of Buyer, that each of the conditions set forth in Section 8.02(a) and Section 8.02(b) have been satisfied (the "**Buyer Closing Certificate**").

(h)     Seller shall have received a certificate of an authorized officer of Buyer certifying (i) that attached thereto are true and complete copies of all resolutions adopted by the managers and members of Buyer authorizing the execution, delivery and performance of this Agreement and the Ancillary Documents and the consummation of the transactions contemplated hereby and thereby, and that all such resolutions are in full force and effect and are all the resolutions adopted in connection with the transactions contemplated hereby and thereby and (ii) the names and signatures of the officers of Buyer authorized to sign this Agreement, the Ancillary Documents and the other documents to be delivered hereunder and thereunder.

(i)     Buyer shall have delivered to Seller such other documents reasonably necessary to consummate the transactions contemplated hereby, as requested by Seller.

## ARTICLE IX
## NO REPRESENTATIONS; INDEMNITY

**Section 9.01** **No Representations and Warranties.** EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT OR IN THE APPLICABLE SALE ORDER PURSUANT TO THE BANKRUPTCY CASE, BUYER AGREES AND ACKNOWLEDGES THAT THE TRANSFER OF THE PURCHASED ASSETS IS MADE PURSUANT TO ORDER OF THE BANKRUPTCY COURT AND IS MADE "AS IS" AND "WHERE IS", AND ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPRESSLY PROVIDED HEREIN, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER WITH RESPECT TO THE PURCHASED ASSETS OR OTHERWISE, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY REPRESENTATION OR WARRANTY REGARDING THE TITLE OR CONDITION OF THE PURCHASED ASSETS OR THE FITNESS, DESIRABILITY, OR MERCHANTABILITY THEREOF OR SUITABILITY THEREOF FOR ANY PARTICULAR PURPOSE, OR ANY BUSINESS PROSPECTS, OR VALUATION OF

THE ASSETS, OR THE COMPLIANCE OF THE ASSETS IN THEIR CURRENT OR FUTURE STATE WITH APPLICABLE LAWS OR ANY VIOLATIONS THEREOF. BUYER FURTHER ACKNOWLEDGES THAT SELLER SHALL DELIVER TO BUYER ALL PURCHASED ASSETS IN SELLER'S POSSESSION; BUT THAT SELLER DOES NOT HAVE POSSESSION OF ALL OF THE PURCHASED ASSETS, AND THAT TO THE EXTENT SELLER IS NOT IN POSSESSION OF A PURCHASED ASSET SOLD HEREUNDER, BUYER WILL HAVE SOLE RESPONSIBILITY TO OBTAIN POSSESSION OF SUCH PURCHASED ASSET, AT ITS SOLE EXPENSE. BUYER AGREES THAT SELLER HAS NO OBLIGATION OR LIABILITY WHATSOEVER WITH RESPECT TO ANY SEPARATE AGREEMENTS, INDEMNITIES, REPRESENTATIONS OR WARRANTIES ENTERED INTO BY BUYER.

Section 9.02    Independent Investigation. Buyer further acknowledges and represents that it enters into this Agreement after its independent investigation of the facts and circumstances relating to the Purchased Assets and the transaction described herein. Without limiting the foregoing, Buyer is not relying on Seller or Seller for any information regarding the Purchased Assets or otherwise.

Section 9.03    Licenses. Buyer assumes responsibility for obtaining all required licenses, copyrights, patents, trademarks, permits and/or other agreements and/or rights as may be required so that Buyer may lawfully use. sell, distribute or dispose of any of the Purchased Assets.

