CULLEN AND DYKMAN LLP
Thomas R. Slome
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
tslome@cullenllp.com

*Counsel for 514 Fioto Property Corp.*
*and 518 Metropolitan Avenue Corp.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:

SID BOYS CORP.,

        Debtor.
---------------------------------------------------------------X

Chapter 11
Case No.: 21-42207-ess

### STATEMENT OF LANDLORD AND JUDGMENT CREDITOR REGARDING TRUSTEE'S APPLICATION TO SELL DEBTOR'S ASSETS, APPROVE BIDDING PROCEDURES AND FOR RELATED RELIEF

514 Fioto Property Corp. ("Landlord") and 518 Metropolitan Avenue Corp. ("Judgment Creditor") by and through their undersigned counsel, file this statement ("Statement") regarding the application of the chapter 7 trustee ("Trustee") to obtain an order authorizing him to sell certain assets of the above captioned debtor ("Debtor") pursuant to an auction sale and for related relief [Dkt. No. 197-1] (the "Sale Motion"), and respectfully represent to the Court as follows:

1. In the Sale Motion, the Trustee seeks approval for the estate to enter into an asset purchase agreement ("APA") for substantially all the Debtor's assets ("Assets") with a certain stalking horse purchaser (the "Purchaser") for $1,750,000 plus other consideration (the "Purchase Price") subject to higher and better offers at an auction sale of such assets ("Auction Sale"). The APA is conditioned upon the Landlord entering into a new lease for the diner

premises in the form attached to the APA and the Judgment Creditor extending a loan to the Purchaser for $1,250,000 of the Purchase Price in the form of a ten-year promissory note also in the form attached to the APA. Other transaction documents such as guaranties and a security agreement are also attached to the APA (collectively, the "Transaction Documents").

2. Landlord and Judgment Creditor file this Statement disclose for the Court and parties in interest the conditions to the willingness of the Landlord and Judgment Creditor to agree to enter into the Transaction Documents with the Purchaser or do the same or something similar with other bidders for the Assets who the Trustee believes may be making higher and better offers for the Assets.[1]

3. First, as the Landlord and the Judgment Creditor have repeatedly informed the Trustee, their willingness to enter into these forms of Transaction Documents at a closing with the Trustee and this Purchaser is subject to payment at closing of $2.1 million to the Landlord and Judgment Creditor, consisting of a $1,250,000 promissory note from the Purchaser, $500,000 in cash from the Purchaser and $350,000 from the Debtor's estate.[2] These payments and the promissory note and security and guaranties make up the consideration that make doing a transaction with the estate and a purchaser more attractive to the Landlord and Judgment Creditor than taking back the diner premises. Accordingly, for the sale to close, this

---

[1] As part of any such transaction among the estate, Landlord, Judgment Creditor and a purchaser, the Landlord and Judgment Creditor would waive all their claims against the estate, which in the aggregate are approximately $3 million, including $831,815.24 in statutory lease rejection damages, $331,266.23 in pre-petition lease arrears, and $1,579,337.00 in a judgment on a seller promissory note, plus accrued and accruing legal fees. [Claims Docket Nos. 7-2 and 8-2]

[2] The Landlord and Judgment Creditor initially informed the Trustee that they would give a buyer satisfactory to them a new long term lease and accept a "seller" promissory note only if the Landlord and Judgment Creditor received $2.2 million at closing, but in view of the stalking horse bid being less than the parties anticipated, the Landlord and Judgment Creditor informed the Trustee that they would accept payment of only $2.1 million if the stalking horse bidder was the successful bidder at the $1,750,000 amount, but if a bid for a higher amount was the highest and best bid, it would require $2.18 million. At the current stalking horse bidder amount, the estate would have to contribute $350,000 for the transaction to close. A spirited auction process is certainly possible given that the diner was purchased by the Debtor back in 2013 for $2.8 million dollars—over a million dollars more than the stalking horse bid. Thus there may end up being no need for an estate contribution for the transaction.

consideration would have to be paid to the Landlord and Judgment Creditor at closing.

4. There are two other conditions to the sale, both of which have been satisfied by the Purchaser, and each of which conditions would have to be satisfied by any other successful bidder.

