EXHIBIT B

# COMMERCIAL LEASE AGREEMENT

This Lease (this "Lease"), made this ____ day of _____, 2023, between 514 FIOTO PROPERTY CORP., of 14-27 142nd St. Whitestone NY 11357, hereinafter referred to as the "Landlord", and BROOKLYN 24H HRS LLC of 420 East 58th St. #1A, New York NY 10022 , hereinafter referred to as "Tenant", collectively referred to herein as the "Parties";

**IN CONSIDERATION OF** the Landlord leasing certain premises to the Tenant, the Tenant leasing those premises from the Landlord and the mutual obligations and benefits hereby set forth in this Lease, the receipt and sufficiency of which consideration is hereby acknowledged, the Parties to the Lease agree as follows:

1. **DESCRIPTION OF LEASED PREMISES**: The Landlord hereby agrees to lease to the Tenant, and the Tenant does hereby lease from the Landlord with full right, title and enjoyment thereto, premises described as 514/518 Metropolitan Avenue, Brooklyn, New York 11211, upon which is the building being operated as Kellogg's Diner (the "Premises"). SUBJECT TO:

(a)   any state of facts an accurate survey may show;
(b)   building restrictions and zoning regulations now in force or hereinafter adopted;
(c)   all present and future laws, ordinances, resolutions, regulations and orders of all municipal, state, federal or other governmental bodies, boards, agencies or other authorities now or hereafter having jurisdiction of the Demised Premises and the use and improvement thereof;
(d)   The terms of all present and future federal, state and municipal laws, orders and regulations relating to tenants and occupants of the Demised Premises and the building, their rights and the rentals to be charged for the use of the Demised Premises and the building or any portion or portions thereof;
(e)   The revocable nature of the right, if any, to maintain bridges, vaults or vault space on areas beyond the building line;
(f)   agreements and easements of record;
(g)   mortgages of record, if any
(h)   violations of law, ordinance, orders or requirements of any governmental authority having jurisdiction over the Leased premises as the same may exist on the commencement date of this Lease, whether or not noted in the department of any governmental municipality and whether or not discoverable upon examination or inspection of the Leased premises. Tenant acknowledges that it has caused a full search to be made of all violations and that it has actual notice of them;
   the condition and state of repair of Leased premises on the commencement date of this Lease. Tenant acknowledges that it had extensive access to the entire premises and has caused it to be investigated with professional assistance and that it has full knowledge with respect thereto and accepts same in its present as is condition;

2. **USE OF LEASED PREMISES**: The Landlord is leasing the Premises to the Tenant and the Tenant is hereby agreeing to lease the Premises for the following use and purpose: To operate a 24 hour Diner restaurant with liquor license and takeout service.

Any change in use or purpose the Premises other than as described above shall be upon prior written consent of Landlord only. Tenant agrees that Landlord's reputation and the reputation of the individuals who are the shareholders of the Landlord, will be injured and that the rental value of the demised premises or of other property owned by Landlord or the Individuals will be diminished 'if the demised premises are used for any purposes other than those set forth in this Article, In interpreting the language of this paragraph Tenant understands and agrees that it will not, on any occasion bring upon the demised premises, or advertise, offer for sale, lease use any sort or display or promote therein or therefrom any matter, materials or service, or produce, present, direct, permit or encourage any performance of conduct which is in violation of Article 235 of the New York Penal Law or any law amending or replacing the same, or which is in any way pornographic, obscene, lewd, lascivious, or likely to appeal to the prurient interest of any segment of the public. In the interpretation of the terms "pornographic", "obscene", "lewd", "lascivious" and "appeal to the prurient interest", the parties do not mean to limit the interpretation of this paragraph.

3. **TERM OF LEASE**: The term of this Lease shall be for a period of [30] Years, [0] Months commencing on August 1, 2023 and expiring at Midnight on July 31, 2053 ("Initial Term"). There is no right to renew the lease.

4. **TRIPLE NET (NNN) LEASE**: It is the intention of the Parties, and they hereby agree, that this Lease shall be considered a Triple Net Lease. **Operating Expenses.** The Landlord shall have no obligation to provide any services, perform any acts or pay any expenses, charges, obligations or costs of any kind whatsoever with respect to the Premises, and Tenant hereby agrees to pay one hundred percent (100%) of any and all Operating Expenses as hereafter defined for the entire term of the Lease and any extensions thereof in accordance with specific provisions hereinafter set forth. The term operating expenses shall include all costs to Landlord of operating and maintaining the Premises, and shall include, without limitation, real estate and personal property taxes and assessments, heating, electricity, water, waste disposal, sewage, operating materials and supplies, service agreements and charges, lawn care, snow removal, restriping, repairs, repaving, cleaning and custodial, security, insurance, the cost of contesting the validity or applicability of any governmental acts which may affect operating expenses, and all other direct operating costs of operating and maintaining the Premises and related parking areas, unless expressly excluded from operating expenses.  **Taxes**. Landlord shall pay, during the term of this Lease, the real estate taxes and special taxes and assessments (collectively, the taxes) attributable to the premises and accruing during such term. Landlord at its option may require Tenant's to pay to Landlord said taxes on a monthly basis, based on one-twelfth (1/12) of the estimated annual amount for taxes. Taxes for any fractional calendar year during the term hereof shall be prorated. In the event Tenant does not make any tax payment required hereunder, Tenant shall be in default of this Lease. **Insurance.** Tenant

shall maintain, at all times during the Term, comprehensive general liability insurance in an insurance company licensed to do business in the state in which the Premises are located and satisfactory to Landlord, properly protecting and indemnifying Landlord with single limit coverage of not less than THREE MILLION DOLLARS $3,000.000 dollars for injury or death to multiple persons and ONE MILLION DOLLARS $1,000,000 dollars for injury or death to any single person and TWO HUNDRED FIFTY THOUSAND DOLLARS $250,000 for property damage to third parties. During the Term, Tenant shall furnish Landlord with a certificate or certificates of insurance, in a form acceptable to Landlord, covering such insurance so maintained by Tenant and naming Landlord and Landlord's mortgagees, if any, as additional insured.

