UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

SID BOYS CORP D/B/A
KELLOGG'S DINER,

                               Debtor.

-------------------------------------------------------------X

Chapter 7

Case No: 21-42207-ess

**ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363 (I) AUTHORIZING THE TRUSTEE TO SELL SUBSTANTIALLY ALL ASSETS OF THE DEBTOR TO THE HIGHEST AND BEST BIDDER AT AN AUCTION SALE; (II) SCHEDULING A HEARING TO APPROVE SUCH SALE TO THE HIGHEST AND BEST BIDDER; (III) APPROVING BIDDING PROCEDURES; (IV) APPROVING THE MANNER AND EXTENT OF <u>NOTICE OF SUCH AUCTION HEARING</u>**

**UPON** the application dated June 29, 2023 ("Application")(Dkt. No. 197) of Richard J. McCord, Chapter 7 Trustee ("Trustee") for the Estate of Sid Boys Corp d/b/a Kellogg's Diner ("Debtor"), by and through his attorneys, Certilman Balin Adler & Hyman, LLP, seeking entry of an Order pursuant to 11 U.S.C. §§ 105 and 363(a), (b), (f) and (m) and Rules 2002, 6004 and 9004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") authorizing the Trustee to sell substantially all assets of the Debtor's business located at 514/518 Metropolitan Avenue, Brooklyn, New York 11211 (the "Assets") pursuant to the terms as set forth in the Asset Purchase Agreement between "Richard J. McCord, as Chapter 7 Trustee for the Estate of Sid Boys Corp d/b/a Kellogg's Diner" as seller, and "Brooklyn 24 Hrs LLC", a New York limited liability company, as purchaser ("Brooklyn 23" or "Proposed Stalking Horse Purchaser") and executed by Purchaser on June 28, 2023, for the sum of One Million Seven Hundred and Fifty Thousand Dollars ($1,750,000.00) subject to higher and betters offers at public auction, free and clear of all liens, claims, encumbrances and other interests, with such liens, claims, encumbrances and other interests (collectively, the "Liens") to attach to the net proceeds of sale with the same validity and

1

priority as such Liens had prior to the sale; (ii) scheduling a hearing to approve the sale of the Assets to the successful bidder; (iii) approving terms and conditions for submitting offers and approving the form and manner of notice with respect to the hearing; and (iv) granting such other, further and different relief as this Court deems just, proper and equitable (the "Motion"); and the Motion having come on for a hearing before the Court on July 17, 2023; and the Trustee and his counsel having appeared at the hearing in support thereof; and it appearing that the requested relief is appropriate; and after due deliberation; it is

**ORDERED**, that the Motion is granted and the Trustee is authorized to sell the Estate's right, title and interest in and to the Assets to the highest and best bidder at an auction sale, free and clear of all liens, claims and encumbrances, with such Liens to attach to the net proceeds of sale with the same validity and priority as such Liens had prior to the sale; and it is further

**ORDERED**, that MYC Associates, Inc. ("MYC") shall conduct an Action Sale on **July 27, 2023, at 11:00 a.m.**; and it is further

**ORDERED**, that the Trustee shall cause the auction sale to be advertised on (i) the website of MYC and (ii) a publication as chosen by the Trustee in consultation with MYC; and it is further

**ORDERED,** that the following bidding procedures (the "Bidding Procedures") as set forth in the Application are hereby approved:

> A. These terms and conditions of the Auction Sale (the "Terms and Conditions of Sale") are being promulgated in connection with the United States Bankruptcy Court, Eastern District of New York (the "Bankruptcy Court") authorized auction sale (the "Auction Sale") of the Debtor's interest in all of Debtor's right, title and interest in, to and under all of the assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including goodwill), wherever located and whether now existing or hereafter acquired (other than the Excluded Assets), which substantially relate to, or are primarily used or held for use in connection with, the Business located at 514/518 Metropolitan Avenue, Brooklyn, New York (collectively the "Acquired Assets").