Section 9.04    Indemnity. Buyer hereby agrees to indemnify, defend and hold Seller and its, consultants, independent contractors, successors and assigns (collectively, the "Indemnitees") harmless from and against any and all liabilities, demands, claims, actions or causes of action, assessments, losses, costs, damages or penalties or expenses, including attorneys' fees, imposed on, accrued against, asserted against, sustained or incurred by Indemnitees, directly or indirectly, resulting from, arising out of, related to, or by virtue of: (a) any liability or obligation of Buyer arising prior to, on or after the Closing Date, whether or not related to the ownership or use of the Purchased Assets; (b) breach of any representation, warranty, covenant or agreement of Buyer contained herein or in any agreement executed in connection herewith; and (c) the ownership, sale, use, or distribution of the Purchased Assets from and after the Closing Date.

ARTICLE X
TERMINATION

Section 10.01    Termination. This Agreement may be terminated prior to the Closing:

(a)    by the mutual written consent of Seller and Buyer;

(b)    by Seller upon written notice to Buyer:

(i)    if Seller is not then in material breach of this Agreement and there has been a breach, inaccuracy in or failure to perform any representation, warranty, covenant or agreement made by Buyer pursuant to this Agreement that would give rise to the failure of any of the conditions specified in Section 8.02 and such breach, inaccuracy or failure has not been cured by Buyer within thirty (30) days of Buyer's receipt of written notice of such breach from Seller; or

(ii)    if any of the conditions set forth in Section 8.02 shall not have been fulfilled by the Outside Date (other than those conditions which, by their nature, are to be satisfied as of the Closing Date), unless such failure shall be due to the failure of Seller to perform or comply with any of the covenants, agreements or conditions hereof to be performed or complied with by Seller prior to the Closing;

(iii)    in the event that Bankruptcy Court does not approve this Agreement and the consummation of the transactions contemplated hereby, including any Ancillary Documents and/or the Bankruptcy Court does not enter a sale approval order;

(iv)    in the event that Seller receives a Better Offer in accordance with the Bankruptcy Code and the Bankruptcy Case Documents; or

(c)    by Buyer or Seller in the event that (i) there shall be any Law that makes consummation of the transactions contemplated by this Agreement illegal or otherwise prohibited or (ii) any Governmental Authority shall have issued a Governmental Order restraining or enjoining the transactions contemplated by this Agreement, and such Governmental Order shall have become final and non-appealable.

Section 10.02 **Effect of Termination.** In the event of the termination of this Agreement in accordance with this Article X, this Agreement shall forthwith become void and there shall be no liability on the part of any party hereto except: (a) as set forth in this Article X and Article XI hereof; and (b) that nothing herein shall relieve any party from liability for any breach of any provision hereof or any fraud or intentional misrepresentation.

### ARTICLE XI
### MISCELLANEOUS

Section 11.01 **Expenses.** (a)    Except as otherwise expressly provided herein or in the Bankruptcy Court Documents, all costs and expenses, including fees of counsel, financial advisors and accountants, incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses.

**(b)    Notwithstanding Section 11.01(a) above, subject to approval by the Bankruptcy Court in the Bankruptcy Case Documents, in the event that the Buyer is not the successful bidder on the Purchased Assets, Buyer shall be entitled to seek reimbursement paid out of the sale proceeds obtained by the Trustee from a Auction for its out-of-pocket costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby, but in no event more than $25,000.00 (the "Buyer Expense Reimbursement").**

Section 11.02 **Notices.** All notices, consents, claims, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours, and on the next Business Day if sent after normal business hours; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the following addresses (or at such other address as shall be specified in a notice given pursuant to this Section 11.02):

| If to Seller: | c/o Chapter 7 Trustee |
| | Certilman Balin Adler & Hyman, LLP |
| | 90 Merrick Avenue |
| | East Meadow, New York 11554 |
| | Attn: Richard J. McCord, Esq. |
| | E-mail: rmccord@certilmanbalin.com |

If to Buyer:

LUIS SKIBAR
420 East 58th St. #1A, New York, NY 10022

E-mail: lskybar@gmail.com

with a copy (which will not constitute notice) to:

Lawrence F. Morrison Esq.
Morrison + Tennenbaum PLLC
87 Walker St., Floor 2. New York NY 10013
E-mail:
lmorrison@M-T-law.com