5. One condition is that the Landlord and Judgment Creditor must be satisfied with the form and substance of all transaction documents. For the sale to the Purchaser, those documents include the new lease, the promissory note, a limited guaranty of the lease, a guaranty of the promissory note, and a security agreement. In coordination with the Trustee and his counsel, bankruptcy and state court counsel for the Landlord and Judgment Creditor negotiated the terms of these transaction documents with the Purchaser and its counsel. Many terms were carefully negotiated by both sides, such as the new monthly rent, rent term, escalations and the interest rate of the promissory note, in part based on the Landlord's and Judgment Creditor's perception of the creditworthiness and experience of the Purchaser. The Landlord and Judgment Creditor intend to negotiate these or similar transaction documents with any prospective bidder, also in coordination with the Trustee, to enhance the chances for the estate to receive higher and better bids at auction. Such documents could differ, including if a bidder makes an all-cash offer in which case there would be no need for a promissory note, security agreement or note guaranty.

6. The second condition is that the Landlord and Judgment Creditor must be satisfied with certain characteristics of a buyer, its principals and any required guarantor(s), such as relating to their financial wherewithal and diner or other hospitality experience. As noted, the Landlord and Judgment Creditor are currently satisfied in these respects with the Purchaser and proposed guarantors.[3] The Landlord and Judgment Creditor intend to approach this condition in

---

[3] While very unlikely, the Landlord and Judgment Creditor reserve their rights in the event circumstances about the Purchaser and the proposed guarantor materially change between now and any closing.

the same manner as they would approach any potential lessor and seller note obligor as if these bankruptcy proceedings were not pending, and work with the Trustee to help facilitate a spirited auction process. But ultimately, the Landlord and Judgment Creditor need to be comfortable with the buyer.

7. The Landlord and Judgment Creditor request that any marketing materials make clear to potential buyers that the Trustee and a buyer would have to satisfy these conditions before (i) the Landlord would enter into a new long-term lease and related agreements for the diner premises it owns, and (ii) the Judgment Creditor would accept a promissory note and related agreements from a buyer; the terms of each such document could differ depending on the financial wherewithal and experience of the buyer.

8. In this regard, the Landlord and Judgment Creditor request that the proposed bidding procedures contained in the Sale Motion at section 21, be supplemented with the following in a new paragraph between paragraphs C and D to make sure these conditions are made clear to prospective bidders:

> The Trustee and MYC shall inform any prospective bidders who request information regarding the Trustee's Auction Sale of the Acquired Assets that the sale is subject to certain conditions, including (a) that a bidder be able to negotiate transaction documents satisfactory to the Debtor's former landlord and owner of the diner premises, 514 Fioto Property Corp. and, (b) that if a bidder would prefer some amount of seller financing in lieu of an all cash payment, the bidder be able to negotiate loan documentation with 518 Metropolitan Avenue Corp., a judgment creditor of the Debtor and affiliate of the landlord, and (c) that the landlord and judgment creditor (if applicable) will need to be satisfied with all aspects of the transaction before entering into a long-term landlord-tenant and/or lender-borrower relationship with such bidder. The Trustee intends to coordinate with the landlord and judgment creditor and any prospective purchaser in this regard.

9. Finally, the proposed order submitted by the Trustee should delete the provision

4

that all proceeds of sale from the closing be held by the Trustee in escrow pending further Court order, which provision is both premature and contrary to the conditions under which the Landlord and Judgment Creditor would close (i.e., they would not close without receiving their consideration at closing). Of course, the Trustee should seek a Court order approving the transaction with the Landlord and Judgment Creditor after the auction and before the closing of a sale. Such an order would then address the disposition of the proceeds and any necessary payment from the estate. Hopefully, the auction will be successful enough that little or no funds would need to come out of the estate, with all consideration to be paid to the Landlord and Judgment Creditor for the new lease and seller not to come only from the cash and non-cash consideration paid by a buyer.

## CONCLUSION

For the forgoing reasons, the Landlord and Judgment Creditor respectfully request that any order approving the Sale Motion require the Trustee to amend the bidding procedures as requested and delete the provision that all sale proceeds be held in escrow, with the disposition of the proceeds of sale to be addressed pursuant to a subsequent motion by the Trustee to be heard prior to the closing of any sale.

Dated: Garden City, New York
July 7, 2023

CULLEN AND DYKMAN LLP

By: /s/ *Thomas R. Slome*
Thomas R. Slome
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700

*Counsel for 514 Fioto Property Corp. and 518 Metropolitan Avenue Corp.*