**5. RENT**: The net monthly base rent shall be Twenty Three Thousand dollars ($23,000.00), payable monthly with the first payment due August 1, 2023 and each monthly installment payable thereafter on the day of each month. Said net monthly base rent is hereafter referred to as the "base rent". Rent for any period during the term hereon, which is for less than one month shall be a pro-rata portion of the monthly rent. Base Rent payable after the first term shall increase in all future years on the anniversary of the lease by 3% unless according to the increase in the CPI-U from the previous year as published by the Bureau of Labor Statistics, U.S. Department of Labor at www.bls.gov/cpi, exceeds 4% at which time the lease rent shall increase by 4%. Landlord and Tenant intend that the basic rent shall be paid without notice or demand and without abatement, reduction or set off of any amount whatsoever. The Base Rent Schedule is attached hereto and made part hereof.

**6. ADDITIONAL RENT** . All payments other than basic rent to be made by the Tenant under and by virtue of the terms of this Lease shall be deemed to be additional rent whether or not the same be designated as such and shall be due and payable on demand or as otherwise herein provided, Landlord, at its election after notice to Tenant, shall have the right (but not the obligation) to pay for or perform any act which requires the expenditure of any sums of money by reason of the failure or neglect of the 'Tenant to perform any of the provisions of this Lease within the grace period, if any. In the event that Landlord shall elect to pay such sums of money or perform such acts that require the incurring of an obligation to pay or expend monies, 'Tenant agrees to pay such sums of money as additional rent on Landlord's demand.

**7. NO RENT ABATEMENT**
Except as in this lease otherwise expressly provided, no abatement, diminution or reduction of rent or charges shall be claimed by or allowed to Tenant or any person claiming under it, under any circumstances, whether for inconvenience, discomfort, interruption of business, or arising from the making of alterations, changes, additions, improvements or repairs to any building or buildings now on or which may hereafter be erected on the demised premises, by virtue of or because of any present or future governmental laws ordinances, requirements, orders, directions, rules or regulations or for any other cause or reason,

8. **SECURITY DEPOSIT**: In addition to the above, a security deposit in the amount of ($77,201.00) Seventy Seven Thousand Two Hundred One Dollars, consisting of the first ($23,000) and last ($54,201) month's rent, shall be due and payable and which amount shall be held by the Landlord as security for the faithful performance of the terms and conditions of the Lease.

9. **TENANT IMPROVEMENTS**: The Tenant will obtain written permission from the Landlord before making any leasehold improvements, alterations or changes of any nature over a cost of $50,000, which consent shall not be unreasonably withheld, and that thereafter, any and all leasehold improvements made to the premises which become affixed or attached to the leasehold premises shall remain the property of the Landlord at the expiration or termination of this Lease Agreement. Furthermore, any leasehold improvements shall be made only in accordance with applicable federal, state or local codes, ordinances or regulations, having due regard for the type of construction of the building housing the subject leasehold premises. If Tenant makes any improvements to the premises, Tenant shall pay for the same when made.

(a) Any single change or alteration involving an estimated cost of more than $200,000.00 shall be conducted under the supervision of a licensed architect or engineer selected by and at the expense of Tenant and who shall be reasonably satisfactory to Landlord;

(b) No change or alteration shall be undertaken until Tenant shall have procured and paid for all municipal and other governmental permits and authorizations of the various municipal departments and governmental subdivisions having jurisdiction relating to the particular phase of said change or alteration to be undertaken, and so long as the same shall be without cost or expense to Landlord. Landlord agrees to join in the application for such permits or authorizations whenever such action. is necessary, provided any plans required to be tiled in connection with any such application which require the approval of Landlord as hereinabove provided, have been so approved by Landlord;

(c) Any change or alteration shall, when completed be of such character as not to affect adversely the value of the Building as it was immediately before such change or alteration, or substantially reduce the gross cubic foot volume or floor area of the Building, or impair the structural. strength of the Building;

(d) All work. done in connection with any change or alteration shall be done promptly and in a good and workmanlike manner of similar materials and in compliance with the Building and zoning laws and with all other laws, ordinances, orders, rules, regulations and requirements of all federal, state and municipal governments and the appropriate departments, commissions, boards and officers thereof, and in accordance with the orders, rules and regulations of any body now or hereafter constituted;

(e) At all times when any change or alteration is in progress, there shall be maintained workmen's compensation insurance covering all persons employed in connection with the change or alteration and with respect to whom death or bodily injury claims could be asserted against Landlord, Tenant, the Demised Premises and/or the Building, and comprehensive general liability insurance for the mutual benefit of Tenant and Landlord expressly covering the additional hazards due to the change or alteration,

with limits of not less than $1,000,000 in the event of death or bodily injury to one person, and not less than $3,000,000 in respect of bodily injury or death to multiple persons in one accident and of $250,000 for property damage. The comprehensive general liability insurance provided for in this subsection may be effected by an appropriate endorsement, if obtainable, upon the insurance required to be maintained by Tenant as cited elsewhere in this agreement. All insurance of the character in this subsection described shall be in a company or companies of recognized responsibility and all such policies or true copies therefor issued by the respective insurers shall be delivered Landlord forthwith upon issuance with evidence of the payment the premiums therefor stamped thereon or other evidence payment satisfactory to Landlord furnished to Landlord,

10. **LICENSES AND PERMITS**: A copy of any and all local, state or federal permits acquired by the Tenant and necessary for the use of the premises as a food service facility with liquor license, shall be kept on site at all times, and shall be readily accessible and produced to the Landlord and/or his agents or any local, state, or federal officials upon demand.