A.  The seller of the Acquired Assets is Richard J. McCord, Chapter 7 Trustee (the "Trustee" and/or the "Seller") for the Estate of Sid Boys Corp d/b/a Kellogg's Diner, (the "Debtor"), a Debtor in a Chapter 7 case currently pending in the United States Bankruptcy Court for the Eastern District of New York under the caption and case number set forth above; The Trustee's retained special liquidator and custodian ("Liquidator") is MYC, 1110 South Avenue, Suite 22, Staten Island, New York 10314; Telephone (347) 273-1258; Facsimile (347) 273-1358; email: sales@myccorp.com; and website: www.myccorp.com.

B.  The Auction Sale will take place at a date and time to be determined by the Trustee in consultation with MYC. The Trustee reserves his right to conduct the auction online or by video/telephone conferencing. **The Trustee seeks to have the Auction Sale conducted on July 27, 2023, at 11:00 a.m., with a deadline for submission of bids of 5:00 p.m. on July 25, 2023.**

C.  Information regarding the Trustee's Auction Sale of the Acquired Assets can be obtained by contacting the Trustee's counsel at the telephone number and address set forth herein or by contacting MYC or on the MYC website set forth in paragraph "A" above.

D.  The Trustee, in his sole discretion and under his business judgment authority, has entered into the APA as a stalking horse contract with the Proposed Stalking Horse Purchaser that offers a purchase price of $1,750,000.00 that the Trustee deems to be a reasonable and valid purchase offer ("Stalking Horse Offer") for the Acquired Assets. The Trustee shall use the Stalking Horse Offer as the reserve sale price at the Auction Sale, such that the Stalking Horse Offer will be the opening bid at the Auction Sale.

E.  In order to be permitted to bid on the Acquired Assets, at least two (2) days prior to the commencement of the Auction Sale, and as a condition to be able to bid at the Auction Sale, each prospective bidder must: (i) register with MYC; (ii) deliver to MYC the original signed Terms and Conditions of Sale; and (iii) tender a bank check in the amount of $180,000.00 ("Qualifying Deposit") made payable to "Richard J. McCord, Chapter 7 Trustee", which amount shall serve as a good faith deposit against payment of the purchase price by such bidder in the event that such bidder is determined to have made the highest or best bid at the conclusion of the Auction Sale ("Successful Bidder").

F.  Once a prospective bidder has satisfied the conditions set forth in paragraph E to bid at the Auction Sale, each competing offeror's

("Competing Offeror") competing offer ("Competing Offer") must satisfy the following terms and conditions: (i) a Competing Offer shall provide for a purchase price of at least $50,000.00 more than the Stalking Horse Offer; (ii) in the case of any subsequent competing offer ("Subsequent Competing Offer") received from any party, which may, include, without limitation, the Stalking Horse Bidder (after a prior competing bid has been received), such Competing Offer shall provide for an aggregate consideration at least $50,000.00 in excess of that provided by the prior better offer and shall otherwise comply with all conditions of the Terms and Conditions of Sale; (iii) the Competing Offer shall be substantially similar to the terms and conditions of the APA; (iv) the Competing Offer shall have demonstrated, to the sole satisfaction of the Trustee and his counsel, evidence of its ability to conclude the transaction upon the terms and conditions of this Auction Sale, without delay; and (v) the Competing Offer shall not be conditioned upon the outcome of unperformed due diligence by the Competing Offeror with respect to the Acquired Assets that are the subject of this Auction Sale.

In order to be considered as the Successful Bidder by the Court and admissible on the date of the hearing to confirm the Auction Sale, the Stalking Horse Offeror or a Competing Offeror's Competing Offer must satisfy the following terms and conditions: (i) a Competing Offer (which can include a subsequent higher bid by the Stalking Horse Offeror during the Auction Sale) shall have been determined by the Trustee, using his business judgment, to be the highest or best offer received for the Acquired Assets at the conclusion of the Auction Sale; (ii) a higher or better Competing Offeror shall have signed the terms and conditions agreeing to be bound by the Terms and Conditions of Sale; and (iii) the Competing Offeror shall provide, a certified check made payable to Richard J. McCord as Trustee, the sum of ten percent (10%) of the proposed purchase price as a down payment, in accordance with paragraph G.