**Section 11.03 Interpretation.** For purposes of this Agreement, (a) the words "include," "includes" and "including" shall be deemed to be followed by the words "without limitation"; (b) the words "herein," "hereof," "hereby," "hereto" and "hereunder" refer to this Agreement as a whole; (c) all provisions and words shall be read in appropriate number and gender, the masculine, feminine and neuter shall be interpreted interchangeably, and the singular shall include the plural and vice-versa as the circumstances may require; and (d) the headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement. Unless the context otherwise requires, references herein: (i) to Articles, Sections and Exhibits mean the Articles and Sections of, and Exhibits attached to, this Agreement; (ii) to an agreement, instrument or other document means such agreement, instrument or other document as amended, supplemented and modified from time to time to the extent permitted by the provisions thereof and (iii) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder. This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The Exhibits referred to herein shall be construed with, and as an integral part of, this Agreement to the same extent as if they were set forth verbatim herein.

**Section 11.04 Severability.** If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

**Section 11.05 Entire Agreement.** This Agreement, the Ancillary Documents and the Bankruptcy Case Documents and the other documents and agreements to be delivered hereunder constitute the sole and entire agreement of the parties hereto with respect to the subject matter contained herein and therein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter.

**Section 11.06 Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their successors and permitted assigns. No party may assign its rights or obligations hereunder without the prior written consent of the other parties and as required by the Bankruptcy Case Documents.

**Section 11.07 No Third-Party Beneficiaries.** This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person or entity any legal or equitable right, benefit or remedy of any nature whatsoever.

**Section 11.08 Amendment and Modification; Waiver.** This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto and with the written consent of Landlord and Judgment Creditor. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving, and with the consent of Landlord and Judgment Creditor. No waiver by any party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

**Section 11.09 Governing Law; Submission to Jurisdiction; Waiver of Jury Trial.**

(a)     Governing Law. This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction).

(b)     Venue. Any legal action or proceeding arising out of this Agreement, the Ancillary Documents or the transactions contemplated hereby or thereby shall be instituted and maintained in the Bankruptcy Court and each party irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court in any such action or proceeding. Service of process, summons, notice or other document by mail to such party's address set forth herein shall be effective service of process for any action or other proceeding brought in such court; provided, after the Bankruptcy Case is closed, any action may be brought in a court located in either Nassau or Suffolk County in the state of New York with jurisdiction. The parties irrevocably and unconditionally waive any objection to the laying of venue of any action or any proceeding in such courts and irrevocably waive and agree not to plead or claim in any such court that any such action or proceeding brought in any such court has been brought in an inconvenient forum.

(c)     Jury Waiver Each party acknowledges and agrees that any controversy which may arise under this Agreement or the Ancillary Documents is likely to involve complicated and difficult issues and, therefore, each party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement, the Ancillary Documents or the transactions contemplated hereby or thereby. Each party certifies

and acknowledges that (i) no Representative of any other party has represented, expressly or otherwise, that such other party would not seek to enforce the foregoing waiver in the event of a legal action, (ii) such party has considered the implications of this waiver, (iii) such party makes this waiver voluntarily, and (iv) such party has been induced to enter into this agreement by, among other things, the mutual waivers and certifications in this Section 11.09(c).

**Section 11.10 Specific Performance.** The parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity.

**Section 11.11 Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail, electronic signature (including DocuSign) or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**Section 11.12 Capacity as Trustee of Seller; Limitation on Liability. Buyer acknowledges and understands that Richard J. McCord is the Chapter 7 trustee of Debtor, and that Richard J. McCord enters this Agreement solely in his capacity as Chapter 7 trustee of Debtor and not in his personal capacity, and no liability or obligations shall accrue to him personally as a result of this Agreement. Buyer acknowledges and understands that with respect to the Bankruptcy Case, Richard J. McCord has extremely limited information regarding the Business and/or the Purchased Assets and the sale of the Purchased Assets is "as is" "where is" as set forth in Section 9.01 of this Agreement.**

*[The remainder of the page is intentionally left blank; the signature page follows.]*

15

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed as of the date first written above.