11. **OBLIGATIONS OF TENANT**: The Tenant shall be primarily responsible whenever needed for the maintenance and general pickup of the entranceway leading into the leased premises, so that this is kept in a neat, safe and presentable condition. The Tenant shall also be responsible for all minor repairs and maintenance of the leasehold premises, particularly those items which need immediate attention and which the Tenants, or their employees, can do and perform on their own, including but not limited to, the replacement of light bulbs, as well as the normal repair and cleaning of windows, cleaning and clearing of toilets, etc., and the Tenant shall properly maintain the premises in a good, safe and clean condition and shall properly and promptly remove all rubbish and hazardous wastes and see that the same are properly disposed of according to all local, state or federal laws, rules regulations or ordinances.

In the event the building housing the leased premises is damaged as a result of any neglect or negligence of Tenant, its employees, agents, business invitees, or any independent contractors serving the Tenant or in any way as a result of Tenant's use and occupancy of the premises, then the Tenant shall be primarily responsible for seeing that the proper claims are placed with the Tenant's insurance company, or the damaging party's insurance company, and shall furthermore be responsible for seeing that the building is safeguarded with respect to said damage and that all proper notices with respect to said damage, are made in a timely fashion, including notice to the Landlord, and the party or parties causing said damage.

The Tenant shall, during the term of this Lease, and in the renewal thereof, at its sole expense, keep the interior of the leased premises in as good a condition and repair as it is at the date of this Lease, reasonable wear and use excepted. This obligation would include the obligation to replace any plate glass damaged as a result of the neglect or acts of Tenant or its guests or invitees. Furthermore, the Tenant shall not knowingly commit nor permit to be committed any act or thing contrary to the rules and regulations

prescribed from time to time by any federal, state or local authorities and shall expressly not be allowed to keep or maintain any hazardous waste materials or contaminates on the premises. Tenant shall also be responsible for the cost, if any, which would be incurred to bring its contemplated operation and business activity into compliance with any law or regulation of a federal, state or local authority.

Tenant assumes, at its sole cost and expense, the full and sole responsibility for the condition, operation, maintenance and management of the Demised Premises and the Building, structural or otherwise, from and after the commencement of the term of the Lease and Landlord shall not under any circumstances be responsible for the physical performance of any repairs, changes or alterations whatsoever to the Demised Premises or the Building and Landlord shall not be liable for the cost thereof, Tenant agrees throughout the term of this Lease, at Tenant's sole cost and expense, to take good care of the Demised Premises and the Building, and, subject to the provisions of this Lease elsewhere set forth, to keep the same in good order and condition, and promptly at Tenant's own cost and expense to make all necessary repairs, When used in this Article, the term "repairs" shall include replacements or renewals when necessary, and all such repairs made by Tenant and shall be at least equal in quality, or better and class to the original work. Tenant shall keep and maintain all portions of the Demised Premises and the Building, the sidewalks adjoining same in good repair and clean and orderly condition, free of accumulation of dirt, rubbish, snow and ice.

Tenant further agrees to make all repairs and improvements to the demised premises which are necessary to cure existing violations whether or not of record, as well as subsequently accruing violations of law.

12. **TENANT's RIGHT TO CONTEST** Tenant shall have the right to contest by appropriate legal proceedings) in the name of Tenant or Landlord or both, but without cost or expense to Landlord, the validity of any law, ordinance, certificate, order, rule, regulation or requirement herein referred to, and if by the terms of any such law, ordinance, certificate, order, rule, regulation or requirement, compliance therewith may legally be held in abeyance without the incurrence of any lien, charge or liability of any kind against the Demised Premises or the Building or any interest of Landlord or Tenant therein and without subjecting Landlord to any liability, civil or criminal, of whatsoever nature for failure so to comply therewith, 'Tenant may postpone compliance therewith until the final determination of any proceedings, provided that all such proceedings shall be prosecuted with all due diligence and dispatch, and if any lien, charge or civil liability is incurred by reason of noncompliance, Tenant may nevertheless make the contest aforesaid and delay compliance as aforesaid, provided that Tenant furnishes to Landlord security reasonably satisfactory to Landlord against any loss or injury by reason of such noncompliance or delay therein and prosecutes the contest aforesaid with due diligence and dispatch. Landlord shall cooperate with Tenant with regard hereto, but all at the sole costs and expense of Tenant.

13. **INSURANCE**: In the event Tenant shall fail to obtain insurance required hereunder and fails to maintain the same in force continuously during the term, Landlord may, but shall not be required to, obtain the same and charge the Tenant for same as additional rent. Furthermore, Tenant agrees not to keep upon the premises any articles or goods which may be prohibited by the standard form of fire insurance policy, and in the event the insurance rates applicable to fire and extended coverage covering the premises shall be increased by reason of any use of the premises made by Tenant, then Tenant shall pay to Landlord, upon demand, such increase in insurance premium as shall be caused by said use or Tenant's proportionate share of any such increase.

14. **REQUIRD COVERAGE IN INSURANCE POLICIES** Tenant shall obtain a policy of insurance consistent with NAICS (North American Industry Classification System) Code 722511 (Designating the insured a Full Service Restaurant) Tenant shall obtain **a** "Product/Completed Operations Hazard Redefined" rider which shall cover the business for any claim based on serving a tainted or defective food product to consumers. If tenant chooses to provide "valet parking" it shall also obtain "garage keepers" liability coverage. For so long as the premises has a liquor license the Tenant shall maintain "liquor liability" coverage. If tenant provides a delivery service any business-owned vehicles must be insured under a business auto policy. The policy must also cover non-owned autos and hired autos as well as any vehicles the restaurant owns.