G. No later than twenty-four (24) hours after the conclusion of the Auction Sale, the Successful Bidder of the Acquired Assets shall deliver to the Trustee a bank check which amount must be equal to ten (10%) percent of the successful bid, minus the Qualifying Deposit (together with the Qualifying Deposit, the "Deposit"). The Successful Bidder for the Acquired Assets must execute, and thereby agree to be bound by: (i) these Terms and Conditions of Sale; and (ii) a Memorandum of Sale/Contract of Sale/Asset Purchase Agreement.

H. At the conclusion of the Auction Sale, the Trustee, or his

representative, will return the Qualifying Deposits to all other bidders. The Trustee, however, shall retain the Qualifying Deposit of the second highest bidder (the "Second Bidder").

I. The Successful Bidder, or its assignee, must close on the Acquired Assets (the "Closing") on a date ("Closing Date") that is not more than fifteen (15) calendar days after the entry of a Bankruptcy Court Order confirming the Auction Sale. **TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER, OR ITS ASSIGNS**, although such Closing Date may be extended solely by the Trustee, in his discretion. The Closing shall take place at a location that is to be determined by the Trustee.

J. The Bankruptcy Court, prior to the Closing, may enter an Order confirming the Auction Sale.

K. The Successful Bidder, or its assignee, shall pay all of its expenses incurred as purchaser, including, but not limited, any commission or fees to a broker or a consultant engaged by the Successful Bidder in connection with the purchase of the Acquired Assets. The Successful Bidder, or its assignee, acknowledges that he, she, or it, will be responsible for any incidental expenses, and for the completion of any transfer forms, if applicable.

L. In connection with the Closing and Closing Date, the Successful Bidder, or its assignee, is hereby given notice that **Time is of the Essence against the Successful Bidder, or its assignee, and the failure of the Successful Bidder, or its assignee, to close for any reason whatsoever (except as otherwise provided below) including his, her, or its, failure to pay the balance of the Purchase Price on the Closing Date, will result in the Seller retaining the Deposit as liquidated damages and the termination of the Successful Bidder, or its assignee, right to acquire the Acquired Assets under these Terms and Conditions of Sale**. The Successful Bidder, or its assignee, shall be obligated to close on the Acquired Assets and there is no contingency of any kind or nature that will permit the Successful Bidder, or its assignee, to cancel or avoid **his, her, or its**, obligation under these Terms and Conditions of Sale, except as otherwise provided for in the APA executed by such Successful Bidder. Further, the Successful Bidder, or its assignee, must demonstrate, to the satisfaction of the Trustee or the Bankruptcy Court, as the case may be, evidence of **his, her, or its**, ability to conclude the transaction upon these Terms and Conditions of Sale, without delay. The Trustee reserves the right to reject any bidder/offeror, who the Trustee, in his sole discretion, believes is not financially capable of consummating the purchase of the Acquired

Assets.  **Expenses incurred by the Successful Bidder, or its assignee, or any competing bidder concerning the performance of any due diligence, such as obtaining due diligence reports, shall be the sole financial responsibility of such bidder and under no circumstances shall the Trustee, or the Debtor's estate, or the Trustee's professionals, be liable or responsible for, or pay, such expenses.**