**SELLER:**
BANKRUPTCY ESTATE OF SID BOYS
CORP. D/B/A KELLOGG'S DINER

By: _____
Richard J. McCord, as Chapter 7 Trustee
in the bankruptcy case of Sid Boys Corp.
for the Eastern District of New York,
Case No. 21-42207-ess, solely in that
capacity

**BUYER:**
BROOKLYN 24 HRS LLC

By: _____
Name: LUIS SKIBAR
Title: Managing Member
Brooklyn 24 HRS LLC

*[Signature page to the Asset Purchase Agreement.]*

## EXHIBIT A

### BILL OF SALE

*(See attached.)*

# BILL OF SALE

_____, 2023

Reference is made to that certain Asset Purchase Agreement, dated as of the date hereof (the "**Asset Purchase Agreement**"), by and between Richard J. McCord, solely in his capacity as Chapter 7 trustee in the Bankruptcy Case ("**Seller**"), and Brooklyn 24 Hrs LLC, a New York limited liability company ("**Buyer**"). All capitalized terms used but not defined herein shall have their respective meanings set forth in the Asset Purchase Agreement.

**FOR VALUE RECEIVED,** and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller does hereby sell, assign, transfer, convey and deliver to Buyer, all of Debtor's right, title and interest in, to and under all of the Purchased Assets, said Purchased Assets being sold and assigned to Buyer on even date herewith, free and clear of any Encumbrances in accordance with the Bankruptcy Code.

Subject to the terms and conditions set forth herein, at the Closing, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Seller, free and clear of any Encumbrances, in accordance with the Bankruptcy Code, all of Debtor's right, title and interest in, to and under all of the assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including goodwill), wherever located and whether now existing or hereafter acquired (other than the Excluded Assets), which substantially relate to, or are primarily used or held for use in connection with, the Business, including the lease which is annexed to the Asset Purchase Agreement. Seller shall receive payment from Buyer for all liquor, supplies, produce at the Premises at the time of Closing.

Said Purchased Assets are hereby transferred and assigned unto Buyer, its successors, and assigns, to and for its own use and benefit forever.

Buyer acknowledges that Seller makes no representation or warranty with respect to the assets being conveyed hereby except as specifically set forth in the Purchase Agreement.

Nothing contained in this Bill of Sale will itself change, amend, extend, or alter (nor should it be construed as changing, amending, extending, or altering) the terms and conditions of the Asset Purchase Agreement in any manner whatsoever. In the event of any conflict or inconsistency between the terms of the Asset Purchase Agreement and the terms of this Bill of Sale, the terms of the Asset Purchase Agreement shall govern.

This Bill of Sale may be executed in one or more counterparts, and counterparts may be exchanged by electronic transmission, each of which will be deemed an original, but all of which together constitute one and the same instrument. Counterparts may be delivered via facsimile, electronic mail or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes. The delivery of this Bill of Sale by facsimile, electronically or by e-mail with an attached scanned signature page image shall have the same force and effect as delivery of an original signature and such signature may be used as evidence of the execution and delivery of this Bill of Sale to the same extent that an original signature could be used.

This Bill of Sale shall be governed in all respects, including validity, interpretation, and effect, by the laws of the State of New York, without regard to conflicts of law provisions.

This Bill of Sale is made and accepted upon and subject to the provisions, representations and warranties contained in the Asset Purchase Agreement.

*[The remainder of the page is left blank intentionally; the signature page follows.]*

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be duly executed as of the date first above written.

SELLER:

By: _____

               Richard J. McCord, as Chapter 7 Trustee
               in the bankruptcy case of Sid Boys Corp.
               for the Eastern District of New York,
               Case No. 21-42207-ess

*[Signature page to the Bill of Sale.]*