**15. Intentionally left blank.**

**16. ALLOWABLE INSURER & PROOF OF PAYMENT** All insurance provided for in this agreement shall be effected under valid and enforceable policies issued by insurers of recognized responsibility reasonably satisfactory to Landlord, doing business in New York State. Evidence of the payment of premiums for the insurance required hereunder shall be stamped upon the policies or true copies thereof delivered to Landlord hereunder or other evidence of payment satisfactory to Landlord, All policies of insurance provided for under this agreement (other than rent insurance or automobile liability) shall name Landlord and Tenant as named co-insureds as their respective interests may appear. If any loss is adjusted, the loss so adjusted up to $20,000 shall be released to tenant and used only for restoration of the premises, and the balance shall be held in escrow by Landlord's attorneys, to be applied in payment for the costs incurred in the restoration of the premises. All insurance policies (except for automobile liability) shall contain an agreement by the insurers that such policies shall not be canceled without at least ten (10) days prior written notice to Landlord and Tenant.

**17. INDEMNIFICATION OF LANDLORD**
Tenant will indemnify and save harmless Landlord against and from liabilities, obligations, damages, penalties, claims costs, charges and expenses, including reasonable architects/ and attorneys' fees, which may be imposed upon or incurred by or asserted against Landlord by reason of any of the following occurring during the term of this Lease:

(a)   any matter, cause or thing arising out of use, occupancy control, or management of Demised Premises and any part thereof;

(b)   any work or thing done in, or about the Demised Premises or any part thereof;

(c)   any use, non-use, possession, occupation, condition, operation, maintenance or management of the Demised Premises or any part thereof or any street, alley, sidewalk, curb, vault,, passageway or space adjacent thereto;

(d)   any negligence on the part of Tenant, or any of its agents, contractors, servants, employees, licensees or invitees;

(e)   any accident, injury or damage to any person or property occurring in, or about the Demised Premises or any part thereof or any street, alley, sidewalk, curb, vault, passageway or space adjacent thereto;

(f)   any failure on the part of •tenant to perform or comply with any of the covenants, agreements terms or conditions contained in this Lease; or

(g)   any tax imposed as an incident to the execution, delivery or recording of this Lease.

In case any action or proceeding is brought against Landlord by reason of any such claim, Tenant upon timely written notice from Landlord will at Tenant's expense resist or defend such action or proceeding and will pay any judgment or perform any decree resulting therefrom. Landlord hereby agrees, without the necessity of further consents, to be represented by counsel designated by the insurance company which has issued insurance policies for the benefit of landlord. Tenant is fully familiar with the physical condition of the Demised Premises and the equipment presently situated thereon. Landlord has made no representation in connection with the condition of the Demised Premises or equipment presently situated thereon and Landlord shall not be liable for any latent or patent defect therein,

**18.   SUBLET/ASSIGNMENT**: The Tenant may not transfer or assign this Lease, or any right or interest hereunder or sublet said leased premises or any part thereof without first obtaining the prior written consent and approval of the Landlord. Tenant hereby expressly covenants and agrees that this Lease cannot be assigned or transferred, or any part of the demised premises be sublet, without the express written consent of Owner, which consent shall not be unreasonably withheld, conditioned or delayed. Owner shall have the right to examine the prospective assignee's or sublessee's financial situation, credit standing and reputation in the community before giving such consent. Additionally, any proposed assignment, transfer or sublet shall be for the identical uses permitted for premises under this Lease and no others under any circumstances.

A sale, assignment or transfer of all or majority part of the Membership or Ownership Interest of Tenant shall be considered a transfer/assignment for purposes of this paragraph, except to immediate family members of the owners/members of the company above, Any assignment between the present stockholders/members or their heirs shall not be considered an assignment hereunder.

19    **DAMAGE TO LEASED PREMISES**: In the event the building housing the leased premises shall be destroyed or damaged as a result of any fire or other casualty which is not the result of the intentional acts or neglect of Tenant and which precludes or adversely affects the Tenant's occupancy of the leased premises, then in every such cause, the rent herein set forth shall be abated or adjusted according to the extent to which the leased premises have been rendered unfit for use and occupation by the Tenant and until the demised premises have been put in a condition at the expense of the Landlord, at least to the extent of the value and as nearly as possible to the condition of the premises existing immediately prior to such damage. It is understood, however, in the event of total or substantial destruction to the premises that in no event shall the Landlord's obligation to restore, replace or rebuild exceed an amount equal to the sum of the insurance proceeds available for reconstruction with respect to said damage.

The Tenant agrees that at least ten (10) days before the commencement of any work on any building the tenant shall furnish to the Landlord the following:

(a)    Complete plans and specifications for the demolitions construction, repair, replacing, renewing or altering of said building and improvements, as the case may be, prepared by an architect whose qualifications shall meet with the reasonable satisfaction of Landlord and which plans and specifications shall meet with the reasonable approval of the Landlord, together with the approval thereof by any governmental board, bureau or body then exercising jurisdiction with regard to such work, plans and specifications;

(b)    A fixed sum contract with a responsible builder, who shall meet with the reasonable satisfaction of Landlord, and terms of payment for all work, labor and materials necessary to complete the work depicted in said plans.