M. In the event that the Successful Bidder for the Acquired Assets, or its assignee, fails to tender the balance of the Purchase Price on the Closing Date, or otherwise perform **his, her, or its**, obligations under these Terms and Conditions of Sale, the Trustee, at his sole option, shall immediately negotiate the Qualifying Deposit of the Second Bidder and shall be further authorized to sell the Acquired Assets to the Second Bidder, or its assignee, without any further notice or approval of the Bankruptcy Court, without giving credit to the Second Bidder for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Trustee deems appropriate. Should the Second Bidder, or its assignee, fail to close on the Acquired Assets within twenty (20) days of receiving from the Trustee, notice, **TIME BEING OF THE ESSENCE**, (at the address set forth on the bidder registration form) that said Second Bidder is now deemed the Successful Bidder, then the **Sellers shall be: (a) authorized to keep the Qualifying Deposit of the Second Bidder as liquidated damages**; and (b) authorized but not obligated to sell the Claim to the next highest bidder, without any further notice or approval of the Court.

N. The Acquired Assets are being sold and delivered **"AS IS", "WHERE IS", "WITH ALL FAULTS"**, without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and free and clear of all monetary liens, claims and encumbrances of whatever kind or nature, such liens, claims, interests and encumbrances, if any, to attach to the proceeds of Auction Sale in such order and priority as they existed immediately prior to the Sale Date. By delivering their respective Qualifying Deposits, all bidders acknowledge that they have had the opportunity to review and perform due diligence on the Acquired Assets, the state of title thereof and laws, rules and regulations applicable thereto, and the form of the Trustee's bill of sale that the Trustee will execute to convey the Acquired Assets, and will rely solely thereon and on their own independent investigations and inspections of the Acquired Assets in making their bids. All bidders acknowledge that they have conducted their own due diligence in connection with the Acquired Assets, and are not relying on any

information provided by the Trustee, MYC or the Trustee's retained professionals.

O. The Trustee shall convey the Acquired Assets by delivery of a bill of sale and execution of those documents deemed customary and necessary in connection with such sale.

P. Nothing contained in these Terms and Conditions of Sale shall supersede or alter any provisions of Title 11, United States Code (the "Bankruptcy Code") and/or of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") or otherwise interfere with the jurisdiction of the Bankruptcy Court. To the extent of any conflict between the Bankruptcy Code and/or the Bankruptcy Rules and these Terms and Conditions of Sale, the Bankruptcy Code and/or the Bankruptcy Rules shall govern. All of the terms and conditions set forth in these Terms and Conditions of Sale are subject to modification as may be directed by the Trustee, or by the Bankruptcy Court. The Trustee reserves the right to modify these Terms and Conditions of Sale at the Sale, or thereafter, to maintain consistency with the provisions of the Bankruptcy Code, Bankruptcy Rules, and/or orders of the Bankruptcy Court.

Q. Neither the Trustee, MYC, the Trustee's retained professionals, nor the Debtor's estate, are liable or responsible for the payment of fees of any broker or agent that has not been retained by an order of the Bankruptcy Court.

R. These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference at the Auction Sale of the Acquired Assets. By making a bid for the Acquired Assets, all bidders shall be deemed to have acknowledged having read, and understand, these Terms and Conditions of Sale and have agreed to be bound by them.

S. The Trustee shall be a party to the Auction Sale of the Acquired Assets exclusively in his capacity as Trustee in the bankruptcy estate and not as an individual. If the Trustee is unable to deliver the Acquired Assets in accordance with these Terms and Conditions of Sale for any reason whatsoever, his only obligation will be to refund the Deposit to the Successful Bidder (or Second Bidder) and upon such refund the Successful Bidder (or Second Bidder) will have no recourse or claim against the Trustee, the Trustee's retained professionals, or the Debtor's estate.

T. The Trustee reserves his right to withdraw the Acquired Assets from the Auction Sale, either prior or subsequent to the auction, for any

> reason whatsoever, without notice, as he deems necessary or appropriate.

U. The Auction Sale of the Acquired Assets is subject to confirmation by the Bankruptcy Court. The Trustee or the Trustee's attorney shall notify the Successful Bidder whether the Auction Sale is confirmed. Any disputes concerning the Auction Sale shall be determined by the Bankruptcy Court. By participating in the Auction Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes arising in the Debtor's pending case.