(c)    Such repairs or restoration shall be made in accordance with such plans and specifications and any applicable law statute, ordinance, regulation or requirement, federal, state, county or municipal;

(d)    During the course of any alterations, restoration or reconstruction of the demised premises, the Tenant will carry for the protection of the Landlord, owner protective liability, Workmen's Compensation and property damage insurance in such amounts as may from time to time be reasonably required by the landlord,

## 20. FUNDS RECEIVED FROM INSURANCE FOR A REPAIR

Landlord as a co-insured shall be named as a co-signatory of any check over the amount of $5,000 issued to Tenant to cover damage to the premises. If said amount is issued in advance to cover the costs of repair it shall be indorsed by the Tenant so as to allow it to be deposited into the account of a reputable Escrow Agent designated by the landlord

Tenant shall pay for all costs of restoration, repairing, rebuilding or alteration, whether or not the insurance proceeds are sufficient for such purposes, The Escrow Agent shall make available to the Tenant any and all net proceeds of insurance actually received for such restoration, replacement, repairing and/or rebuilding. If the net insurance proceeds actually received by the Escrow Agent shall be insufficient to pay the entire cost of such restoration, Tenant will pay the deficiency.

Any monies paid to the Escrow Agent, as provided, shall be paid by the Escrow Agent to the Tenant or to the persons designated by tenant as the work progresses, upon Tenant's request and against:

(a) A certificate by Tenant, dated no more than fifteen (15) days prior to such request setting forth the following:

(b) That the sum then requested is justly due to contractors, subcontractors, materialmen, engineers, architects or other persons who have rendered services or furnished materials for the work therein specified and giving a brief description of such services and materials.

(c) That the cost, as estimated by the persons signing such certificate, of the work required to be done subsequent to the date of such certificate in order to complete the same, does not exceed the insurance proceeds, plus any amount deposited by Tenant to defray such cost and remaining in the hands of the Escrow Agent after payment of the sum requested in such certificate.

(d) An opinion of counsel, or a certificate of a recognized title company, or other evidence, reasonably satisfactory to the Escrow Agent, to the effect that there has not been filed with respect to the lease premises or any part thereof any vendors, mechanics', laborer's, materialman's or other like lien which has not been discharged of record, except such as will be discharged by payment of the amount then requested.

21. **DEFAULT AND POSSESSION**: In the event that the Tenant shall fail to pay said rent, and expenses as set forth herein, or any part thereof, for a period of Ninety (90) days when the same are due and payable, or shall otherwise be in default of any other terms of said Lease for a period of more than 90 days, after Tenant receiving fifteen (15) days notice of said default and failing to cure same, then the parties hereto expressly agree and covenant that the Landlord may declare the Lease terminated and may immediately re-enter said premises and take possession of the same together with any of Tenant's personal property, equipment or fixtures left on the premises which items may be held by the Landlord as security for the Tenant's eventual payment and/or satisfaction of rental defaults or other defaults of Tenant under the Lease. It is further agreed, that if the Tenant is in default, that the Landlord shall be entitled to take any and all action to protect its interest in the personal property and equipment, to prevent the unauthorized removal of said property or equipment which threatened action would be deemed to constitute irreparable harm and injury to the Landlord in violation of its security interest in said items of personal property. Furthermore, in the event of default, the Landlord may expressly undertake all reasonable preparations and efforts to release the premises including, but not limited to, the removal of all inventory, equipment or leasehold improvements of the Tenant's, at the Tenant's expense, without the need to first procure an order of any court to do so, although obligated in the interim to undertake reasonable steps and procedures to safeguard the value of Tenant's property, including the storage of the same, under reasonable terms and conditions at Tenant's expense, and, in addition, it is understood that the Landlord may sue the Tenant for any damages or past rents due and owing and may undertake all and additional legal remedies then available.

In the event any legal action has to be instituted to enforce any terms or provisions under this Lease, then the prevailing party in said action shall be entitled to recover a reasonable attorney's fee in addition to all costs of said action.

Rent which is in default for more than 20 days after due date shall accrue a payment penalty of 4% which shall continue to accrue at 2% for each additional month that rent payment remains outstanding.

In this regard, all delinquent rental payments made shall be applied first toward interest due and the remaining toward delinquent rental payments.

22. **Intentionally left blank**

**23. CONDEMNATION** If any person or corporation, municipal, public, private or otherwise, shall at any time during the term hereby demised, lawfully condemn and acquire title to the leased premises or to any portion thereof, or to any buildings or their appurtenances now or hereafter erected thereon, or to any easement therein, or to any vault or vaults which now exist or which may be constructed under the sidewalks in front of or adjoining the leased premises during the term hereof, in or by condemnation proceedings pursuant to any law, general, special or otherwise, the Landlord shall be entitled to and shall receive the award or payment for all leasehold provisions and tenant shall be entitled and receive any amounts for his lease term, if any. 'the Landlord in any event shall be entitled to receive any and all awards or payments made for any buildings and their appurtenances or vaults or any parts thereof, which shall be so taken, or for any damages whatsoever. All the buildings and improvements now standing upon the leased premises or which may be hereafter erected thereon, are the sole and absolute property of the Landlord.

If the whole of the leased premises or a substantial part thereof shall be condemned so as to make further use and enjoyment thereof impossible or unfeasible, this lease shall thereupon terminate, and rent shall be paid or refunded on a proportionate basis up to the entry of the final order of condemnation. In the event that only a portion of the leased premises shall be condemned so that further use and enjoyment of the remaining portion is possible, then Landlord shall make available from the condemnation award proceeds such sums as may be required to reconstruct the remaining portion of the leased premises into a useful unit and Tenant shall undertake such reconstruction with such proceeds in the manner herein, and for the balance of the term hereof, a just proportion of the net rent shall be abated according to the nature and extent of the injury to the leased premises by the condemnation.