V. **By making a bid for the Acquired Assets, all bidders shall be deemed to have acknowledged having read, and understand, these Terms and Conditions of Sale and have agreed to be bound by them.**

**ORDERED**, that the Business is being sold and delivered "AS IS", "WHERE IS", "WITH ALL FAULTS", without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, as set forth in the Terms and Conditions of Sale; and it is further

**ORDERED**, that the Court shall hold a hearing, virtually, on **July 27, 2023 at 2:00 p.m. (prevailing Eastern Time)**, before the Honorable Elizabeth S. Stong, at the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Courtroom 3585, Brooklyn, New York 11201, to determine whether to approve the sale of the Business to the Proposed Stalking Horse Purchaser or the Successful Bidder at the Auction; and it is further

**ORDERED**, that the Trustee is hereby authorized and empowered to take the steps necessary to sell the Assets as described herein, to the highest and/or best bidder, free and clear of all liens, claims and encumbrances, with such Liens to attach to the net proceeds of sale with the same validity and priority as such Liens had prior to the sale; and it is further

**ORDERED**, that the Stalking Horse Contract of Sale, a copy of which is attached to the Motion as Exhibit D, is hereby approved, subject to the results of the Auction; and it is further

**ORDERED**, that the Proposed Stalking Horse Purchaser shall be bound to purchase the Business pursuant to and subject to the terms of the Asset Purchase Agreement; and it is further

**ORDERED**, that the Proposed Stalking Horse Purchaser's Deposit shall be held in escrow pending closing; and it is further

**ORDERED**, that all liens, claims and encumbrances shall be subject to and subordinate to the Successful Bidder's rights under the Stalking Horse Contract of Sale, as modified in accordance with the terms of the Successful Bid, and shall, to the extent of their validity and in their order of priority, attach to the net proceeds of sale; and it is further

**ORDERED**, that the Trustee shall not distribute the net proceeds of sale without further order of this Court; and it is further

**ORDERED**, that the Proposed Stalking Horse Purchaser or Successful Bidder at the Auction is responsible to pay any New York City and New York State transfer taxes incurred by the transfer of the Assets, but pending proof of payment of said transfer taxes by the Proposed Stalking Horse Purchaser or Successful Bidder, the Trustee shall hold in escrow sufficient funds to pay said transfer taxes; and it is further

**ORDERED**, that the Proposed Stalking Horse Purchaser is entitled to, and hereby are granted, the protections afforded by Section 363(m) of the Bankruptcy Code with respect to the Assets; and it is further

**ORDERED**, that the fourteen (14) day stay under Bankruptcy Rule 6004(h) is waived; and it is further

**ORDERED**, that the Trustee is authorized to take such other actions as may be necessary and appropriate to implement the terms of the Stalking Horse Contract of Sale and this Order; and it is further

**ORDERED**, that the Trustee shall serve this Order by not later than three (3) business days after date of entry of this Order upon (i) Debtor's counsel; (ii) Lawrence Morrison, Esq., Morrison & Tenenbaum PLLC, counsel to Proposed Stalking Horse Purchaser; (iii) all creditors claiming a security interest in the Business; (v) the Office of the Corporation Counsel of the City of New York; (vi) all parties filing a notice of appearance in this case; (vii) all parties filing proofs of claim in this case; and (ix) the Office of the United States Trustee, which notice shall be deemed sufficient notice of the Auction, the Bidding Procedures and the Sale Confirmation Hearing; and it is further

**ORDERED**, that the Trustee shall file an affidavit of service with the Court by not later than five (5) business days after entry of this Order; and it is further

**ORDERED**, that the Bankruptcy Court ~~shall~~ *may* retain jurisdiction over this matter.

Dated: Brooklyn, New York
July 18, 2023



/s/ Elizabeth S. Stong
Elizabeth S. Stong
United States Bankruptcy Judge