**24. CONDITIONAL DEFAULT PROVISIONS**

If any one or more of the following events (hereinafter sometimes called "Events of Default") shall occur:

(a) If Tenant shall desert or abandon the Demised Premises; or

(b) If this lease or the estate of Tenant hereunder shall be transferred or assigned to any other person or part% except in the manner as herein permitted, and Tenant shall fail to remedy or correct the same within thirty (30) days after notice to 'Tenant by Landlord; or

(c) If default shall be made by Tenant in the performance of or compliance with any of the other covenants, agreements, terms or conditions contained in this Lease, and such default shall continue for a period of sixty (60) days after written notice thereof from Landlord to Tenant, provided that if Tenant proceeds with due diligence during such sixty (60) days' period to cure such default and is unable by reason of the nature of the work involved, to cure the same within the said sixty (60) days, its time to so do shall be extended for an additional period not to exceed the time necessary to cure the same, provided, however that such extension of time shall not subject Landlord or Tenant to any liability, civil or criminal, and the interest of Landlord in this Lease of Demised Premises shall not be jeopardized by reason thereof;

25. **BANKRUPTCY - INSOLVENCY**: The Tenant agrees that in the event all or a substantial portion of the Tenant's assets are placed in the hands of a receiver or a Trustee, and such status continues for a period of 30 days, or should the Tenant make an assignment for the benefit of creditors or be adjudicated bankrupt; or should the Tenant institute any proceedings under the bankruptcy act or any amendment thereto, then such Lease or interest in and to the leased premises shall not become an asset in any such proceedings and, in such event, and in addition to any and all other remedies of the Landlord hereunder or by law provided, it shall be lawful for the Landlord to declare the term hereof ended and to re-enter the leased land and take possession thereof and all improvements thereon and to remove all persons therefrom and the Tenant shall have no further claim thereon.

26. **SUBORDINATION AND ATTORNMENT**: Upon request of the Landlord, Tenant will subordinate its rights hereunder to the lien of any mortgage now or hereafter in force against the property or any portion thereof, and to all advances made or hereafter to be made upon the security thereof, and to any ground or underlying lease of the property provided, however, that in such case the holder of such mortgage, or the Landlord under such Lease shall agree that this Lease shall not be divested or in any way affected by foreclosure, or other default proceedings under said mortgage, obligation secured thereby, or Lease, so long as the Tenant shall not be in default under the terms of this Lease. Tenant agrees that this Lease shall remain in full force and effect notwithstanding any such default proceedings under said mortgage or obligation secured thereby.

Tenant shall, in the event of the sale or assignment of Landlord's interest in the building of which the premises form a part, or in the event of any proceedings brought for the foreclosure of, or in the event of exercise of the power of sale under any mortgage made by Landlord covering the premises, attorn to the purchaser and recognize such purchaser as Landlord under this Lease.

27. **MISCELLANEOUS TERMS:**

    a. **Usage by Tenant**: Tenant shall comply with all rules, regulations and laws of any governmental authority with respect to use and occupancy. Tenant

shall not conduct or permit to be conducted upon the premises any business or permit any act which is contrary to or in violation of any law, rules or regulations and requirements that may be imposed by any authority or any insurance company with which the premises is insured, nor will the Tenant allow the premises to be used in any way which will invalidate or be in conflict with any insurance policies applicable to the building. In no event shall explosives or extra hazardous materials be taken onto or retained on the premises.

    b. **Signs**: Tenant shall not place on any exterior door, wall or window of the premises any sign or advertising matter without the approval of the Municipality if required . Thereafter, Tenant agrees to maintain such sign or advertising matter in good condition and repair. Upon vacating the premises, Tenant agrees to remove all signs and to repair all damages caused or resulting from such removal.

    c. **Condition of Premises/Inspection by Tenant**: The Tenant has had the opportunity to inspect the Premises and acknowledges with its signature on this lease that the Premises are in good condition and comply in all respects with the requirements of this Lease. Furthermore, the Landlord makes no representation or warranty with respect to the condition of the premises or its fitness or availability for any particular use, and the Landlord shall not be liable for any latent or patent defect therein. Furthermore, the Tenant represents that Tenant has inspected the premises and is leasing and will take possession of the premises with all current fixtures present in their "as is" condition as of the date hereof.

    d. **Right of Entry**: It is agreed and understood that upon 24 hours prior notice the Landlord and its agents shall have the complete and unencumbered right of entry to the premises at any time or times for purposes of inspecting or showing the premises and for the purpose of making any necessary repairs to the building or equipment as may be required of the Landlord under the terms of this Lease or as may be deemed necessary with respect to the inspection, maintenance or repair of the building.

### 28. NO MECHANIC'S LIENS

It is expressly agreed by Tenant that notice is hereby given to all persons furnishing labor, services or materials in connection with the demised, premises that Tenant shall have no power to do anything or make any contract which may create or be the foundation of any lien upon the estate, title or interest of Owner in the demised premises or any part thereof, or that will be prior to the rights and remedies of Owner in the demised premises.

All persons are hereby denied the right to acquire a mechanic's lien and the right to file a notice of lien against any interest of Owner in and to the demised premises and that if any such lien is filed the same shall be null and void and of no effect, and Owner specifically

withholds Owner's consent. All contractors, subcontractors, agents, employees or other persons or entities waive the right to place a mechanic's lien against the demised premises. Notwithstanding the foregoing, if any such mechanic's lien (or any other lien) is filed, Tenant agrees that Tenant shall either pay the same, bond, or procure the discharge thereof in such other manner as may be permitted by law within ninety (90) days after the filing thereof, Failure to do so shall be a default hereunder, Owner (at Owner's option but without being obligated to do so) may cause the same to be paid, discharged or canceled and the amount so paid by Owner with the maximum legal interest of sixteen (16%) percent thereon shall become due and payable by Tenant as additional rent with the next installment of rent which shall become due hereunder,

**29. ESTOPPEL CERTIFICATE**: Tenant at any time and from time to time, upon at least fifteen (15) days prior notice by Landlord, shall execute, acknowledge and deliver to Landlord, and/or to any other person, firm or corporation specified by Landlord, a statement certifying that the Lease is unmodified and in full force and effect, or if the Lease has been modified, then that the same is in full force and effect except as modified and stating the modifications, stating the dates to which the fixed rent and additional rent have been paid, and stating whether or not there exists any default by Landlord under this Lease and, if so, specifying each such default.

**30. HOLDOVER**: Should Tenant remain in possession of the premises after the cancellation, expiration or sooner termination of the Lease, or any renewal thereof, without the execution of a new Lease or addendum, such holding over in the absence of a written agreement to the contrary shall be deemed, if Landlord so elects, to have created and be construed to be a tenancy from month to month, terminable upon thirty (30) days notice by either party.

**31. NO PRESUMED WAIVER BY LANDLORD** Waiver by Landlord of a default under this Lease shall not constitute a waiver of a subsequent default of any nature. No payment by Tenant or receipt by Landlord of an amount than the rents, charges and other sums hereby reserved shall be deemed to be other than on account of the earliest rents then unpaid, nor shall any endorsement or statement on any check or any letter accompanying any check or payment by Tenant be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rents payable or Landlord may pursue any other remedy in this lease provided or by law permitted,

**32. WAIVER OF JURY TRIAL AND COUNTERCLAIMS**
The parties hereto waive a trial by jury of any and all issues arising in any action or proceeding between them or their successors under or connected with this lease or any of its provisions, any negotiations in connection therewith, or Tenant's use or occupation of the demised premises (other than a tort claim of active negligence against either of the parties). In case Landlord shall commence summary proceedings or an action for

nonpayment of rent or additional rent hereunder against Tenant, Tenant shall not interpose any counterclaim of any nature or description in any such proceeding or action, but shall be relegated to an independent action at law, unless such claim would be waived if not asserts as a counter claim.

### 33. WAIVER OF NOTICE TO REENTER & RIGHT TO REDEMPTION

Tenant expressly waives the service of notice of intention to reenter or to institute legal proceedings and also waives any and all right of redemption provided for in any statute now or hereafter in force in case Tenant shall be dispossessed

**34. LEGAL FEES,** If Landlord shall bring any proceeding against Tenant for recovery of money or damages, or for possession of the demised premises by reason of non-payment of rent or additional rent, or for non-performance by Tenant of the terms and conditions of this Lease or for breach of the terms of this Lease, and Landlord shall incur costs and expenses by reason thereof, such reasonable charges including legal fees, shall be due and payable from Tenant as additional rent and shall become immediately due and payable, providing the Landlord wins, If Landlord shall institute summary proceedings for nonpayment or additional rent the legal fees therefor shall be twenty five (25%) percent of the amount. demanded in the petition, or $20,000.00, whichever is less, Said amount may be included in the petition and shall be deemed additional rent.

### 35. HOLDING OVER

Should Tenant remain in possession of the demised premises after the expiration or sooner termination of the lease term (or any renewal term hereof) without the execution of a new lease, such holding over, in the absence of a written agreement to the contrary, shall be deemed, if Landlord so elects, to have created and be construed to be a tenancy from month to month terminable on thirty (30) days' notice by either party to the other, at a monthly .rental equal to one and a half (1.5) times the sum of (a) the monthly installment of Fixed Rent payable during the last month of the lease term, and (b) (1//2th) of the Tenant's Real Estate Tax payment payable for the last lease year and will be subject to all the other terms and obligations of this lease insofar as the same are applicable to a month-to-month tenancy, Occupancy by a statutory tenant shall not constitute a holding over.

### 36. RIGHT OF FIRST REFUSAL

If the Landlord is desirous of selling the premises, and provided the Tenant is not in default under this lease, the Tenant shall the right of first refusal to purchase premises and shall have the right to match the purchase price and terms offered by a prospective third party purchaser of the entire demised premises from Landlord/Owner. Third party purchaser in the preceding sentence does not include any of the Landlord's shareholders or members of their families. The right of first refusal shall be exercised as follows:

(a) 'The Landlord/Owner shall execute a proposed contract with the third party purchaser which shall disclose and be subject to the existence of the right. of first refusal of Tenant.
(b) The Landlord shall send to Tenant via certified mail, return receipt requested and also by email to an email address designated by Tenant:
 (i) a letter referencing this agreement in the Lease and the offer of the prospective third party purchaser, including the name of the party under the proposed contract who shall hold the earnest money thereunder (ii) a copy of the proposed contract (iii) three (3) execution copies of a contract between Landlord and Tenant, as purchaser, under the same terms and conditions as provided in the contract with the third-party, all-in accordance with the notice provisions of this Lease. At Landlord's option, the name of the prospective purchaser may be redacted from the copy sent to Tenant,
(c) Within thirty (30) days of Tenant's receipt of the aforementioned documentation in (b) above, Tenant: shall return to Landlord two copies of the contract executed by Tenant, together with a bank or certified check made to the order of the earnest money holder,
(d) Should Tenant not return executed contract and earnest money within thirty (30) days, the right of first refusal shall be permanently and irrevocably terminated,

**37. DEFAULT ON PURCHASE MONEY PROMISSORY NOTE** On this date, the Tenant has executed a purchase money Note and Security Agreement in the amount of $1,250,000.00 to 518 Metropolitan Ave. Corp. for the purchase of the business of KELLOGG's DINER  In recognition that said Note is an obligation of Tenant's for a sum certain and that said Note encumbers the Diner business located on the subject premises the parties agree that a default in this Lease shall be considered a default in the Note and Security Agreement, and a default in the Note and Security Agreement shall be considered a default under this Lease. Tenant shall be entitled to a 15-day notice to cure any default in payment of rent under this lease or of any failure to make payment under the purchase money note.

**38. SURRENDER** Except as is herein otherwise provided,  Tenant shall on the last day of the term or upon any earlier termination of this lease, well and truly surrender and deliver up the demised premises to the possession and use of Landlord without fraud or delay and in good order, condition and repair, except for reasonable wear and tear after the last necessary repair, replacement, restoration or renewal made by Tenant, pursuant to its obligations hereunder free and clear of all lettings and occupancies, and free and Clear of all liens and encumbrances other than those, if any, presently existing or created or suffered by Landlord, without any payment or allowance whatever by Landlord on account' of any improvements which may be on the demised premises.
Upon surrender and if Tenant shall have satisfied all of its obligations under this lease agreement then Tenant shall be entitled to the return of is security funds.
Any property of Tenant which shall remain in the demised premises after the termination of this lease and the removal of Tenant from the demised premises, may, at the option of Landlord, be deemed to have been abandoned by Tenant and either may be retained by

Landlord as its properly or be disposed of, without accountability, in such manner as I Landlord may see fit, or if Landlord shall give written notice to Tenant to such effect, such property shall be removed by Tenant at Tenant's sole cost and expense.

No agreement to accept a surrender of all or any part of the demised premises or this lease shall be valid unless in writing and signed by Landlord, No delivery of keys shall operate as a termination of this lease or a surrender of the demised premises.

### 39. *RULES OF CONSTRUCTION*

(a)     This lease, including the Exhibits and Riders, if any, attached hereto, sets forth the entire agreement between the parties with respect to the demised premises

(b)     All prior conversations or writings between the parties hereto or their representatives with respect to the demised premises are merged herein and in any writing between the parties which by its terms survives lease execution*

(c)     This lease shall not be modified except by a writing signed by the party to be charged, which writing expressly refers to this lease and which has been consented to by the fee mortgagees nor may this lease be canceled by Tenant or the demised premises surrendered except with the written express authorization of Landlord and fee mortgagee,

(d)     The submission by Landlord to 'Tenant of this lease in draft form shall be deemed solely for Tenant's consideration and not for acceptance and execution. Such submission shall have no binding force and effect, shall not constitute an option for the leasing of the demised premises and shall not confer any rights or impose any obligations upon either party. The submission by Landlord of this lease for execution by Tenant and the actual execution and delivery thereof to Landlord shall similarly have no binding force and unless and until Landlord shall have executed this lease and a counterpart thereof shall have been delivered to Tenant.

(e)     The paragraph numbers, captions and table of contents appearing herein are intended only as a matter of convenience and are not intended to define, limit, construe or describe the scope or intent of any paragraph, nor in any way affect this leases

(f)     If any provision of this lease or the application thereof to any person or circumstance shall to any extent be held void, unenforceable or invalid, then the remainder of this lease or the application of such provision to persons or circumstances other than those as to which it is held void, unenforceable or invalid shall not be affected thereby, and each provision of this lease shall be valid and enforced to the fullest extent permitted by law

(g)     Words and phrases used in the singular shall be deemed to include the plural and vice versa, and nouns and pronouns used in any particular gender shall be deemed to include any other gender, where the context so requires,

(h)     This lease shall be construed without regard to any presumption or other rule requiring construction against the party causing this lease to be drafted. In the event of any action, suit, dispute or proceeding affecting the terms of this lease, no weight shall be given to any deletions or striking out of any of the terms of this lease contained in any

draft of this lease and no such deletion or strike out shall be entered into evidence in any such action, suit, dispute or proceeding nor given any weight therein,

(I) This Lease. shall be deemed to have been made in Kings County, New York and shall be construed in accordance with the laws of the State of New York. All actions or proceedings relating, directly or indirectly, to this Lease shall be litigated only in courts located within the County of Kings.

**40. NOTICES**: Payments and notices shall be addressed to the following:

**Landlord 514 FIOTO PROPERTY CORP.**
c/o Frank Fiotos
14-27 142nd Street
Whitestone NY 11357

Together with a copy to Thomas G. Cascione Esq.
274 White Plains Road, Suite 6
Eastchester NY 10709-4419

**Tenant**
c/o Kellogg's Diner
514-518 Metropolitan Avenue
Brooklyn, NY 11211-3411

Together with a copy sent to Luis Skibar via email to; Lskybar@gmail.com

or to such other persons and addresses as Landlord and Tenant may from time to time designate by written notice addressed to one another.

**41. AMENDMENT**: No amendment of this Lease shall be effective unless reduced to writing and subscribed by the parties with all the formality of the original.

**42. BINDING EFFECT**: This Lease and any amendments thereto shall be binding upon the Landlord and the Tenant and/or their respective successors, heirs, assigns, executors and administrators.

IN WITNESS WHEREOF, the parties hereto set their hands and seal this ____ day of _____, 2023.

As to Landlord:                              As to Tenant:

_____                    _____

## ACKNOWLEDGMENT

STATE OF NEW YORK

                       ss.

_____ COUNTY

On this \_\_\_\_ day of _____, 2023, before me appeared FRANK FIOTOS, in his capacity at President of 514 FIOTO PROPERTY CORP. as Landlord of this Commercial Lease Agreement who proved to me through government issued photo identification to be the above-named person, in my presence executed foregoing instrument and acknowledged that he executed the same as his free act and deed.

                                        _____
                                        Notary Public
                                        My commission expires:_____

## ACKNOWLEDGMENT

STATE OF NEW YORK

                       ss.

_____ COUNTY

On this \_\_\_\_ day of _____, 2023, before me appeared LUIS SKIBAR, as managing member of BROOKLYN 24 HRS LLC, the Tenant of this Commercial Lease Agreement who proved to me through government issued photo identification to be the above-named person, in my presence executed foregoing instrument and acknowledged that he/she executed the same as his/her free act and deed.

                                          _____
                                        Notary Public
                                        My commission expires:_____